EXHIBIT A



| Case Information Summary for Case Number |
| :---: |
| 2021-CH-04328 |

CWPM: 2 127 CH-003025 DOOPWEIKE H. 2 2 iLHHS OBCAEOT WHFH 2 IN 200 WPFIHO H 2 H

Filing Date: 08/27/2021

Case Type: GENERAL CHANCERY

Division: Chancery Division

District: First Municipal

Ad Damnum: $0.00

Calendar: 03

## Party Information

**Plaintiff(s)**

CITY OF CHICAGO

**Attorney(s)**

CORPORATION COUNSEL
121 N LASALLE #600
CHICAGO IL, 60602
(312) 744-0200

**Defendant(s)**     **Defendant Date of Service**     **Attorney(s)**

CAVIAR, LLC
DOORDASH, INC.

## Case Activity

Activity Date: 08/27/2021

Participant: CITY OF CHICAGO

### GENERAL CHANCERY FILED (JURY DEMAND)

Court Fee: 423.50

Attorney: CORPORATION COUNSEL

Activity Date: 08/27/2021

Participant: CITY OF CHICAGO

### EXHIBITS FILED

Attorney: CORPORATION COUNSEL

Activity Date: 08/27/2021

Participant: CITY OF CHICAGO

### EXHIBITS FILED

Attorney: CORPORATION COUNSEL

Activity Date: 08/27/2021

Participant: CITY OF CHICAGO

### SUMMONS ISSUED AND RETURNABLE

Attorney: CORPORATION COUNSEL

Activity Date: 08/27/2021                    Participant: CITY OF CHICAGO

SUMMONS ISSUED AND RETURNABLE

Attorney: CORPORATION COUNSEL

Activity Date: 08/27/2021                    Participant: CITY OF CHICAGO

CASE SET ON CASE MANAGEMENT CALL

Date: 12/27/2021
Court Time: 0930                             Judge: WALKER, ALLEN PRICE
Court Room: 2402                             Attorney: CORPORATION COUNSEL

*Back to Top*

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED
8/27/2021 10:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04328

14605229

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| City of Chicago, | ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| DoorDash, Inc. and Caviar, LLC, | ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

THE PARTIES ..................................................................................................... 6

JURISDICTION AND VENUE .......................................................................... 7

GENERAL ALLEGATIONS ............................................................................. 8

    I.      DOORDASH AND CAVIAR USE A DECEPTIVE ORDERING
           SCHEME TO ENTICE CONSUMERS AND HIDE THE TRUE COST
           OF THEIR SERVICE. ........................................................................ 8

           A.     DoorDash and Caviar Misrepresent the Delivery Fee as the Full
                   Price of Delivery Service. ........................................................ 11

           B.     The Actual Price of Delivery Includes Fees that DoorDash and
                   Caviar Conceal Until the End of the Transaction. ................... 17

                 1.     DoorDash and Caviar Conceal the Service Fee and Small
                            Order Fee, Deceptively Depicting Them as Charges
                            Authorized or Imposed by the Government. .............................. 18

                 2.     DoorDash and Caviar Misled Consumers About the Source
                            and Purpose of Their "Chicago Fee." ........................................ 24

    II.     DOORDASH AND CAVIAR HIDE THE WIDESPREAD MARKUPS
           OF MENU PRICES ON THEIR PLATFORMS. ................................. 30

           A.     DoorDash and Caviar Fail to Disclose to Chicago Consumers
                   When Menu Prices Are Inflated. ............................................. 33

           B.     DoorDash and Caviar's Practice of Posting Deceptively Inflated
                   Menu Prices on Their Platforms Is Widespread in Chicago. ...... 37

    III.    THE DOORDASH PLATFORM MISLEADINGLY OFFERS
           PROMOTIONAL DISCOUNTS. ........................................................ 42

    IV.    THE DOORDASH PLATFORM LISTS UNAFFILIATED
           RESTAURANTS WITHOUT PERMISSION AND FALSELY
           PORTRAYS THEM AS BUSINESS PARTNERS. ........................... 50

           A.     DoorDash's Unauthorized Listings Deceptively Convey an
                 Affiliation with the Restaurant that Does Not Exist. ................ 51

           B.     DoorDash Deceptively Promises Automatic Refunds for
                 Overcharges. ........................................................................ 58

           C.     DoorDash's Failure to Verify Restaurant Information in
                 Unauthorized Listings Misleads Consumers. ........................... 61

           D.     DoorDash's Unauthorized Listings Unfairly Hijack Restaurants'
                 Information and Harm Their Reputations. ............................... 64

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

i

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

V.   DOORDASH DECEPTIVELY USED CONSUMER TIPS TO PAY
     ITSELF RATHER THAN ITS DRIVERS. ........................................................ 70

     A.   DoorDash Used Customer Tips as a Substitute for a Portion of
          DoorDash's Guaranteed Payment to Drivers............................................ 70

     B.   DoorDash Misrepresented to Consumers that Tips Were Driver
          Income Over and Above Drivers' DoorDash Pay. ................................... 73

FIRST CAUSE OF ACTION ................................................................................... 80

SECOND CAUSE OF ACTION ............................................................................... 84

JURY DEMAND ....................................................................................................... 89

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

## INTRODUCTION

1.      The City of Chicago's consumer protection ordinances safeguard against business practices that interfere with an honest marketplace in which all participants are presented with accurate information and companies that adhere to the law can succeed. The City brings this action against meal delivery companies DoorDash, Inc. ("DoorDash") and Caviar, LLC ("Caviar") for misconduct that violates sections 2-25-090 and 4-276-470 of the Municipal Code of Chicago.

2.      DoorDash, including its subsidiary Caviar (together, "Defendants"), is now the nation's—and Chicago's—largest online meal ordering and delivery company. DoorDash professes "a mission to grow and empower local economies," but the company has fueled its rapid rise to the top with deceptive and predatory tactics that harm key participants in the Chicago economy: local restaurants, consumers, and drivers. DoorDash's misconduct in Chicago, which dates back to 2014, is unlawful under any circumstances but particularly egregious amid the calamity of the COVID-19 pandemic.

3.      DoorDash operates through its eponymous app and website (the "DoorDash Platform"). DoorDash also operates through the Caviar app and website (the "Caviar Platform"), which focus on delivery from upscale restaurants. Defendants' misconduct is pervasive in Chicago, where the DoorDash and Caviar Platforms (together, "Defendants' Platforms" or the "Platforms"), collectively list more than 3,100 restaurants and now account for more than 1 in 3 online meal delivery transactions.

4.      Defendants' Platforms make money on each order by (a) charging fees to consumers for ordering and delivery (the "Service"), and (b) charging a commission to restaurants that contract with Defendants to market them on Defendants' Platforms and provide delivery.

5.      DoorDash has pursued market dominance relentlessly. A private company until late 2020, DoorDash has plowed billions of investor dollars into expanding its reach in Chicago and

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

nationally—including by acquiring Caviar in 2019 for $410 million. The imperative of growth drives DoorDash to deliver from as many restaurants and to as many consumers as possible. Although pursuing greater market share in and of itself is not unlawful, DoorDash and Caviar's deceptive and unfair methods for doing so are.

6.      Since entering the Chicago market in 2014, DoorDash has deployed a host of deceptive and unfair business practices in service of its revenue and growth strategies. Caviar, which likewise entered the Chicago market in 2014, has engaged in similar misconduct at least since DoorDash acquired it in 2019:

a.      DoorDash and Caviar's fees for their Service are a modern-day bait-and-switch: The Platforms entice consumers by misrepresenting the "Delivery Fee". DoorDash and Caviar do not intend to deliver at that price. Instead, they reveal additional fees for delivery—including a "Service Fee" and a "Small Order Fee"—at the end of the transaction. Even then, DoorDash and Caviar hide these additional fees by grouping them with taxes, suggesting that the fees are government-imposed. The full consumer fees can be as high as ***nearly four times (Caviar) to six times (DoorDash)*** the low Delivery Fee that Defendants misleadingly advertise upfront.

b.      DoorDash and Caviar also hide from consumers that the menu prices ("Platform Menu Prices") of "Affiliated Restaurants"—restaurants that contract with DoorDash and Caviar for order and delivery services—on both Platforms are in many instances higher than the prices available from the restaurants themselves. This scheme further inflates the cost to consumers, who not only pay the higher menu price but also a higher Service Fee, because DoorDash and Caviar charge the Service Fee as a percentage of the food order.

c.      The DoorDash Platform deceptively offers consumers deals such as $5 or 20% off, without disclosing that the consumer must meet a substantial minimum order threshold

FILED DATE: 8/27/2021 10:37 AM 2021CH04328

to receive the advertised discount. When a consumer does not meet the minimum dollar amount, DoorDash simply does not apply the discount—without alerting the consumer that the discount will not be applied.

d.       The DoorDash Platform advertises order and delivery from numerous "Unaffiliated Restaurants" in Chicago—that is, restaurants that have not agreed to enter into any business relationship with DoorDash—without consent. DoorDash scrapes the information for Unaffiliated Restaurants from the Internet and posts it on DoorDash's Platform. DoorDash does not verify the accuracy of Unaffiliated Restaurants' menus or operating hours. When this business practice predictably results in customer service problems, DoorDash leaves restaurants holding the bag. DoorDash also does not verify the accuracy of prices, instead promising to refund any difference when the menu price it charges consumers is higher than the price it pays the restaurant. However, DoorDash often does not live up to this promise—resulting in consumers paying extra and DoorDash pocketing the difference.

e.       Between July 2017 and September 2019, DoorDash misled consumers in Chicago to believe that they were using the "tip" feature on the DoorDash Platform to supplement the income of the driver who delivered their food, over and above the base pay DoorDash provided. Instead, DoorDash largely used the consumer's "tip" to subsidize its own agreed payment to the driver.

7.       Beginning in March 2020, as COVID-19 public health restrictions shut down Chicago restaurant dining, consumer demand for meal delivery soared—tripling across the industry between March and April. Restaurants' ability to subsist on takeout and delivery orders became a make-or-break proposition, driving many of them to work with third-party meal delivery companies, like DoorDash and Caviar, despite the punishing commissions these companies

3

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

charged for their Service. Until November 2020, when the City initiated an emergency ordinance temporarily capping these commissions at 15% (the "Emergency Fee Cap"), DoorDash and Caviar charged restaurants as much as 30% of each food order. Restaurants found themselves in the untenable position of hardly being able to survive *with* meal delivery services, but not being able to keep their doors open *without* them.

8.  Meanwhile, DoorDash's response to the November 2020 Emergency Fee Cap was to invent and impose a new "Chicago Fee" of $1.50 on every DoorDash order in Chicago. Calling this surcharge a "Chicago Fee" misleadingly conveyed to consumers that the City was imposing this fee and receiving the money. The City was doing neither.

9.  DoorDash and Caviar's deceptive and unfair business practices helped drive the companies' growth during this public health emergency and economic crisis. From 2019 to 2020, year-over-year total orders placed on Defendants' Platforms more than *tripled*—from 263 million to 816 million—and DoorDash's revenue grew at a commensurate rate.

10.  DoorDash has experienced tremendous growth on the backs of restaurants and consumers. Including Caviar, DoorDash's share of the national meal delivery market grew from 38% in February 2020, just before the pandemic, to 57% in July 2021—more than double that of its closest competitor, UberEats:

FILED DATE: 8/27/2021 10:37 AM 2021CH04328



DoorDash capitalized on its pandemic-fueled success with an initial public offering in November 2020. As of August 2021, DoorDash is valued at nearly $64 billion dollars, and it is expanding into new territory—delivery from grocery stores, flower shops, drug stores, and pet stores.

11.     As DoorDash has soared, the Chicago restaurant sector has suffered. As of April 2020, approximately half of Chicago's 7,500 restaurants had closed temporarily or permanently. The Federal Reserve estimated that approximately 44,000 restaurant workers in the Chicago area lost their jobs in 2020 alone. As of January 2021, Chicago's leisure and hospitality industry was employing 158,000 *fewer* workers than it had pre-pandemic. As part of its investigation, the City collected information from many local restaurants. Many described their dire economic straits and the direct role that DoorDash's predatory tactics have played in destabilizing their ability to stay in business.

12.     DoorDash and Caviar's business practices are deeply misleading to consumers and harmful to the local Chicago restaurants that DoorDash publicly claims to support. The City

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

therefore brings this action, by and through its Corporation Counsel, to permanently enjoin these deceptive and unfair practices and to secure appropriate restitution and other relief.[1]

## **THE PARTIES**

13.   Plaintiff, the City of Chicago, is a municipal corporation and a home-rule unit organized and existing under the laws of the State of Illinois.

14.   Defendant DoorDash, Inc. is a Delaware corporation with its headquarters and principal place of business at 303 2nd Street, South Tower, 8th Floor, San Francisco, California 94107. Until November 10, 2020, DoorDash was registered to do business in Illinois, and its registered agent was Registered Agent Solutions, Inc., 901 S. 2nd St., Suite 201, Springfield, Illinois 62704.

15.   The DoorDash Platform provides online food ordering and delivery services in Chicago through DoorDash.com and the DoorDash mobile app. At all relevant times, DoorDash, Inc. and its subsidiaries and affiliated companies have owned and operated the DoorDash Platform.

16.   Through an August 2019 transaction, DoorDash, Inc. acquired certain assets and liabilities of Square, Inc. and its subsidiary, Caviar, Inc., including the Caviar Platform.

17.   The Caviar Platform provides online food ordering and delivery services in Chicago through TryCaviar.com and the Caviar mobile app. DoorDash, Inc. and its subsidiaries and affiliated companies, including its wholly owned subsidiary Caviar, LLC, have owned and operated the Caviar Platform from August 1, 2019 through the present.

18.   Caviar, LLC is a Delaware corporation with its principal place of business at 901 Market Street, Suite 600, San Francisco, California 91403.

---

[1] By including mandatory individual arbitration clauses in their Terms of Use and restaurant contracts, DoorDash and Caviar frustrate Chicago consumers' and restaurants' ability to seek meaningful redress for this deceptive and unfair conduct through individual and class action litigation.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

19.     Neither DoorDash, Inc. nor Caviar, LLC holds an active Chicago Limited Business License.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction under Article VI, Section 9 of the Illinois Constitution, which grants the Circuit Court original jurisdiction in all causes other than those specifically enumerated therein.

21.     The Court has specific personal jurisdiction over DoorDash and Caviar under 735 ILCS 5/2-209 because the causes of action alleged herein arise from the following activities: (1) their transaction of business within the City of Chicago and the State of Illinois, including by publishing websites and mobile apps that advertise restaurants and fulfill meal order processing and delivery in Illinois, and by purposely conducting business activities, including restaurant and consumer solicitation, meal order processing, meal delivery, customer service, and marketing activities, in Illinois; (2) their commission of deceptive and unfair trade practices in the City of Chicago and State of Illinois that arise from to the business activities outlined above and as set forth below; and (3) their making and performance of contracts and promises substantially connected to the State of Illinois, including agreements with Illinois restaurants, drivers, and consumers relating to the provision of meal ordering and delivery service. DoorDash and Caviar have the requisite minimum contacts with Illinois necessary to permit the Court constitutionally to exercise jurisdiction, and to render that exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper under 735 ILCS 5/2-101 because the transactions underlying the City's claims occurred in Cook County.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

## GENERAL ALLEGATIONS

**I.** **DOORDASH AND CAVIAR USE A DECEPTIVE ORDERING SCHEME TO ENTICE CONSUMERS AND HIDE THE TRUE COST OF THEIR SERVICE.**

23.     DoorDash and Caviar's fee scheme is an e-commerce update on the traditional "bait and switch." The DoorDash and Caviar Platforms advertise a deceptive Delivery Fee upfront, an attractively small amount Defendants tease to get customers in the door. But the transaction cannot be completed for that price. DoorDash and Caviar misrepresent the Delivery Fee as the entire charge for delivery; however, the so-called Delivery Fee is merely the first of several consumer-facing charges that all pay for the same Service: ordering a restaurant meal for delivery.

24.     DoorDash and Caviar deceptively subdivide the full price a consumer pays for delivery into arbitrary, separate charges for this Service. Defendants do not disclose these other fees until the end of the ordering process. DoorDash and Caviar label these other charges the "Service Fee" and, on food orders less than $10, they also impose a "Small Order Fee." From November 2020 through April 2021 and again from late June through the end of July 2021, DoorDash and Caviar also imposed a deceptively labeled "Chicago Fee" on all orders in the City. None of these additional fees provides the consumer with any product or service that is distinct from the "Delivery Fee"; they are merely ways to disguise the true cost of ordering a meal for delivery through Defendants' Platforms.

25.     These additional fees substantially increase the total charge for DoorDash or Caviar delivery beyond the advertised price. For example, on a food order under $10, a Chicago consumer can pay a Delivery Fee of up to $5.99, a Small Order Fee of $2.50, and a Service Fee between 13% and 22% of the food order amount. The Chicago Fee added another $1.50. The City's investigation revealed that consumers pay DoorDash fees that can add up to more than *six times* the initial Delivery Fee that the DoorDash Platform deceptively advertised. On the Caviar Platform,

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

consumers pay fees that can add up to *nearly four times* the advertised Delivery Fee. Meanwhile, Chicago restaurants receive none of this money and, in fact, pay DoorDash and Caviar substantial commissions on each delivery order through the Platforms.

26.     Defendants' Platforms both apply the Delivery Fee, Service Fee, Small Order Fee, and Chicago Fee in the same way and describe them with the same language:

a.      The Delivery Fee is a flat fee (regardless of order size) that the Platforms have charged since their inception. The Platforms present the Delivery Fee upfront, without qualification, as the fee for "delivery"—even though DoorDash and Caviar have no intention of providing delivery for that price. The Delivery Fee amount "varies for each restaurant based on [the consumer's] location and other factors." Based on the City's investigation, the Delivery Fee typically ranges from $0.99 to $5.99 in Chicago.

b.      The Service Fee is calculated as a percentage of the order subtotal. The DoorDash Platform has charged a Service Fee since 2016, and the Caviar Platform has charged a Service Fee at least since DoorDash acquired the Platform in 2019. The Service Fee is applied to all orders and ranges from 10% to 22% in Chicago.[2] The Platforms obliquely describe the Service Fee as a charge that "helps us operate" without further detail.

c.      The Small Order Fee is a flat $2.50 charge on all food orders less than $10. As with the Service Fee, the DoorDash Platform has applied a Small Order Fee since 2016, and the Caviar Platform has applied a Small Order Fee at least since DoorDash acquired the Platform in 2019.

---

[2] For orders placed through DoorDash's subscription service, DashPass, DoorDash and Caviar discount the Service Fee—so long as the order is above a minimum (currently $12 in Chicago) and placed with a restaurant participating in DashPass. Restaurants pay a premium to be included in the DashPass program, and consumers pay a monthly subscription fee of $9.99 for DashPass.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

d.     The Chicago Fee was a flat $1.50 charge that DoorDash applied to all orders from Chicago restaurants. The Platforms described this charge as enabling them "to continue to offer you convenient delivery while ensuring that Dashers are active and earning."

27.     These four fees—the Delivery Fee, Service Fee, Small Order Fee, and Chicago Fee—are consumer-facing charges for a single amenity: delivery. They are not tied to distinct elements of DoorDash and Caviar's Service, and consumers do not receive a different convenience or separate benefit in exchange for each fee. DoorDash and Caviar do not charge any of these fees for pickup orders, yet charge all of them for delivery.

28.     In fact, DoorDash groups these together as "Consumer Fees" in its public financial statements. For example, DoorDash's registration statement for its 2020 initial public offering explained the "Economics of a Marketplace Order"—a consumer transaction—as follows:

***Excerpt from DoorDash's IPO registration statement***



29.     DoorDash and Caviar's choice to charge consumers three or four separate fees for their Service, rather than one, all-inclusive fee disclosed upfront, is an integral part of their deceptive sales strategy both nationwide and in Chicago. Arbitrarily parceling out the full charge

among the Delivery Fee, Service Fee, Small Order Fee, and Chicago Fee wards off sticker shock and misleads consumers regarding the true price of Defendants' Service.

30.     This deceptive practice reflects the manipulative techniques of partition pricing (dividing the full price of a service into parts) and drip pricing (promoting only a portion of a service's cost upfront and disclosing the rest only as the consumer goes through the buying process). As the Federal Trade Commission and other consumer watchdogs have recognized, both practices mislead consumers because separating prices "can lower customers' perceptions of total cost"[3] and "makes continued search costlier and more complicated."[4]

31.     The total price of DoorDash and Caviar's Service is material to consumers, who have options when ordering a restaurant meal. Ordering and delivery of restaurant meals is available in Chicago from multiple third-party companies, as well as directly from many restaurants. Consumers also have the option to place an order directly with a restaurant for carry-out. Consumers are sensitive to the price they pay for the convenience of delivery; as the price increases, consumers are less willing to complete the transaction.

**A.     DoorDash and Caviar Misrepresent the Delivery Fee as the Full Price of Delivery Service.**

32.     The role of the Delivery Fee in DoorDash and Caviar's scheme is to entice consumers into the transaction with a misleading price—the "bait" in the bait-and-switch. The Delivery Fee is deceptive because DoorDash and Caviar do not actually offer delivery, or any product or service, for this advertised price.

---

[3] Johannes Voester et al., *Partitioned Pricing: Review of the Literature and Directions for Further Research*, 11 Rev. Mgmt. Sci. 879, 893 (2017).

[4] David Adam Friedman, *Regulating Drip Pricing*, 31 Stan. L. & Pol'y Rev. 51, 59 (2020).

FILED DATE: 8/27/2021 10:37 AM     2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

33.     The Platforms prominently display the Delivery Fee for each restaurant upfront, on the main web page (for featured restaurants) and in filtered search results for categories of restaurants.

34.     For example, on Caviar.com, a user perusing the main web page for delivery to 200 West Madison Street in Chicago would see a screen like this:

*Excerpt from Caviar.com home page*



35.     Similarly, on DoorDash.com, a user perusing the main web page for delivery to 200 West Madison Street would see a screen like this:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from DoorDash.com home page*



36.     As a promotion, Defendants' Platforms sometimes offer "[f]ree delivery" or a "$0 delivery fee" from particular restaurants or to certain consumers, such as those with new accounts. These offers are deceptive because DoorDash and Caviar will not deliver for $0; in these transactions, too, the Platforms belatedly tack on a Service Fee, Small Order Fee, and the Chicago Fee.

37.     In these instances, the offer of free delivery serves the same function as the Delivery Fee—an overt but misleading price, advertised upfront, that is designed to lure consumers into making an order. For example, the DoorDash Platform offers a "$0 delivery fee" for Moti Café in River North, as shown below. However, if a consumer were to place an order for Moti Café's

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

samosa chaat, the DoorDash Platform still would charge a 15% Service Fee and $2.50 Small Order

Fee, making delivery far from free.

***Excerpt from DoorDash.com offers page***



38.     DoorDash and Caviar similarly direct this misleading practice to users of

DashPass—the DoorDash Platform's subscription service, which may also be used on the Caviar

Platform. DashPass users must pay the Service Fee, Small Order Fee, and Chicago Fee. Yet,

DashPass purports to offer "[f]ree delivery" on orders over a certain dollar amount (currently $12),

misrepresenting that DoorDash and Caviar will deliver those meals for free. For example, the

DoorDash Platform offers DashPass subscribers "free delivery" from The Cheesecake Factory for

all orders over $12, as shown below. However, for any order from The Cheesecake Factory, the

DoorDash Platform also charges a Service Fee and the Chicago Fee.

14

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from DoorDash.com home page*



39.     Defendants' Platforms repeat the Delivery Fee deception when a consumer clicks through from the main web page, or a search results page, to the landing page for a particular restaurant. For example, DoorDash.com advertised delivery from Quartino, an Italian restaurant in River North, for $2.99:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from DoorDash.com home page*



40.     A consumer clicking on Quartino on the main or search web page would be taken to the DoorDash.com landing page for the restaurant, on which DoorDash again misrepresents the cost of delivery as $2.99:

*Excerpt from Quartino restaurant page on DoorDash.com*



41.     The common feature of listings on the Platforms is that the advertised price of delivery is presented just below the name of the restaurant, with direct and unqualified phrasing— *e.g.*, "$1.99 delivery," "[f]ree delivery," or "[f]ree delivery over $12." This presentation

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

deceptively conveys to consumers that the advertised price is the full price they will pay for the Service—not a minimum charge, starting price, or portion of the cost of the Service.

42.     DoorDash and Caviar intend for consumers to rely on the advertised Delivery Fee, or the promise of "free delivery," when choosing to proceed with an order. By using the Delivery Fee as the bait for the transaction, DoorDash and Caviar deprive consumers of important information about the true price of their Service. This interferes with a consumer's ability to comparison-shop among restaurants, compare the total cost of using one delivery service versus another, and weigh the costs and benefits of ordering from DoorDash or Caviar versus ordering directly from the restaurant.

**B.      The Actual Price of Delivery Includes Fees that DoorDash and Caviar Conceal until the End of the Transaction.**

43.     The Service Fee, Small Order Fee, and Chicago Fee are the bookend to the Delivery Fee in the consumer experience of Defendants' Platforms—the "switch" in the bait-and-switch.

44.     During the ordering process, DoorDash and Caviar withhold the existence and amount of the Service Fee, Small Order Fee, and Chicago Fee on the Platforms until the checkout screen. Consumers are not alerted to these fees as they go through the steps of choosing a restaurant, perusing the menu, and adding food items to their virtual cart.

45.     By delaying the reveal of these fees until the checkout screen—after the consumer has selected a restaurant and built the order—DoorDash and Caviar increase the likelihood that a consumer will complete the transaction and not be deterred by the additional fees.

46.     Experts in the design of e-commerce user interfaces describe this tactic as a "dark pattern [that] exploits the sunk cost fallacy cognitive bias: users are likely to feel so invested in the process that they justify the additional charges by completing the purchase to not waste their

17

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

effort."[5] In other words, the consumer will "be more willing to complete the purchase rather than have to give up and start all over again with another website."[6] The practice is also emblematic of the "drip pricing" model of sales, in which "customers may be 'locked in' and not able to switch at a later stage in the sales process"[7] because "they feel that they already own the product, so they are more inclined to pay not to lose it."[8]

47.     Even when the Platforms finally add these fees to the subtotal, their presentation of the fees is deceptive. The Platforms continue to hide the itemized Service Fee and Small Order Fee, requiring the consumer to hunt further for an explanation, something DoorDash and Caviar know the average consumer is unlikely to do. The Platforms also misleadingly paint these fees as government charges, rather than what they actually are: DoorDash-instituted charges that inure to Defendants' benefit. DoorDash and Caviar did the same with their Chicago Fee, baking the misleading suggestion of government origin right into the fee's name.

> **1.     DoorDash and Caviar Conceal the Service Fee and Small Order Fee, Deceptively Depicting Them as Charges Authorized or Imposed by the Government.**

48.     The Service Fee and Small Order Fee do not appear anywhere at checkout, by name or amount, even though they have been added to the consumer's total. For example, this is the checkout screen for an order on DoorDash.com from Bianca's Burgers in Humboldt Park:

---

[5] Arunesh Mathur et al., *Dark Patterns at Scale: Findings from a Crawl of 11K Shopping Websites*, Proc. ACM Hum.-Comput. Interact. 81, 13 (2019).

[6] Harry Brignull, "Types of Dark Pattern: Hidden Costs," *available at* https://www.darkpatterns.org/types-of-dark-pattern/hidden-costs (last visited Aug. 16, 2021).

[7] *Behavioural Economics and its Impact on Competition Policy*, Prepared for the Netherlands Authority for Consumers and Markets, at 26 (2013).

[8] *Id.* at 23.

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

*Excerpt from Bianca's Burgers checkout screen on DoorDash.com*



49.     A Service Fee of 15% ($1.28 in this case), applies to the transaction, as does the Small Order Fee of $2.50 (because the food order is under $10). Nowhere on the checkout screen, however, are these fees itemized or labeled for the consumer. Instead, they form a portion of the $4.78 vaguely ascribed to "Fees & Estimated Tax."

50.     Concealing the Service Fee and Small Order Fee in this manner hides important information from consumers: that they are paying more for delivery than Defendants' Platforms advertised upfront. It also misleadingly implies that the fees grouped together with taxes somehow fall into a different category of charges imposed or authorized by the government. DoorDash and

Caviar intend for consumers to rely on this misinformation and to complete their order without critically examining the total fees they will pay for the Service.

51.     This tactic—burying fees in a broader, vaguely described category—is another deceptive dark pattern. It "[h]id[es] key information . . . so users will proceed without fully understanding the transaction."[9] As user interface design experts have recognized, "[t]he primary motivator behind hidden information is the disguising of relevant information as irrelevant."[10] By employing this tactic, DoorDash and Caviar decrease the likelihood that a consumer will take the time to understand what the charges in "Fees and Estimated Tax" actually are.

52.     Only by exploring further could a consumer learn that the majority of the "Fees & Estimated Tax" category is charged by, and paid to, DoorDash or Caviar.[11] To unearth the Service Fee and Small Order Fee line items, a consumer must take the additional, affirmative step of clicking on or hovering over the small "i" icon next to "Fees & Estimated Tax." That action brings up a pop-up box finally revealing both the elusive fees and their respective amounts:

[9] Maximilian Maier and Rikard Harr, *Dark Design Patterns: An End-User Perspective*, 16(2) Human Technology 170, 179 (2020).

[10] Colin M. Gray et al., *The Dark (Patterns) Side of UX Design*, Proceedings of the 2018 CHI Conference on Human Factors in Computing Systems 534, 7 (2018).

[11] Because tax on food from restaurants in Chicago is 10.75% – 11.75%, and DoorDash and Caviar's Service Fees range from 12% to 15%, the fee component of this category always outweighs the tax component, with or without the Small Order Fee.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from Bianca's Burgers checkout screen on DoorDash.com*



53.     Following an investigation of DoorDash and the other large meal delivery companies in 2020, Consumer Reports specifically criticized DoorDash.com's "lack of fee itemization" as a "dark design pattern."[12] Consumer Reports noted that DoorDash could have, but did not, list the taxes and Service Fee "separately by default, without hidden [user interface] or 'read more information' icons."[13] By requiring consumers to click on the small "i" icon, Consumer

---

[12] Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency* (Sept. 29, 2020) at 6, 13.

[13] *Id.* at 13.

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

Reports observed, DoorDash "creates [for consumers] a level of friction and fee obfuscation to see what they are paying for through the interface automatically."[14]

54.     The impact of the Service Fee and Small Order Fee on the total price consumers pay for DoorDash and Caviar's Service is substantial—even before the Chicago Fee described *infra.*

55.     On a food order under $10, the Service Fee and Small Order Fee together can easily double the total fees the consumer confronts on the checkout screen, compared to the flat Delivery Fee deceptively advertised upfront. For example, on this order from Quartino, the Italian restaurant in River North, the advertised Delivery Fee was $2.99. However, the $1.35 Service Fee (15% of the food order) and $2.50 Small Order Fee bring the full price of DoorDash's Service to $6.84— a 128% increase over the advertised delivery price.

---

[14] *Id.* at 13; *see also id.* at 6, 21.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpts from Quartino checkout screen on DoorDash.com*




56.     Because the Service Fee is a percentage of the food subtotal, the magnitude of this backdoor increase in price grows with the size of the order. For example, on this order from Capriotti's Sandwich Shop, the advertised Delivery Fee was $0.99. With the addition of a $12.59 Service Fee, however, the full fees for delivery came to $13.58—a more than 12-fold increase on the advertised delivery price.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpts from Capriotti's Sandwich Shop checkout screen on DoorDash.com*



2.    **DoorDash and Caviar Misled Consumers about the Source and Purpose of Their "Chicago Fee."**

57.    From early December 2020 through mid-April 2021, and again from early July through early August 2021, DoorDash and Caviar added another $1.50 fee—which they deceptively dubbed the "Chicago Fee"—on all delivery orders from Chicago restaurants. DoorDash and Caviar did not reveal the Chicago Fee until the checkout screen, as in this example showing an order on the DoorDash Platform from Krispy Rice in Fulton Market:

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

*Excerpt from Krispy Rice checkout screen on DoorDash.com*



58.     The term "Chicago Fee" misleadingly conveyed to consumers that the City government—not DoorDash and Caviar—required or authorized this charge and that the City government collected money through the fee.

59.     City Alderperson Scott Waguespack expressed his concern to the Chicago Tribune shortly after DoorDash and Caviar introduced the Chicago Fee: "[Chicago consumers] might think it's the city dinging them for an extra $1.50. It doesn't say 'DoorDash fee,' it says 'Chicago fee.' I think that's their [DoorDash's] intention—to stick it to the city."

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

60.     In fact, Chicago residents' posts to social media confirm just how misleading the term "Chicago Fee" was. For example, one Chicago consumer circled the fee on his receipt and complained on Twitter about this City "tax":



61.     As indicated by the "P" icons at the bottom right, this consumer subscribed to DashPass, which, for a monthly fee, offers $0 Delivery Fees and reduced Service Fees on orders over a minimum. However, DoorDash and Caviar still charged DashPass users the Chicago Fee, further suggesting that the fee was a government tax rather than an additional DoorDash charge for delivery.

62.     Another Chicago consumer on Twitter likewise attributed the Chicago Fee not to DoorDash but to the City—erroneously criticizing Mayor Lori Lightfoot:



63. Only by clicking on, or hovering over, the small "i" icon next to "Chicago Fee" would a consumer see DoorDash's further explanation of the fee. Even that explanation did not plainly reveal that DoorDash was pocketing the funds:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from Portillo's checkout screen on DoorDash.com*



64.     This statement was not plainly visible to the consumer, required the consumer to take an additional step to seek it out, and still did not clearly disclose that DoorDash instituted the fee. The Caviar Platform featured the same obscure and vague disclosure.

65.     Concealing the nature and source of the Chicago Fee in this way reflects the dark pattern of obscuring relevant information to encourage consumers to continue the transaction. DoorDash and Caviar intended consumers to rely on the representation that the Chicago Fee is a charge imposed, required, or authorized by the City, and to give the impression that the Chicago Fee is an official government charge that applies to all delivery orders regardless of service

28

provider. This made it less likely that a consumer would abandon a DoorDash order partway through the process. The nature and source of a fee are material to consumers; without this information, consumers cannot accurately assess the total price of the Service or assess their options in the marketplace—including the option to select a delivery provider that does not impose such a fee.

66. DoorDash and Caviar's vague explanation of the Chicago Fee heaped on two other deceptions. First, their claim that the reason for the Chicago Fee was "[t]o continue to offer you convenient delivery while ensuring that Dashers are active and earning" misleadingly conveyed that DoorDash drivers benefited from the Chicago Fee—*i.e.*, that they received a portion of the proceeds. In reality, DoorDash and Caviar retained the entire Chicago Fee. DoorDash intended consumers to rely, to the extent they sought this explanation out, on the representation that DoorDash drivers benefit from the Chicago Fee. Consumers' perceptions of driver pay are important to their purchasing decisions, including the decision of what tip amount to add to that pay.

67. Second, the claim that "Chicago has temporarily capped the fees that we may charge local restaurants" misleadingly conveyed that the cap on commissions applies to *all* restaurants. In fact, all iterations of the Emergency Fee Cap have excluded chain restaurants, defined as "ten or more locations and operating under a common business name."[15] Although the Emergency Fee Cap does not require DoorDash and Caviar to reduce the commission charged to these establishments, Defendants' Platforms charged consumers the Chicago Fee on every delivery order, whether the food came from an independent restaurant or a chain.

---

[15] Journal of Proceedings of the City Council of Chicago, Ill., Nov. 23, 2020, pp. 23875-79.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

68.     DoorDash and Caviar intended for consumers to rely, if they chose to click on the "i" information icon, on the representation that the Chicago Fee was necessary because the commissions Defendants could charge Chicago restaurants were reduced. DoorDash and Caviar withheld from consumers ordering from chain restaurants the important information that the companies were double-dipping—collecting full restaurant commissions and the Chicago Fee, too.

## II.  DOORDASH AND CAVIAR HIDE THE WIDESPREAD MARKUPS OF MENU PRICES ON THEIR PLATFORMS.

69.     Chicago consumers not only pay deceptive fees beyond what Defendants' Platforms advertise for delivery, consumers also pay invisible upcharges for the food itself. Platform Menu Prices for Affiliated Restaurants frequently are inflated above the price offered by a restaurant on its own website.[16] DoorDash and Caviar do not disclose these invisible markups to Chicago consumers.

70.     As just one example among many in Chicago, Pizza Metro in East Village charges $11 for a small Margherita pizza, but the price is $14.50 on DoorDash.com—$3.50 higher—for the same pizza. This is a markup of 32%:

---

[16] DoorDash also lists on its Platforms many Chicago restaurants that have no contractual relationship with DoorDash. DoorDash gathers menu information for these restaurants from the Internet, not from the restaurants themselves. As a result, DoorDash's Platforms sometimes contain inaccurate menu information for unaffiliated restaurants—including higher menu prices than those available directly from the restaurant. DoorDash acknowledges that its prices for these restaurants are "estimates" and promises to refund consumers any difference between its Platform Menu Price and a lower restaurant menu price. The City's investigation found, however, that DoorDash issues the promised refunds only inconsistently. These deceptive and unfair business practices are described in Section IV.B.

*Excerpt from Pizza Metro restaurant page on DoorDash.com*



71.     As another example, Captain Hooks on the Near West Side charges $39.99 for a 20-piece Jumbo Shrimp dinner, but the price on DoorDash's platform—$49.99—is $10 higher.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from Captain Hooks website menu*



*Excerpt from Captain Hooks restaurant page on DoorDash.com*

72.     Heightening the impact of the deception is the fact that consumers actually pay two different ways for these invisible menu markups: first, through the inflated menu prices themselves, and second, through the resulting increase in the Service Fee. DoorDash remits the menu upcharge to the restaurant and keeps the Service Fee for itself.

73.     Menu price markups are widespread on Defendants' Platforms in Chicago, with markups up to at least 58% on the DoorDash Platform and up to at least 25% on the Caviar

Platform, based on the City's investigation. Combined with Defendants' bait-and-switch delivery fee scheme, these markups dramatically and deceptively increase the cost of Defendants' Service.

### A. DoorDash and Caviar Fail to Disclose to Chicago Consumers When Menu Prices Are Inflated.

74. Defendants permit—and, due to their onerous commissions, effectively force—Affiliated Restaurants to increase their menu prices over and above what the restaurants charge for orders placed directly through the restaurant. DoorDash and Caviar remit this money to the restaurant. Defendants benefit from the practice of invisible menu markups through their Service Fee, which they keep and is a percentage of the food subtotal and increases proportionally with the menu price increases.

75. Many Chicago restaurants increase their menu prices on Defendants' Platforms to offset the punishing commissions that DoorDash charges Affiliated Restaurants. As the owner of a sports bar in the South Loop explained, due to the service fees and percentages that meal delivery companies, including DoorDash, take out of each individual order, he was forced to increase prices on the DoorDash Platform and other sites.

76. Nowhere in the order transaction do DoorDash and Caviar disclose to consumers that the menu prices contain markups—not on their Platforms' main or search pages, not on the restaurant's menu page on the Platforms, and not on the checkout screen.

77. The omission of key information about price is material to consumers because it disguises the true cost of ordering through Defendants' Platforms and hampers a consumer's ability to weigh the costs and benefits of using the Platforms compared to other choices. Consumers have complained about this deceptive practice and the way it inhibits their ability to comparison-shop against other delivery options, as illustrated by this 2019 exchange on Reddit:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpts from Reddit.com*



78.     Defendants know that if consumers learned the prices on their Platforms are higher than those from the restaurant, that fact would be likely to change consumers' purchasing behavior. As DoorDash has characterized its own research, "customers tell us they're 35% less likely to order again from restaurants that charge higher prices on DoorDash than on their in-store menu."

79.     Defendants intend for consumers to rely on their failure to disclose the Platform Menu Price markups and proceed with orders on their Platforms. If DoorDash and Caviar did not so intend, they could include a clear and prominent disclosure that Platform Menu Prices are higher than those available ordering online directly from the restaurant—something they have chosen not to do.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

80.     Instead, the language DoorDash and Caviar provide actually compounds the deception. At the bottom of the landing page for each restaurant on its Platforms, the following appears: "Prices on this menu are set directly by the Merchant." This language appears in small print and after the section of the web page that displays menu items, making it even less likely to be seen. The statement does not put consumers on notice that menu prices are higher on Defendants' Platforms. Rather, it does just the opposite—it reinforces the impression that the Platform Menu Prices are the same as those available directly from the restaurant.

81.     The only notifications that Platform Menu Prices may be higher than those available directly from restaurants are hidden where consumers are unlikely to find them or try to look for them.

82.     Buried on a "customer support" page on the DoorDash Platform, completely apart from the web pages shown to consumers during the ordering process, DoorDash states that Platform Menu Prices "may vary from in-store prices or online prices." As of August 25, 2021, to find and access that page, a consumer would have to undertake at least six affirmative steps: (a) click on the "hamburger" navigation icon in the top left corner of the DoorDash website; (b) then choose "Help"; (c) then click on a link to an "FAQ page" at the top of a list of their past orders; (d) then scroll down to the "What kind of help do you need?" section; (e) then select "Payments"; and finally (f) find and select an FAQ titled "Estimated Menu Prices."[17]

83.     On the Caviar Platform, the only discussion of the menu price differential is just as remote—and is also misleading. As of August 25, 2021, to find and access the page explaining menu pricing on the Caviar Platform also requires a consumer to undertake at least six affirmative

---

[17] Most of this FAQ page relates to DoorDash's practice of charging estimated menu prices for Unaffiliated Restaurants whose information DoorDash gleans from the Internet, not from restaurants themselves, as described in Section IV.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

steps: (a) click on the "hamburger" navigation icon in the top left corner of the Caviar website; (b) then choose "Help"; (c) then click on a link to an "FAQ page" at the top of a list of their past orders; (d) then scroll down to the "Featured Topics" section; (e) then select "Charges and Payments"; and finally (f) find and select an FAQ titled "Why are the menu prices different on Caviar?"

84.     The FAQ on the Caviar Platform also deceptively conveys to consumers that differences between Platform Menu Prices and prices available directly from the restaurant are due to "restaurant staff fees, bag fees, and government fees," as shown below. To the extent that any of these fees exist, however, they would apply to all takeout and delivery orders and do not account for the differences in prices on Caviar.

*Excerpt from Caviar.com FAQ page*

---

**Why are the menu prices different on Caviar?**

🕐 Aug 20, 2020 · Knowledge

Menu prices are set at the discretion of restaurant management. Some restaurant partners may include fees on each order from their restaurant. These fees may include restaurant staff fees, bag fees, related restaurant fees, as well as fees designated by their local or state authorities.

---

85.     The Terms of Service for Defendants' Platforms currently state that "the prices for menu or other items displayed through the Services may differ from the prices offered or published by Merchants for the same menu or other items and/or from prices available at third-party websites and that such prices may not be the lowest prices at which the menu or other items are sold."[18] To

---

[18] Until August 2016, the Terms of Service only opaquely referenced differences between Platform Menu Prices and the menu prices available from a restaurant: "The Company reserves the right to determine final prevailing pricing – Please note the pricing information published on the website may not reflect the prevailing pricing."

see this language, consumers must find and click on the Terms of Service link that appears in small type at the bottom of some Platform pages, then read more than 10,000 words of dense legalese.

86.     Burying notices in nested navigation menus or lengthy terms of service reflects the dark design practice of "hid[ing] key information . . . . so users will proceed without fully understanding the transaction."[19] It is well-understood that "[g]eneral terms and conditions are often not read, and agreement is typically made automatically and quickly," providing "an opportunity to fill general terms and conditions with dark ingredients."[20]

87.     These insufficient notices would not cure the deception even if they were prominently displayed. They only generally indicate that Platform Menu Prices "may" be different from those available from the restaurant. They do not notify a consumer that the particular restaurant page contains inflated Platform Menu Prices and therefore do not provide the consumer the necessary information to choose whether to proceed with the transaction.

**B.     DoorDash and Caviar's Practice of Posting Deceptively Inflated Menu Prices on Their Platforms Is Widespread in Chicago.**

88.     Defendants' Platforms routinely include inflated Platform Menu Prices for Chicago restaurants. The City reviewed the menus of 50 Chicago restaurants on DoorDash.com, and another 30 on Caviar.com, and compared them to the menus posted on the restaurants' own websites. Nearly two-thirds of the DoorDash.com listings, and 60% of the Caviar.com listings, contained undisclosed price markups—typically, with an increase on all or nearly all of the items on the menu.

---

[19] Maximilian Maier and Rikard Harr, *Dark Design Patterns: An End-User Perspective*, 16(2) Human Technology 170, 179 (2020).

[20] Christoph Bösch et al., *Tales from the Dark Side: Privacy Dark Strategies and Privacy Dark Patterns*, Proceedings on Privacy Enhancing Technologies 2016(4), 237, 245 (2016).

FILED DATE: 8/27/2021 10:37 AM  2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

89.     For example, Mexican chain Qdoba features a selection of chips and dips for online ordering for $2.45 – $4.75 each on its own website:

*Excerpt from Qdoba website menu*



90.     On DoorDash.com, these menu items are marked up 20% across the board:

*Excerpt from Qdoba restaurant page on DoorDash.com*



38

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

91.     As another example, below is an excerpt from the menu of Flat Top Grill in the Loop. It shows several appetizers priced between $4.99 and $11.99:

*Excerpt from Flat Top Grill website menu*



92.     On Caviar.com, the same menu items are priced between $6.49 and $13.69—markups between 14% and 30%:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from Flat Top Grill restaurant page on Caviar.com*



93.     These menu price comparisons also illustrate how DoorDash and Caviar benefit—to consumers' detriment—from the deceptive practice. Although the restaurants keep the value of the Platform Menu Price markups, Defendants' Service Fee increases proportionally because that fee is a percentage of the total food order.

94.     The cumulative impact of the Platform Menu Price markups and inflated Service Fee—combined with the bait-and-switch scheme described in Section I—in a single order is eye-popping. Aggregated across all the transactions on Defendants' Platforms in Chicago, the financial impact of these deceptions is staggering.

95.     To illustrate, DoorDash advertised delivery from regional chain Goddess and The Baker for $1.99—cheaper by $3.01 than the $5 delivery estimate for ordering directly from the restaurant. However, a consumer ordering, for example, four breakfast items and a coffee for delivery through DoorDash pays not just the $1.99 Delivery Fee, but also $9.40 in Platform Menu

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

Price markups, the $1.50 "Chicago" Fee, and a $8.45 Service Fee ($1.41 of which is a result of the inflated menu prices). The result is that *the consumer pays $16.88 more* for delivery of the same order by going through DoorDash instead of the restaurant:

**Excerpt from Goddess and The Baker checkout screen**



FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*DoorDash.com order and checkout screens*



## III.   THE DOORDASH PLATFORM MISLEADINGLY OFFERS PROMOTIONAL DISCOUNTS.

96.     DoorDash compounds its fee and menu price deceptions by misleading consumers about the terms of its promotional discounts. The DoorDash Platform entices consumers with offers such as "$5 off," or "20% off," presented with no strings attached. In fact, the consumer typically must exceed a minimum order amount to receive the discount. At no point in the flow of the transaction does DoorDash disclose this key term of the promotion, leaving consumers either unaware that the discount was not applied or in the dark about why.

42

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

97.     DoorDash advertises these discounts on the DoorDash Platform home page, which displays a carousel with the heading "Special Offers for You":

*Excerpt from DoorDash.com home page*



98.     DoorDash presents these offers in unqualified terms, with no mention of a minimum order requirement or notice that conditions apply. Instead, DoorDash simply offers either a set dollar amount (usually between $3 and $15) or a set percentage discount (usually between 15% and 20%).

99.     For example, DoorDash offers $5 off from the Chicago restaurant chain Beatrix:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Excerpt from DoorDash.com offers page*



100.    DoorDash does not disclose, however, that a $50 order minimum is required for the $5 discount to apply. If a consumer places an order with a food subtotal smaller than the minimum, DoorDash does not apply the discount—but does not alert the customer to this fact or explain the reason, anywhere on subsequent screens, which include the delivery details and the checkout screen:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*DoorDash.com delivery details (left) and checkout screen (right)*




101.    The only place DoorDash identifies the minimum order requirement is in a pop-up box reached by clicking on the "Add Promo Code" link in the delivery details. This link is outside

45

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

the flow of the transaction. DoorDash does not provide a promo code, and the consumer has no reason to enter one. On eligible orders, the discount is applied automatically.

102. A consumer who happened to click on the "Add Promo Code" link would see, for the first time, the caveat that the $5 discount applies only to orders over $50:



103. If the consumer were to try to apply the promotion to an order under $50, by clicking on "$5 off" under "Available Promotions," the consumer would see a notice reading: "To use this promotion, make sure your order subtotal meets the minimum requirements."

104. DoorDash misleadingly presents offers for a percentage amount off the order in a similar manner. For example, DoorDash offers 20% off orders from McCormick & Schmick's:

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

*Excerpt from DoorDash.com offers page*



105.    This offer, too, is presented without a minimum order requirement. Yet, DoorDash does not apply the 20% discount to orders under $30. As with the $5 off discount detailed above, nowhere in the flow of the transaction does DoorDash reveal the order minimum.

106.    For example, a consumer placing an order for a nearly $29 entrée from McCormick & Schmick's would receive neither the discount nor a notification that the order was too small to qualify:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*DoorDash.com delivery details (left) and checkout screen (right)*




107.   Only by clicking on "Add Promo Code" would the consumer see that the 20% discount requires an order of $30 or more. Once again, the consumer has no reason to click on "Add Promo Code," because the discount is supposed to be applied automatically; there is no promo code to enter.

48

FILED DATE: 8/27/2021 10:37 AM   2021CH04328



108.    The $30 minimum is particularly unforeseeable because of the way the offer is worded. The offer is for 20% off "up to $6"—but $6 *is* 20% of the undisclosed $30 minimum. Thus, although DoorDash represents that the discount varies based on order size up to $6, in fact a consumer could not receive a discount greater or less than $6. The accurate description of this offer is simply, "$6 off any order of $30 or more."

109.    DoorDash intends for consumers to rely on its advertised promotions when choosing to order from the DoorDash Platform. The promotions benefit DoorDash in at least two ways. Restaurants cover the cost of the promotion, while DoorDash charges its full-value Service Fee and restaurant commission on the non-discounted subtotal. (DoorDash does not absorb any part of the discount.) DoorDash also earns a $0.99 marketing fee from the restaurant for each order that comes in through the promotion.

110.    The availability of the discount is material to consumers, who factor the discount into the price they expect to pay and might choose another ordering option if they knew the discount would not apply to their order. Consumers enticed by these misleading promotions may

49

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

not notice at checkout that the discount was not applied, or if they belatedly do notice, they may choose to complete the transaction rather than start the order process again with another service.

111.    DoorDash could promote its discounts while accurately disclosing the minimum order requirement upfront. In fact, in describing these promotions to *restaurants*, DoorDash does just that. DoorDash calls this promotion "Spend X Get Y," and explains, "customers who qualify for the promotion will receive a $ or % off when they spend the required amount you have set. An example of this would be Spend $25 and receive $5 off. When the customer hits the spend amount they will see the discount applied to their order." DoorDash does not provide this same clarity to consumers.

## IV.    THE DOORDASH PLATFORM LISTS UNAFFILIATED RESTAURANTS WITHOUT PERMISSION AND FALSELY PORTRAYS THEM AS BUSINESS PARTNERS.

112.    Since at least 2014, the same year DoorDash entered the Chicago market for meal delivery, the company has listed numerous Unaffiliated Restaurants on its DoorDash Platform *without the restaurants' consent*. These unauthorized listings are not a mistake; they are a strategy—one that has allowed DoorDash to gain considerable market share in Chicago, where it is now the largest meal delivery company (having surpassed Grubhub in February 2019).

113.    The DoorDash Platform's unauthorized listings misleadingly convey to consumers that DoorDash has a business relationship with the restaurant authorizing DoorDash to facilitate order and delivery. DoorDash also misleadingly conveys that the information displayed for Unaffiliated Restaurants is accurate. DoorDash promises to refund consumers any difference between the listed menu price and the price DoorDash pays the restaurants, but in practice, the company frequently issues no refund or an inadequate refund. DoorDash does not tell consumers that important restaurant information—including operating hours and menu items—is unverified and often inaccurate.

50

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

114.    These practices are not only deceptive to consumers but also deeply unfair to the Unaffiliated Restaurants that DoorDash lists without consent. DoorDash misappropriates their name, menus, and other information to create the listings without permission, then leaves these restaurants holding the bag when customer service problems predictably result.

115.    By listing Unaffiliated Restaurants on the DoorDash Platform, DoorDash is able to dramatically expand its restaurant selection, increasing its ability to attract and retain customers by trading on the menu offerings and established reputations of the restaurants.[21]

### A.    DoorDash's Unauthorized Listings Deceptively Convey an Affiliation with the Restaurant that Does Not Exist.

116.    Through the DoorDash app and website, as well as Internet search results that link to restaurant pages on DoorDash.com, the DoorDash Platform processes orders and provides delivery from restaurants that have no contractual relationship with DoorDash. This is a particular affront to restaurants that have affirmatively rejected partnering with the company.

117.    Instead of seeking a restaurant's permission to post its menu and other information on the DoorDash Platform, DoorDash amasses that information from available sources online. On information and belief, DoorDash uses automated software tools to extract Unaffiliated Restaurant information from the Internet in bulk—otherwise known as "data scraping."

118.    These unauthorized listings misleadingly convey to Chicago consumers that the restaurant has given DoorDash permission to present the restaurant's menu online, process orders, and deliver the food—*i.e.*, that DoorDash has a business relationship with the restaurant. DoorDash

---

[21] The City identifies *infra* several examples of Chicago Unaffiliated Restaurants listed on the DoorDash Platform without their consent. Because the DoorDash Platform is dynamic, historical versions of the Platform's restaurant pages are not archived and are not available through publicly available sources. In addition, the DoorDash Platform did not draw any visible distinction between listings of Affiliated and Unaffiliated Restaurants before late December 2020—and even then, this distinction was applied inconsistently. The full list of Chicago Unaffiliated Restaurants listed without their consent is thus within DoorDash's exclusive knowledge.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

intends for consumers to rely on this representation when placing orders on the DoorDash Platform.

119.    Through at least December 2020, the DoorDash Platform listed Affiliated Restaurants and Unaffiliated Restaurants in exactly the same way, without any distinguishing features or disclosures. DoorDash continues this practice, including in Chicago. DoorDash claims to have begun including a statement that certain restaurants are "unaffiliated with DoorDash," but to the extent that it has added such a disclosure, it has done so inconsistently and unpredictably—for some user visits but not others.

120.    Every aspect of these unauthorized listings implies a business relationship between DoorDash and the restaurant that does not exist—including use of the restaurant's name and menu as well as the option to place an order with the restaurant through the Platform. The impression is reinforced by the DoorDash.com links that appear when consumers use an Internet search to look for a specific restaurant, again deceptively implying that DoorDash is affiliated with the restaurant and that the restaurant approves use of DoorDash.com for order and delivery.

121.    In some instances, DoorDash not only ensures that its unauthorized listing appears in search results for the Unaffiliated Restaurant, but also embeds a link to the listing in the restaurant's Google business profile accompanying those search results.

122.    For example, a consumer using Google to search for the Loop's International Sandwich Shop would bring up a page with search results on the left and the following Google business profile on the right:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*Google business listing for International Sandwich Shop*



123.    The DoorDash link is presented next to "Order," implying that DoorDash is the shop's authorized delivery service. In fact, according to Google, it permits third-party delivery services to use this feature in business listings *only* when they inform Google that "they have authorized relationships with [the] businesses." Yet, International Sandwich Shop is an Unaffiliated Restaurant and has not consented to this practice. By contrast, the Grubhub links that appear above the DoorDash link in this example are clearly identified as part of a paid advertisement.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

124.    Google business profiles appear prominently in search results, are promoted as a way for the business itself to manage its online presence, and provide consumers with basic contact and operating information—all of which Google intends to be controlled by the business. DoorDash effectively hijacks this reference source to cement the false understanding that it is working together with the restaurant.

125.    DoorDash's false representation that it is authorized by the restaurant to provide delivery is material to consumers, who could choose to order directly from the restaurant or through another meal delivery service that the restaurant has chosen, if they knew DoorDash was operating without the restaurant's consent.

126.    The City placed two dozen test orders through DoorDash to Unaffiliated Restaurants. Of these orders, DoorDash canceled orders to two restaurants. Both businesses—a Thai restaurant in Pilsen and a sushi restaurant in the Loop—explained to the City that DoorDash did not have permission to list them on the DoorDash Platform. Both restaurants complained that DoorDash drivers show up late or not at all and prefer that orders be placed through another service or their own websites.

127.    Facing criticism over its unauthorized listings, in late December 2020, DoorDash announced that it would begin "clearly communicat[ing] to customers when we do not have a contractual relationship with a restaurant listed on DoorDash"—a tacit acknowledgement that its prior communication was misleading.

128.    The changes DoorDash made after December 2020 did not cure the deception. DoorDash purported to add a notice, in fine print, to pages of Unaffiliated Restaurants stating that the "store is unaffiliated with DoorDash" but that "customers can still place orders."

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

129.    The City's investigation also revealed that the inclusion of this language is unpredictable and inconsistent. For example, the language appears in this June 15, 2021 excerpt from the DoorDash Platform restaurant page for Silver Spoon Thai in River North:

*Excerpt from Silver Spoon Thai Restaurant page on DoorDash.com*



Yet, in another user's view of the same page on the same day using the same delivery address, the "unaffiliated" language *did not* appear:

*Excerpt from Silver Spoon Thai Restaurant page on DoorDash.com*



130.    This inconsistency, one example of many, remained at least as of August 20, 2021.

131.    In addition, the disclosure appeared on the DoorDash pages for some Unaffiliated Restaurants reviewed by the City but not on others. For example, DoorDash offers delivery from Hero Coffee Bar in the Loop without providing consumers any notice that Hero has not given DoorDash permission to market its menu or deliver its food:

56

*Excerpt from Hero Coffee Bar restaurant page on DoorDash.com*



132.     Where the disclosure language has appeared, it does not clarify that DoorDash lacks any contractual relationship with the restaurant. It vaguely states that the restaurant is "unaffiliated" with DoorDash without explaining what that means. By describing restaurants in this manner, but then assuring consumers in the same sentence that they "can still place orders," DoorDash maintains the fiction that DoorDash has the restaurant's permission to perform this service. DoorDash fails to disclose anywhere that Unaffiliated Restaurants are listed without their consent—a fact material to consumers, who could take their business to the restaurant or any authorized delivery service if they knew DoorDash was operating without the restaurant's consent. If DoorDash wanted to correct its deceptions regarding Unaffiliated Restaurants, it would obtain their consent or remove their listings from the DoorDash Platform entirely—but it has not done so.

57

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

**B.      DoorDash Deceptively Promises Automatic Refunds for Overcharges.**

133.    Because DoorDash unilaterally scrapes the Internet for the information it posts about Unaffiliated Restaurants, without verifying the information with the actual restaurant, the DoorDash Platform's menu prices for those restaurants can be outdated or otherwise incorrect. DoorDash does not disclose to consumers how it obtains the restaurants' menu information. However, it tells consumers that if the menu price it charges them is higher than the price it pays the restaurant to complete the order, DoorDash will refund the consumer the difference (the "Menu Price Overcharge"). In practice, DoorDash does not live up to this promise.

134.    The City's investigation revealed that, in about half the tested transactions involving Menu Price Overcharges, DoorDash either failed to issue any refund or issued a deficient (partial) refund. In each instance, DoorDash did not notify the consumer of the error, and DoorDash benefited financially at the expense of the consumer.

135.    DoorDash advertises its promise to refund Menu Price Overcharges at the bottom of the page for each Unaffiliated Restaurant on the DoorDash Platform, alongside the euphemistic note that "[m]enu prices for this store are estimated." For example, here is DoorDash's promise to refund Menu Price Overcharges on orders placed to Pilsen restaurant Bodhi Thai Bistro:

*Excerpt from Bodhi Thai restaurant page on DoorDash.com*

Menu prices for this store are estimated. If the amount charged for your items at the store is lower than the amount you were charged at checkout, you'll receive a refund for the difference. Learn More

Prices may differ between Delivery and Pickup.



Asian delivered from Bodhi Thai at 1800 S Jefferson St, Chicago, IL 60616, USA

136.    Consumers who click on the "Learn More" link in this notice are taken to the "Estimated Menu Prices" FAQ page described in Section II.A, *supra*. An entry on that page, "How

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

does estimated pricing work?" again tells consumers they will be repaid any Menu Price Overcharges, either as an updated credit card charge or as a separate refund transaction:

*Excerpt from DoorDash.com "Estimated Menu Prices" FAQ page*

> **How does estimated pricing work?**
>
> Menu prices for unaffiliated merchants on DoorDash are estimated. In these cases we will show an estimated total at checkout. If the amount charged for your items at the store was lower than the amount you were charged at checkout, you will receive a refund for the difference. This may appear as an updated charge, or a refund that may take 5-7 days to process.

137.    DoorDash promises automatic refunds of Menu Price Overcharges with the intent that consumers will rely on that representation to proceed with an order based on "estimated" prices. The promise of a refund is material to consumers, who do not want to overpay if the "estimate" proves to be too high.

138.    The City's investigation revealed evidence of DoorDash's refund misconduct. Between April 29 and June 4, 2021, the City placed 24 test orders through the DoorDash Platform to Unaffiliated Restaurants in Chicago.

a.    DoorDash canceled two orders without completing them. DoorDash's explanation for both cancellations was that the order "was canceled because we are unable to process the order with the restaurant." This unfairly conveyed that the cancellation was the restaurant's fault, and DoorDash then invited the consumer "to place an order with a different restaurant on our platform," which drives business away from the restaurant that DoorDash had listed on its platform without authorization.

b.    Of the 22 orders that DoorDash fulfilled, 18 included Menu Price Overcharges. DoorDash issued adequate refunds for nine of the 18. DoorDash issued no refund or a deficient refund for the other nine, a 50% error rate.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

c.      DoorDash failed to issue any refund for three of the orders and issued deficient refunds for six of the orders.

d.      As just one example, the City placed an order through DoorDash.com for Spicy Thai Basil Chicken from Bodhi Thai Bistro in Pilsen. DoorDash charged the City $12.50 for this item, but the restaurant charges $10.95 for this dish. Based on the restaurant receipt and accounting for Service fees and taxes that were consequently overcharged by $0.49, it appears DoorDash should have refunded the City $2.04 for this order. However, DoorDash failed to issue any refund at all.

e.      Overall, DoorDash failed to refund the City $4.23 across the 9 orders for which refunds were due. The City's purchases represent a random sample and, assuming this sample is representative of DoorDash's refund conduct in Chicago, the aggregate amount of money wrongfully taken from Chicago consumers is substantial.

f.      The six partial (deficient) refunds involved small shortfalls of $0.01 to $0.03. While those amounts are not large when viewed in the context of a single transaction, the potential sum of these shortfalls adds up across the much larger number of transactions that took place in Chicago.

139.    DoorDash took steps to avoid refunding consumers by concealing the difference between the menu prices it listed on the Platform and the menu prices that Unaffiliated Restaurants actually charged. In 2015, a DoorDash training video instructed drivers to remove the restaurant receipt from the bag before delivering the order. It was reported that the video narrator explicitly told the drivers to "[n]ever give a customer a receipt." Corroborating this report, in 2018, a DoorDash driver posted on Quora that a DoorDash representative responsible for training drivers at an orientation told them not to provide customers with the restaurant's receipt.

**C.     DoorDash's Failure to Verify Restaurant Information in Unauthorized Listings Misleads Consumers.**

140.     DoorDash does nothing to notify consumers that other menu and restaurant information on the DoorDash Platform is unverified and likely to contain inaccuracies. When DoorDash posts inaccurate menu and restaurant information, DoorDash is promising consumers a Service it cannot deliver.

141.     DoorDash does not obtain the advertised information for Unaffiliated Restaurants directly from the restaurant. This not only impacts the accuracy of menu prices, as discussed in Section IV.B, *supra*, but also the accuracy of menu items, food descriptions, operating hours, and other restaurant information posted on the DoorDash Platform.

142.     Inaccuracies in the DoorDash Platform's listings of Unaffiliated Restaurants mislead consumers about the services DoorDash can actually provide. For example, when DoorDash posts menu items that do not exist or are no longer offered, DoorDash is misrepresenting that consumers can use the DoorDash Platform to order those items for delivery or pickup. Similarly, when DoorDash advertises a restaurant as open during hours when it is actually closed, DoorDash falsely represents that consumers can use the Platform to order from the restaurant during those hours it is closed. Conversely, when DoorDash inaccurately lists a restaurant as closed when it is in fact open, DoorDash falsely represents that consumers cannot order food from the restaurant at all—not only through the DoorDash Platform, but also directly from the restaurant.

143.     The City is not aware of any evidence to suggest that DoorDash verifies the restaurant information it scrapes from the Internet before posting it on the DoorDash Platforms. DoorDash does not disclose these facts to consumers. Yet, DoorDash intends for consumers to rely on the information it presents on the DoorDash Platform. Restaurant information such as menu items, food descriptions, and operating hours is material to consumers, who might order through

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

another third-party meal delivery company or the restaurant if they knew DoorDash's information was unverified or inaccurate.

144.    The City's investigation revealed that the DoorDash Platform routinely conveys misinformation in its listings of Unaffiliated Restaurants. Between April and June 2021, the City reviewed a sample of 35 Unaffiliated Restaurants across Chicago and compared the listings on the DoorDash Platform with the information on the restaurants' own websites. Thirty-four out of 35 DoorDash Platform listings conveyed inaccurate information about the restaurant's current operating status (open or closed) or operating hours.

145.    For example, as of June 16, 2021, the DoorDash Platform told consumers that the operating hours of Little Branch Café were 7 a.m.–8:30 p.m. daily (below, left). In reality, Little Branch Café closed at 5 p.m. during the week and earlier on the weekend (below, right):

*Excerpts from Little Branch Café restaurant page on*
*DoorDash.com (left) and Little Branch Café website (right)*




FILED DATE: 8/27/2021 10:37 AM   2021CH04328

146.     For the restaurants that had online menus available for comparison, nearly half of the DoorDash Platform listings reviewed by the City included menu items that were no longer available from the restaurant. For example, as of August 20, 2021, the DoorDash Platform tells consumers that they can order various seafood dishes from Taqueria la Chiquita in Little Village:

**Excerpt from Taqueria la Chiquita restaurant page on DoorDash.com**



However, Taqueria la Chiquita does not actually offer *any* seafood dishes on its menu.

147.     Orders placed to Unaffiliated Restaurants at times they are not open or for unavailable menu items are canceled and go unfulfilled—without an explanation why. In response to one test order placed by the City to Taqueria La Chiquita on July 30, 2021, DoorDash emailed the City more than half an hour after the order had been placed, explaining that the "order has been canceled due to an unexpected issue experienced by the Dasher." In fact, the Mexican-Styled Shrimp, offered on DoorDash's Platform, was not actually offered by the restaurant. DoorDash's cancellations inconvenience and mislead consumers by hiding the reason for cancellation—

DoorDash's inaccurate representation of the restaurant's offering—and instead implying that the cancellation was due to the driver or unforeseen events or anything other than the truth: that the cancellation was DoorDash's fault.

### D. DoorDash's Unauthorized Listings Unfairly Hijack Restaurants' Information and Harm Their Reputations.

148.    The same practices that mislead consumers also are unfair to Unaffiliated Restaurants that do not consent to being listed. They do not invite DoorDash's involvement in their business, have not consented to the company's use of their intellectual property, and are left to handle customer service problems that are of DoorDash's making.

149.    When DoorDash lists Unaffiliated Restaurants on the DoorDash Platform, it routinely uses the restaurant's name, menu categories, menu item names, address, and operating hours without permission. In some instances, DoorDash also uses the restaurant's menu item descriptions that it has pulled from the Internet.

150.    DoorDash's reliance on secondhand menu and restaurant information results in poor consumer experiences, including cancellation of orders due to listings with incorrect operating hours or menu items, as described in Section IV.C, *supra*. Unaffiliated Restaurants complain that they unfairly suffer the fallout from this misinformation.

151.    Even if the restaurant is open and the menu items are available, orders to Unaffiliated Restaurants are processed differently than those placed to Affiliated Restaurants on the DoorDash Platform. DoorDash coordinates with Affiliated Restaurants to send online orders through the DoorDash restaurant app, by email, or directly to the restaurant's point-of-sale system. For Unaffiliated Restaurants, DoorDash has placed orders through call center agents impersonating customers and instructed its drivers to leave their DoorDash branded gear in their cars when picking up these orders.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

152.    This means the restaurant may not learn that an order is a DoorDash delivery until the driver arrives at the restaurant to pick up the food and pays for it with a DoorDash credit card. Even then, the restaurant owner would not know that DoorDash is delivering the order unless the owner is working at the cash register and sees the credit card or an employee at the register informs the owner. In fact, a DoorDash training video instructs drivers *not* to say that they work for DoorDash when they pick up food for customers from Unaffiliated Restaurants.

*Screenshot from DoorDash driver training video*



153.    Restaurants that choose not to contract with DoorDash may not intend for their food to be delivered by any third party or may wish to exclusively serve dine-in customers. Delivering meals without a restaurant's knowledge, through a third-party driver who makes multiple delivery stops, also can present food safety and other packaging concerns.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

154.   DoorDash has faced lawsuits nationwide from restaurants that object to being listed without their consent on the DoorDash Platform, and object to DoorDash misleading consumers by misappropriating the restaurants' logos and other intellectual property for those listings.

155.   Even as DoorDash has settled individual lawsuits, including one brought by Burger Antics in Brookfield, Illinois, it has kept up its widespread practice of listing Unaffiliated Restaurants in Chicago without their consent. DoorDash not only maintained existing unauthorized listings but also continued to add *new* unauthorized listings to the DoorDash Platform through at least November 1, 2020. Effective that date, DoorDash CEO Tony Xu announced, in a blog post directed to merchants, that the company would "not be adding any new restaurants in the United States to the app for the facilitation of delivery via our Marketplace product without consent." Contrary to Xu's explanation that "we respect a restaurant's decision not to partner with us," however, DoorDash has left intact the unauthorized listings created before November 2020. Those unauthorized listings remain active unless a restaurant successfully seeks and obtains DoorDash's compliance in removing the listing.

156.   Chicago restaurants have protested the DoorDash Platform's unauthorized listings in social media posts and complaints directly to the City, as the following examples illustrate.

a.   Carnitas Uruapan, a Mexican restaurant with locations in Pilsen and Gage Park, took to Twitter to complain about its unauthorized and incorrect listing on the DoorDash Platform:



FILED DATE: 8/27/2021 10:37 AM   2021CH04328

b.     Sofi, an Italian restaurant in Printer's Row, demanded on Twitter that DoorDash remove its listing, complaining that drivers were arriving to pick up orders Sofi had not received and for menu items the restaurant did not offer:



**Nandita Michi** @nanditamichi · Oct 29, 2020

@DoorDash @DoorDash_Help we do not have your service yet you still have us listed and come pick up orders that were never placed and not on our menu STOP If you do not remove us I will file a classaction law suit on behalf of all restaurants @SofiRestaurant chicago. @GovPritzker

c.     The owner of a Mexican restaurant on the Near West Side reported to the City that, when it refused to contract with DoorDash for a 33% commission, DoorDash listed the restaurant on its Platform anyway. The restaurant began receiving complaints from customers that they were receiving their orders, via DoorDash, two to three hours late. The owner tried to explain to customers that the restaurant was not affiliated with DoorDash and could not be responsible for the problems they were experiencing. He would even offer to remake the food and have his own drivers deliver it. He called DoorDash about the problems, but DoorDash said it could not help him because he did not have a contract with DoorDash. Eventually the owner had to issue refunds out of his own pocket for problems caused by DoorDash.

157.     These kinds of negative consumer experiences translate to direct financial loss for restaurants. As DoorDash says itself, on a "merchant support" page on DoorDash.com, "customers are less likely to return when they have an order cancelled." When dissatisfied customers leave negative online reviews on sites like Yelp, the harm is magnified. In a 2020 survey, 92% of consumers surveyed said that seeing negative reviews made them less likely to use a business.[22]

---

[22] Bright Local, Local Consumer Review Survey 2020, *available at* https://www.brightlocal.com/research/local-consumer-review-survey (last visited Aug. 15, 2021).

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

158.     DoorDash unfairly puts the onus on Unaffiliated Restaurants to seek removal of unauthorized listings and address the consumer dissatisfaction that results from DoorDash's poor service. To protect their reputations, Chicago restaurants must take on the unfair burden of monitoring the DoorDash Platform to determine whether DoorDash has listed them without permission. If it has, busy restaurant owners must take precious time and effort to contact DoorDash, request removal, and confirm that DoorDash has followed through—instead of focusing on running their business.

159.     In fact, DoorDash *advertises* this burden. On pages acknowledging that a restaurant is unaffiliated, DoorDash advises owners: "Own this store? Contact us to claim your business. Learn More." Clicking on the "Learn More" hyperlink brings up a pop-up box that encourages restaurants to contract with DoorDash:



160.     In practice, obtaining removal of the listings has proven difficult. For example, the owner of the Mexican restaurant on the Near West Side complained to the City that, after declining to contract with DoorDash, he called and emailed the company about removing his restaurant's

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

unauthorized listing—to no avail. One year later, DoorDash again contacted the owner about entering into a contract to become an Affiliated Restaurant.

161.    The owner of Sofi, the Italian restaurant in Printer's Row, sent DoorDash an email detailing all the ways she tried—over months—to get the company to remove Sofi from the DoorDash Platform. She noted that DoorDash drivers showed up on a daily basis to pick up orders the restaurant had not received, for items the restaurant did not offer:

---

**From:** nandimichi <nandimichi@yahoo.com>
**Subject: Re: Caviar / Doordash**
**Date:** October 29, 2020 at 12:25:35 PM CDT
**To:** Jared Dorfman <jared.dorfman@doordash.com>
**Cc:** Nandita Michi <nandimichi@yahoo.com>

Jared,

We are still getting orders from Doordash and delivery people come daily to pick up an order that we are not aware of with incorrect menu items that are not listed on our menu, incorrect prices.
I have tried everything to get this to stop. Calling, emailing, even tweeting.
The problem with this is that doordash accepts an order and then when you are unable to fulfill it you refund the money to the customer and have ruined my reputation in the process therefore, forcing me to do business with a company that I don't want to do business with. Do you what that's called? A Mafia.
PLEASE, remove Sofi Restaurant and stop listing us or I will have to file a law suit and do forward this email to any person in charge who can do something about it.

Sincerely,

*Nandita Michi*

---

162.    As SoFi's owner described the impact of DoorDash's unauthorized and inaccurate listing on her business, "[Y]ou . . . have ruined my reputation in the process therefore, forcing me to do business with a company that I don't want to do business with. Do you know what that's called? A Mafia."

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

## V.     DOORDASH DECEPTIVELY USED CONSUMER TIPS TO PAY ITSELF RATHER THAN ITS DRIVERS.

163.    From approximately July 2017 until at least September 2019, DoorDash misled consumers across the country, including in Chicago, to believe that they were using the "tip" feature on the DoorDash Platform to supplement the income of the driver who delivered their food, over and above the base payment DoorDash provided. Instead, DoorDash used at least a portion of the customer's "tip" to subsidize its own payment to the driver—and in many instances, the tip did not increase the total income the driver received for a delivery.

### A.     DoorDash Used Customer Tips as a Substitute for a Portion of DoorDash's Guaranteed Payment to Drivers.

164.    Before July 2017, DoorDash's compensation model was designed to pay its drivers a fixed amount per delivery. That amount varied from city to city; in Chicago, DoorDash paid its drivers $6 per delivery. On top of the fixed amount paid by DoorDash, drivers kept 100% of customer tips before July 2017.

165.    In July 2017, DoorDash changed its driver pay policy in a way that directed revenue from consumer tips to DoorDash—not the drivers. This policy was in place until late September 2019, when DoorDash rescinded it following consumer outrage and extensive press coverage.

166.    Under the compensation model in effect from July 2017 through September 2019, DoorDash offered a guaranteed amount that a driver would be paid for each order delivery (the "Guaranteed Payment"). The Guaranteed Payment was not the amount *DoorDash* had to pay the driver; rather, it was the total amount the driver was guaranteed to earn, including any consumer tip. The Guaranteed Payment varied per order but ranged from $4 to $10, according to DoorDash drivers. The Guaranteed Payment depended on a variety of factors including the size of the order, whether the driver had to place the order in person, the projected driving distance, traffic, parking, and wait time at the restaurant.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

167.     During this period, DoorDash paid drivers a base fee of $1 for each order, then counted any consumer tip toward the driver's Guaranteed Payment. If the tip plus DoorDash's $1 base payment was less than the Guaranteed Payment for that order, DoorDash made up the difference. If the tip plus DoorDash's $1 contribution met or exceeded the Guaranteed Payment, then DoorDash paid no more. Either way, some of the benefit of the tip went not to the driver but to DoorDash—and was used to meet its contractual payment obligations.

168.     For example, in a delivery order with a Guaranteed Payment of $9, if the consumer did not tip at all, DoorDash paid the driver $9. If the consumer tipped $8, DoorDash paid the driver only $1. In both instances, the driver received $9; however, consumers were led to believe that the driver received his or her DoorDash pay *plus* the tip. No matter where the tip fell between zero and $8, the driver's pay remained the same; the only effect of the tip was to reduce DoorDash's payment obligation. Only if the tip, when added to DoorDash's $1 base fee, exceeded the Guaranteed Payment did the driver receive any supplemental income from the tip. For example, under these same circumstances, if a consumer gave a $10 tip, the driver would receive $1 from DoorDash plus $10 from the consumer, for a total of $11.

169.     DoorDash implemented this driver pay policy nationwide, including in Chicago. In a complaint that a Chicago driver posted on Reddit in 2019, he described an order for which DoorDash paid a Guaranteed Payment of $10.10. This Guaranteed Payment was higher than typical, tied at least in part to the size of the food order—approximately $90. The driver knew the consumer personally and, as shown on the screen below (left), he knew that the consumer had left a tip of $16.28. After fulfilling the order, the driver received a payment of $17.28 (below, right) from DoorDash. The driver therefore received the benefit of only $6.18 of the consumer's $16.28 tip—the difference between the total payment and the Guaranteed Payment that DoorDash owed

71

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

the driver regardless, tip or no tip. Meanwhile, the $16.28 tip reduced DoorDash's own payment

obligations on this order by $9.10 to just $1.

*Excerpt from Reddit.com*



170.    Because of the size of the food order and tip, this Chicago driver received some

supplemental income from the tip. However, most of the $16.28 tip—$10.10—operated only to

subsidize the pay DoorDash owed the driver. On information and belief, tips on many smaller

orders did not result in any extra income to the driver *at all*—and *only* served to reduce DoorDash's

payment obligation. In other words, consumers were unwittingly subsidizing DoorDash when they

thought they were rewarding the driver directly.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

**B.** **DoorDash Misrepresented to Consumers that Tips Were Driver Income Over and Above Drivers' DoorDash Pay.**

171.  DoorDash's representations to consumers about tipping through the DoorDash app and website were misleading because DoorDash frequently used some or all of the consumer's tip to meet its own Guaranteed Payment to drivers. DoorDash deceptively conveyed to consumers that their tips constituted additional income for drivers, beyond the pay drivers received from DoorDash.

172.  Between July 2017 and September 2019, the DoorDash app and website featured different iterations of the DoorDash user interface.

173.  For some orders in that time period, consumers saw a checkout screen that presented tipping options in percentage amounts and stated, "100% goes to your dasher," as shown in the example below.

73

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*DoorDash.com order summary and checkout screen*[23]



174.    This statement misleadingly conveyed that the driver would benefit from 100% of the tip, when in reality at least a portion of the tip merely subsidized DoorDash's own Guaranteed Payment without adding to the driver's overall payment. The adjacent display of tip options in increasing percentage amounts conveyed the misimpression that a larger tip would benefit the driver even more, which for many orders was not the case.

---

[23] Redactions and other markings are in the original screenshot posted to a website maintained by the Pay Up Campaign, a group that advocates on gig economy worker pay issues.

175.    In this version of the user interface, the deception was compounded by tipping options and a tip calculation that were subtly designed to increase the tip—and thus increase the subsidy to DoorDash. The checkout screen prepopulated the tip field with an amount equal to 35% of the food subtotal—in this case, $10.83. The interface required the consumer to take an extra step to leave a different tip. Here, the consumer chose a 15% tip. But the 15% tip option is positioned in a manner that suggests it is a low option that consumers should exceed.

176.    For other orders in the July 2017 – September 2019 period, DoorDash showed consumers a checkout screen that listed tipping options in dollars and omitted the "100% statement" below the options, as in the example below.

*Tipping screen on DoorDash app*

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

177.    As in the previous example, presenting tip options in increasing dollar amounts deceptively conveyed that the driver would benefit from a larger tip.

178.    This version of the checkout screen also featured an "i" information icon next to "Dasher Tip." Clicking on the "i" icon brought up a pop-up box providing additional information about tipping the driver:

*Tipping pop-up box on DoorDash app*





179.    This pop-up box was misleading in multiple respects. The statement that "Dashers will be able to see the breakdown in their earnings between the amount DoorDash contributes and

the customer tip" simply reinforced the impression that tips were in addition to DoorDash pay. The statement that the consumer had the "option to tip more or less than the suggested amount" bolstered the impression that a larger tip would benefit the driver more. Although the pop-up box obliquely referenced elements of DoorDash's compensation model, consumers were unlikely to know or understand how this scheme worked, including how it made use of their tips.

180.    Throughout the July 2017–September 2019 period, DoorDash failed to disclose to consumers that it was using at least a portion of their tips to supplement its Guaranteed Payment to drivers. A reasonable consumer would have expected that the full amount of the tip added at checkout would be provided to the driver on top of the pay the driver received from DoorDash. At no point in the order experience on the DoorDash app or website did DoorDash clearly communicate otherwise.

181.    For instance, DoorDash purported to provide an explanation of its use of tips on a FAQ page, which was not accessible from any page a consumer used during the ordering process. The FAQ was also confusing and misleading. Under the heading "Should I tip my Dasher?," DoorDash explained:

> **In general, we recommend you tip your Dasher and Dashers always receive 100% of tips.**
>
> **Dashers are independent contractors who work hard to provide you with a great delivery experience. We encourage you to tip an amount that you believe is fair to thank your Dasher. Standard tipping ranges are similar to those of the broader service industry. We provide a suggested tip amount, though you're welcome to adjust the percentage or specify the exact dollar amount you'd like to leave for your Dasher.**
>
> Here's how Dasher pay is calculated. Dashers are shown a guaranteed amount that they will earn when they are offered a delivery. In addition to 100% of the tip, Dashers will always receive at least $1 from DoorDash. Where the sum of $1 plus tip is less than the guaranteed amount, DoorDash will provide a pay boost to make sure the Dasher receives the guaranteed amount. Where that sum is more than the guaranteed amount, the Dasher keeps the extra amount. (Emphasis added.)

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

182. This language—encouraging consumers to tip "an amount that you believe is fair," allowing consumers to "specify the exact dollar amount you'd like to leave for your Dasher," and representing that the purpose of the tip is to "thank your Dasher"—continued the misimpression that the amount a driver received directly correlated with the amount tipped. In reality, at least some of the tip went only to benefit DoorDash. As before, although DoorDash purported to explain elements of its compensation model, without a more complete explanation, consumers were unlikely to know or understand how this scheme worked.

183. DoorDash could have offered—but did not offer—*consumers* a clear explanation of how it used tips to defray its own obligations to pay drivers. DoorDash knew how to explain this, because it did so quite clearly on the FAQ page created for its *drivers*:

*Excerpt from DoorDash.com driver help page*



184. DoorDash's consumer-facing misrepresentations and omissions about its use of tips were material to consumers, who tip to supplement a driver's income and show appreciation for the quality of service the driver has provided.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

185.    DoorDash also intended consumers to rely on its statements about tipping. Consumers would be far less likely to leave a tip, or a tip of the same amount, if they knew that it largely subsidized DoorDash's payment to the driver and did not directly impact the amount the driver actually received. As Louise Matsakis, a *Wired* reporter covering digital platforms, tweeted in July 2019:



This tweet received nearly 3,800 likes and was "retweeted" more than 1,700 times.

186.    After much negative media attention, DoorDash announced changes to its tipping practices on August 22, 2019. Those changes were implemented in late September 2019. As it did before July 2017, DoorDash once again began passing consumer tips along to drivers *in addition*

79

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

*to* the company's guaranteed payment for each order. DoorDash also updated its consumer FAQ page to explain its payment model and added a link to the FAQ page on the checkout screen. However, DoorDash did not correct any payments to drivers or refund any tips to consumers for past orders, including in Chicago.

187.   In announcing the policy change, DoorDash's CEO acknowledged, "What we missed was that some customers who *did* tip would feel like their tip did not matter."

## FIRST CAUSE OF ACTION

### Violation of MCC § 4-276-470

188.   All preceding factual statements and allegations are incorporated herein by reference.

189.   Section 4-276-470(1) of the Municipal Code of Chicago ("MCC") forbids any person "to act, use or employ any deception, fraud, false pretense, false promise or misrepresentation, or to conceal, suppress or omit any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, for cash or on credit, or advertisement of any merchandise."

190.   MCC § 4-276-470(5) forbids any person: "to make false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, or engaging in any other pricing conduct causing confusion or misunderstanding."

191.   MCC § 4-276-470(6) forbids any person "to represent that merchandise or services are those of another, when in fact they are not."

192.   MCC § 4-276-470(7) forbids any person "to cause confusion or misunderstanding concerning the source, sponsorship, approval or certification of merchandise or services."

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

193.    MCC § 4-276-470(8) forbids any person "to cause confusion or misunderstanding or false or deceptive representation concerning affiliation, connection or association with, or certification by, another."

194.    MCC § 4-276-470(9) forbids any person "to represent that merchandise or services have sponsorship approval concerning the source of or certification of merchandise or services when in fact they do not have such approval or sponsorship."

195.    MCC § 4-276-470(10) forbids any person "to fail to state a material fact, if such failure tends to deceive or mislead."

196.    Defendants are each a "person" as defined by MCC § 1-4-090(e), which includes "any natural individual, firm, trust, partnership, association, joint venture, corporation or other legal entity."

197.    Defendants have engaged, and continue to engage, in practices that violate one or more of the foregoing provisions of MCC § 4-276-470. Specifically, Defendants have violated MCC § 4-726-470 by:

a.    misrepresenting the Delivery Fee to consumers as the full price of their Service and/or advertising "free delivery," when the actual price of the Service is higher;

b.    concealing, suppressing, and/or failing to disclose to consumers the existence, amount, and/or source of the Service Fee and Small Order Fee;

c.    misrepresenting the Chicago Fee to consumers as a charge authorized by, imposed by, and/or remitted to the City;

d.    concealing, suppressing, and/or failing to disclose to consumers that the source of the Chicago Fee was DoorDash and/or Caviar, not the City;

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

e.      misrepresenting Platform Menu Prices as the prices available directly from the restaurants;

f.      concealing, suppressing, and/or failing to disclose to consumers that Platform Menu Prices contain markups from the prices available on restaurants' menus on their own websites;

g.      misrepresenting promotional discounts to consumers as offers without limitation (DoorDash only);

h.      concealing, suppressing, and/or failing to disclose to consumers that promotional discounts are conditioned on satisfying minimum order requirements (DoorDash only);

i.      misrepresenting to consumers that DoorDash has a business relationship with or is otherwise authorized to list Unaffiliated Restaurants on the DoorDash Platform (DoorDash only);

j.      concealing, suppressing, and/or failing to disclose to consumers that DoorDash does not have a business relationship with Unaffiliated Restaurants on the DoorDash Platform and/or that it is not authorized by Unaffiliated Restaurants to list them on the DoorDash Platform (DoorDash only);

k.      causing confusion or misunderstanding regarding Unaffiliated Restaurants' approval of unauthorized listings on the DoorDash Platform and/or regarding the DoorDash Platform's affiliation, connection, or association with Unaffiliated Restaurants (DoorDash only);

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

l.     concealing, suppressing, and/or failing to disclose to consumers that DoorDash has not verified the menus, operating status, and other information it lists for Unaffiliated Restaurants on the DoorDash Platform (DoorDash only);

m.    misrepresenting to consumers that it will provide its Service with respect to menu items that Unaffiliated Restaurants do not offer, and/or during times Unaffiliated Restaurants are not open, on the DoorDash Platform (DoorDash only);

n.    misrepresenting to consumers that Menu Price Overcharges will be refunded (DoorDash only);

o.    misrepresenting to consumers that tips paid through the DoorDash Platform were provided to drivers as income over and above the amount DoorDash paid drivers (DoorDash only); and

p.    concealing, suppressing, and/or failing to disclose to consumers that tips paid through the DoorDash Platform subsidized DoorDash's Guaranteed Payment to drivers (DoorDash only).

198.    The MCC provides that any person who violates "any of the provisions of Section 4-276-470 shall be fined not less than $50.00 nor more than $2,000.00 for each offense." MCC § 4-276-480. The City is therefore entitled to fines for each violation of MCC § 4-276-470.

199.    WHEREFORE, the City respectfully requests that this Court enter an order (a) awarding judgment in the City's favor on its First Cause of Action; (b) declaring that Defendants have violated MCC § 4-276-470; (c) enjoining Defendants from engaging in further deceptive practices in violation of MCC § 4-276-470; (d) assessing Defendants fines of $2,000 for

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

each offense under MCC § 4-276-470; (e) awarding the City its costs of investigation and suit, including reasonable attorneys' fees and costs, to the extent allowable; (f) awarding the City pre- and post-judgment interest, to the extent allowable; and (g) awarding such other, further, and different relief as this Court deems reasonable and just.

## SECOND CAUSE OF ACTION

### Violation of MCC § 2-25-090

200.    All preceding factual statements and allegations are incorporated herein by reference.

201.    MCC § 2-25-090 prohibits "any act of consumer fraud, unfair method of competition, or deceptive practice while conducting any trade or business in the city," including "[a]ny conduct constituting an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act . . . or constituting a violation of any section of this Code relating to business operations or consumer protection."

202.    The Illinois Consumer Fraud and Deceptive Business Practices Act makes unlawful, among other things, "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act.'" 815 ILCS 505/2.

203.    Section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2) provides that a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person, *inter alia*:

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

a.   causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, 815 ILCS 510/2(a)(2);

b.   causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, 815 ILCS 510/2(a)(3);

c.   represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have, 815 ILCS 510/2(a)(5);

d.   advertises goods or services with intent not to sell them as advertised, 815 ILCS 510/2(a)(9); or

e.   engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding, 815 ILCS 510/2(a)(12).

204.   Defendants have engaged, and continue to engage, in deceptive acts and practices while conducting their meal delivery business in Chicago, in violation of MCC § 2-25-090. Specifically, Defendants have violated MCC § 2-25-090 by:

a.   advertising the Delivery Fee or "free delivery" to consumers, with no intent to provide the Service at the advertised price;

b.   misrepresenting the Delivery Fee to consumers as the full price of their Service and/or advertising "free delivery," when the actual price of their Service is higher;

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

c. concealing, suppressing, and/or failing to disclose to consumers the existence, amount, and/or source of the Service Fee and Small Order Fee;

d. misrepresenting the Chicago Fee to consumers as a charge authorized by, imposed by, and/or remitted to the City;

e. concealing, suppressing, and/or failing to disclose to consumers that the source of the Chicago Fee was DoorDash and/or Caviar, not the City;

f. misrepresenting Platform Menu Prices as the prices available from restaurants' menus on their own websites;

g. concealing, suppressing, and/or failing to disclose to consumers that Platform Menu Prices contain markups from the prices available directly from the restaurants;

h. misrepresenting promotional discounts to consumers as offers without limitation (DoorDash only);

i. concealing, suppressing, and/or failing to disclose to consumers that promotional discounts are conditioned on satisfying minimum order requirements (DoorDash only);

j. misrepresenting to consumers that DoorDash has a business relationship with or is otherwise authorized to list Unaffiliated Restaurants on the DoorDash Platform (DoorDash only);

k. concealing, suppressing, and/or failing to disclose to consumers that DoorDash does not have a business relationship with Unaffiliated Restaurants on the DoorDash Platform and/or that it is not authorized by

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

Unaffiliated Restaurants to list them on the DoorDash Platform (DoorDash only);

l.       causing confusion or misunderstanding regarding Unaffiliated Restaurants' approval of unauthorized listings on the DoorDash Platform and/or regarding the DoorDash Platform's affiliation, connection, or association with Unaffiliated Restaurants (DoorDash only);

m.      concealing, suppressing, and/or failing to disclose to consumers that DoorDash has not verified the menus, operating status, and other information it lists for Unaffiliated Restaurants on the DoorDash Platform (DoorDash only);

n.       misrepresenting to consumers that it will provide its Service with respect to menu items that Unaffiliated Restaurants do not offer, and/or during times Unaffiliated Restaurants are not open, on the DoorDash Platform (DoorDash only)

o.       misrepresenting to consumers that Menu Price Overcharges will be refunded (DoorDash only);

p.       misrepresenting to consumers that tips paid through the DoorDash Platform were provided to drivers as income over and above the amount DoorDash paid drivers (DoorDash only); and

q.       concealing, suppressing, and/or failing to disclose to consumers that tips paid through the DoorDash Platform subsidized DoorDash's Guaranteed Payment to drivers (DoorDash only).

FILED DATE: 8/27/2021 10:37 AM    2021CH04328

205.    Defendants have also engaged, and continue to engage, in unfair acts and practices while conducting their meal delivery business in Chicago, in violation of MCC § 2-25-090. These acts and practices are unfair in that they offend public policy; are immoral, unethical, oppressive, and unscrupulous; and/or cause substantial injury to consumers. As alleged herein, these methods include the following:

a.    obstructing consumer understanding of the price of their Service, and thwarting consumers' ability to make informed choices in the market for restaurant meal delivery, by separating the price of their Service into separate fees, which do not reflect and are not associated with distinguishable parts or costs of the Service; by only advertising a portion of the price of their Service up front; by failing to disclose the true cost of the Service until after the consumer has invested time in the transaction; by using the Platform's design to conceal the total fees associated with the Service; and/or by otherwise employing the user interface dark patterns described herein;

b.    creating listings for Unaffiliated Restaurants on the DoorDash Platform, using their trade names and intellectual property, without permission and without verifying the menu items, operating hours, or other restaurant information presented to consumers (DoorDash only); and

c.    depriving drivers of tip income by using consumer tips to subsidize DoorDash's Guaranteed Payments to drivers (DoorDash only).

206.    Defendants have further violated MCC § 2-25-090 by engaging in conduct that constitutes a violation of MCC § 4-276-470, as set forth in the City's First Cause of Action, *supra*.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

207.    Defendants are each a "person" as defined by MCC § 1-4-090(e), which includes "any natural individual, firm, trust, partnership, association, joint venture, corporation or other legal entity."

208.    The MCC provides that any person "who violates any of the requirements of this section shall be subject to a fine of not less than $500.00 nor more than $10,000.00 for each offense." MCC § 2-25-090(f). Between May 9, 2012 and December 31, 2018, MCC § 2-25-090(f) set a minimum fine of $2,000 and a maximum fine of $10,000 for each offense. The City is entitled to fines for each violation of MCC § 2-25-090.

209.    The MCC also authorizes the City's Corporation Counsel to bring an action for injunctive relief and other equitable relief. MCC § 2-25-090(e)(4). The City is entitled to injunctive and equitable relief as described below.

210.    WHEREFORE, the City respectfully requests that this Court enter an order (a) awarding judgment in the City's favor on its Second Cause of Action; (b) declaring that Defendants have violated MCC § 2-25-090; (c) enjoining Defendants from engaging in further deceptive acts and practices in violation of MCC § 2-25-090; (d) assessing Defendants fines of $10,000 for each offense under MCC § 2-25-090; (e) requiring Defendants to pay restitution of the money acquired by means of its violations of MCC § 2-25-090; (f) requiring Defendants to disgorge profits obtained by means of its violations of MCC § 2-25-090; (g) awarding the City its costs of investigation and suit, including reasonable attorneys' fees and costs, to the extent allowable; (h) awarding the City pre- and post-judgment interest, to the extent allowable; and (i) awarding such other, further, and different relief as this Court deems reasonable and just.

## JURY DEMAND

The City requests a trial by jury of all claims.

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

Dated: August 27, 2021                    Respectfully submitted,

                                          Celia Meza
                                          Corporation Counsel of the City of Chicago

                                          BY: /s/ Stephen J. Kane

                                          Stephen J. Kane, Deputy Corporation Counsel
                                          Elie Zenner, Assistant Corporation Counsel
                                          Rachel Granetz, Assistant Corporation Counsel
                                          City of Chicago Department of Law
                                          Affirmative Litigation Division
                                          121 North LaSalle Street, Room 600
                                          Chicago, Illinois 60606
                                          Telephone:  312-744-6934
                                          stephen.kane@cityofchicago.org
                                          elie.zenner@cityofchicago.org
                                          rachel.granetz@cityofchicago.org

                                          COHEN MILSTEIN SELLERS & TOLL PLLC
                                          Betsy A. Miller, *pro hac vice motion forthcoming*
                                          Brian E. Bowcut, *pro hac vice motion forthcoming*
                                          Johanna M. Hickman, *pro hac vice motion forthcoming*
                                          Maya Sequeira, *pro hac vice motion forthcoming*
                                          1100 New York Avenue, NW, Suite 500
                                          Washington, D.C. 20005
                                          Telephone:  202-408-4600
                                          bmiller@cohenmilstein.com
                                          bbowcut@cohenmilstein.com
                                          jhickman@cohenmilstein.com
                                          msequeira@cohenmilstein.com

Hearing Date: 12/27/2021 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
       Cook County, IL

FILED
8/27/2021 10:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04328

14605229

Chancery Division Civil Cover Sheet
General Chancery Section

(12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

City of Chicago
                                Plaintiff

          v.                                      Case No: _____

DoorDash Inc., and Caviar, LLC,
                               Defendant

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus | |
| 0001 | ☐ Class Action | | 0018 | ☐ Ne Exeat | |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition | |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title | |
| | | | 0021 | ☐ Quo Warranto | |
| 0007 | ☒ General Chancery | | 0022 | ☐ Redemption Rights | |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract | |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract | |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance | |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction | |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) | |
| 0015 | ☐ Equitable Lien | | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ | |

◉ Atty. No.: 90909      ◯ Pro Se 99500

Atty Name: Rachel Granetz

Atty. for: City of Chicago

Address: 121 North LaSalle Street, Suite 600

City: Chicago      State: IL

Zip: 60602

Telephone: 312-744-6815

Primary Email: rachel.granetz@cityofchicago.org

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 1

Hearing Date: 12/27/2021 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
Cook County, IL

FILED
8/27/2021 10:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04328

14605229

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

<u>Fee Exempt and Reduced Fee Agency Cover Sheet</u>                **(12/01/20) CCG 0020 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago

v.

DoorDash, Inc., and Caviar, LLC

Case No. _____

## FEE EXEMPT AND REDUCED FEE AGENCY COVER SHEET

In order to ensure the proper collection of fees, a Fee Exemption Cover Sheet shall be filed with the initial pleading by a party in all civil actions filed by a law enforcement agency or unit of local government wherein such agency seeks a fee exemption. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please mark the classification exempting the agency filing this action from the full amount of statutory fees, and sign the cover sheet as indicated on the reverse side.

## Exemptions pursuant to 705 ILCS 105/27.2 and 705 ILCS 105/27.2a:

- ☐ Illinois Attorney General
- ☐ Illinois State Appellate Defender
- ☐ Illinois Office of the Appellate Prosecutor
- ☐ Illinois County Public Defender's Office
- ☐ Illinois County State's Attorney's Office
- ☐ Illinois State Police
- ☐ Illinois Department of Corrections
- ☐ Municipal Police
- ☐ Sheriff's Dept within the State of Illinois

- ☐ CHA Police
- ☐ CTA Police
- ☐ Cook County Forest Preserve Police
- ☐ University/College Police
- ☐ Metra Police
- ☐ Park District Police
- ☐ Illinois Gaming Board Special Agents
- ☑ Other  <u>See attachment</u>
  (Name of Agency)

## Other agencies/case types exempt from fees:

- ☐ The Director of the Department of Insurance under 215 ILCS 5/203
- ☐ The Illinois Department of Revenue under 35 ILCS 5/1106
- ☐ The Illinois Department of Revenue under 35 ILCS 520/20
- ☐ Any action instituted under 65 ILCS 5/11-31-1(b) by a private owner or tenant of real property
- ☐ Department of Children and Family Services under 755 ILCS 5/11a-10 (c) (The Probate Act")
- ☐ Appointment of a guardian under 755 ILCS 5/11-11 (proper expenditure of public assistance; collection, disbursement or administering of money or assets derived from money awarded to the Veteran's Administration; minor patient in a State mental health or developmental disabilities facility, estate value less than $1,000)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Fee Exempt and Reduced Fee Agency Cover Sheet**  (12/01/20) CCG 0020 B

FILED DATE: 8/27/2021 10:37 AM  2021CH04328

☐ Appointment of a guardian under 755 ILCS 5/11a-13 (estate of mentally disabled person residing in a state mental health or developmental disabilities facility, estate value less than $1,000; Office of the State Guardian)

☐ Claimants in proceedings under the Unemployment Insurance Act, 820 ILCS 405/1200

☐ An action under 35 ILCS 200/22-35 for reimbursement of a municipality before issuance of a tax deed other agencies/case types exempt from fee. (continued from page 1).

☐ The investigative arm of the Attorney Registration and Disciplinary Commission

☐ Cook County officials, departments and agencies pursuant to Cook County, Illinois, Code of Ordinances, Part I, Chapter 18, Article II, Sec. 31 (b)

☐ Department of Children and Family Services if it is the petitioner where the minor has been committed by the court to DCFS under the Juvenile Court Act of 1987, 755 ILCS 5/11a-10 (c)

**The following units of local government receive reduced fees as outlined in 705 ILCS 105/27.2:**

☐ City of Chicago
☐ Municipality/Township
☐ Road District
☐ Fire Protection District
☐ Park District
☐ Mosquito Abatement District
☐ Public Health District
☐ Airport Authority
☐ City Colleges of Chicago

☐ Hospital District
☐ Chicago Housing Authority
☐ Department of Public Works
☐ CTA
☐ Metra
☐ Pace
☐ Regional Transit Authority
☐ Municipal License Appeal Commission
☐ Chicago Board of Education

☐ School District
☐ Library District
☐ Metropolitan Water Reclamation District
☐ Conservation District
☐ Other:

_____
(Name of Agency)

By: _____ (Signature)      Rachel Granetz
_____ (Printed Name)

_____ (Affiliation with Agency)      Assistant Corporation Counsel
_____ (Title if with Agency, Attorney, etc.)

On behalf of  City of Chicago Law Department
_____ (Agency)

and the Agency Head (Director, CIO, etc.),  Celia Meza, Corporation Counsel
_____ (Printed Name)

Atty. No.:  90909

Atty Name:  Rachel Granetz

Atty. for:  City of Chicago

Address:  121 North LaSalle Street, Room 600

City:  Chicago

State:  IL   Zip:  60602

Telephone:  312-744-6815

Primary Email:  rachel.granetz@cityofchicago.org

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 2

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

## ATTACHMENT

Plaintiff City of Chicago (the "City") is exempt from the filing fee because (a) the City is a unit of local government and (b) the complaint seeks to enforce City ordinances. *See* 705 ILCS 105/27.1b(z)(1)(A-5) ("no fee may be charged to any unit of local government … in connection with any action which, in whole or in part, is … to enforce an ordinance").

Hearing Date: 12/27/2021 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
Cook County, IL

FILED
8/27/2021 10:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04328

14605229

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |

**Summons - Alias Summons**                                    **(03/15/21) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

**City of Chicago**

_____

Plaintiff(s)

v.

**DoorDash Inc., and Caviar, LLC**

_____

Defendant(s)

303 2nd Street, South Tower, 8th Floor
San Francisco, California 94107

_____

Address of Defendant(s)

Case No. _____

Please serve as follows (check one):  ○ Certified Mail  ○ Sheriff Service  ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:  Your appearance date is NOT a court date.**  It is the deadline for filing your appearance/answer.  To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp.  After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons** (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office.  If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org.  You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office.  You can also call or email the clerk's office to request your next court date.  You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant.  For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference.
This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons.  The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer:  (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.  This summons may not be served later than thirty (30) days after its date.

⦿ Atty. No.: 90909
◯ Pro Se 99500

Name: Rachel Granetz

Atty. for (if applicable):

City of Chicago

Address: 121 North LaSalle Street, Room 600

City: Chicago

State: IL   Zip: 60602

Telephone: 312-744-6815

Primary Email: rachel.granetz@cityofchicago.org

Witness date _____

8/27/2021 10:37 AM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

FILED
8/27/2021 10:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH04328

14605229

FILED DATE: 8/27/2021 10:37 AM  2021CH04328

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |
| **Summons - Alias Summons** | | **(03/15/21) CCG 0001 A** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

**City of Chicago**

_____

Plaintiff(s)

v.

**DoorDash Inc., and Caviar, LLC**

Case No. _____

_____

Defendant(s)

901 Market Street, Suite 600
San Francisco, California 91403

_____

Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail  ○ Sheriff Service  ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**<u>FILING AN APPEARANCE</u>: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons** (03/15/21) CCG 0001 B

FILED DATE: 8/27/2021 10:37 AM   2021CH04328

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

⊙ Atty. No.: 90909  
○ Pro Se 99500

Name: Rachel Granetz

Atty. for (if applicable):

City of Chicago

Address: 121 North LaSalle Street, Room 600

City: Chicago

State: IL   Zip: 60602

Telephone: 312-744-6815

Primary Email: rachel.granetz@cityofchicago.org

Witness date _____

8/27/2021 10:37 AM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____  
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**  
**cookcountyclerkofcourt.org**

**GET YOUR COURT DATE BY CALLING IN OR BY EMAIL**

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 8/27/2021 10:37 AM 2021CH04328