**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| City of Chicago, | Civil Action No. 1:21-cv-05162 |
| *Plaintiff,* | Honorable Robert W. Gettleman |
| v. | |
| DoorDash, Inc. and Caviar, LLC, | |
| *Defendants.* | |

### **CITY OF CHICAGO'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.   Applicable Legal Standards and Threshold Issues ..............................................2
     A.   Legal Standards Governing Defendants' Motion to Dismiss ...............................2
     B.   Chicago's Consumer Protection Ordinances ......................................................3

II.  Defendants' Conduct Violates Chicago Law. ....................................................4
     A.   The Platforms Falsely Advertise Fees to Hide the True Cost of Their
          Service. .................................................................................................4
          1.   Defendants' advertisements of delivery price are deceptive. ...................5
          2.   Defendants deceptively presented the "Chicago Fee." .............................8
          3.   Defendants' pricing conduct is also unfair to consumers. .......................9
     B.   The DoorDash Platform Deceives Consumers with Misleading
          Promotions. ..........................................................................................9
     C.   The Platforms Deceive Consumers with Undisclosed Menu Price Mark-
          Ups. ....................................................................................................11
     D.   DoorDash Deceptively and Unfairly Used Driver "Tips" to Subsidize Base
          Pay. .....................................................................................................12
          1.   The City's claims are timely. .............................................................13
          2.   DoorDash's statements about driver "tips" deceived consumers. ...........15
          3.   DoorDash's tipping conduct is unfair to drivers. .................................17
     E.   Unauthorized Listings Mislead Consumers and Exploit Restaurants. ................17
          1.   Unauthorized listings mislead consumers. ...........................................18
          2.   DoorDash causes confusion and misunderstanding regarding
               restaurants' approval of the listings and affiliation with DoorDash. ........20
          3.   DoorDash deceptively promises consumers accurate refunds. ................20
          4.   DoorDash's unauthorized listings are unfair to restaurants. ..................21

III. Defendants' "Disclosures" Do Not Cure Their Deceptions. ...........................23

IV.  Conclusion .................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Bus. Forms, Inc. v. Primador*,
2009 WL 4679477 (N.D. Ill. Dec. 1, 2009)................................................................4

*Affrunti v. Vill. Ford Sales, Inc.*,
597 N.E.2d 1242 (Ill. App. Ct. 1992)......................................................................5

*Al Haj v. Pfizer, Inc.*,
338 F. Supp. 3d 741 (N.D. Ill. 2018)........................................... 12, 15, 16, 25

*Ambrosius v. Chicago Athletic Clubs, LLC*,
2021 WL 4477002 (Ill. App. Ct. Sept. 30, 2021) ..............................................25

*Audia v. Briar Place, Ltd.*,
2018 WL 1920082 (N.D. Ill. Apr. 24, 2018) ....................................................14

*Bd. of Educ. of City of Chi. v. A, C, & S, Inc.*,
546 N.E.2d 580 (Ill. 1989).........................................................................13

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) .......................................................................*passim*

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .......................................................... 7, 9, 17

*Bernhauser v. Glen Ellyn Dodge, Inc.*,
683 N.E.2d 1194 (Ill. App. Ct. 2001).............................................................9

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) .................................................................2, 14

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ...................................................................16

*Bonahoom v. Staples, Inc.*,
2021 WL 1020986 (N.D. Ill. Mar. 17, 2021)........................................................9

*Boone v. MB Fin. Bank*,
375 F. Supp. 3d 987 (N.D. Ill. 2019).............................................................7

*Burlinski v. Top Golf USA Inc.*,
2020 WL 5253150 (N.D. Ill. Sept. 3, 2020) ....................................................14

*Carter Prods. v. FTC*,
186 F.2d 821 (7th Cir. 1951) ...................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

*City of Chi. v. Latronica Asphalt & Grading, Inc.*
805 N.E.2d 281 (Ill. App. Ct. 2004) .......................................................................... 13

*City of Chi. v. Purdue Pharma L.P.*,
2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) ............................................................... 3

*City of Chi. v. Purdue Pharma L.P.*,
211 F. Supp. 3d 1058 (N.D. Ill. 2016) ......................................................................... 3

*City of Chi. v. Purdue Pharma*,
2015 WL 2208423 (N.D. Ill. May 8, 2015) ................................................................ 19

*City of Shelbyville v. Shelbyville Restorium, Inc.*,
451 N.E.2d 874 (Ill. 1983) ......................................................................................... 13

*Cliffdale Associates, Inc.*,
103 F.T.C. 110 (1984) ................................................................................................. 23

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996) .................................................................................... 11, 20

*Diedrich v. Ocwen Loan Servicing, LLC*,
839 F.3d 583 (7th Cir. 2016) ....................................................................................... 2

*Ekl v. Knecht*,
585 N.E.2d 156 (Ill. App. Ct. 1991) ........................................................................... 21

*Empire Home Servs., Inc. v. Carpet Am., Inc.*,
653 N.E.2d 852 (Ill. App. Ct. 1995) ............................................................................. 4

*F.T.C. v. Cyberspace.Com LLC*,
453 F.3d 1196 (9th Cir. 2006) ................................................................................... 24

*F.T.C. v. E.M.A. Nationwide, Inc.*,
767 F.3d 611 (6th Cir. 2014) ....................................................................................... 6

*F.T.C. v. Grant Connect, LLC*,
827 F. Supp. 2d 1199 (D. Nev. 2011) ......................................................................... 24

*F.T.C. v. QT, Inc.*,
448 F. Supp. 2d 908 (N.D. Ill. 2006) .......................................................................... 23

*F.T.C. v. Roca Labs, Inc.*,
345 F. Supp. 3d 1375 (M.D. Fla. 2018) ..................................................................... 24

*F.T.C. v. Sperry & Hutchinson Co.*,
405 U.S. 233 (1972) ......................................................................................... 4, 17, 21

## TABLE OF AUTHORITIES

**Page(s)**

*F.T.C. v. Standard Educ. Soc'y*,
   302 U.S. 112 (1937) ................................................................................5

*F.T.C. v. U.S. Sales Corp.*,
   785 F. Supp. 737 (N.D. Ill. 1992) ....................................................3, 23

*People ex rel. Fahner v. Walsh*,
   461 N.E.2d 78 (Ill. App. Ct. 1984)....................................................4

*Fanning v. F.T.C.*,
   821 F.3d 164 (1st Cir. 2016) ............................................................24

*Fishon v. Peloton Interactive*,
   2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020) ...................................24

*People ex rel. Foxx v. Facebook, Inc.*,
   Holecek Decl. (ECF No. 29) Ex. A....................................................25

*Garcia v. Overland Bond & Inv. Co.*,
   668 N.E.2d 199 (Ill. App. Ct. 1996)..............................................5, 10

*Hall v. Marriott Int'l, Inc.*,
   2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ................................6

*People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*,
   795 N.E.2d 990 (Ill. App. Ct. 2003)................................................14

*Jim Mullen Charitable Found. v. World Ability Fed'n, NFP*,
   917 N.E.2d 1098 (Ill. App. Ct. 2009)..............................................21

*Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*,
   2014 WL 4748272 (C.D. Ill. Sept. 24, 2014) .................................14

*Keithly v. Intelius Inc.*,
   764 F. Supp. 2d 1257 (W.D. Wash. 2011) .....................................24

*Killeen v. McDonald's Corp.*,
   317 F. Supp. 3d 1012 (N.D. Ill. 2018)..............................................7

*Landis v. Marc Realty, L.L.C.*,
   919 N.E.2d 300 (Ill. 2009)...............................................................14

*Latman v. Costa Cruise Lines, N.V.*,
   758 So.2d 699 (Fla. Dist. Ct. App. 2000) .......................................8

*Levenstein v. Salafsky*,
   164 F.3d 345 (7th Cir. 1998) ............................................................2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
   2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ........................................................................ 20

*People ex rel. Madigan v. United Constr. of Am.*,
   981 N.E.2d 404 (Ill. App. Ct. 2012) .................................................................................. 3

*Manzo v. Uber Techs., Inc.*,
   2014 WL 3495401 (N.D. Ill. July 14, 2014) ..................................................................... 20

*Miller v. William Chevrolet/GEO, Inc.*,
   762 N.E.2d 1 (Ill. App. Ct. 2001) .......................................................................... 10, 12, 19

*Muir v. Playtex Prods., LLC*,
   983 F. Supp. 2d 980 (N.D. Ill. 2013) ................................................................................ 25

*Pearson v. Target Corp.*,
   2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) ..................................................................... 25

*Porter & Dietsch, Inc. v. F.T.C.*,
   605 F.2d 294 (7th Cir. 1979) ........................................................................................... 23

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002) ......................................................................... 3, 4, 20, 22

*Saika v. Ocwen Loan Servicing, LLC*,
   357 F. Supp. 3d 704 (N.D. Ill. 2018) ................................................................................ 22

*Saunders v. Mich. Ave. Nat'l Bank*,
   662 N.E.2d 602 (Ill. App. Ct. 1996) ............................................................................. 7, 16

*City of Chi. ex rel. Scachitti v. Prudential Sec., Inc.*,
   772 N.E.2d 906 (Ill. App. Ct. 2002) ................................................................................. 13

*Scott v. Ass'n for Childbirth at Home, Int'l*,
   430 N.E.2d 1012 (Ill. 1981) .............................................................................................. 14

*Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*,
   782 F.3d 922 (7th Cir. 2015) ........................................................................................... 13

*Sotelo v. DirectRevenue, LLC*,
   384 F. Supp. 2d 1219 (N.D. Ill. 2005) ................................................................................ 2

*Stemm v. Tootsie Roll Indus., Inc.*,
   374 F. Supp. 3d 734 (N.D. Ill. 2019) ................................................................................ 16

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .................................................................................. 2, 3, 15

# TABLE OF AUTHORITIES

**Page(s)**

*In re Telomerase Activation Scis., Inc.*,
   Docket No. C-4644, 2018 WL 1941286 (F.T.C. Apr. 18, 2018)...........................................23

*Vanzant v. Hill's Pet Nutrition, Inc*.,
   934 F.3d 730 (7th Cir. 2019) ...........................................................................................2

*Washington v. Hyatt Hotels Corp.*,
   2020 WL 3058118 (N.D. Ill. June 9, 2020)........................................................................6

*Williams v. Bruno Appliance & Furniture Mart, Inc.*,
   379 N.E.2d 52 (Ill. App. Ct. 1978)...............................................................................3, 5

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
   536 F.3d 663 (7th Cir. 2008) ...........................................................................................4

*Zak v. Bose Corp*.,
   2019 WL 1437909 (N.D. Ill. Mar. 31, 2019).....................................................................19

**Statutes**

MCC §§ 2-25-090 and 4-276-470.................................................................................*passim*

735 ILCS 5/13-202....................................................................................................13

735 ILCS 5/13-205....................................................................................................14

815 ILCS 510/2(a)(9)...................................................................................................5

765 ILCS 1036/1 *et seq*..............................................................................................21

815 ILCS 510/1 *et seq*...............................................................................................21

**Other Authorities**

Federal Trade Commission, *.com Disclosures: How to Make Effective Disclosures
   in Advertising* (March 2013)......................................................................................23, 24

Federal Trade Commission, "Full Disclosure," Sept. 23, 2014................................................23

The City of Chicago filed this enforcement action to stop and remediate unlawful conduct on Defendants' online meal-delivery platforms, DoorDash and Caviar ("the Platforms"). For nearly a year, the City investigated the meal-delivery industry by reviewing countless consumer-facing web pages, placing test orders through the Platforms, assessing complaints by nearly 200 Chicago restaurants, and interviewing dozens of restaurant owners. The result was a 210-paragraph Complaint, demonstrating widespread deceptive and unfair conduct that has impacted thousands of Chicago restaurants, consumers, and delivery drivers. Dismissal under these circumstances would be extraordinary, yet that is what Defendants ask this Court to do.

Defendants' Motion simply ignores the City's claims that Defendants engage in unfair practices directed at restaurants and drivers, misinterpreting the Complaint as alleging only consumer-facing misconduct. In response to the City's claims that Defendants falsely advertise their services to consumers, Defendants rely heavily on purported disclosures in their current Terms and Conditions ("T&C") or elsewhere in the labyrinth of the Platforms. As explained in Section II below, these "disclosures" do not cure Defendants' deceptions and in some cases only add to them. Even if Defendants had fully disclosed their practices, Section III explains that the "disclosures" are buried in dense T&C or hard-to-find support pages and thus are not sufficiently prominent or proximate to the deception. Defendants cannot publish deceptive advertisements and then insist that busy consumers should have known better based on "disclosures" hidden in places that Defendants know consumers are unlikely to find or read, much less understand. In any case, whether Defendants adequately disclosed their practices is a question of fact and is thus not ripe for resolution. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020).

Defendants assert that they have been a "life raft" during the pandemic, but the City's investigation tells another story: Defendants mistreat restaurants and delivery drivers while

deceiving consumers that their services are better and cheaper than they really are. The Complaint amply pleads that this misconduct violates City law. The Motion should be denied.

# I.     APPLICABLE LEGAL STANDARDS AND THRESHOLD ISSUES

## A.     Legal Standards Governing Defendants' Motion to Dismiss

Under Rule 12(b)(6), courts accept a complaint's allegations "as true and draw all reasonable inferences in plaintiff's favor." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021). A complaint need only "plead facts to 'state a claim that is plausible on its face'" (*id.* at 586), a "low" bar. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016). Although Rule 9(b) requires that fraud-based claims be pled with particularity, Rule 8 governs unfair-practices claims not based on deception (*see Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730, 738-39 (7th Cir. 2019)), as well as claims asserting a likelihood of confusion, *see Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1233-34 (N.D. Ill. 2005).

Whether marketing is deceptive or likely to confuse consumers are "'question[s] of fact'" generally not susceptible to Rule 12(b)(6). *Bell*, 982 F.3d at 479. "'[T]he determination [ ] whether an ad has a tendency to deceive is an impressionistic one more closely akin to a finding of fact than a conclusion of law.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014).

DoorDash asks the Court to consider two T&C documents because they are referenced in the Complaint. Mem. Law Supp. Defs.' Mot. Dismiss Compl., ECF No. 27 ("Mot."), 3 n.3; Shao Decl. (ECF No. 28), Exs. A & C. The T&C do not help Defendants for reasons described below. Beyond this, documents may be considered part of the pleadings only "if they are referred to in the plaintiff's complaint *and* are central to [the] claim"—a "narrow exception" to the usual rule. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (emphasis altered).

The T&C are not central to the City's claims. The Complaint does not cite Exhibit C at all. The Complaint quotes Exhibit A, which DoorDash describes as the current T&C (dated March 29,

2021), in a single footnote about menu price markups. Compl. ¶ 85, n.18. The Complaint does not allege that the T&C are deceptive; it cites the T&C to show why they are inadequate to cure deceptions on Platform menu pages. Even if the T&C were central to the City's menu price markup claims, Defendants inappropriately rely on both documents in seeking dismissal of other claims. Mot. at 3, 11, 13, 17. Moreover, the T&C have changed over time. Discovery is necessary to give the Court all versions of the T&C for the full period of the City's claims, from 2014 to present.

### B. Chicago's Consumer Protection Ordinances

The Complaint pleads claims under MCC §§ 2-25-090 and 4-276-470, which prohibit "deceptive" and "unfair" practices. In construing the ordinances, "consideration shall be given" to interpretations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and the Federal Trade Commission Act ("FTCA"). MCC § 2-25-090(a); *see City of Chi. v. Purdue Pharma L.P.*, 2021 WL 1208971, at \*4 (N.D. Ill. Mar. 31, 2021).

A deception claim requires: (1) "a deceptive act or practice"; (2) "intent that the plaintiff rely on the deception"; and (3) "occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). A statement is deceptive "'if it is likely to mislead consumers, acting reasonably under the circumstances, in a material respect.'" *Suchanek*, 764 F.3d at 762. When evaluating advertisements, courts look to the "overall, net impression made by the advertisement in determining what messages may reasonably be ascribed to it." *F.T.C. v. U.S. Sales Corp.*, 785 F. Supp. 737, 737 (N.D. Ill. 1992); *accord Williams v. Bruno Appliance & Furniture Mart, Inc.*, 379 N.E.2d 52, 54 (Ill. App. Ct. 1978). The City need not plead actual reliance, deception, or injury. *See City of Chi. v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1071 (N.D. Ill. 2016); *People ex rel. Madigan v. United Constr. of Am.*, 981 N.E.2d 404, 408-11 (Ill. App. Ct. 2012).

In analyzing unfairness claims, courts consider whether the practice (1) "offends public policy," (2) "is immoral, unethical, oppressive, or unscrupulous," and (3) "causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961 (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). A claim need "not satisfy all three criteria"; rather, "a 'practice may be unfair because of the degree to which it meets one of the criteria.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008).

Defendants misconstrue the Complaint as based solely "on harm 'to consumers'" (Mot. at 6, 22), ignoring the City's claims of unfair practices directed at restaurants and drivers. Compl. ¶ 205(b)-(c); *see id.* ¶¶ 114-15, 148-62, 164-70. Defendants do not dispute that MCC § 2-25-090 encompasses unfairness to businesses, including restaurants and Defendants' independent-contractor delivery drivers. For good reason: whether restaurants and drivers are "consumers" is "irrelevant" in a government-enforcement action. *People ex rel. Fahner v. Walsh*, 461 N.E.2d 78, 82 (Ill. App. Ct. 1984). In any case, the FTCA covers unfair practices that injure "competitors or other businessmen" (*Sperry*, 405 U.S. at 244 n.5), and the protections of the ICFA generally extend to businesses. *See, e.g.*, *Empire Home Servs., Inc. v. Carpet Am., Inc.*, 653 N.E.2d 852, 854 (Ill. App. Ct. 1995); *ABC Bus. Forms, Inc. v. Primador*, 2009 WL 4679477, at *1-2 (N.D. Ill. Dec. 1, 2009). The Complaint therefore properly pleads unfair-practices claims directed at restaurants and drivers.

## II. DEFENDANTS' CONDUCT VIOLATES CHICAGO LAW.

### A. The Platforms Falsely Advertise Fees to Hide the True Cost of Their Service.

To avoid "sticker shock" and make their service seem less expensive than it really is, Defendants have used a variety of unlawful tactics to mislead consumers. These include deceptively advertising low "delivery" prices and concealing pricing details at check-out,

deceptively charging a "Chicago Fee" designed to look like a government-imposed charge, and enhancing the deceptive effect of these statements through a manipulative website design.

### 1. Defendants' advertisements of delivery price are deceptive.

The Platforms misleadingly advertise "delivery" for an unqualified price. For example:



Compl. ¶ 39. But the price of delivery is not $2.99; it is $2.99, *plus* deceptively labeled "service" and other fees added at checkout, which can amount to *six times* the advertised delivery price. *Id.* ¶¶ 25-26. The "service" fee, in particular, is simply a delivery fee under a disguised name. *Id.* ¶ 27. It is only charged on delivery orders (never on pickup orders) and does not provide any definable "service" other than delivery. *Id.* ¶¶ 26-27.

In Defendants' bait-and-switch scheme, this conduct is the unlawful "bait" advertising. *See* 815 ILCS 510/2(a)(9) (declaring as deceptive advertising of "goods or services with intent not to sell them as advertised"). Courts have long recognized false advertisements of price—including promoting a price to consumers with no intent to honor it—as deceptive. *E.g.*, *Williams*, 379 N.E.2d at 53-55; *Garcia v. Overland Bond & Inv. Co.*, 668 N.E.2d 199, 205 (Ill. App. Ct. 1996); *Affrunti v. Vill. Ford Sales, Inc.*, 597 N.E.2d 1242, 1244 (Ill. App. Ct. 1992); *F.T.C. v. Standard Educ. Soc'y*, 302 U.S. 112, 114 (1937). Defendants neither intend to honor the advertised delivery price nor allow consumers to complete the transaction for that price. Compl. ¶¶ 23-24, 26(a), 28-29, 32, 37-38, 44-47. The deception is material because it goes directly to the price of Defendants' service, and Defendants intend for consumers to rely on the advertised price. *Id.* ¶¶ 31, 42. The

City has thus properly pled that Defendants' delivery-price advertisements are deceptive. *Id.* ¶¶ 197(a)-(b), 204(a)-(c).

Defendants mischaracterize the City's claims as alleging only a failure to disclose the existence of additional fees early enough in a transaction. Mot. at 15. That was the fact pattern in *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118 (N.D. Ill. June 9, 2020), upon which Defendants principally rely, but it is distinguishable. In *Washington*, Hyatt initially quoted a room rate "'from $104 avg/night'—meaning that the $104 price constitutes the *minimum starting price*." *Id.* at *4. Defendants' advertised delivery price contains no similar signal that Defendants would add charges later. Moreover, the "resort fee" that Hyatt added at checkout covered a distinct set of amenities outside the room (e.g., bicycle rental, gym, business center). *Id.* at *2. Defendants' "service" fee is not analogous because, as the Complaint alleges, it provides no additional benefit to the consumer. Compl. ¶ 27. Defendants' advertised "delivery" price is thus facially false.[1]

Defendants cannot cure their deceptive advertisements by disclosing the total price at check-out. "The law is violated if the first contact … is secured by deception … even though the true facts are made known to the buyer before he enters into the contract of purchase." *Carter Prods. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951); *accord F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014) (citing cases). The cases on which Defendants rely did not involve deceptive advertisements that were allegedly cured later by a disclosure; those cases turned on the

---

[1] Although the Court need not determine whether *Washington* remains good law, the *Washington* court lacked the benefit of the Seventh Circuit's decision in *Bell*, which rejected a district court decision relied on in *Washington*. 2020 WL 3058118, at *5 (citing *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910 (N.D. Ill. 2017)). *Bell* explained that the district court "depart[ed] dramatically" from Rule 12(b)(6) and the "practical and fact-intensive approach to consumer behavior under … consumer-protection laws." 982 F.3d at 476, 478. Moreover, the only court to cite *Washington* rejected it when faced with similar allegations. *Hall v. Marriott Int'l, Inc.*, 2020 WL 4727069, at *8-9 (S.D. Cal. Aug. 14, 2020) (analyzing advertised low hotel rates as deceptive "bait" advertising in distinguishing other cases).

businesses providing complete information—including what the courts deemed to be adequate disclosures of material information—*at the same time* the alleged deception occurred. *See Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1014 (N.D. Ill. 2018) (consumer had access to menu with full pricing information); *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996) (consumer received information about overdraft fees when opening account). By contrast, the Complaint alleges—and Defendants do not dispute—that Defendants do not disclose the total price of their service when advertising the "delivery" price. Compl. ¶ 24.

Defendants' check-out process reinforces, rather than cures, the deception. The check-out page highlights the previously advertised "delivery" price, labeling it as a "Delivery Fee" and displaying it prominently. Compl. ¶ 48. Defendants conceal other fees charged for delivery (e.g., the "service" fee), which appear nowhere on the check-out page and are bundled together with taxes on a separate line item labeled "Fees & Estimated Tax." *Id.* ¶¶ 48-49. To see them, a consumer would need to take an additional affirmative step to click on a detailed breakdown of "Fees & Estimated Tax" (*id.* ¶ 52), an option that is not prominent enough to operate as an adequate disclosure (*id.* ¶¶ 50-51, 53). *See* Section III, *infra*; *see also Bell*, 982 F.3d at 476 (reversing dismissal because "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product").

Even if the Court considers them, the T&C do not cure the deception either. The language of the current T&C that Defendants cite (Mot. at 13) states only that Defendants *may* charge myriad fees. Defendants' reliance on *Boone v. MB Fin. Bank*, 375 F. Supp. 3d 987 (N.D. Ill. 2019), is thus misplaced. *Boone* held that a banking practice was not deceptive where it was expressly authorized by the user agreement. Here, the City does not allege that charging fees is deceptive. Rather, the

City's claim arises from Defendants' deceptive price advertisements and fee labels, which are not disclosed or authorized by the T&C. The T&C do nothing to dispel the deception caused by falsely advertising "$2.99 delivery." *See also* Section III, *infra*.

### 2. Defendants deceptively presented the "Chicago Fee."

The City sufficiently pled claims of deception regarding Defendants' "Chicago Fee." Compl. ¶¶ 197(c)-(d), 204(d)-(e). During public-health restrictions necessitated by COVID-19, the City enacted an emergency ordinance limiting commissions that Defendants could charge restaurants. *Id.* ¶ 7. To recoup revenue lost on the restaurant side, Defendants imposed a so-called "Chicago Fee" on consumers at check-out. *Id.* ¶ 8. The name "Chicago Fee" falsely implied that the City required, authorized, or received payment from this charge. *Id.* ¶¶ 57-58. The City's allegations of deception are not merely "plausible"; they are supported by actual statements that consumers believed the City imposed the charge. *Id*. ¶¶ 59-62.

Defendants speculate that reasonable consumers could not believe that the Chicago Fee was a "tax" because Defendants called it a "fee." Mot. at 16. Governments routinely impose charges described as "fees" rather than "taxes," so this is a distinction without a difference.

Defendants next respond that consumers could learn the truth by clicking a "tool tip" on the checkout page. Mot. at 16. In the unlikely event that consumers took that step (Compl. ¶¶ 64-65), Defendants did not explain in this "tool tip" that *they* imposed the fee, which was the core of the deception. It just said that consumers "will now see a charge added to Chicago orders." *Id.* ¶ 63. To make matters worse, Defendants' explanation added yet more misrepresentations about the purpose of the fee (*id.* ¶¶ 66-67), which Defendants ignore.

Defendants finally argue that a fee cannot be deceptive if the full cost is disclosed. Mot. at 16. In fact, it is deceptive to present a fee as a pass-through government charge if the company retains the funds. *See*, *e.g.*, *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. Dist. Ct.

App. 2000); *see also Bernhauser v. Glen Ellyn Dodge, Inc.*, 683 N.E.2d 1194, 1200 (Ill. App. Ct. 2001) (reversing dismissal where defendant deceptively "implie[d]" that fee was a pass-through third-party charge, finding "irrelevant" that defendant "accurately" quoted the fee).

### 3. Defendants' pricing conduct is also unfair to consumers.

Defendants' pricing conduct is an "unfair" practice. Compl. ¶ 205(a). "False advertising alone is an unfair practice under the ICFA." *Bonahoom v. Staples, Inc.*, 2021 WL 1020986, at *5 (N.D. Ill. Mar. 17, 2021); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (plausible allegations of "false advertising" suffice to plead that a practice is "unethical" and "offends public policy"). Beyond the deceptions described already, Defendants have engaged in other types of unfair conduct. Defendants' manipulative website design compounds their false advertising by directing consumer attention away from important information and obstructing the consumer's understanding of material facts. Compl. ¶¶ 29-30, 45-46, 50-51, 53, 65. This conduct is unscrupulous and oppressive because it diminishes free choice by steering consumers without their knowledge. *Id.* ¶ 205(a). Defendants' practices cause substantial injury to consumers, who pay more than they were led to believe or might have been willing to pay absent the initial false advertisement. *Id.* ¶¶ 45-46, 54-56.

Defendants argue that their practices are not "oppressive" because consumers can "go elsewhere for the same service." Mot. at 15. But the deceptions detailed above, in combination with misleading pricing and a manipulative website, impede consumers' understanding of the price they will pay. A consumer cannot shop around if she does not know that she is being duped.

### B. The DoorDash Platform Deceives Consumers with Misleading Promotions.

Defendants deceive consumers into ordering through the Platforms by advertising promotional discounts (e.g., "$5 off") without disclosing that the discounts apply only if orders exceed a minimum amount (e.g., $50). Compl. ¶¶ 96-100. This omitted information is material to

9

consumers, who may choose another ordering option if they knew the discount would not apply. *Id.* ¶ 110. Defendants intend for consumers to rely on this deception, increasing the likelihood that consumers order through the Platforms. *Id.* ¶ 109. These allegations adequately plead claims that Defendants deceptively advertise promotional discounts. *Id.* ¶¶ 197(g)-(h), 204(h)-(i).

Defendants argue that they disclose the minimum-order requirement if consumers add a promotional code at check-out. Mot. at 4, 17. But there is no reason for consumers to add a promotional code because the advertisements do not provide a code. Compl. ¶ 101. Rather, the Platforms automatically apply discounts on eligible orders without the need to enter any code. *Id.*

Defendants also suggest that consumers should investigate for themselves whether they received the promised discount. Mot. at 17. Defendants' check-out page does not alert consumers when an order is ineligible for the selected discount (Compl. ¶ 100), however, and the ICFA "eliminates any requirement of plaintiff diligence in ascertaining the accuracy of misrepresentations." *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13 (Ill. App. Ct. 2001); *see Bell*, 982 F.3d at 476 ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see."). The check-out page also fails to provide the key piece of information: the reason why an order failed to qualify for the promised discount (e.g., did not meet a minimum purchase amount). In any case, Defendants' advertisements violate the law regardless of what information Defendants later provide at check-out because the advertisements lure consumers into the transaction under false pretenses. *See Garcia*, 668 N.E.2d at 204-05.

Finally, Defendants cite the current version of their T&C. Mot. at 17. But the cited language says nothing about minimum-order requirements for promotional discounts. Regardless, the T&C would not provide an effective disclosure even if they contained the necessary information because the T&C are not visually prominent nor proximate to the deceptive statements. *See* Sec. III, *infra*.

### C. The Platforms Deceive Consumers with Undisclosed Menu Price Mark-Ups.

In addition to paying Defendants' fees, Chicagoans ordering through the Platforms pay invisible upcharges for the food itself, above the price offered for identical items on the restaurant's own website. Compl. ¶ 69. These markups are widespread, increasing menu prices up to 58%. *Id.* ¶¶ 70-73, 88-92. Yet Defendants do not disclose that prices are marked up (or even that they may differ) from restaurant website prices. *Id.* ¶¶ 69-71, 76. Defendants compound the deception with misleading half-truths at the bottom of menu pages (e.g., "Prices on this menu are set directly by the Merchant"). *Id.* ¶ 80. The omitted information is material to consumers, who may order directly from restaurants if they knew the truth. *Id.* ¶¶ 77-78. Defendants intend for consumers to rely on their deceptive menu pages, increasing consumer orders through the Platforms. *Id.* ¶ 79. These allegations amply plead that Defendants' menu pages are deceptive. *Id.* ¶¶ 197(e)-(f), 204(f)-(g).

Defendants make three arguments for dismissal. First, Defendants mischaracterize the Complaint as asserting an affirmative duty for retailers to disclose their competitors' prices, analogizing this case to Nordstrom's shoe sales. Mot. at 10-11. Defendants are not retailers of goods, competing with restaurants. They are middlemen—conveying orders to restaurants and delivering meals to consumers. The Platforms are thus not like Nordstrom; they are like FedEx. A reasonable consumer expects to pay for FedEx to ship shoes but does not expect to pay FedEx a mark-up on the shoe price itself. A reasonable consumer likewise would have no reason to expect prices on Platform menus—which mimic restaurants' actual menus (Compl. ¶¶ 91-92)—to be inflated. Advertising identical menu items without disclosing the markup is deceptive. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996) (upholding claims where the company was aware of material facts and failed to disclose them in its statements to consumers).

Second, Defendants argue that consumers may discover the truth by investigating Platform menu prices themselves, either by comparison shopping between Platform and restaurant websites

or by uncovering hidden explanations on customer-support pages. Mot. at 10-11. But again, the ICFA "eliminates any requirement of plaintiff diligence in ascertaining the accuracy of misrepresentations." *Miller*, 762 N.E.2d at 13; *see Bell*, 982 F.3d at 476; *Al Haj v. Pfizer, Inc.*, 338 F. Supp. 3d 741, 756 (N.D. Ill. 2018). The cases that Defendants cite do not suggest otherwise. Each addresses situations where, unlike here, a reasonable consumer would know to expect varying prices: for example, between different retailers or different modes of purchase (e.g., online vs. in-store). In any event, the Complaint amply alleges how and why Defendants' menu pages likely mislead consumers. Compl. ¶¶ 70-72, 77-81. Defendants' contrary view—that consumers expect Platform and restaurant prices to vary—presents "a question of fact that cannot be resolved on the pleadings." *Bell*, 982 F.3d at 483. And for reasons discussed in Section III, the "disclosures" that Defendants cite do not cure the deception.

Third, Defendants argue that because Affiliated Restaurants can set Platform menu prices, Defendants "cannot be charged with doing so deceptively." Mot. at 11-12. But it is not the setting of prices that is deceptive; it is Defendants' lack of disclosures, misleading half-truths, and presentation of menus designed to look like restaurants' actual menus. Even where restaurants control prices, Defendants bear the responsibility to maintain non-deceptive Platform pages.

### D. DoorDash Deceptively and Unfairly Used Driver "Tips" to Subsidize Base Pay.

The City has pled claims of deceptive and unfair conduct regarding DoorDash's statements about driver tips. Compl. ¶¶ 197(o)-(p), 204(p)-(q), 205(c). Between 2017 and 2019, DoorDash deceptively solicited consumers to "tip" its independent-contractor drivers, then used that money to subsidize its own driver pay obligations. *Id.* ¶¶ 166-168, 171. DoorDash has always offered a guaranteed minimum payment to its drivers as an incentive to accept a delivery job. Before July 2017, consumer tips were paid on top of the guaranteed payment. *Id.* ¶ 164. From July 2017 to September 2019, however, DoorDash counted tips as part of DoorDash's own guaranteed payment

to drivers while deceptively telling consumers that the full tip would go to the driver. *Id.* ¶¶ 165-168, 173-179. Through this conduct, DoorDash deceived consumers and unfairly deprived drivers of tip income—all while using consumer tips to offset its own payment obligations.

### 1. The City's claims are timely.

Neither of the governing ordinances contains a statute of limitations. Defendants nevertheless argue that a general limitations period in 735 ILCS 5/13-202 applies because fines under the ordinances constitute "penalties." Mot. at 22-23. This argument fails for three reasons. *See Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("Dismissing a complaint as untimely at the pleading stage is an unusual step.").

First, under the *nullum tempus* doctrine, government-enforcement actions implicating "public rights" are immune from general statutes of limitations. *City of Shelbyville v. Shelbyville Restorium, Inc.*, 451 N.E.2d 874, 875-76 (Ill. 1983). Courts have repeatedly applied *nullum tempus* where there is a public interest in enforcing a state or local law, and the enforcement authority has legal authority to act. *E.g.*, *id.*; *Bd. of Educ. of City of Chi. v. A, C, & S, Inc.*, 546 N.E.2d 580, 601 (Ill. 1989). The City likewise seeks to vindicate a public right: enforcement of its consumer protection laws to deter and redress misconduct, as the City is charged by law to do. *See* MCC § 2-25-090(b); *see also City of Chi. ex rel. Scachitti v. Prudential Sec., Inc.*, 772 N.E.2d 906, 915 (Ill. App. Ct. 2002) (*nullum tempus* generally applies when suit seeks "to regulate for public welfare").

Defendants argue that because they stopped this misconduct, the City's action converted from one seeking to vindicate a public right to one pursuing only a private right on behalf of a "small" group. Mot. at 23 n.11. It is "irrelevant" that there is no ongoing public threat, (*City of Chi. v. Latronica Asphalt & Grading, Inc.* 805 N.E.2d 281, 290 (Ill. App. Ct. 2004)), however, and *nullum tempus* does not require "an interest affecting everyone." *A, C, & S*, 546 N.E.2d at 601. The sole case cited by Defendants that rejected *nullum tempus* contradicts precedent and is

13

distinguishable in any event. *See People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990, 993 (Ill. App. Ct. 2003) (rejecting *People ex rel. Martin v. Lipkowitz*, 589 N.E.2d 182, 185 (Ill. App. Ct. 1992)). *Tri State* involved a suit seeking to recoup 12.5 hours of vacation time for a single employee—a far cry from the City's attempt to deter misconduct in the marketplace generally and provide restitution to likely tens of thousands of injured drivers and consumers.

Second, section 13-202 applies only to "penal" statutes, not "remedial" laws. *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 307-08 (Ill. 2009). The ICFA is a "remedial enactment intended … to protect Illinois consumers." *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1017 (Ill. 1981). *Scott* rejected the notion that the ICFA is "penal" because it authorizes "a civil penalty," explaining that "the penalty is but one part of the regulatory scheme." *Id.*; *see Burlinski v. Top Golf USA Inc.*, 2020 WL 5253150, at *7 (N.D. Ill. Sept. 3, 2020) (citing *Scott* in holding that section 13-202 does not govern privacy statute). Fines are likewise but one part of the City's consumer-protection ordinances, which also authorize injunctive relief, restitution, and license revocation. *See* MCC §§ 2-25-090(f), 4-276-480. Even viewing the fines in isolation, a law must require "a predetermined amount of damages" to be penal. *Landis*, 919 N.E.2d at 307. The ordinances do not do that, permitting fines ranging from $50 to $10,000 per offense. *See Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, 2014 WL 4748272, at *6-8 (C.D. Ill. Sept. 24, 2014) (section 13-202 did not govern law authorizing statutory damages of $250 to $10,000 per offense). Thus, if a limitations period applied, the City's claims would be timely under 735 ILCS 5/13-205.

Third, Defendants concede that—at a minimum—the claims are timely in part. Mot. at 22. But "'Rule 12(b)(6) doesn't permit piecemeal dismissal of *parts* of claims.'" *Bilek*, 8 F.4th at 587; *see Audia v. Briar Place, Ltd.*, 2018 WL 1920082, at *5 (N.D. Ill. Apr. 24, 2018).

14

### 2. DoorDash's statements about driver "tips" deceived consumers.

The Complaint plausibly alleges that DoorDash's statements to consumers were misleading because a reasonable consumer would believe that her optional tip provided a supplement *on top of* the driver's base pay, in the same amount as the tip. Compl. ¶ 168, 171, 174-80. DoorDash did not disclose to consumers that it used tips to offset its own base-pay obligations. *Id.* ¶¶ 173-80. To the contrary, DoorDash labeled the payment as a "Dasher Tip" and told consumers that "100% goes to your driver." *Id.* ¶ 173. This was a sleight-of-hand; DoorDash used consumer tips to pay its drivers, but it did not pay them "tips" in the way any reasonable consumer would understand. DoorDash's deception was material to consumers, who intended to reward drivers for good service, above their usual pay. *Id.* ¶¶ 184-85. And DoorDash intended consumers to rely on its representations, profiting substantially from this deception. *Id.* ¶¶ 185, 187.[2]

Defendants argue that DoorDash's statements were technically true. Mot. at 24. But DoorDash's statements were misleading half-truths in the context of tipping, a well-understood practice of supplementing income *above* base pay. And even if DoorDash's statements were technically true, they were still misleading. *See Al Haj*, 338 F. Supp. 3d at 757; *Suchanek*, 764 F.3d at 761-62. As the Seventh Circuit explained in *Bell*, "[d]eceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning"; a statement is not immunized from liability just because it has "one non-deceptive interpretation." 982 F.3d at 477.

---

[2] The District of Columbia filed a consumer-protection action on identical tipping practices, which DoorDash settled for $2.5 million. *See* Consent Order and Judgment, *D.C. v. DoorDash, Inc.*, No. 2019-CA-007626 B (D.C. Super. Ct. Nov. 30, 2020), https://oag.dc.gov/sites/default/files/2020-11/DoorDash-Consent-Order.pdf.

Cases cited by Defendants are inapposite. *Stemm v. Tootsie Roll Indus., Inc*., 374 F. Supp. 3d 734, 740-41 (N.D. Ill. 2019), supports the City, finding plaintiff's deception allegations plausible despite defendant's protest that its disclosures "eliminate any possibility of deception." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938-42 (7th Cir. 2001), involved a very different context: a "highly regulated" industry where the FDA "specifically authorized" a manufacturer's statements about the advisability of substituting drugs and the manufacturer advised patients to "consult [] their physicians" in doing so. And unlike DoorDash's half-truths about driver pay, the bank in *Saunders* provided clear information about overdraft fees in a pamphlet when plaintiff opened an account. 662 N.E.2d at 608.

Defendants' argument about tip credits is a red herring. Mot. at 24-25. Compliance with a tip-credits law would not give DoorDash license to violate the City's consumer-protection laws. Moreover, Defendants' speculation that consumers understand the tip-credits law is inappropriate at the pleading stage. It is also inapplicable here because the tip-credits law applies only to employees, and DoorDash classifies its drivers as independent contractors.

DoorDash's explanations of driver pay did not cure its misrepresentations. Mot. at 23. One explanation that Defendants cite is irrelevant because it appeared on DoorDash's *driver*-facing website page. Compl. ¶ 183. The only consumer-facing explanation appeared on an FAQ page, which was itself misleading, confusing, and inaccessible from any page a consumer used during the ordering process. *Id.* ¶¶ 181-82. As the court explained in *Al Haj*, it is unreasonable to expect a consumer to cross-check facts with information from another location, 338 F. Supp. 3d at 756, and here, even cross-checking would not have cured the deception. *See* Section III, *infra*. And neither of these "disclosures" appeared at checkout, contrary to Defendants' argument. Mot. at 23.

Finally, Defendants incorrectly argue that DoorDash's tipping conduct "does not involve consumers." Mot. at 25. This is inaccurate. DoorDash used deceptive statements to solicit consumers to add a tip to their orders and misrepresented how that tip would be used. The City's claim is about these consumer-facing deceptions, not about DoorDash's pay structure itself.

### 3. DoorDash's tipping conduct is unfair to drivers.

DoorDash's tipping practice also was unfair to drivers. Compl. ¶ 205(c). The practice offended public policy and was unethical because it relied on a consumer deception. *See Benson*, 944 F.3d at 647. It caused "substantial injury to … businessmen" by impacting driver pay. *Sperry*, 406 U.S. at 244 n.5. As independent contractors, drivers are business owners protected by the City's ordinances. *See* Section I(B), *supra*. Defendants' Motion ignores this claim.

### E. Unauthorized Listings Mislead Consumers and Exploit Restaurants.

Since at least 2014, the DoorDash Platform has listed Chicago restaurants with which DoorDash has no contract ("Unaffiliated Restaurants") *without the restaurant's consent.* Compl. ¶ 112. DoorDash uses an automated method to "scrape" these restaurants' information (e.g., hours of operation, menu items, and prices) from other websites but does not verify that the information is accurate. *Id.* ¶¶ 117, 140. These unauthorized listings misleadingly convey to consumers that DoorDash has a business relationship with the restaurant, that consumers can reliably order based on the information presented, and that any overcharges will be refunded. *Id.* ¶¶ 120, 133-35, 140-42. Unauthorized listings also disadvantage Unaffiliated Restaurants, which endure the reputational and financial harm that result. *Id.* ¶¶ 148-62. The City has sufficiently pled claims for each aspect of this deceptive and unfair conduct. Defendants' Motion misconstrues some claims, ignores others, and makes fact-based arguments that are inappropriate at the pleading stage.

### 1.    Unauthorized listings mislead consumers.

The City has properly pled claims that DoorDash's unauthorized listings are a deceptive trade practice. Compl. ¶¶ 197(i)-(j), (l)-(m), 204 (j)-(k), (m)-(n). This conduct has a tendency to mislead consumers. The DoorDash.com links that appear in Internet search results for the Unaffiliated Restaurant, the Platform's use of the restaurant's name and menu, and the option to order via the Platform all imply a business relationship between DoorDash and the restaurant that does not exist. *Id.* ¶ 120. Using inaccurate sources for menu and restaurant information, then failing to notify consumers that the information is unverified, is misleading. Consumers lack reliable information about whether, when, and what items they can order. *Id.* ¶¶ 140-42. These deceptions are material, and DoorDash intends for consumers to rely on them. *Id.* ¶¶ 118, 125, 132, 142-43.

Defendants' arguments actually illustrate why the Motion should be denied. Defendants point to language added to Platform pages for certain restaurants explaining that the restaurant is "unaffiliated with DoorDash." Mot. at 18-19. But DoorDash did not add that explanation until December 2020, *six or more years after the conduct began*. Compl. ¶¶ 119, 127-28. Even then, this explanation appeared only inconsistently, for some users and some Unaffiliated Restaurants but not others. *Id.* ¶¶ 127-32. Even if this language dispelled the deception after December 2020, that would only narrow the timeframe of the City's claim. But this language does not dispel the deception. It still misleads consumers as to a material fact: that the restaurant has not consented to the listing. *Id.* ¶ 132. The vague statement that a restaurant is "unaffiliated," followed by the explicit reassurance that "DoorDash customers can still place orders," maintains the fiction that DoorDash has the restaurant's permission to perform this service. *Id.* ¶¶ 128-29, 132.

Defendants' reliance on other purported disclosures is similarly flawed. At some point, which cannot be known without discovery, DoorDash added language at the bottom of unauthorized listings, past where consumers are likely to scroll, stating that "[m]enu prices for this

store are estimated." *Id.* ¶ 135. As Section III explains, this explanation is neither prominent nor proximate enough to the deception to be an effective disclosure. Consumers who take the added step of clicking a "Learn more" link in this language are taken to an FAQ page, which states that "[m]enu prices for unaffiliated merchants on DoorDash are estimated." *Id.* ¶ 136. Once again, the essence of the deception—that DoorDash has the restaurant's consent—remains. Consumers are not charged with doing the extra study needed to understand, in context, what estimated prices are and why DoorDash must use them. *See Miller*, 762 N.E.2d at 13; *Bell*, 982 F.3d at 476.

Defendants next disclaim responsibility "for sporadic errors in information pulled from the Internet," insisting that DoorDash lacks "editorial control" over the information. Mot. at 20. This rebuttal is entirely factual, contradicts the City's allegation that errors in unauthorized listings are widespread (Compl. ¶¶ 140, 144-47), and cannot be considered on a motion to dismiss. It also defies common sense: of course DoorDash controls what information *DoorDash* chooses to publish on its Platform for commercial gain. *City of Chicago v. Purdue Pharma*, 2015 WL 2208423, at *11-12 (N.D. Ill. May 8, 2015), cited by Defendants, is irrelevant: the issue there was whether a defendant had "editorial control" over information that *third parties* published.

Finally, Defendants dispute the City's allegation that DoorDash's lack of business relationship with Unaffiliated Restaurants is material to consumers. Mot. at 19. This factual dispute cannot be resolved now. *See Zak v. Bose Corp.*, 2019 WL 1437909, at *6 (N.D. Ill. Mar. 31, 2019). Regardless, the City's allegation is common-sense: if consumers knew that a restaurant did not authorize DoorDash's listing, some would choose to order directly from the restaurant or through an authorized third party. Compl. ¶¶ 125, 132. Defendants respond that consumers "always" have that choice, citing *Robinson*. Mot. at 19. But a deceptive statement is material if, as here, it "concern[s] the type of information upon which a buyer would be expected to rely in making a

decision to purchase." *Connick*, 675 N.E.2d at 595. *Robinson* is not to the contrary: it addressed the "oppressiveness" element of an unfairness claim where the defendant disclosed the challenged practice, not the materiality element of a deception claim. 775 N.E.2d at 962. In any event, Defendants do not and cannot contest that another part of the deception—the accuracy of DoorDash's unauthorized listings—*is* material to consumers. *See Lona's Lil Eats, LLC v. DoorDash, Inc.*, 2021 WL 151978, at *5 (N.D. Cal. Jan. 18, 2021) (upholding claim that DoorDash's statements about unaffiliated restaurant deceived consumers).

### 2. DoorDash causes confusion and misunderstanding regarding restaurants' approval of the listings and affiliation with DoorDash.

The City alleges—and Defendants *do not challenge*—that DoorDash's unauthorized listings cause "confusion or misunderstanding" in violation of MCC § 4-276-470. Specifically, DoorDash causes confusion or misunderstanding regarding Unaffiliated Restaurants' "approval" of listings (*id.* § 4-276-470(7)), and the Platform's "affiliation, connection or association" with Unaffiliated Restaurants (*id.* § 4-276-470(8)). Compl. ¶ 197(k). The City has thus adequately pled the elements of the claim. *See, e.g.*, *Manzo v. Uber Techs., Inc.*, 2014 WL 3495401, at *3 (N.D. Ill. July 14, 2014) (upholding claim under substantively identical IUDTPA).

### 3. DoorDash deceptively promises consumers accurate refunds.

The City has properly pled that DoorDash's failure to accurately refund overcharges to consumers is a deceptive trade practice. Compl. ¶¶ 203(o), 204(o). DoorDash's listed menu prices for Unaffiliated Restaurants are often incorrect because DoorDash pulls that information from the Internet, without verifying it. *Id.* ¶ 133. DoorDash promises consumers that "[i]f the amount charged [DoorDash] for your items at the store is lower than the amount you were charged at checkout, you'll receive a refund for the difference." *Id.* ¶ 135. In fact, DoorDash fails to accurately issue refunds, providing a partial refund in some instances and no refund in others. *Id.* ¶¶ 134, 138.

This practice has a tendency to mislead (*id.* ¶¶ 133-39); the promise of a refund is material to consumers, who do not want to overpay (*id.* ¶ 137); and DoorDash promises these refunds with the intent that consumers will rely on that promise to proceed with an order (*id.*).

Defendants do not dispute that the City pleads each element of a deceptive practice. In the mistaken view that the City asserts an *unfair* practice, Defendants argue that any consumer injury is insubstantial. Mot. at 22. But consumer injury is not an element of the City's deception claim. *See* Section I(B), *supra*. Defendants' argument is therefore irrelevant.

### 4. DoorDash's unauthorized listings are unfair to restaurants.

DoorDash's listing of Unaffiliated Restaurants without consent, and without verifying their menu offerings and other information, is an unfair trade practice. Compl. ¶ 205(b). The crux of the unfairness is that Unaffiliated Restaurants "do not invite DoorDash's involvement in their business, have not consented to the company's use of their intellectual property, and are left to handle customer service problems that are of DoorDash's making." *Id.* ¶ 148. As one Chicago restaurant owner put it, DoorDash "ruined my reputation" while "forcing me to do business with a company that I don't want to do business with." *Id.* ¶ 161.

The Complaint satisfies *Sperry*. *See* Section I(B). First, DoorDash's use of Unaffiliated Restaurants' trade names, menu items, and menu descriptions (Compl. ¶¶ 117, 120, 148-49, 205(b)) offends public policy protecting businesses' interest in their intellectual property. *See Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991) (practice offends public policy if "it is at least within the penumbra of some established concept of unfairness"). Those policies are found in the common law (*see Jim Mullen Charitable Found. v. World Ability Fed'n, NFP*, 917 N.E.2d 1098, 1104-05 (Ill. App. Ct. 2009)); the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/1 *et seq.*; and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

DoorDash's listing of Unaffiliated Restaurants also violates public policy against deceptive trade practices, as discussed in Sections II(E)(1) and (2).

Second, DoorDash's conduct is "immoral, unethical, oppressive, or unscrupulous" because it leaves Unaffiliated Restaurants with "little choice except to submit to it." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 715 (N.D. Ill. 2018). In fact, DoorDash gives Unaffiliated Restaurants no choice at all before adding them to the Platform and then requires some restaurants to spend months trying to get removed. Compl. ¶¶ 158-62.

Third, these listings cause Unaffiliated Restaurants substantial injury. The listings routinely result in negative consumer experiences that cause Unaffiliated Restaurants financial losses and lasting reputational harm. *Id.* ¶¶ 156-62. Thus, although the City need not plead all three elements of an unfairness claim (*Robinson*, 775 N.E.2d at 961), it has done so here.

Defendants inexplicably argue that the City has not brought any claim at all for restaurant unfairness. Mot. at 22. In fact, the Complaint expressly asserts this claim (Compl. ¶ 205(b)), supported by a six-page section titled "DoorDash's Unauthorized Listings Unfairly Hijack Restaurants' Information and Harm Their Reputations." *Id.* ¶¶ 148-62. Defendants' only other response is to claim—contrary to the well-pled allegations of the Complaint—that these listings actually help restaurants and that it is easy for restaurants to request removal from the Platform. Mot. at 22. Defendants are wrong,[3] but regardless, this cannot be resolved in a motion to dismiss.

---

[3] Press reports state that the City's lawsuit has been "universally celebrated by restaurant owners." Ashok Selvam & Naomi Waxman, *Chicago Sues Grubhub and DoorDash for Allegedly Scamming Basically Everyone: Restaurants, Drivers, and Customers*, EATER CHI. (Aug. 27, 2021), https://chicago.eater.com/2021/8/27/22644787/chicago-grubhub-doordash-lawsuit-third-party-delivery.

### III. DEFENDANTS' "DISCLOSURES" DO NOT CURE THEIR DECEPTIONS.

Much of Defendants' argument focuses on purported disclosures hidden on the Platforms, which they argue defeat the City's claims. But it is not enough for truthful information to appear somewhere on a website; the language must be conspicuous, proximate to the representation it modifies, and clear enough to avoid deception. None of Defendants' purported disclosures suffice.

"'Disclaimers or qualifications in any particular advertisement are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression. Anything less is only likely to cause confusion by creating contradictory meanings.'" *F.T.C. v. US Sales Corp.*, 785 F. Supp. 737, 751 (N.D. Ill. 1992). Courts have repeatedly rejected reliance on disclaimers that do not meet this standard. *E.g.*, *Porter & Dietsch, Inc. v. F.T.C.*, 605 F.2d 294, 301 (7th Cir. 1979); *F.T.C. v. QT, Inc.*, 448 F. Supp. 2d 908, 924, 927 (N.D. Ill. 2006), *aff'd*, 512 F.3d 858 (7th Cir. 2008).

Federal Trade Commission ("FTC") guidance explains how these principles apply to online advertising and e-commerce websites.[4] Disclosures "must be presented 'clearly and conspicuously,'" taking into account the proximity of the disclosure to the claim it is qualifying and the visual prominence of the disclosure. *.com Disclosures*, at 6-7. Furthermore, "[a] disclosure can only qualify or limit a claim to avoid a misleading impression. It cannot cure a false claim." *Id*. at 5. The FTC also considers that websites and mobile applications, unlike traditional print ads,

---

[4] Federal Trade Commission, *.com Disclosures: How to Make Effective Disclosures in Advertising* at 5-7, March 2013 (".com Disclosures"), https://www.ftc.gov/sites/default/files/ attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/ 130312dotcomdisclosures.pdf; *see also* FTC Policy Statement on Deception (appended to *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 174 (1984)); *In re Telomerase Activation Scis., Inc.*, Docket No. C-4644, 2018 WL 1941286, *1-2 (F.T.C. Apr. 18, 2018) (defining "clear and conspicuous"); "Full Disclosure," Sept. 23, 2014, https://www.ftc.gov/news-events/ blogs/business-blog/2014/09/full-disclosure.

"are interactive and have a certain depth—with multiple pages or screens linked together and pop-up screens, for example—that may affect how proximity is evaluated," acknowledging the reality that consumers "might not click on every page of the site and might not choose to scroll to the bottom of each page." *Id.* at 8, 19. *See also Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011) ("The FTC has noted that on-line consumers do not read every word on a webpage and advises advertisers that they must draw attention to important disclosures to ensure that they are seen."); *Fanning v. F.T.C.*, 821 F.3d 164, 172 n.7 (1st Cir. 2016) ("single statement on a separate [web] page is not prominent enough" to counteract the net impression of misleading statements); *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006).

T&C are no different. The FTC has warned that "disclosures necessary to prevent deception or unfairness should not be relegated" to T&C. *.com Disclosures* at 18. Courts have likewise rejected reliance on disclosures in T&C that were insufficiently prominent, proximate, and unambiguous to affect the net impression of the misleading claim.[5]

For these reasons, the "disclosures" that Defendants cite do not support dismissal. For example, the City alleges that language buried on a "customer support" page, stating that Platform menu prices "may vary from in-store prices or online prices," is not an effective disclosure of menu markups. Compl. ¶ 82. To even find this language, consumers must take *six affirmative steps* outside the transaction flow (*id.*), making the language neither visually prominent nor physically proximate enough to the menu pages to cure their deception. The T&C, which also appear on a separate webpage from the alleged deception, are similarly ineffective. Language regarding menu

---

[5] *See, e.g.*, *Fishon v. Peloton Interactive*, 2020 WL 6564755, at *4 (S.D.N.Y. Nov. 9, 2020); *F.T.C. v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1392 (M.D. Fla. 2018); *F.T.C. v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1220, 1224, 1228 (D. Nev. 2011), *aff'd in pertinent part*, 763 F.3d 1094 (9th Cir. 2014).

prices is hidden about 1/3 of the way through the more than 10,000 words of dense legalese, which consumers are unlikely to read much less understand. *Id.* ¶¶ 85-87.

Defendants' cases are factually inapposite. *People ex rel. Foxx v. Facebook, Inc.* dealt with alleged misrepresentations in the T&C themselves (called a "Data Use Policy"); proximity and prominence were not at issue. Holecek Decl. (ECF No. 29) Ex. A at 11. *Ambrosius v. Chicago Athletic Clubs, LLC*, rejected claims that a gym falsely advertised that members could redeem points in a rewards program only to later cancel the program, where "[n]othing in [the gym's] advertisement promised that the reward program would be available … in perpetuity." 2021 WL 4477002, *7 (Ill. App. Ct. Sept. 30, 2021). Under those facts, the court found that reasonable consumers would consult the T&C to learn the obvious—that the program could be ended. By contrast, the Complaint alleges that Platform menu pages are deceptive, and consumers are unlikely to suspect that Platform prices are inflated. Comp. ¶ 77. A reasonable consumer thus has no reason to search DoorDash's T&C for disclosures about this issue. In any case, the *current* T&C could not justify dismissal of the City's menu-page claims in their entirety; earlier versions of the T&C were even more misleading. *Id.* ¶ 85 n.18.

The other "disclosures" that Defendants cite (e.g., exhibits to the Shao Declaration) are similarly flawed. These are fact-intensive inquiries, so courts routinely deny motions to dismiss where plaintiffs sufficiently allege that disclaimers are not prominent or clear enough to alter an advertisement's misleading impression. *E.g.*, *Bell*, 982 F.3d at 476; *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 988-89 (N.D. Ill. 2013); *Al Haj*, 2019 WL 3202807, at *5; *Pearson v. Target Corp.*, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012). The result should be the same here.

## IV.    CONCLUSION

The City respectfully requests that the Court deny Defendants' Motion to Dismiss. The City has no objection to Defendants' request for oral argument, if helpful to the Court.

DATED:January 12, 2022                         Respectfully submitted,


**CITY OF CHICAGO DEP'T OF LAW,**              **COHEN MILSTEIN SELLERS &**
**AFFIRMATIVE LITIGATION DIVISION**           **TOLL PLLC**

By: */s/ Stephen J. Kane*                      By: */s/ Betsy A. Miller*
Stephen J. Kane                                Betsy A. Miller (*pro hac vice*)
Rachel F. Granetz                              Johanna M. Hickman (*pro hac vice*)
121 N. LaSalle Street                          Brian E. Bowcut (*pro hac vice*)
Room 600                                       Maya Sequeira (*pro hac vice*)
Chicago, IL 60602                              1100 New York Avenue, NW, Suite 500
Phone: (312) 744-6934                          Washington, D.C. 20005
stephen.kane@cityofchicago.org                 Phone: (202) 408-4600
rachel.granetz@cityofchicago.org               bmiller@cohenmilstein.com
                                               jhickman@cohenmilstein.com
                                               bbowcut@cohenmilstein.com
                                               msequeira@cohenmilstein.com


*Attorneys for Plaintiff City of Chicago*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 12, 2022, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Betsy A. Miller*