**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| City of Chicago, | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:21-cv-05162 |
| DoorDash, Inc. and Caviar, LLC, | Honorable Robert W. Gettleman |
| *Defendants.* | **Oral Argument Requested** |

**REPLY IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT .........................................................................................................1

    A.    DoorDash's Prices And Fees Are Not Deceptive Or Unfair ...................1

        1.    The City Fails To Defend Its Implausible Pricing Claims..........................1

        2.    The City Fails To Plausibly Allege DoorDash's Fees Are Deceptive Or Unfair.......................................................................................3

        3.    The City Fails To Plausibly Allege The "Chicago Fee" Is Deceptive Or Unfair.......................................................................................6

        4.    DoorDash's Promotional Discounts Are Not Misleading ...........................7

    B.    The City Fails To State A Claim Stemming From Listings Of Unaffiliated Restaurants.........................................................................................8

        1.    The City Fails To Plausibly Allege Consumer Deception..........................8

        2.    The City's Restaurant-Facing Allegations Are Not Actionable ...............10

    C.    The City Has Not Stated A Claim Based On DoorDash's Former Pay Model ...................................................................................................12

        1.    The City's Claims Based On DoorDash's Former Pay Model Are Untimely ...........................................................................................12

        2.    The City Admits The Former Pay Model Was "Quite Clearly" Disclosed..........................................................................................13

        3.    The City Alleges No Harm To Dashers From DoorDash's Former Pay Model ......................................................................................15

III.    CONCLUSION...................................................................................................15

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS        CASE NO. 1:21-CV-05162

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Al Haj v. Pfizer Inc.*,
338 F. Supp. 3d 741 (N.D. Ill. 2018) ............................................................2, 4, 14

*Alleman v. Collections Profs., Inc.*,
2019 WL 5576872 (N.D. Ill. Oct. 29, 2019)............................................................13

*Anzaldua v. Chi. Transit Auth.*,
2002 WL 31557622 (N.D. Ill. Nov. 15, 2002) ............................................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................11

*Batson v. Live Nation Entm't, Inc.*,
746 F.3d 827 (7th Cir. 2014) ............................................................11

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ............................................................3, 4, 5, 14

*Benson v. Fannie May Confections Brand, Inc.*,
944 F.3d 639 (7th Cir. 2019) ............................................................3, 14

*Bernhauser v. Glen Ellyn Dodge, Inc.*,
683 N.E.2d 1194 (Ill. App. Ct. 1997) ............................................................7

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ............................................................13

*Boone v. MB Fin. Bank, N.A.*,
375 F. Supp. 3d 987 (N.D. Ill. 2019) ............................................................4

*Carter Prods., Inc. v. FTC*,
186 F.2d 821 (7th Cir. 1951) ............................................................4, 6

*Champaign Cty. Forest Pres. Dist. v. King*,
683 N.E.2d 980 (Ill. App. Ct. 1997) ............................................................12

*City of Chicago v. Purdue Pharma L.P.*,
2015 WL 2208423 (N.D. Ill. May 8, 2015)............................................................10

*City of Shelbyville v. Shelbyville Restorium, Inc.*,
451 N.E.2d 874 (Ill. 1983)............................................................12

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*Connick v. Suzuki Motor Co., Ltd.*,
   675 N.E.2d 584 (Ill. 1996) .................................................................................................2

*In re Facebook Secs. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019) ...............................................................................4

*FTC v. EMA Nationwide, Inc.*,
   767 F.3d 611 (6th Cir. 2014) ..............................................................................................6

*Galanis v. Starbucks Corp.*,
   2016 WL 6037962 (N.D. Ill. Oct. 14, 2016).....................................................................15

*Garcia v. Overland Bond & Inv. Co.*,
   668 N.E.2d 199 (Ill. App. Ct. 1996) ..................................................................................8

*Glob. Cash Network, Inc. v. Worldpay, US, Inc.*,
   148 F. Supp. 3d 716 (N.D. Ill. 2015) ...............................................................................13

*Harris v. Las Vegas Sands LLC*,
   2013 WL 5291142 (C.D. Cal. Aug. 16, 2013)....................................................................6

*People ex rel. Hartigan v. Agri-Chain Prods.*,
   586 N.E.2d 535 (Ill. App. Ct. 1991) ................................................................................12

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................................1

*Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*,
   2014 WL 4748272 (C.D. Ill. Sept. 24, 2014) ..................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..............................................................................................3

*Killeen v. McDonald's Corp*,
   317 F. Supp. 3d 1012 (N.D. Ill. 2018) ...............................................................................6

*King v. Elementary Sch. Dist. #159*,
   2018 WL 1734645 (N.D. Ill. Apr. 10, 2018) ...................................................................13

*Landis v. Marc Realty, LLC*,
   919 N.E.2d 300 (Ill. 2009)................................................................................................12

*Latman v. Costa Cruise Lines, N.V.*,
   758 So.2d 699 (Fla. Dist. Ct. App. 2000) ...........................................................................7

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Liang v. Bevmo!*,
2020 WL 4461671 (Cal. Ct. App. Aug. 4, 2020) (unpub.) ........................................................5

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ........................................................8, 9

*Mack v. Plaza Dewitt Ltd. P'ship*,
484 N.E.2d 900 (Ill. App. Ct. 1985) ........................................................8, 9

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019) ........................................................1, 3

*McVickers McCook, LLC v. Wal-Mart Stores, Inc.*,
2010 WL 3283044 (N.D. Ill. Aug. 12, 2010) ........................................................4

*Melena v. Anheuser-Busch, Inc.*,
847 N.E.2d 99 (Ill. 2006) ........................................................4

*Miller v. William Chevrolet/GEO, Inc.*,
762 N.E.2d 1 (Ill. App. Ct. 2001) ........................................................2, 4

*Mueller v. Apple Leisure Corp.*,
880 F.3d 890 (7th Cir. 2018) ........................................................4

*Phillips v. DePaul Univ.*,
19 N.E.3d 1019 (Ill. App. 2014) ........................................................1

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ........................................................3

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2002) ........................................................10, 11

*Sapia v. Bd. of Educ. of City of Chi.*,
2020 WL 1503631 (N.D. Ill. Mar. 30, 2020) ........................................................13

*Saunders v. Mich. Ave. Nat'l Bank*,
662 N.E.2d 602 (Ill. App. Ct. 1996) ........................................................4, 5, 6

*Silver v. Pep Boys-Manny, Moe & Jack of Del., Inc.*,
2018 WL 1535285 (D.N.J. Mar. 29, 2018) ........................................................2

*Sternic v. Hunter Props., Inc.*,
801 N.E.2d 974 (Ill. App. Ct. 2003) ........................................................12

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*Sw. Sunsites, Inc. v. FTC*,
   785 F.2d 1431 (9th Cir. 1986) .........................................................................6

*Tichy v. Hyatt Hotels Corp.*,
   376 F. Supp. 3d 821 (N.D. Ill. 2019) .............................................................4

*Tierney v. Vahle*,
   304 F.3d 734 (7th Cir. 2002) ...........................................................................3

*Toulon v. Contl. Cas. Co.*,
   877 F.3d 725 (7th Cir. 2017) ...................................................................3, 9, 13

*Vill. of Depue v. Viacom Int'l, Inc.*,
   713 F. Supp. 2d 774 (C.D. Ill. 2010) ............................................................12

*Washington v. Hyatt Hotels Corp.*,
   2020 WL 3058118 (N.D. Ill. June 9, 2020) ....................................................5

*Wilcosky v. Amazon.com, Inc.*,
   517 F. Supp. 3d 751 (N.D. Ill. 2021) .............................................................5

*Wilson v. Moon*,
   138 N.E.3d 150 (Ill. App. Ct. 2019) ..............................................................14

*Zahora v. Orgain LLC*,
   2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ..................................................15

STATUTES

735 ILCS 5/13-202 ..............................................................................................12

MCC § 4-276-470(8) .............................................................................................9

OTHER AUTHORITIES

FTC, *.com Disclosures* (Mar. 2013) ..............................................................5, 6

*Webster's Dictionary* (2022 online ed.).............................................................7

## I.   INTRODUCTION

The City tries to duck and dodge a fact that dooms its case:  DoorDash discloses to consumers the practices underlying the City's deception and unfairness claims.  Illinois law does not allow the City to cherry-pick the parts of DoorDash's disclosures it likes while avoiding other parts that foreclose its claims.  *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. 2014).  Nor does the law allow the City to re-plead deficient claims through attorney argument that contradicts its own Complaint. *Anzaldua v. Chi. Transit Auth.*, 2002 WL 31557622, at *2 (N.D. Ill. Nov. 15, 2002).

The City's caustic rhetoric and "false advertising" mantra cannot conceal its failure to allege any actual *misrepresentation* by DoorDash, either.   The City bases its claims about DoorDash on unreasonable *assumptions* contradicted by information that was available to a reasonable consumer before purchase.  At bottom, the City's case boils down to its subjective belief that DoorDash should have used the City's preferred words with consumers or made even more repetitive disclosures.  That is not a cognizable legal claim.  *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1119 (N.D. Ill. 2019).  The City's case should be dismissed.

## II.   ARGUMENT

### A.   DoorDash's Prices And Fees Are Not Deceptive Or Unfair

The City fails to identify *any* affirmative misrepresentations by DoorDash regarding prices and fees, and its allegations show that the prices and fees were repeatedly disclosed to consumers.

### 1.   The City Fails To Defend Its Implausible Pricing Claims

The City concedes both that merchants set their own food prices on DoorDash and that there is nothing unlawful about a merchant offering different prices for their products online versus in-store.  Opp. at 12.  These facts foreclose the City's claims that DoorDash's menu prices are unfair or deceptive.  Nowhere does the City cite a *single* case holding that a company must

1

affirmatively disclose that lower prices may be available elsewhere when it never made any representation that the prices on its platform were the lowest available in the first place.

The City's attempt to compare DoorDash's marketplace to FedEx illustrates this fatal issue with its pricing claims. Opp. at 11. Holding DoorDash liable for a merchant opting to set a higher price for their food on DoorDash's site would be like holding FedEx liable for shipping a product a merchant priced higher online than in-store. Such a price differential is not unlawful even for the actual merchant who chose to set the variant price—much less DoorDash. *See Silver v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 2018 WL 1535285, at *5 (D.N.J. Mar. 29, 2018).

Nor do the City's cases support such a claim. The City cites *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584 (Ill. 1996) for the proposition that advertising identical items for different prices without a disclosure is deceptive. *Connick* holds nothing of the sort—rather, it holds that failure to disclose a material safety concern is deceptive because by selling a product, a merchant represents it "is reasonably safe for its intended use." *Id.* at 595. There is no such representation here. By offering an item for sale, a seller does not promise its price is the lowest available.

*Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1 (Ill. App. Ct. 2001) and *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741 (N.D. Ill. 2018) also did not hold that a consumer is "duped" into a purchase unless told a better price *may* be had elsewhere. Rather, both cases held that a consumer is not required to take steps to cure an *affirmative* misrepresentation. Here, the City never alleges that DoorDash represented that prices on its platform were the lowest available or even the same as other prices.[1] Moreover, the City alleges DoorDash *does* disclose to consumers that merchants set their own prices and that those prices may vary. Mot. at 10–11.[2] The City cannot base a

---

[1] The City's new attorney argument implying the menus on DoorDash appear identical to restaurant website menus, such that a reasonable consumer might assume the prices are the same, is belied by the screenshots in the Complaint. *See* Compl. ¶¶ 70–71. They are not identical.

[2] While the City argues that DoorDash's disclosures that merchants set their own prices is a "half-truth," the City never alleges there is anything untrue about this statement. It does not (and cannot

2

deception or unfairness claim on its preference that DoorDash spur consumers to make purchases from other sites the City favors. *Manley*, 417 F. Supp. 3d at 1119 (dismissing claim that disclosure was "insufficiently specific" or needed more detail); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017) (same). The City has failed to allege any basis for asserting a claim that DoorDash's practice of allowing merchants to set their own food prices is deceptive or so immoral and oppressive to be deemed "unfair." *See infra* pp. 11–12 (unfairness requirements).[3]

### 2. The City Fails To Plausibly Allege DoorDash's Fees Are Deceptive Or Unfair

In evaluating a consumer deception claim, a court *must* consider the "totality of the information made available" to consumers before purchase. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 494 (7th Cir. 2020); *Benson v. Fannie May Confections Brand, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). As the City implicitly seems to recognize, this standard bars its fee claims.

This is likely why the City first urges that this Court should *ignore* the fee disclosures made to users in DoorDash's binding terms. Opp. at 2–3. Case law forecloses that approach. *Benson*, 944 F.3d at 646. As DoorDash has shown, the exact same user terms *quoted* in the Complaint inform consumers upfront—before they can even access DoorDash's services—that it charges a "Delivery Fee" separate from a "Service Fee" and other fees. Mot. 13–14 (Shao Decl. Ex. A § 11). The City cannot "select[] only portions of documents that support [its] claims, while omitting portions of those very documents that weaken—or doom—[its] claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th

---

consistent with Rule 11) allege that DoorDash sets the food prices for merchants on its platform. In fact, its brief concedes the opposite. Opp. at 12. The City's desire that DoorDash use the City's *preferred* words to convey the *exact same information* is not a cognizable legal claim.

[3] The City's claims that DoorDash concealed or misrepresented material information from consumers all sound in fraud and are thus subject to Rule 9's pleading requirements. Mot. at 6. The City cannot re-cast them now as vague and unspecified "unfairness" claims, as it attempts to do (Opp. at 2), in search of a lower pleading standard. *E.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (rejecting plaintiff's argument for Rule 8's standard, despite mention of unfairness, when claims sounded in deception).

Cir. 2002) (plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim had no merit"). The City's "artful pleading" cannot prevent this "court [from] independently examin[ing]" DoorDash's user terms quoted in the City's Complaint. *McVickers McCook, LLC v. Wal-Mart Stores, Inc.*, 2010 WL 3283044, at *3 (N.D. Ill. Aug. 12, 2010).[4]

The City also is wrong about the effect of those fee disclosures on its claims. For a century, courts have charged consumers with knowledge of information in contracts they enter into. *E.g.*, *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006). That is equally true for online agreements. *E.g.*, Dkt. 29, Ex. A, *People v. Facebook, Inc.*, No. 2018-CH-03868, at *11 (Ill. Cir. Ct. Cook Cnty. 2021). Based on this law, courts routinely dismiss claims where consumers agree to terms disclosing fees later alleged to be hidden. *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 997 (N.D. Ill. 2019); *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996); Mot. at 10–11, 13.

This settled rule further distinguishes this case from regulatory FTC guidance about best practices or inapposite product-labeling cases the City cites. In these product-labeling cases, tiny statements on the back of a label a consumer might not read cleared up affirmatively misleading statements on the front that the consumer could not avoid. *See Bell*, 982 F.3d at 476; *Miller*, 762

---

[4]  *See In re Facebook Secs. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019) (considering terms as it "would be unfair for Plaintiffs to reference th[e] document" in complaint while "suppress[ing] the actual policy"); *Tichy v. Hyatt Hotels Corp.*, 376 F. Supp. 3d 821, 846 (N.D. Ill. 2019) (similar). The City's effort to distinguish between Exhibits A and C fails. As is apparent from Exhibit A, Exhibit C's T&C for Promotional Offers and Credits is expressly incorporated in the binding user terms quoted in the Complaint. Shao Decl. ¶ 6 (citing Ex. A § 11(c)). The City cites no authority for its claim that DoorDash can rely on certain Exhibits in seeking to dismiss certain of the City's claims, but not others. Opp. at 3. The rule regarding consideration of documents "is a liberal one—especially where [as here] . . . the plaintiff does not contest the[ir] validity or authenticity." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). Moreover, the City's new attorney argument (Opp. at 7)—never alleged in its Complaint—that DoorDash's T&C may have materially varied in the relevant two-year period at issue is demonstrably false. *See* Decl. of Ilissa Samplin, Exhs. A–F (DoorDash consumer T&C since August 2019) (filed concurrently herewith).

4

N.E.2d at 13; *Al Haj*, 338 F. Supp. 3d at 756; *Carter Prods., Inc. v. FTC*, 186 F.2d 821 (7th Cir. 1951). While the law does *not* presume that a reasonable consumer reads the fine print on the back of a product label, binding case law *does* require that courts assume a reasonable consumer reads the information in user agreements to which they consent. *E.g.*, *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 764–65 (N.D. Ill. 2021); Dkt. 29, Ex. A, *People*, No. 2018-CH-03868, at *11. Thus, as courts have held, product labeling cases are "distinguishable on so many grounds as to render [them] not relevant" to claims outside of that context. *Liang v. Bevmo!*, 2020 WL 4461671, at *7 (Cal. Ct. App. Aug. 4, 2020) (unpub.). DoorDash's *upfront* disclosures defeat the purported basis for the City's fees claims (i.e., "bait-and-switch" advertising).[5]

Similarly, DoorDash's point-of-sale disclosures alone defeat the City's claims. As alleged by the City, DoorDash's checkout screen disclosed the total price and the amount of any fees applied to an order *before* a consumer placed it. Mot. at 14. The City cites no case finding this insufficient to disclose these costs. Instead, it attempts to distinguish cases like *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118 (N.D. Ill. June 9, 2020) holding the opposite.[6] But *Washington* explained that fees disclosed at checkout with the "exact amount [the consumer] will pay if [he] completes the" purchase are sufficient to "wholly dispel" any impression of a lower price created earlier in the ordering process. *Washington*, 2020 WL 3058118, at *5. And *Washington* rejected the City's claim that it is deceptive for a checkout screen to provide *further*

---

[5] The City also has not alleged any "bait-and-switch" conduct. *Saunders*, 662 N.E.2d at 608 (dismissing claim that overdraft fee was deceptive where Bank "essentially hid" it and "buried" it in several documents because Bank gave information disclosing the fee at account sign-up).

[6] The City says *Washington* is no longer good law because it cites (once) a product labeling case overruled in *Bell*. *Washington*'s key holding—that "provid[ing] clear and easy access to the existence, purpose, and amount" of fees at checkout is lawful—remains good law. 2020 WL 3058118, at *5. Indeed, *Bell* "stand[s] by the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used," and explicitly *distinguishes* the product labeling context at issue in that case from cases dismissing claims based on other disclosures. 982 F.3d at 477.

information about a point-of-sale fee via hyperlink. *Id.* Indeed, mobile screens *require* platforms like DoorDash to utilize space-saving designs such as tool-tips. *See* FTC.com Disclosures, at ii, 10–11 (Mar. 2013) (explaining "details about additional fees" that are "complex" "may be provided by using a hyperlink . . . adjacent to the price"). And DoorDash's other fees *also* appeared on the checkout screen in the *same font and size* (and directly adjacent to) what the City calls a "prominent[]" Delivery Fee (and subtotal) line item (Opp. at 7), making these fee disclosures fully compliant with the FTC guidance the City cites in support of its claim. *Id.* at 7–9; Compl. ¶ 48.

The City has failed to allege that DoorDash's fees are deceptive as consumers "received all the information necessary" about the fees before ordering. *Saunders*, 662 N.E.2d at 608. The Complaint shows that DoorDash "explicitly disclosed the existence and amount" of each fee "on a line directly" next to a final price, which a reasonable consumer would see before ordering. *Harris v. Las Vegas Sands LLC*, 2013 WL 5291142, at *2, *5 (C.D. Cal. Aug. 16, 2013). No reasonable consumer could continue to *assume* DoorDash's references to a "Delivery Fee" *implied* such a fee was all-encompassing or exclusive to other fees. *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) (even if ad "had a tendency to mislead consumers . . . Illinois law is clear that where other information is available to dispel that tendency, there is no possibility for deception"). And no order was "secured by deception" because the City alleges DoorDash charged the same amount for the specific "Delivery Fee" at checkout that it promoted to users in each merchant's store (*compare* Compl. ¶ 39, *with id.* ¶ 40).[7] *Cf. FTC v. EMA Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) (ads made literally false statement). The fee claims fail.

### 3. The City Fails To Plausibly Allege The "Chicago Fee" Is Deceptive Or Unfair

---

[7] The City relies on cases like *Carter Products*, 186 F.2d 821, that applied an amorphous "tendency or capacity to deceive" standard courts later rejected. *Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1436 (9th Cir. 1986) (new *Cliffdale Associates'* standard imposes higher burden). Deception claims now require the City meet the higher standard that a "reasonable consumer" would "likely" be deceived by the net impression of information available to them. *Id.*

The City's "Chicago Fee" claim rests on a similar *assumption* about the meaning of "fee" that is unreasonable given all the information available to a consumer. Opp. at 8. No consumer could *assume* a "fee" was actually a pass-through *tax* paid to the government where the City admits DoorDash called *all* the charges *it* imposed "fees" and distinguished them from "taxes." Mot. at 16. Nor could a reasonable consumer maintain such an assumption when the City admits DoorDash provided the below additional tool-tip at checkout informing consumers that it imposed this extra "fee" because Chicago capped the "fees that [*DoorDash*] may charge" restaurants:



*See* Compl. ¶ 63. Such an inference would be further unreasonable given that "fee" simply means a "fixed charge" or "sum paid or charged for a service." *Webster's Dictionary* (2022 online ed.).

None of the City's cited cases holds otherwise. *Bernhauser v. Glen Ellyn Dodge, Inc.*, 683 N.E.2d 1194 (Ill. App. Ct. 1997) held a fee disclosure was deceptive because it said it was an "Amount[] *Paid to Others* for You." *Id.* at 1200. Similarly, *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. Dist. Ct. App. 2000) considered a line item for "port charges" that included charges paid to the government and cruise line without any available itemization. *Id.* at 701. Here, DoorDash included the Chicago Fee as its own line item, as prominent as the "Delivery Fee" disclosure. No reasonable consumer could assume that the Chicago Fee was an additional tax paid to the City.

### 4.    DoorDash's Promotional Discounts Are Not Misleading

The City's claim that consumers are deceived by promotions is implausible. The City

contends that consumers "may choose another ordering option if they knew [a] discount would not apply" to their order due to additional terms like a minimum price requirement. Opp. at 9–10. But a consumer is free to make that choice at checkout when their order does not meet a promo offer's terms and the full price of the order is prominently displayed to them. A consumer is not harmed simply because they do not qualify for a discount.

The City tries to obscure that fact by mischaracterizing DoorDash's arguments. *First*, the Complaint demonstrates DoorDash discloses that promos will be subject to additional terms before a consumer sees any promo. Mot. at 17. That distinguishes this case from the case the City cites, *Garcia v. Overland Bond & Investment Co.*, 668 N.E.2d 199 (Ill. App. Ct. 1996), where the ads at issue contained none of the offer's material terms and no prior warning to consumers that such terms might exist. *Id.* at 204–05. *Second*, a consumer can always select the promo code option at checkout to see what promo terms have not been met to apply a given promo to their order and, if they want, meet those terms or decline to order from that particular restaurant. Mot. at 17.

## B. The City Fails To State A Claim Stemming From Listings Of Unaffiliated Restaurants

### 1. The City Fails To Plausibly Allege Consumer Deception

The City's defense of its "unaffiliated restaurants" allegations falls short. The City first asserts DoorDash misled consumers into thinking that DoorDash was associated with restaurants by permitting consumers to place orders with those restaurants on DoorDash. Mot. at 18. But the City fails to point to any actual misrepresentation by DoorDash; its arguments are predicated on the single assertion that DoorDash permitted consumers to order from these restaurants. *Id.* The implications of this theory are sweeping: under it, any time a department store, airline aggregator, or even a flea market offered goods from another business, it would have to disclaim to consumers an obvious fact—that it may or may not have a contractual relationship with that third party.

Nor has the City alleged that the existence of a contract between DoorDash and a restaurant is "an essential element to the transaction" and thus material. *Mack v. Plaza Dewitt Ltd. P'ship*, 484 N.E.2d 900, 906 (Ill. App. Ct. 1985). The only case the City cites on materiality, *Lona's Lil Eats, LLC v. DoorDash, Inc.*, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021), does not support it: *Lona's* did not address materiality, but rather dealt with whether a plaintiff had pled alleged misstatements with sufficient particularity to advance past a motion to dismiss. *Id.* at \*5. *Mack*, on the other hand, is instructive. There, a condominium buyer alleged the seller misrepresented the ownership share the buyer would obtain in the building. The court held that "any assumed misrepresentation in the percentage interest of common element ownership would [not] have been of *such essential importance* to a prospective unit owner that *no purchase of the unit would have been made*." *Mack*, 484 N.E.2d at 906 (emphases added). Such ownership interest was "only one of many features to be considered in the purchase of any given unit." *Id.*

Here, the City has not alleged—and cannot allege—that the esoteric issue of a merchant's contract status with DoorDash was more than "only one of many features" consumers might consider in choosing a restaurant or placing a delivery order. Nor can the City dispute the commonsense conclusion that such a consideration is dwarfed by far more pressing consumer concerns such as price, convenience, and food quality. Thus, the City fails to plausibly allege that the conduct it challenges is an "essential element to the transaction." As a result, its claim fails.

At any rate, the City improperly discounts DoorDash's disclaimers of lack of affiliation in a manner that strains credulity. As alleged, unaffiliated restaurants' menus on DoorDash state, in a big disclaimer at the top of the page: "Store is unaffiliated with DoorDash." Compl. ¶ 129. The City inexplicably argues this language is ambiguous, Mot. at 18, even though it tracks the language of the code provision on which the City relies. *See* MCC § 4-276-470(8) (prohibiting "false or deceptive representation concerning *affiliation*") (emphasis added). It is difficult to imagine what

DoorDash could say to make its lack of affiliation clearer. Even if the City can think of language it likes better, consumer protection statutes are not designed to permit regulators to replace perfectly clear language with their preferred wordsmithing. *See Toulon*, 877 F.3d at 740.

Finally, the City does not cite any case supporting its corollary deception theory: that by occasionally reposting incorrect menu information DoorDash did not author, DoorDash misleads consumers. Opp. at 18. A similar theory was rejected in *Purdue I*, in which the court held that a defendant cannot be held liable for allegedly misleading written content absent allegations of "editorial control." *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 2208423, at *11 (N.D. Ill. May 8, 2015) ["*Purdue I*"]. The City's conclusory effort to distinguish *Purdue I*—"of course DoorDash controls what information DoorDash chooses to publish," Opp. at 19—is belied by the Complaint, which states unequivocally that DoorDash *does not* edit third-party menus. Compl. ¶ 143. Thus, the City's allegations show that DoorDash has even less control over the content of menus than the *Purdue I* defendant, which allegedly "sponsored and facilitated the development of" literature. 2015 WL 2208423, at *11. The City provides no authority for its claim that acting as a platform for information authored by others—without altering it—is actionable. Such a ruling would place all publishers of third-party content at risk of liability from words they did not write.

### 2. The City's Restaurant-Facing Allegations Are Not Actionable

In an effort to save its unaffiliated restaurants theory, the City contends its Complaint asserts a claim for "restaurant unfairness." Opp. at 22. The MCC § 2-25-090 provision the City cites, however, is targeted *to consumers*, not restaurants. Indeed, the City posits that DoorDash's practices are unfair because they allegedly "cause substantial injury *to consumers*." Compl. ¶ 205 (emphasis added). The City cannot amend its claims—or assert new ones—in an opposition brief.

Even if the City *could* so contort its MCC § 2-25-090 claim, its allegations are insufficient. The City merely recites the legal elements of unfair conduct without allegations sufficient to tie

those elements to DoorDash's conduct. *Compare* Compl. ¶ 205, *with Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (setting forth elements of an unfairness claim). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," are not enough to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Nor are any of the City's *post hoc* arguments seeking to tie its allegations to the relevant standard sufficient. *First*, the Complaint fails to allege that DoorDash's conduct violates any particular public policy. Compl. ¶ 205 (alleging that DoorDash's practices generally "offend public policy"). In its *Opposition*, the City argues that DoorDash abridged a purported "public policy" interest in "intellectual property," Opp. at 21, but such rights were not alleged as the basis for a public policy violation anywhere in the Complaint. Courts routinely dismiss complaints that fail to specify the public policy a practice is alleged to violate. *Robinson*, 775 N.E.2d at 962. And regardless, the City fails to cite any case in which intellectual property rights—protected by laws that give rise to their *own* causes of action—supported an unfairness violation. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 831 (7th Cir. 2014) (concern that "Consumer Fraud Act might morph into an additional enforcement mechanism" for laws with private right of action).

*Second*, the City argues that "DoorDash's conduct is 'immoral, unethical, oppressive, or unscrupulous' because it purportedly leaves Unaffiliated Restaurants with 'little choice except to'" tolerate DoorDash's listing them. Opp. at 22. But the Complaint contradicts this argument—alleging incorrectly that it may be a nuisance to request removal, but conceding that it is possible. Compl. ¶ 158. That is far from "the type of oppressiveness and lack of meaningful choice necessary to establish unfairness." *Robinson*, 775 N.E.2d at 962 (affirming dismissal where plaintiffs did not allege they were "coerced into signing the leases because of dire alternatives threatened by Toyota" and that "they lacked reasonable alternatives in the marketplace").

*Third*, the City argues that "these listings cause Unaffiliated Restaurants substantial injury"

11

in the form of "financial losses and lasting reputational harm." Opp. at 22. Again, the City's claim targets "injury *to consumers*," not restaurants. Compl. ¶ 205. Because reasonable consumers are unlikely to be deceived into believing that DoorDash is affiliated with restaurants for which it explicitly disclaims any affiliation, *supra* pp. 8–10, no substantial harm—whether to consumers or restaurants—is caused by DoorDash's listings as a matter of law.

## C. The City Has Not Stated A Claim Based On DoorDash's Former Pay Model

### 1. The City's Claims Based On DoorDash's Former Pay Model Are Untimely

The City waited two years after DoorDash announced it was changing its Former Pay Model to pursue a stale claim for fines related to that practice. Illinois's statute of limitations bars its belated efforts to penalize a practice DoorDash voluntarily changed years ago.

*First*, the City is wrong to contend it is asserting a public right that should not be subject to a limitations period under the *nullum tempus* doctrine. Opp. at 13–14. The most important factor courts consider in determining whether a right is public is "who would be benefitted by the government's action." *City of Shelbyville v. Shelbyville Restorium, Inc.*, 451 N.E.2d 874, 877 (Ill. 1983). Courts thus do not apply *nullum tempus* where, as here, the primary beneficiary of the claim would be the government and a subset of consumers—and the public would receive, at most, an incidental benefit. *Vill. of Depue v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 781 (C.D. Ill. 2010) (dismissing claim); *Champaign Cty. Forest Pres. Dist. v. King*, 683 N.E.2d 980, 984 (Ill. App. Ct. 1997); *People ex rel. Hartigan v. Agri-Chain Prods.*, 586 N.E.2d 535, 537 (Ill. App. Ct. 1991).

*Second*, the City's reliance on a case holding that an *ICFA* claim was remedial, rather than punitive, in a different context is misplaced. Opp. at 14. A claim seeking a statutory *fine*—like the City's claim here—is not remedial. *Landis v. Marc Realty, LLC*, 919 N.E.2d 300, 307–08 (Ill. 2009) (subsection of Chicago ordinance was penal while others were not); *Sternic v. Hunter Props., Inc.*, 801 N.E.2d 974, 976 (Ill. App. Ct. 2003) (Chicago ordinance at issue here has "both

statutory penalties and remedial provisions"). The City's Former Pay Model claim is punitive and subject to the two-year limitations period.[8] *See* 735 ILCS 5/13-202.

*Third*, the Court can grant partial dismissal of a claim. That a sliver—roughly one month— of the Former Pay Model claim may be within the statute of limitations does not immunize the City from dismissal for the majority of the claim that is time-barred. Courts routinely grant partial dismissals due to such bars. *E.g.*, *Sapia v. Bd. of Educ. of City of Chi.*, 2020 WL 1503631, at *3 (N.D. Ill. Mar. 30, 2020) (granting partial dismissal); *King v. Elementary Sch. Dist. #159*, 2018 WL 1734645, at *4 (N.D. Ill. Apr. 10, 2018); *Glob. Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 720 (N.D. Ill. 2015). Any sliver of this claim fails on the merits in any event.

## 2. The City Admits The Former Pay Model Was "Quite Clearly" Disclosed

The City's allegations doom its Former Pay Model claim on the merits—namely, its concession that DoorDash "quite clearly" disclosed the Former Pay Model, Compl. ¶ 187, and the absence of an allegation that any Dasher got paid less than it disclosed (*i.e.*, $1-base-pay plus tip).

The City's main defense is that "a reasonable consumer would believe her optional tip provided a supplement *on top of* the driver's base pay in the same amount as the tip." Opp. at 15. But the Complaint admits DoorDash provided an accurate and "clear explanation" showing that *is* how the Former Pay Model worked. Compl. ¶ 183. Specifically, DoorDash explained that it would always give Dashers "$1 base pay" per delivery plus any "customer tip." *Id.* Nowhere does the City allege that DoorDash *even once* paid a Dasher less than this amount.[9] There can be no

---

[8] The City can seek only civil penalties (a punitive interest) as DoorDash ceased the alleged conduct long ago; no ongoing threat exists. And contrary to the City's assertion, *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, 2014 WL 4748272 (C.D. Ill. Sept. 24, 2014) held that a statutory *damages—not fine*—provision did *not* give rise to statutory *penalties*. *Id.* at *8.

[9] Truthful disclosures foreclose a deception claim. *Alleman v. Collections Profs., Inc.*, 2019 WL 5576872, at *6 (N.D. Ill. Oct. 29, 2019) ("Factually accurate statements" are not "deceptive"); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938–39 (7th Cir. 2001) (same). The City tries to distinguish *Bober* as involving a highly regulated industry—but the court decided regardless of that factor that the truthful statements were not misleading. *Bober*, 246 F.3d at 938–40.

consumer deception claim where the City *admits* a reasonable consumer's expectation about tips under the Former Pay Model was fulfilled. *Toulon*, 877 F.3d at 739–40 (dismissing deceptive practices claim where complaint admitted all relevant information was disclosed and plaintiff failed to allege defendant made false statements).

Nor can the City rely now on attorney argument that DoorDash provided this disclosure only to Dashers. Opp. at 16. The Complaint concedes that DoorDash provided the same information on the same FAQ page to consumers. Compl. ¶ 181 (explaining "Dashers will always receive at least $1 from DoorDash" "[i]n addition" to tips). Similarly, the Complaint concedes that DoorDash provided another disclosure to consumers in a tool-tip at the point-of-sale. *Id.* ¶¶ 176–78. Thus, unlike the sole case the City cites, consumers here did not have to "cross-check information" provided in fine print across multiple different product labels to understand how their tips might affect Dasher pay. Opp. at 16 (citing *Al Haj v. Pfizer, Inc.*, 338 F. Supp. 3d 741 (N.D. Ill. 2018) (denying dismissal of claim where consumer would have to compare ingredient list on Regular Strength and Maximum Strength Robitussin to find information)). Quite the opposite; an interested or curious consumer need only have clicked an adjacent tool-tip *or* read the same information on an FAQ clearly titled "Should I tip my Dasher?" because DoorDash provided its "quite clear[]" disclosures about tipping in *multiple* intuitive places. Compl. ¶¶ 176–78, 181.[10]

The City cannot rescue its claim by asserting that a consumer could ignore these disclosures and *assume* from the term "tip" at checkout that a tip would *never* affect whether DoorDash might later contribute *more* than its $1-base-pay to Dashers. A purported deceptive statement "must be looked upon in light of the totality of the information" available to consumers, including

---

[10] The City points to an old settlement between DoorDash and the District of Columbia, Opp. at 15 n.2, that is "irrelevant" because a settlement "is not an admission of guilt." *Wilson v. Moon*, 138 N.E.3d 150, 171 (Ill. App. Ct. 2019). In fact, DoorDash denied all the District's allegations. Consent Order, *D.C. v. DoorDash*, No. 2019-CA-007626 B, at *3 (D.C. Super. Ct. Nov. 30, 2020).

DoorDash's many disclosures about how tipping worked. *Benson*, 944 F.3d at 646. And the law does not credit "unreasonable or fanciful interpretations of labels." *Bell*, 982 F.3d at 477–78. A reasonable consumer does not draw strained assumptions from the use of a word, especially where such conclusions ignore common practices. *Zahora v. Orgain LLC*, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) ("reasonable consumer would not read into the label what is simply not there"); *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (dismissing based on uncommon reading). The City's concession that tip-credit laws ensure the amount of a tip *often* affects the final amount a company may contribute to a tipped worker indicates a reasonable consumer would understand the word "tip" to encompass such practices. Opp. at 16.[11]

At bottom, the City's tipping claim rests on an implausible theory: that consumers were deceived into leaving tips because of a fully disclosed agreement between DoorDash and *Dashers*—whereby DoorDash agreed to contribute *more* than the $1-base-pay plus tip for each delivery when a consumer left an inadequate tip. Compl. ¶ 181. Finally, there is no cognizable theory of *consumer* deception based on a fulfilled promise to *Dashers*. *See* Mot. at 25.

### 3. The City Alleges No Harm To Dashers From DoorDash's Former Pay Model

The City's conclusory attorney statement that the Former Pay Model "caused substantial injury" to Dashers, Opp. at 17, is not supported by a *single* allegation in the Complaint. It also is nonsensical. The Former Pay Model benefited Dashers—providing insurance in the form of a guaranteed DoorDash "pay boost" on top of its $1-a-delivery-plus-tip floor. Compl. ¶ 168. In any event, the City admits the Model was "quite clearly" disclosed to all Dashers. *Id.* ¶ 183.

### III. CONCLUSION

DoorDash respectfully requests that the Court dismiss the City's Complaint.

---

[11] The City argues tip credit laws are irrelevant because Dashers are independent contractors. Opp. at 16. But DoorDash is not seeking the "protection" of tip credit laws. The widespread use of tip credits merely illustrates how a reasonable consumer would understand the word "tip."

DATED:  February 11, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  _/s/ Joshua S. Lipshutz_____
Joshua S. Lipshutz (*pro hac vice*)
1050 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (*pro hac vice*)
Ilissa Samplin (*pro hac vice*)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
isamplin@gibsondunn.com

RILEY SAFER HOLMES
& CANCILA LLP

By:  _/s/ Patricia Brown Holmes_____
Patricia Brown Holmes
Sarah E. Finch
70 W. Madison Street
Suite 2900
Chicago, IL 60602
Phone: (312) 471-8700
pholmes@rshc-law.com
sfinch@rshc law.com

FORDE & O'MEARA LLP

By:  _/s/ Michael K. Forde_____
Michael K. Forde
Brian P. O'Meara
191 North Wacker Drive
31st Floor
Chicago, IL 60606
Phone: (312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com

*Attorneys for Defendants DoorDash, Inc. and Caviar, LLC*

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS                    CASE NO. 1:21-CV-05162

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 11, 2022, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Mickey Balestri*

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS                   CASE NO. 1:21-CV-05162