IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO ) | |
| ) | |
| Plaintiff, ) | Case No.   21 C 5162 |
| ) | |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| DOORDASH, Inc., and CAVIAR, LLC, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION & ORDER

Plaintiff the City of Chicago (the "City") brings a two-count complaint against defendants DoorDash, Inc., and Caviar, LLC, asserting various consumer-deception claims under the Municipal Code of Chicago ("MCC"). Count I alleges consumer deception under MCC § 4-276-470, and Count II alleges unfair practices under MCC § 2-25-090. Defendants have moved to dismiss both counts. (Doc. 26).   For the reasons stated below, defendants' motion is denied.

### BACKGROUND[1]

As alleged in the complaint, defendants are in the business of delivering food for restaurants via its websites and mobile apps.   Defendants have partnerships with certain restaurants across the country.   Through these partnerships, defendants take online orders from customers using its websites or mobile apps, and those orders are then relayed to the partner restaurants.   A customer who places an order using defendants' platforms can select to have the food delivered by defendants or can choose to pick it up themselves.   If a customer wants their order delivered, defendants will engage someone from their network of divers to go to the restaurant, pick up the order, and deliver it to the customer.   Defendants collect payments from

---

[1] The court has subject matter jurisdiction based on diversity of citizenship.   All facts properly pleaded are taken as true for purposes of the motion to dismiss.   See Bilek v. Fed. Ins. Co., 8 F.4th 581, 584 (7th Cir. 2021).

the customer for these orders and withholds various commissions and fees from partner restaurants in exchange for their services.

In its 210-paragraph complaint, plaintiff brings a suite of allegations based on defendants' business model. First, plaintiff brings several claims regarding defendants' pricing and fee structure. Plaintiff alleges that defendants' menu prices are inflated above the menu prices offered by the restaurants on their own websites, and that defendants do not disclose their markup to Chicago consumers. At most, defendants provide a cursory notation that menu prices on DoorDash's app "may vary from in-store prices or online prices." Plaintiff next alleges that defendants conceal the true cost of delivery fees by listing a low delivery fee upfront (such as delivery for $2.99) and waiting until checkout to disclose the full extent of the fees and service charges (which in fact total $6.84). Further, plaintiff claims that defendants deceive consumers with misleading promotions by failing to disclose that discounts apply only if the order exceeds a minimum amount. Plaintiff also claims that defendants' $1.50 "Chicago Fee" misleadingly conveys to consumers that the City government—not defendants—required or authorized this charge.

Plaintiff also accuses defendants of listing certain restaurants on its platforms without the restaurants' consent. According to plaintiff, these unauthorized listings misleadingly convey that defendants have a business relationship with the restaurants and that consumers can reliably order from these restaurants. Plaintiff additionally alleges that this practice is unfair to restaurants that "do not invite [defendants'] involvement in their business, have not consented to the company's use of their intellectual property, and are left to handle customer service problems that are of [defendants'] making."

Finally, plaintiff alleges that defendants deceptively solicited consumers to "tip" its independent-contractor drivers (whom defendants' refer to as "Dashers"), then used that money to reduce its own driver pay obligations. Defendants have always offered a guaranteed minimum payment to its drivers as an incentive to accept a delivery job. Plaintiff alleges that before July 2017, consumer tips were paid on top of the guaranteed payment. From July 2017 to September 2019, however, defendants counted tips as part of defendants' own guaranteed payment to drivers, while deceptively telling consumers that the full tip would go to the driver. According to plaintiff, this practice both deceived consumers and unfairly deprived drivers of tip income.

**DISCUSSION**

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim upon which relief may be granted." Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). A plaintiff's "[f]actual allegations must be enough to raise the right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To the extent a plaintiff's claims involve or include acts of fraud, such claims must comply with Federal Rule of Civil Procedure 9(b), which requires the pleading party to "state with particularity the circumstances constituting fraud." Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co., 631 F.3d 436, 439 (7th Cir. 2011).

Plaintiff's complaint pleads claims under MCC §§ 2-25-090 and 4-276-470, which prohibit "deceptive" and "unfair" practices, respectively. In construing the MCC provisions, "consideration shall be given" to interpretations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA") and the Federal Trade Commission Act ("FTCA"). MCC § 2-25-090(a); see City of Chi. v. Purdue Pharma L.P., 2021 WL 1208971, at *4 (N.D. Ill. Mar. 31, 2021).

To state a claim for deceptive practices in violation of MCC § 2-25-090, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." City of Chi. v. Purdue Pharma L.P., 211 F.Supp.3d 1058, 1070 (N.D. Ill. 2016) (citing Robinson v. Toyota Motor Credit Corp., 755 N.E.2d 951, 960 (2002)). A statement is deceptive "if it is likely to mislead consumers, acting reasonably under the circumstances, in a material respect." Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 762 (7th Cir. 2014). Plaintiff in this case does not have to allege reliance, injury, or causation because this is an enforcement action. See Purdue Pharma, 211 F.Supp.3d at 1070 (citing Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 160 (2002)); see also, People ex rel. Madigan v. United Constr. Of Am., 981 N.E.2d 404, 408-11 (Ill. App. Ct. 2012).

To state a claim for unfair practices under MCC § 4-276-470, a plaintiff must allege that a practice: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. See Purdue Pharma, 211 F.Supp.3d at 1070; Robinson, 775 N.E.2d at 961. All three criteria need not be present to support a finding of unfairness. Batson v. Live Nation Entm't, Inc., 746 F.3d 827, 830 (7th Cir. 2014). Unfairness

4

under the ICFA and MCC "depends on a case-by-case analysis." Siegel v. Shell Oil Co., 612 F.3d 932, 935 (7th Cir. 2010).

Plaintiff alleges that defendants' deceptive and unfair practices include: (1) failing to sufficiently disclose defendants' markup on menu prices; (2) deceptively advertising low delivery fees, and waiting until checkout to disclose the full extent of the fees and service charges; (3) deceptively presenting the "Chicago Fee" as a fee charged by the City of Chicago, and not defendants; (4) failing to disclose promotional terms such as minimum order amounts; (5) misleading consumers and exploiting restaurants by listing unaffiliated restaurants without the restaurants' consent; and (6) deceptively and unfairly using driver tips to reduce base pay. In its complaint, plaintiff included photographs of defendants' app and websites, and numerous social media posts from restaurants and Chicagoans expressing confusion over the Chicago Fee, inflated menu prices, and why unaffiliated restaurants are listed on defendants' websites.

Defendants move to dismiss both counts in their entirety, arguing that plaintiff has failed to state claims for consumer deception and unfair practices. According to defendants, their various fees, pricing, promotions, and tipping structure are not deceptive because they are disclosed at some point—either at the checkout screen or somewhere in the voluminous terms and conditions.[2] Defendants further argue that their conduct regarding unaffiliated restaurants is neither deceptive nor unfair because whether defendants have a contract with the restaurants is

---

[2] In addition, defendants argue that plaintiff's allegations regarding defendants' tipping structure are time-barred. Plaintiff alleges that defendants deceived consumers about how tips were allocated between July 2017 and September 2019. Plaintiff filed the instant complaint on August 27, 2021. According to defendants, only a month's worth of claims remain, because earlier claims are barred by the two-year statute of limitations in 735 Ill. Comp. Stat. 5/13-202. Even if defendants are correct, this argument goes to recovery, not to whether plaintiff has stated a claim.

immaterial to consumers, and any allegations regarding unfairness to the restaurants are not actionable under MCC § 2-25-090.

Contrary to defendants' arguments, the court finds that plaintiff's thorough complaint states a claim for both consumer deception and unfairness. Plaintiff has identified deceptive statements by defendants and has plausibly alleged consumer confusion. For example, plaintiff has plausibly alleged that a reasonable consumer would believe that his optional tip provided a supplement on top of the driver's base pay. Defendants labeled the payment as a "Dasher Tip" and told consumers that "100% goes to your driver." Plaintiff has adequately alleged that reasonable consumers would understand this statement to mean that tips would provide a supplement to the driver's income, not that the tips would reduce defendants' payment obligations. Defendants respond that their statements are not misleading because their model is similar to "tip-credits" used by many restaurants, and further claim that their statements are technically true because the drivers did receive the total tip amount. However, whether reasonable consumers were deceived or understood defendants' payment model is a question of fact inappropriate for resolution on a motion to dismiss.

Similarly, defendants' arguments regarding the Chicago Fee and other allegedly misleading fees and charges rely on factual questions that the court cannot resolve without a developed factual record. Plaintiff has alleged that during the early days of the COVID-19 pandemic, the City enacted an emergency ordinance that limited commissions defendants could charge restaurants. To recoup revenue lost on the restaurant side, defendants imposed the "Chicago Fee" on consumers at checkout. According to plaintiff, the name "Chicago Fee" deceptively implied that the City required, authorized, or received payment from this charge. In

support, plaintiff included social media posts in its complaint, indicating that consumers believed that this charge came from the City and not defendants. Defendants respond that consumers could not believe that the "Chicago Fee" was a tax from the City because defendants called it a "fee" as opposed to a "tax." Defendants further respond that consumers could learn about the nature of the fee by clicking on a "tool tip" button on the checkout page. Again, this argument requires a factual inquiry into what reasonable consumers believe, and how reasonable consumers use the website and app, that is inappropriate for a motion to dismiss.

      Indeed, many of defendants' arguments for dismissal rely on information outside the four-corners of the complaint and require a factual record not available at this early stage in the litigation. See Suchanek, 764 F.3d at 762 ("[T]he determination [ ] whether an ad has a tendency to deceive is an impressionistic one more closely akin to a finding of fact than a conclusion of law."); Bell v. Publix Super Markets, Inc., 982 F.3d 468, 478 (7th Cir. 2020) (district court "departed dramatically" from Rule 12(b)(6) standard and the "practical and fact-intensive approach to consumer behavior…."). Plaintiff has adequately alleged claims for consumer deception and unfair practices. Consequently, defendants' motion to dismiss is denied.

## **CONCLUSION**

For these reasons, defendants' motion to dismiss (Doc. 26) is denied. Defendants are directed to answer the complaint on or before April 14, 2022. The parties are directed to file a joint status report using this court's form on or before April 21, 2022. The court will set a status hearing after reviewing the joint status report.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   March 9, 2022**