IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| City of Chicago, ) | |
| ) | Civil Action No.: 1:21-cv-05162 |
| Plaintiff, ) | |
| ) | Honorable Robert W. Gettleman |
| v. ) | |
| ) | |
| DoorDash, Inc. and Caviar, LLC, ) | |
| ) | |
| Defendants. ) | |

**CITY OF CHICAGO'S REPLY IN SUPPORT OF
MOTION TO STRIKE AMENDED AFFIRMATIVE DEFENSES**

**TABLE OF CONTENTS**

I. Defenses Pertaining to the City's Authority to Sue (Fifth and Sixth Affirmative Defenses) .................................................................................................................. 2

II. Defenses Relating to the City's Investigation and Enforcement Decisions ....................... 5
    A. Waiver, Estoppel, and Laches (Second, Third, and Fourth Affirmative Defenses) ............................................................................................................. 6
    B. Equal Protection – Selective Prosecution (Fourteenth Affirmative Defense) .............................................................................................................. 7
    C. Due Process (Tenth and Fifteenth Affirmative Defenses) ..................................... 9

III. Other Improperly Pled Defenses ........................................................................................ 10
    A. Consent (Ninth Affirmative Defense) .................................................................. 10
    B. Protected Speech (Thirteenth Affirmative Defense) ............................................ 11
    C. Res Judicata and/or Collateral Estoppel (Sixteenth Affirmative Defense) ........... 12
    D. Unjust Enrichment (Seventeenth Affirmative Defense) ....................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*,
    973 F. Supp. 2d 842 (N.D. Ill. 2014) ................................................................................2

*Blanchard v. Berrios*,
    72 N.E.3d 309, 318 (Ill. 2016) ..........................................................................................4

*Bryant v. Compass Group USA, Inc.*,
    958 F.3d 617 (7th Cir. 2020) .............................................................................................3

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..........................................................................................................5

*City of Chi. v. Alessia*,
    807 N.E.2d 1150 (Ill. App. Ct. 2004) ............................................................................6, 7

*City of Chi. v. StubHub, Inc.*,
    979 N.E.2d 844, 855-57 (Ill. 2011) ..................................................................................4

*Collier v. SP Plus Corp.*,
    889 F.3d 894 (7th Cir. 2018) .............................................................................................3

*EEOC v. Waffle House, Inc*.
    534 U.S. 279 (2002) ........................................................................................................10

*Hancock v. Ill. Cent. Sweeping LLC*,
    73 F. Supp. 3d 932 (N.D. Ill. 2014) ................................................................................13

*Heller Fin., Inc. v. Midwhey Powder Co.*,
    883 F.2d 1286 (7th Cir. 1989) ......................................................................................1, 9

*Hopkins v. Staffing Network Holdings, LLC*,
    2016 WL 6462095 (N.D. Ill. Oct. 18, 2016) ....................................................................3

*JP Morgan Chase Bank v. Jenkins*,
    2015 WL 13863708 (N.D. Ill. Oct. 19, 2015) ............................................................1, 12

*La. Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*,
    2012 WL 601861 (N.D. Ill. Feb. 23, 2012) .....................................................................1

*Levin v. Abramson*,
    2020 WL 2494649 (N.D. Ill. May 13, 2020) .................................................................13

*Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*,
   2009 WL 466802 (N.D. Ill. Feb. 23, 2009) ...................................................................1

*Palm v. 2800 Lake Shore Drive Condo. Ass'n*,
   988 N.E.2d 75 (Ill. 2013) .............................................................................................4

*Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*,
   2020 WL 8409295 (N.D. Ill. Aug. 26, 2020) ...............................................................12

*Patrick Eng'g, Inc. v. City of Naperville*,
   976 N.E.2d 318 (Ill. 2012) ...........................................................................................7

*Pietrzycki v. Heights Tower Serv., Inc.*,
   2015 WL 688510 (N.D. Ill. Feb. 17, 2015) .................................................................13

*Raquet v. Allstate Corp.*,
   348 F. Supp. 3d 775 (N.D. Ill. 2018) ..........................................................................13

*RBG Plastic, LLC v. Webstaurant Store*,
   2020 WL 7027601 (N.D. Ill. Nov. 30, 2020) ...........................................................6, 12

*Renalds v. S.R.G. Rest. Group*,
   119 F. Supp. 2d 800 (N.D. Ill. 2000) ..........................................................................11

*Ryder v. Bank of Hickory Hills*,
   585 N.E.2d 46 (Ill. 1991) .............................................................................................7

*Sec'y of Labor v. Fitzsimmons*,
   805 F.2d 682 (7th Cir. 1986) ......................................................................................12

*South Dakota v. Wayfair, Inc.*,
   138 S. Ct. 2080 (2018) .................................................................................................5

*Top Tobacco v. Good Times USA*,
   2017 WL 395698 (N.D. Ill. Jan. 30, 2017) ...................................................................2

**Statutes and Other Authorities**

28 U.S.C. § 1447(c) ...............................................................................................................3

Fed. R. Civ. P. 8 ........................................................................................................... *passim*

Ill. Const. 1970, art. VII, § 6(a) & (i) ....................................................................................3

MCC ¶ 4-276-470 .................................................................................................................11

Plaintiff City of Chicago respectfully requests that the Court strike certain of Defendants' amended affirmative defenses, which are not adequately supported by the law or by properly pled factual allegations. Although Defendants' Answer and Amended Affirmative Defenses reflects Defendants' second attempt to adequately plead these defenses, they still fall well short of the pleading requirements in this Circuit. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989) (holding affirmative defenses to be meritless where "[t]hey are nothing but bare bones conclusory allegations" that fail to provide a short and plain statement of facts and to allege the necessary elements of the legal theory).

Defendants thus ask the Court to excuse them from satisfying *Twombly*/*Iqbal* and to require the City to show prejudice. Defs.' Opp'n to Pl.'s Mot. to Strike Aff. Def. (ECF 64) ("Opp'n"), at 2. But "[t]his court, like most district courts, applies *Twombly's* standards to motions to strike affirmative defenses." *La. Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*, 2012 WL 601861, at *5 (N.D. Ill. Feb. 23, 2012). Moreover, the Seventh Circuit has not required movants to show prejudice from affirmative defenses that were inadequately pled or restated rejected Rule 12(b)(6) arguments. *See Heller*, 883 F.2d at 1294-95. This Court has likewise adopted a standard governing motions to strike that does not require a showing of prejudice, applying that standard to strike affirmative defenses that were inadequately pled (*e.g.*, *La. Firefighters*, 2012 WL 601861, at *5), failed as a matter of law (*e.g.*, *JP Morgan Chase Bank v. Jenkins*, 2015 WL 13863708, at *2 (N.D. Ill. Oct. 19, 2015)), or did not constitute affirmative defenses at all (*e.g.*, *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*, 2009 WL 466802, at *6-*7 (N.D. Ill. Feb. 23, 2009)). The Court has done so despite an alleged lack of evidence that "an affirmative defense will unfairly prejudice plaintiff." *Id.* at *6.

In any case, Defendants' pleading failures are not mere technicalities. Defendants assert, among other things, serious accusations of impropriety in the City's conduct of its investigation and this enforcement action. Defendants fail to support any of these accusations with good-faith allegations of fact or legally cognizable theories, yet these defenses would—if allowed to stand—divert the time and resources of the litigants and the Court into a sideshow of tangential discovery and litigation. Even the less incendiary of Defendants' affirmative defenses would prejudice the City where they are not pled with enough detail to provide fair notice. If not stricken, these defenses will require the City to expend time and resources in discovery just to determine their basis. *See Top Tobacco v. Good Times USA*, 2017 WL 395698, at *4 (N.D. Ill. Jan. 30, 2017) ("[b]ecause affirmative defenses serve as a platform for discovery, which could be very costly, it is important that plaintiffs are given fair notice of the basis for each defense"). There is no justification for the burdens imposed by the improperly pled defenses addressed in this Motion, and the Court should strike them.

I. **Defenses Pertaining to the City's Authority to Sue (Fifth and Sixth Affirmative Defenses)**

Defendants assert two affirmative defenses attacking the City's authority to enforce its own laws. Each is legally deficient and should be stricken.

First, Defendants challenge the City's standing to sue (Fifth Affirmative Defense). While standing can be pled as an affirmative defense in Illinois state court, Defendants removed this case to federal court, where "standing is a jurisdictional issue" rather than an affirmative defense. *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 973 F. Supp. 2d 842, 847 (N.D. Ill. 2014). Defendants bear the burden of establishing that this Court has jurisdiction over the case; they may not invoke this Court's subject matter jurisdiction through removal, then assert a lack

2

of standing as an affirmative defense. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020).

Defendants respond that the City lacks standing in "any forum," focusing on the City's standing under Illinois law. Opp'n, at 2-3. But even if Defendants were correct that the City lacks standing in this Court, which the City does not concede, the proper remedy would be remand. *See* 28 U.S.C. § 1447(c). This Court is thus not the proper venue to resolve Defendants' challenge to the City's state court standing. *See Bryant*, 958 F.3d at 626 (observing that the federal court had "no authority and no occasion to address [the plaintiff's] state-court standing to bring this claim"); *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("[A] state's standing doctrine is the business of its own courts; it is not for this court to venture how the case would there be resolved") (internal quotations omitted); *Hopkins v. Staffing Network Holdings, LLC*, 2016 WL 6462095, at *4 (N.D. Ill. Oct. 18, 2016) (Gettleman, J.).

Second, Defendants challenge the City's home rule authority (Sixth Affirmative Defense). While some questions about the scope of home rule authority may require factual development, the theory Defendants assert is not one of them—it is inadequately pled and fails as a matter of law. Defendants allege nothing more than that (1) the Complaint seeks to address unlawful conduct that is national in scope and not confined solely within the borders of the City, and (2) federal and state consumer protection laws exist. This theory assumes that Illinois law prohibits concurrent regulation by a home rule jurisdiction and the state. The opposite is true.

A home rule unit may "exercise any power and perform any function pertaining to its government and affairs"—and may do so "concurrently with the State"—except where "specifically" limited by the legislature. Ill. Const. 1970, art. VII, § 6(a) & (i). The General Assembly's passage of the Illinois Consumer Fraud and Deceptive Business Practices Act

3

("ICFA") did not expressly preempt the City's enforcement ordinances, including its consumer protection authority. *See United States v. Joel Kennedy Constructing Corp.*, 2022 WL 356843, at \*19-\*20 (N.D. Ill. Feb. 7, 2022) (ICFA did not preempt City's false claims ordinance). To the contrary, State and City consumer protection laws have co-existed for decades.

Consequently, this action is constitutional so long as it "pertain[s] to" local affairs, a highly deferential standard. The Constitution "places almost exclusive reliance on the General Assembly to determine whether home rule authority should be preempted." *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 988 N.E.2d 75, 85 (Ill. 2013). It "'eliminate[s] or at least reduce[s] to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation.'" *Id.* at 82. Courts thus "should limit home rule powers through interpretation of the 'pertaining to' language 'only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies.'" *Blanchard v. Berrios*, 72 N.E.3d 309, 318 (Ill. 2016).

Defendants have alleged no oppression, injustice, or interference with a vital state policy here. Their citation to *City of Chicago v. StubHub, Inc.*, therefore, offers no support; that case involved an ordinance that required ticket resellers to collect a local tax, creating a "clear conflict" with state law that permitted resellers to place that responsibility on the original sellers. 979 N.E.2d 844, 855-57 (Ill. 2011). Instead of identifying a specific conflict with state policy here, Defendants assert an absolute rule that does not exist: that where a company's business practices extend "nationwide," they are not a local matter and cannot be regulated by the City. This defense, as pled, is not legally cognizable, and the Court should strike it.

Defendants also argue that because their deceptive conduct occurs on a "non-tangible, Internet-based business," its regulation falls outside the City's home rule authority. They cite no

4

authority for this proposition, and it contradicts logic. As the Supreme Court has observed in other contexts, modern methods of conducting business often mean that companies may appropriately be subjected to regulation in jurisdictions where they have no physical presence. *See South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2095 (2018) (observing that "[b]etween targeted advertising and instant access to most consumers via any internet-enabled device, a business may be present in a State in a meaningful way without that presence being physical in the traditional sense of the term") (internal quotations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (rejecting the notion that an absence of physical contacts can negate the exercise of personal jurisdiction). That Defendants reach Chicagoans with their unlawful conduct via the Internet—rather than from a Chicago storefront—does not place it outside the City's authority to regulate.

Defendants' Fifth and Sixth Affirmative Defenses are improperly pled and legally insufficient, and they should be stricken. Otherwise, the scope of discovery in this case will expand to include broad inquiry into the City's exercise of its consumer protection authority, imposing unnecessary and prejudicial burdens on the City and creating inefficiencies in the litigation.

## II. Defenses Relating to the City's Investigation and Enforcement Decisions

Several of Defendants' affirmative defenses attack—without legal or factual basis—the City's internal decision-making processes and the ethical conduct of its investigation and resulting enforcement action. These defenses pose a particular risk of prejudice to the City, if not stricken now, because they will expand the scope of discovery to include invasive, burdensome, and inappropriate inquiry into the City's internal decision-making processes and investigation procedures. *See* City of Chi.'s Mot. to Strike Aff. Def. (ECF 62) ("Mot."), at 3-4. There is no justification for burdening the City with this discovery. Defendants have not

properly asserted these defenses and have no good-faith basis upon which to do so, so they should be stricken.

### A. Waiver, Estoppel, and Laches (Second, Third, and Fourth Affirmative Defenses)

Because Defendants' affirmative defenses of waiver, estoppel, and laches allege no more than governmental delay, they are legally insufficient and should be stricken. *See* Mot., at 5-7 (citing cases). Defendants respond that delay alone is enough to state waiver and estoppel defenses, but the cases they cite do not support their view. Opp'n, at 5-6. *RBG Plastic, LLC v. Webstaurant Store* involved two private parties, so it does not address a waiver or estoppel defense against the government. 2020 WL 7027601, *5 (N.D. Ill. Nov. 30, 2020). In *SEC v. Packetport.com, Inc.*, a Connecticut court declined to strike estoppel and waiver defenses alleging that the SEC investigated defendants for six years before suing, because the court could not determine—under the pre-*Twombly* "no set of facts" standard—whether "the length of delay and the manner in which it occurred" rose to the level of affirmative misconduct. 2006 WL 2798804, at *3-*4 (D. Conn. Sept. 27, 2006). Defendants allege no similar facts here.

Defendants do not dispute that a laches defense requires more than delay. Defendants cite *SEC v. Randy*, but it stands for no more than the proposition that the applicability of laches against the government is determined on a case-by-case basis under federal law. 1995 WL 616788, *5 (N.D. Ill. Oct. 17, 1995). Though true, this general principle does not mean that Defendants have pled sufficient facts to proceed with the defense in this case. And although federal law (which applied in *American Council of the Blind of Metropolitan Chicago v. City of Chicago*) leaves room for a laches defense based on delay alone, governing Illinois law does not. *City of Chi. v. Alessia*, 807 N.E.2d 1150, 1159 (Ill. App. Ct. 2004).

Defendants alternatively say that they pled affirmative misconduct. Opp'n, at 6-7. That is incorrect. Defendants' Opposition asserts that the City "initiated an ongoing dialogue with DoorDash about its business practices before bringing suit" and that "the communications as a whole indicated that DoorDash's practices were lawful." *Id.* at 6. No details supporting this assertion appear in Defendants' pleading. Second Aff. Def. ¶ 4; Third Aff. Def. ¶ 4; Fourth Aff. Def. ¶ 4.

Rather, the Answer and Affirmative Defenses allege only generally that DoorDash had a "history of working with the Chicago BACP" to address issues regarding compliance with City law, and that BACP did not raise concerns about the conduct alleged in the Complaint. *Id*. Notably, Defendants do not allege that these conversations were about the conduct at issue in this case, nor that the City made any affirmative statements about Defendants' legal compliance on which they could reasonably rely. These are the kinds of facts Defendants must plead to state viable defenses of laches, estoppel, and waiver under Illinois law. *See Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 331 (Ill. 2012) (holding that mere inaction is not enough to support assertion of estoppel against a municipality; a litigant must demonstrate an affirmative act by the municipality itself or an official with express authority to bind it); *Alessia*, 807 N.E.2d at 1159 (holding that a litigant asserting laches against the government must prove "a positive or affirmative act" by a government's officers inducing reliance); *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991) (holding that waiver cannot be shown without express agreement or a "clear, unequivocal, and decisive act of the party who is alleged to have committed waiver"). Defendants have failed to do so, despite having two bites at the apple.

### B.     Equal Protection – Selective Prosecution (Fourteenth Affirmative Defense)

Defendants' selective prosecution defense is also inadequately pled and should be stricken. Defendants' argument hinges on a factually unsupported accusation: that the City

7

targeted them based on "political and financial motivations divorced from the public interest." They also assert the unpled and factually unsupported theory that one such motivation is a desire to limit Defendants' exercise of free speech. This defense illustrates why a motion to strike was necessary here: the defense is supported by neither the law nor properly pled facts in Defendants' Answer, yet it would provide Defendants a basis to seek invasive and burdensome discovery regarding the City's investigation and internal decision-making, prejudicing the City and creating a costly and unnecessary sideshow in the litigation.

The City's Motion set forth the applicable legal standards governing this theory, including that Defendants must plead facts plausibly showing that the City had an improper motive in filing this enforcement action. In their Opposition, Defendants do not explain how their pleading satisfies those standards nor do they articulate any good faith basis for alleging that the City has prosecuted them "with malicious motives and with a bare desire to harm DoorDash," Fourteenth Aff. Def. ¶ 2. Rather, their sole evidence of the City's "improper motives" is apparently their disagreement with the allegations in the Complaint itself (Opp'n, at 8)—a document that this Court already carefully considered and found to be properly pled. *See generally* Memorandum Opinion & Order (ECF 43). It is an understatement to say that this allegation falls well short of the standard to adequately plead an equal protection violation.

The cases Defendants cite do not support their position and, in fact, illustrate how far short their allegations fall. In *Geinosky v. City of Chicago*, the plaintiff had received twenty-four parking tickets that had already been adjudicated and dismissed as meritless—the Seventh Circuit described them as "bogus." 675 F.3d 743, 745 (7th Cir. 2012). Here, by contrast, the Court denied Defendants' Motion to Dismiss the Complaint—the very pleading that Defendants say is so facially deficient that it reveals the City's "improper motives." In *Capra v. Cook*

*County Bd. of Review*, the plaintiffs provided detailed allegations demonstrating the Board's improper motives, including that "the Board, when questioned about its actions, claimed that 'we can do anything we want.'" 733 F.3d 705, 708 (7th Cir. 2013). In contrast, Defendants' pleading does not even identify the "improper motives" that the Defendants' Opposition argues are driving this enforcement action, much less allege a good faith factual basis for their assertion.

        C.        **Due Process (Tenth and Fifteenth Affirmative Defenses)**

Defendants' due process defenses are similarly flawed and should be stricken.

The Fifteenth Amended Defense alleges a laundry list of conclusory theories, but Defendants' Opposition abandons most of these theories and focuses on a single assertion: that the City's retention of outside counsel violates their due process rights and the City's ethics ordinances. As the City argued in its Motion, Defendants' conclusory assertion—pled only on information and belief—violates Rule 8 because it lacks any supporting factual allegations. Defendants' Opposition does nothing to save their defense, baselessly claiming that the City's contract with Cohen Milstein "lacks adequate safeguards." Opp'n, at 10. That false accusation asserts a legal conclusion, rather than the facts that Rule 8 requires. *Heller*, 883 F.2d at 1295. Moreover, Defendants did not identify a single, required safeguard that the City and its counsel have failed to employ. Instead, they attempt to shift the burden to the City of affirmatively demonstrating the propriety of its relationship with counsel. The City has no such burden. In short, Defendants have not adequately pled—and lack a good-faith basis to plead—any impropriety in the City's retention of outside counsel. Absent such allegations, Defendants should not be permitted to take invasive and burdensome discovery regarding the City's relationship with its counsel.

Defendants' Tenth Affirmative Defense should likewise be stricken. The Illinois Supreme Court's decision in *Scott v. Association for Childbirth at Home* is directly on point and

9

disposes of Defendants' theory that Chicago's consumer protection ordinances—which cross-reference the Illinois CFA—are unconstitutionally vague and infringe on their First Amendment rights. 430 N.E.2d 1012 (Ill. 1981). *44 Liquormart, Inc. v. Rhode Island* has no bearing here, because it addressed regulation of accurate, non-misleading commercial speech. 517 U.S. 484, 493 (1996). The City's case seeks to regulate Defendants' speech only to the extent that it is deceptive and misleading. *See*, *infra*, Sec. III(B). This defense raises hypothetical legal arguments that warrant no more of the City's or the Court's time—it should be stricken.

## III. <u>Other Improperly Pled Defenses</u>

The City's Motion to Strike also addresses several other improperly pled defenses, each of which fails as a matter of law. Defendants' pleading failures are not mere technicalities. Without concrete and specific allegations, the City lacks fair notice of these defenses and cannot meaningfully respond. Allowing these insufficiently pled defenses to stand would also expand the scope and increase the inefficiency of the discovery process, by forcing the City to expend resources investigating the basis for each defense to avoid being sandbagged with them later in the litigation. These prejudicial harms justify striking the defenses.

### A. **Consent (Ninth Affirmative Defense)**

The Ninth Amended Defense alleges that the City, consumers, merchants, and drivers all consented to Defendants' conduct. Defendants have not pled a factual basis for their assertion that the City, restaurants, and delivery drivers consented to their conduct, nor do they mention these theories in their Opposition. Defendants therefore waived these bases for their "consent" defense.

Regarding consumers' purported consent, Defendants provide only one specific example: consumers' consent to their terms of service. Consumers' contracts cannot bind the City or limit its ability to enforce the law, however, as Defendants' own cited authority establishes. *See*

*EEOC v. Waffle House, Inc*. 534 U.S. 279, 295-96 (2002) (holding that the EEOC is not bound by an employee's agreement to arbitrate, in part because enforcement actions seek to vindicate a public interest, not simply make the individual employee whole). At most, consumers' agreement to terms of service is relevant to Defendants' argument that they made adequate disclosures to cure the deceptions alleged in the Complaint—a matter Defendants have already put at issue by denying these allegations in their Answer. *See Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 804 (N.D. Ill. 2000).

### B. Protected Speech (Thirteenth Affirmative Defense)

Defendants' "Protected Speech" affirmative defense does not identify any allegation in the Complaint that could subject Defendants to liability for non-deceptive speech, violating Rule 8. Defendants' Opposition improperly tries to rectify this pleading failure by citing several paragraphs in the Complaint. Opp'n, at 12-13. But those paragraphs allege deceptive and misleading conduct. For example, paragraph 197(k) alleges that Defendants violated MCC ¶ 4-276-470 by causing confusion or misunderstanding about whether Unaffiliated Restaurants approved being listed on the DoorDash Platform or agreed to be affiliated with DoorDash—i.e., deception. Indeed, section 4-276-470 is titled "Deceptive practices – Prohibited" and identifies various deceptive practices, of which "creating confusion or misunderstanding concerning affiliation, connection or association with … another" is one. In any case, Defendants' assertion that the statements identified in their Opposition are truthful is again nothing more than a denial of the Complaint's allegations, not a properly pled affirmative defense.

Defendants' Opposition also asserts an unpled theory that the City seeks to compel disclosures relating to their prices, which Defendants analogize to the regulation of speech at issue in *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017). Opp'n, at 13. Even if this theory had been pled, it misses the mark. The Complaint does not seek disclosures where

11

the existing speech is non-deceptive. In fact, the Complaint does not attempt to dictate disclosure language at all. It alleges only that the Defendants' statements regarding prices and fees are deceptive. Adequate disclosures would be one way of correcting the deception, as would altering the statements to make them truthful and nondeceptive. There is no cognizable First Amendment violation on these facts.

Finally, Defendants suggest that First Amendment defenses are immune from motions to strike. Opp'n, at 13. In fact, judges in this District have struck First Amendment affirmative defenses both where (as here) they were inadequately pled, *Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*, 2020 WL 8409295, at *2 (N.D. Ill. Aug. 26, 2020), and where they were insufficient as a matter of law, *RBG Plastic, LLC v. Webstaurant Store*, 2020 WL 7027601, at *6 (N.D. Ill. Nov. 30, 2020).

### C. Res Judicata and/or Collateral Estoppel (Sixteenth Affirmative Defense)

The City's opening brief explained that Defendants have not pled the elements of a res judicata defense. Defendants neither disagree nor defend the affirmative defense's allegation that unspecified "resolved" lawsuits preclude the City's claims. Sixteenth Aff. Def. ¶ 2.

Defendants instead assert a new theory, predicting that unspecified "other suits" "may" someday "progress to a final resolution" and have preclusive effect. Opp'n, at 15. But Defendants have not even pled (and cannot plead) that the City is a party or is in privity with a party in those cases, or that plaintiffs assert the same claims as the City. *See Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 692 (7th Cir. 1986) ("[t]he Government is not barred by the doctrine of res judicata from maintaining independent actions asking courts to enforce federal statutes implicating both public and private interests merely because independent private litigation has also been commenced or concluded"). Regardless, Defendants' new theory concedes that the cases upon which they rely have not reached final judgments—a basic element of a res judicata

defense. As this Court has stated, what matters is whether affirmative defenses "as they currently stand" satisfy pleading standards. *JP Morgan Chase Bank v. Jenkins*, 2015 WL 13863708, at *2 n.3 (N.D. Ill. Oct. 19, 2015). Although Defendants are free to seek leave to amend their Answer if the facts change, Defendants may not plead a placeholder defense.

### D. Unjust Enrichment (Seventeenth Affirmative Defense)

The City cited two independent reasons why Defendants' unjust enrichment defense should be stricken. First, "'unjust enrichment is not an affirmative defense under Illinois law.'" *Levin v. Abramson*, 2020 WL 2494649, at *14 (N.D. Ill. May 13, 2020) (quoting *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 787 (N.D. Ill. 2018)). Defendants ignore this point. And Defendants' only case mentioning unjust enrichment addressed a restitution counterclaim (not an affirmative defense) brought under federal law (not Illinois law). *Hancock v. Ill. Cent. Sweeping LLC*, 73 F. Supp. 3d 932, 949 (N.D. Ill. 2014).

Second, Defendants base their unjust enrichment theory on allegations that consumers and other third parties received all the benefits to which they were entitled—allegations that Defendants already put at issue in their Answer. Defendants respond by citing allegations from a separate affirmative defense asserting that consumers consented to Defendants' practices via terms of service and purported disclosures. Opp'n, at 14. But Defendants' Answer put those allegations at issue too. *E.g.*, Answer and Am. Aff. Def. (ECF 61), ¶¶ 24, 64, 76, 85. Regardless, Defendants' new basis for their defense does not plead the sort of "unlawful or improper conduct" needed to support an unjust enrichment theory. *Raquet*, 348 F. Supp. 3d at 787.

### Conclusion

The affirmative defenses addressed in this Motion should be stricken, to avoid the prejudice to the City that litigating these defenses will necessarily impose. Many of these

13

affirmative defenses have no cognizable legal basis. Others are pled too inadequately to afford the City "fair notice of [the] defenses and an opportunity to rebut them," which is the "purpose" of Rule 8's pleading requirements. *Pietrzycki v. Heights Tower Serv., Inc.*, 2015 WL 688510, at *1 (N.D. Ill. Feb. 17, 2015). These improper defenses will also unnecessarily and inappropriately expand the scope of discovery. Defendants are already seeking burdensome and improper discovery related to certain of these defenses, *see* Mot., at 4, and the City will be further prejudiced if it is forced to litigate or answer these requests.

Defendants—like any litigant—are obligated to have a good-faith, adequately pled basis for any claims or defenses they wish to put at issue. Fed. R. Civ. P. 8 and 11. They have not fulfilled those obligations in the affirmative defenses addressed in this Motion, and the City should therefore not be burdened with responding to them. The City therefore respectfully requests that the Court strike affirmative defenses 2-4, 7-10, and 12-17, with prejudice.

DATED: August 1, 2022

Respectfully submitted,

**CITY OF CHICAGO DEP'T OF LAW, AFFIRMATIVE LITIGATION DIVISION**

By: */s/ Stephen J. Kane*
Stephen J. Kane
Peter H. Cavanaugh
121 N. LaSalle Street
Room 600
Chicago, IL 60602
Phone: (312) 744-6934
stephen.kane@cityofchicago.org
peter.cavanaugh@cityofchicago.org

*Attorneys for Plaintiff City of Chicago*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: */s/ Johanna M. Hickman*
Betsy A. Miller (*pro hac vice*)
Johanna M. Hickman (*pro hac vice*)
Brian E. Bowcut (*pro hac vice*)
Chloe C. Bootstaylor (*pro hac vice*)
Peter Ketcham-Colwill (*pro hac vice*)
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Phone: (202) 408-4600
bmiller@cohenmilstein.com
jhickman@cohenmilstein.com
bbowcut@cohenmilstein.com
cbootstaylor@cohenmilstein.com
pketcham-colwill@cohenmilstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2022, I electronically filed the *Reply in Support of Motion to Strike Affirmative Defenses* using the CM/ECF system, which will send notice of this filing to all counsel of record.

Dated: August 1, 2022 /s/ Johanna M. Hickman
Johanna M. Hickman