UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| City of Chicago,<br><br>    *Plaintiff*,<br> v.<br><br>DoorDash, Inc. and Caviar, LLC,<br><br>    *Defendants*. | Civil Action No. 1:21-cv-05162<br><br>Honorable Robert W. Gettleman<br>Magistrate Judge Jeffrey T. Gilbert |

# DEFENDANTS' MOTION TO COMPEL DISCOVERY

Pursuant to Federal Rules of Civil Procedure 37 and Local Civil Rule 37.2, Defendants DoorDash, Inc. and Caviar, LLC (collectively "DoorDash") bring this Motion to Compel Plaintiff City of Chicago ("City") to provide adequate responses to DoorDash's Requests for Production Nos. 33, 36, and 51 and Interrogatory No. 8. This Motion is supported by the below argument and authorities, the concurrently filed Declaration of Elizabeth K. McCloskey ("McCloskey Decl.") and any additional materials or argument the Court may request.

## INTRODUCTION

On October 21, 2022, the Court denied the City's motion to strike the majority of Door-Dash's affirmative defenses. Dkt. 76 at 3–7. The Court specifically found that resolution of Door-Dash's affirmative defenses is "**better decided after factual development**." *Id*. at 7. DoorDash promptly issued discovery requests to the City to elicit evidence supporting its affirmative defenses. But the City has refused to provide that discovery, rejecting DoorDash's reasonable compromise proposals and deciding instead to stand on boilerplate objections. DoorDash requests that the Court compel this discovery, so that the factual development it envisioned can take place.

*First*, DoorDash served discovery concerning the City's ability to curb the financial bias stemming from a private law firm—Cohen, Milstein, Sellers & Toll, PLLC ("Cohen Milstein")—acting as the prosecutor in this case. Typically, the revenue obtained in a public enforcement action would go to the City treasury or affected consumers. Not so here. Instead, Cohen Milstein could retain anywhere from 20-50% of any proceeds the City aims here to recover.

Courts have held that similar contingency fee agreements in public enforcement actions may violate the defendant's due process rights—particularly if the government agency does not exercise sufficient oversight of the case to counteract the private firm's financial bias. DoorDash has asserted this due process defense, and the Court denied the City's motion to strike it, explaining that it "require[s] an examination into the merits of . . . constitutional issues[.]" Dkt. 76 at 7. Yet

the City has refused to provide *any* discovery on this topic, except for its contingency fee contract in this case, and offering to produce other contracts with Cohen Milstein in other cases and the City's outside counsel guidelines. Under the law, DoorDash is entitled to test whether the City has taken the proper oversight measures *in practice*.

*Second*, DoorDash seeks the City's communications with state and federal officials regarding its allegations against DoorDash. This discovery is relevant to DoorDash's estoppel, waiver, and laches defenses, among other issues. The City's delay in bringing suit is central to these defenses, and communications between the City and other officials will help determine when the City first became aware of the basis for this lawsuit. DoorDash alleged that the City unreasonably delayed in bringing this action—which seeks to penalize DoorDash for conduct dating back to 2014. The City moved to strike these affirmative defenses, but again, the Court denied that motion, finding DoorDash's arguments "compelling." Dkt. 76 at 5. Nonetheless, the City has refused to produce any of its communications with other state and federal officials, other than to search emails between three City departments and the Illinois Attorney General's office from January 1, 2019 to August 27, 2021. McCloskey Decl., Ex. O . This is insufficient. At the very least, DoorDash is entitled to know *when* the City communicated with other government agencies regarding the allegations in the Complaint—but the City has refused to provide even this information. .

## RELEVANT BACKGROUND

### A.     The City's Complaint

DoorDash is a technology company that facilitates food ordering and food delivery through its online platform. DoorDash's platform connects consumers, a broad array of restaurants and stores, and independent-contractor delivery providers. DoorDash's platform has been available for public use in Chicago, including by City officials and investigators, since 2014. *See* Compl., ¶ 2.

DEFENDANTS' MOTION TO COMPEL DISCOVERY                                CASE NO. 1:21-CV-05162

In 2020, the City demonstrated its knowledge of DoorDash's business when the Department of Business Affairs and Consumer Protection ("BACP") contacted DoorDash about certain consumer- and restaurant-facing business practices. Dkt. 61 at 132. DoorDash worked cooperatively with the City to address its concerns. Based on its correspondence with the City, DoorDash reasonably believed that the City's concerns about DoorDash's operations in the City had been raised and resolved to the City's satisfaction. *Id*. at 134.

On March 18, 2021, the City executed a contingency fee agreement with Cohen Milstein that *broadly* outsourced the City's investigatory and prosecutorial authority with respect to third-party platforms. The contract authorized Cohen Milstein "to assist the City in investigating and . . . pursuing litigation against and/or settlement with companies that provide meal delivery services to Chicago addresses, through orders placed via the Internet, smartphone and tablet applications, and/or telephone numbers." McCloskey Decl., Ex. R . On June 28, the City sent DoorDash a demand letter threatening DoorDash with an enforcement action if it did not, among other things, "[p]ay the City and its outside counsel costs and legal fees associated with the City's investigation." *Id*., Ex. AA . On August 27, 2021, the City filed this lawsuit.

**B.     DoorDash's Affirmative Defenses**

On June 3, 2022, DoorDash filed its amended answer and affirmative defenses. Dkt. 61. DoorDash's fifteenth affirmative defense alleges that the City's fee agreement incentivizes Cohen Milstein to focus single-mindedly on maximizing the monetary penalties recovered from DoorDash, rather than putting the public interest first—as is customary in an enforcement action. Dkt. 61 at 142-43. The improper outsourcing of authority to Cohen Milstein violates both DoorDash's due process rights and the City's ethics ordinance barring anyone with a financial interest from exercising the City's prosecutorial powers. *Id*. at 143. DoorDash also alleged that the City has failed to adequately safeguard against the biasing effect of these financial incentives. *Id*.

DoorDash's second (waiver), third (estoppel), and fourth (laches) defenses allege that the City has improperly delayed in bringing this enforcement action. Dkt. 61 at 132-35.

DoorDash's sixth affirmative defense challenges the City's authority to bring suit under the Home Rule doctrine. Dkt. 61 at 136. The Complaint reveals that the alleged business practices are not unique to the City of Chicago. *Id*. Moreover, the state of Illinois has more consumer protection expertise, and recently passed specific legislation addressing certain business practices at issue in the City's complaint. *See* Fair Food and Retail Delivery Act ("FFRDA"), 815 ILCS 338.[1] The Home Rule doctrine prevents the City from claiming local regulatory authority over statewide or national problems where the state or federal authorities have more traditional and vital interests. *Kalodimos v. Vill. Of Morton Grove*, 103 Ill. 2d 483, 501 (1984).

On May 5, 2022, the City moved to strike all of the above defenses. Dkt. 56. On October 21, 2022, the Court denied the City's motion as to these defenses, holding that further factual development was required before it could rule on the merits. Dkt. 76.

## C.  DoorDash's Requests Regarding the City's Oversight of Cohen Milstein

Since information about the City's relationship with Cohen Milstein and the City's conduct in overseeing Cohen Milstein is relevant and within the City's possession, DoorDash issued the following discovery requests:

- **RFP No. 33**: "All DOCUMENTS AND COMMUNICATIONS related to the retention of COHEN MILSTEIN to represent YOU in this ACTION, including any fee agreements for the investigation and/or litigation of this ACTION." McCloskey Decl., Ex. A at 10.
- **RFP No 51**: "All nonprivileged COMMUNICATIONS between YOU and COHEN MILSTEIN and/or COHEN MILSTEIN attorneys." *Id*., Ex. B at 7.
- **Interrogatory No. 8:** "DESCRIBE YOUR relationship with the private law firm, COHEN MILSTEIN, including but not limited to the role COHEN MILSTEIN plays in identifying,

---

[1] The FFRDA suggests that the state, not the City, is the more appropriate regulatory authority. Indeed, the City's allegations mirror the FFRDA's text. *Compare* FFRDA, 815 ILCS 338 at § 10 *with* Compl., ¶ 205(b).

investigating, and litigating the allegations in YOUR COMPLAINT and the nature of the contractual agreement between YOU and COHEN MILSTEIN." *Id.*, Ex. C at 7.

The City asserted virtually identical, boilerplate objections based on overbreadth, undue burden, and relevance. *Id.*, Ex. D at 33; *id.*, Ex. E at 13; *id.*, Ex. F at 10-11. For RFP No. 51, the City also objected that the time period of 2014 to the present was overbroad and unduly burdensome. *Id.*, Ex. E at 13. For RFP No. 33 and Interrogatory No. 8, the City asserted the same, copy-and-paste privilege objection, "to the extent that [the request] seeks materials that are protected by the attorney-client privilege, work product doctrine, deliberative process privilege, law enforcement privilege, or any other privilege or immunity." *Id.*, Ex. D at 33; *id.*, Ex. F at 10-11. For RFP Nos. 33, and 51, the City stated it would "not produce documents in response to this Request as written." *Id.*, Ex. D at 34; *id.*, Ex. E at 13. For Interrogatory No. 8, the City stated only that "Cohen Milstein has been retained by the City and is counsel of record." *Id.*, Ex. F at 11.

**D.    DoorDash's Request For the City's Communications with Other Agencies**

To obtain evidence for waiver, estoppel, laches, and Home Rule defenses, DoorDash issued the following discovery request:

- **RFP No. 36:** "All documents relating to communications with the Illinois Attorney General, any other state or federal agency, or any representative of a state attorney general relating to DoorDash or the allegations in the Complaint." *Id.*, Ex. A at 10.

The City objected to this request "to the extent [it] seeks materials that are protected by the attorney-client privilege, work product doctrine, deliberative process privilege, law enforcement privilege, or any other privilege or immunity." *Id.*, Ex. D at 36. It claimed that "a comprehensive list and description of those communications would, in and of itself, reflect strategy and thereby constitute privileged work product," and creating a privilege log "would impose an undue burden." *Id*. The City stated it would "not produce documents in response to the Request as written." *Id*.

## COMPLIANCE WITH LOCAL RULE 37.2

Since serving its first set of RFPs on June 15, 2022, DoorDash has worked in good faith to obtain responses. As described in further detail in DoorDash's supporting declaration, the parties have complied with this Court's requirement to meet and confer regarding the requests at issue. DoorDash conducted telephonic conferences with the City's counsel on August 12, November 30, December 22, December 30, 2022, and January 12, 2023. McCloskey Decl., ¶ 10. DoorDash and the City also exchanged numerous related letters and emails over the past six months. *See id.*, Exs. G-O. Despite DoorDash's good faith attempts to resolve the parties' differences and reach compromises, the parties are unable to reach agreement on the requests described herein.

## LEGAL STANDARD

A party may move to compel where another party fails to respond to a discovery request, or gives an evasive or incomplete response. *See* Fed. R. Civ. P. 37; N.D. Ill. L. Civ. R. 37.2. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Although the proponent of a motion to compel bears the initial burden of proving that the discovery sought is relevant, if the discovery "appears relevant," the burden shifts to the objecting party to show why the request is improper. *West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006); *Rubin v. Islamic Rep. of Iran,* 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).

An objection must be stated with specificity. Fed. R. Civ. P. 34(b)(2)(B); *id*. 33(b)(4). "[B]oilerplate objections are tantamount to no objections and operate as a waiver." *Donald v. City of Chicago*, 2022 WL 621814, at *2 (N.D. Ill. Mar. 3, 2022). The refusal to produce an adequate privilege log for assertions of privileges "may be viewed as a waiver of the privilege or protection." Advisory Committee Notes to Fed. R. Civ. P. R. 26(b)(5); *Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 381 (S.D. Ind. 2009).

# ARGUMENT

A. **The City Should Respond to Discovery Requests Regarding Cohen Milstein.**

DoorDash issued Requests for Production Nos. 33, 51, and Interrogatory No. 8 to determine if the City is sufficiently overseeing Cohen Milstein and effectively counteracting its financial bias in this case. This inquiry is critical, particularly in light of numerous public reports detailing Cohen Milstein's pattern of obtaining lucrative fee contracts from government officials with whom it has a close, personal, political, and/or financial relationship. Here, the City has refused to provide *any* details about its relationship with Cohen Milstein, other than producing a copy of its fee agreement. McCloskey Decl., Ex. R. That is not sufficient.

1. **Contingency fee agreements in enforcement actions are subject to "objective verification both by defendants and the court."**

As former Colorado Attorney General John Suthers stated, "[f]arming out the police powers of the state to a private firm with a profit incentive is a very, very bad thing." McCloskey Decl., Ex. U. Some courts have held that this financial bias is *per se* improper. For example, the California Supreme Court in *Clancy v. Super. Ct.* held that a contingent fee arrangement between a city and a private attorney hired to bring a civil nuisance abatement action was "antithetical to the standard of neutrality" expected of attorneys working on behalf of the city. 39 Cal. 3d 740, 748-49 (1985); *see also*, *Greater Georgia Amusements, LLC v. State*, 317 Ga. App. 118, 122 (2012) (reversing trial court's denial of motion to disqualify private attorney retained by district attorney's office under a contingency fee arrangement).

Other courts have held that contingency fee agreements are permissible *only* if the government attorneys can effectively counteract the contingency counsel's financial bias. *See, e.g.*, *Cty. of Santa Clara,* 50 Cal. 4th at 64 (describing the minimum requirements for contingent-fee agreements and noting that "[t]he unique circumstances of each prosecution may require a different

set of guidelines"); *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 920719, at *3-4 (N.D. Ill. Mar. 2, 2015) (reviewing a Board of Ethics opinion and the contingency fee agreement when ruling on a challenge to the City's contingency fee relationship with outside counsel).

The law entitles DoorDash to understand the safeguards that have been put in place to rein in Cohen Milstein's bias, *and* to verify the efficacy of those safeguards. In *Merck Sharp & Dohme*, for example, the Assistant Attorney General was deposed to determine whether the contingency fee agreement violated the defendant's due process rights. 947 F. Supp. 2d 733, 738 (E.D. Ky. 2013). And in *City of Santa Clara,* the California Supreme Court noted that safeguards in contingency fee agreements are "subject to objective verification both by defendants and by the court." 50 Cal. 4th at 63. DoorDash here seeks this objective verification.

  **2.**  **Cohen Milstein's method for obtaining contingency fee contracts raises concerns about the City's ability to counter Cohen Milstein's financial bias.**

The limited evidence available to DoorDash suggests that the City cannot adequately safeguard against Cohen Milstein's financial bias. Cohen Milstein has a well-documented pattern of seeking lucrative contingency fee contracts from government officials with which it has close, personal relationships. The requests at issue here would expose the existence of such a relationship, and confirm whether the City cannot effectively rein in Cohen Milstein's financial bias. This discovery is directly relevant to DoorDash's due process affirmative defense.

For example, former Cohen Milstein partner Linda Singer was the focus of a Pulitzer prize-winning *New York Times* article that investigated the practice of plaintiff firms leveraging personal relationships to obtain lucrative contingency fee agreements for civil enforcement actions. McCloskey Decl., Ex. U. This article notes the Cohen Milstein partner's presence at a "private holiday party hosted by the Democratic Attorneys General Association" with plaintiffs' firms who had "donated more than $3.8 million to the group over the last decade." *Id.* The gathering was

"like a family party" according to one attendee. *Id.* The report also noted that Cohen Milstein and other plaintiffs' attorneys "capitalized on personal relationships with former colleagues that they have nurtured since leaving office, often at resort destination conferences where they pay to gain access." *Id*. Before leaving Cohen Milstein, Ms. Singer procured an agreement to represent the City of Chicago in a different enforcement action. *See* McCloskey Decl., Ex. S ; *id.*, Ex. T .

According to other articles, this conduct is not limited to one Cohen Milstein attorney. For example, one article explained that "Cohen Milstein . . . has had the benefit of decades of government-funded contingent fees that have brought millions into its coffers. Such coffers need periodic refilling, so a large part of these enormous fees are channeled back to candidates who . . . repeatedly steer the same governmental regulatory contingency work to the same firms." McCloskey Decl., Ex. W ; *see also id.*, Ex. V ("About 18 lawyers from the firm . . . went on to donate $11,000 to [New Mexico Attorney General] Balderas' campaign in 2014. And the case is ongoing, with Cohen Milstein Sellers & Toll still working on the lawsuit."). Compounding this concern are recent media reports regarding the City of Chicago's mayor receiving campaign contributions from City contractors. *See, e.g.*, McCloskey Decl., Ex. X ; *id.*, Ex. Y ; *id.*, Ex. Z

DoorDash's limited insight into the City's relationship with Cohen Milstein has not alleviated its concerns. From the outset of this case, Cohen Milstein has taken the leading role. On meet and confer calls, Cohen Milstein attorneys consistently drive the conversation and are far more familiar with the facts of the case. *Id*., ¶ 14. Indeed, on the parties' last status conference, Mr. Cavanaugh, a City attorney, deferred to Cohen Milstein attorney Ms. Hickman regarding basic questions about the status of discovery. *Id*., Ex. Q at 45:11-14, 63:21-23. If the City is controlling Cohen Milstein's prosecution of this case, this control occurs behind closed doors. DoorDash is entitled to information about any relevant relationship between Cohen Milstein and City officials,

as well as whether the safeguards the City purports to have in place have been followed in practice.

      3.    **RFP 51 is relevant to identifying relationships that could undermine the City's ability to effectively oversee Cohen Milstein.**

As described above, public reporting reveals that Cohen Milstein has "capitalized on personal relationships" to obtain lucrative contingency fee contracts like the one here. *See, e.g.*, *id.*, Ex. U . If such a relationship exists between Cohen Milstein and the City, it would be revealed in nonprivileged communications between Cohen Milstein and City officials. Communications showing the existence of such a relationship—especially one involving an influential City official—are relevant to DoorDash's due process defense, because it calls into question the City's ability to effectively control Cohen Milstein and combat its financial incentives in this case.

      4.    **The Court should reject the City's objections to RFP 51.**

***First***, the City objects to this request as overbroad because it is not limited to communications that relate to the City's allegations. But these communications are relevant to DoorDash's defenses even if they do not relate to the specific allegations in the complaint. For example, offers of assistance with political campaigns, invitations to a "resort destination conference," and emails with "shopping lists of potential litigation topics," McCloskey Decl., Ex U , demonstrate that Cohen Milstein may be influencing the City in a way that has diminished the City's ability to provide oversight. This evidence is directly relevant to DoorDash's defenses.

***Second***, the City objects to this request as overbroad because it requests all communications between Cohen Milstein and any number of City employees and officials, and because the relevant time period for this request would cause the City undue burden. The City has provided no substantiation for its assertion that it is burdensome—thus, this objection is invalid. *See Belcastro*, 2019 WL 1651709 at *4.

Nonetheless, DoorDash also offered to limit the scope of RFP 51 to communications

between Cohen Milstein and certain departments within the City that DoorDash believes could have played a role in either supervising Cohen Milstein or its retention of Cohen Milstein. McCloskey Decl., Ex. L . DoorDash also offered to limit the time period for this request to January 1, 2018 to the present. *Id.* The City rejected DoorDash's reasonable compromises, and again failed to explain why that narrowed RFP was burdensome.

> 5. **RFP 33 is relevant to determining whether the City has effectively curbed Cohen Milstein's financial bias.**

While the City's agreement with Cohen Milstein contains provisions that may allow the City to control Cohen Milstein in theory, the law entitles DoorDash to verify the efficacy of such agreements. *See Cty. of Santa Clara,* 50 Cal. 4th at 63 (holding that such agreements are "subject to objective verification"); *see also Merck*, 947 F. Supp. 2d at 738.

The documents sought by RFP 33 are relevant because they will help DoorDash determine whether the retainer agreement's safeguards are effective in practice. For example, the documents will show whether the retainer agreement even covers all of Cohen Milstein's work in this case. If Cohen Milstein began its investigation of DoorDash before it executed the retainer agreement with the City, the safeguards in the agreement could not protect DoorDash against Cohen Milstein's bias during the investigation. Indeed, in a January 6, 2023 letter, the City noted that the "earliest communications with Cohen Milstein regarding DoorDash were in October 2020"—more than five months before the City executed the retainer agreement in this case. McCloskey Decl., Ex. P . The City has refused to identify when Cohen Milstein began investigating DoorDash. *Id*.

These documents would also reveal whether the City sought an ethics review, conflicts analysis, or any assessment of Cohen Milstein before awarding the firm a potentially lucrative contingency fee contract. Indeed, the City used an Ethics Board assessment to defend its relationship with Cohen Milstein in *City of Chicago v. Purdue Pharma L.P.* 2015 WL 920719, at

*3-4. A similar assessment would be relevant to DoorDash's due process defense, which alleges a similar ethics violation. Dkt. 61 at 142-43.

6. **The Court should reject the City's objections to RFP 33.**

The City's objections to this request are meritless. *First*, the City has objected to this request as overbroad and unduly burdensome. It does so in part because "YOU" includes "all present employees" of the City. But the context of this request makes clear that it refers only to *the City itself* as Cohen Milstein's client in "this ACTION." It appears that the City reflexively asserted the same, boilerplate objection wherever the term "YOU" appeared in a request. *See Burkybile v. MitsubishiMotors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006) (burden of objecting "cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome[.]'"). Further, an "undue burden" objection must adequately demonstrate the nature and extent of the claimed burden by a specific showing of the burden posed by production of the requested documents. *Belcastro*, 2019 WL 1651709 at *4. The City stated neither objection with specificity.

*Second*, while this request was already limited in terms of subject matter (the retention of Cohen Milstein), DoorDash offered to further limit this request to the City's Law Department, the Mayor's Office, and the BACP if the City represented that these are the only departments with oversight over Cohen Milstein. McCloskey Decl., Ex. K at 4-5. On January 6, the City rejected DoorDash's proposal, and instead offered to provide a copy of its Outside Counsel Guidelines and contracts with Cohen Milstein in other cases. *Id.*, Ex. N . The City's response misses the point: DoorDash seeks documents that will allow it to verify whether the City's guidelines and safeguards have been followed in *this* case.

*Third*, the City copied and pasted the same boilerplate privilege objection for other requests. But because the City has refused to provide a privilege log for these documents, it waived

any such protections. Fed. R. Civ. P. 26(b)(5)(A)(ii); Advisory Committee Notes to Rule 26(b)(5); *Novelty*, 265 F.R.D. at 381.

### 7. The City Should Provide a Further Response to Interrogatory No. 8.

DoorDash's Interrogatory No. 8 is relevant for the same reasons Request for Production No. 51 is relevant: a personal relationship between Cohen Milstein and the City would undermine the City's ability to counteract Cohen Milstein's financial bias. *See* Section A.3 above. It is also relevant for the same reason Request for Production No. 33 is relevant: a description of the relationship between the City and Cohen Milstein will reveal the existence (or lack thereof) of safeguards that could counteract Cohen Milstein's financial bias. *See* Section A.5 above. The City's copy-and-pasted objections to this request are boilerplate, and should be rejected for the same reasons described above. Rather than providing a response, the City offered that "Cohen Milstein has been retained as counsel of record in this matter." McCloskey Decl., Ex. F at 11. The City has not provided any detail about its relationship with Cohen Milstein, the role Cohen Milstein plays in the prosecution of DoorDash, or the nature of the City's agreement with Cohen Milstein. For months the City has stated that it would provide a supplemental response to confirm that the safeguards in the retainer agreement were carried out in practice. *See, e.g.*, *id.*, Ex. J at 10; *id.*, Ex. N . It has not yet done so. The City has delayed far too long, and the Court should compel the City to provide a further response.

### B. The City Should Respond to DoorDash's Request for Communications with Other Agencies Related to Allegations in the Complaint

Documents responsive to RFP 36 are relevant to DoorDash's waiver, laches, and estoppel affirmative defenses. For example, communications between the City and other government agencies about DoorDash will show *when* the City was first aware of DoorDash's alleged business practices before filing this suit, and whether its delay was justified. The Court found DoorDash's

arguments in support of its waiver, laches, and estoppel defenses "compelling" and refused to strike those defenses. Dkt. 76 at 5.

Moreover, communications between City officials and other government officers are relevant to DoorDash's Home Rule affirmative defense. This defense requires an assessment of factors including: "[1] the nature and the extent of the problem; [2] the unit of government having a more vital interest in resolving the problem; and [3] the role traditionally played by local and statewide authorities in dealing with the problem." *Cnty of Cook v. Village of Bridgeview*, 2014 IL App (1st) 122164, ¶ 15. In denying the City's motion to strike this defense, the Court ruled that "[DoorDash] rightly point[s] out that a home-rule defense requires a case-by-case analysis *of the underlying facts*." Dkt. 76 at 4 (quotation marks omitted, italics added). DoorDash's discovery request is aimed at, among other things, obtaining communications between government agencies to determine which agency has the greater interest and expertise to regulate the business practices at issue in the complaint. *Id.*

1. **The Court should reject the City's Privilege Objections to RFP 36.**

The City asserted the same copy-and-pasted, boilerplate privilege objections it asserted for RFP Nos. 33, 51, and Interrogatory No. 8. McCloskey Decl., Ex. D at 36. Since its initial response, the City has emphasized two such objections, both of which fail. The City first asserted the common interest privilege, *id.*, Ex. H at 3-4, but that is not a separate privilege—it is a derivative of the attorney client privilege. *Monco v. Zoltek Corp.*, 317 F. Supp. 3d 995, 1002 (N.D. Ill. 2018). Therefore, the City must show that the attorney client privilege applies, *Gerba v. Nat'l Hellenic Museum*, 338 F. Supp. 3d 851, 859 (N.D. Ill. 2018), and its refusal to produce a privilege log dooms its privilege claim. *See Whitney v. Tallgrass Beef Co.*, 2015 WL 3819373, at *4 (N.D. Ill. June 18, 2015) ("A party cannot bypass its obligation under Rule 26 to produce a privilege log merely by claiming that the common interest exception applies."). The City also asserts the work

14

product doctrine. McCloskey Decl., Ex. H at 3-4. But the City has not carried its burden to show that it prepared the withheld documents due to the prospect of litigation, *Binks Mfg. Co. v. Nat'l Presto Indus. Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983).

The City refuses to provide a privilege log, claiming that it would cause an undue burden. McCloskey Decl., Ex. D . The City has provided no authority that would justify a complete refusal to provide privilege log when it unilaterally claims undue burden. Moreover, when DoorDash asked the City how many communications with other government agencies it had identified, the City conceded it had not searched for responsive documents. *Id*., ¶ 10b. The Court should rejected the City's privilege objections.

The City has offered to run searches designed to identify communications between certain City officials and the Illinois Office of the Attorney General regarding DoorDash, Caviar, or third-party meal delivery companies in general. McCloskey Decl., Ex. N . But this narrowly-drawn proposal will not provide sufficient information about the City's awareness of the purported business practices in the Complaint, however, since the City may have had earlier correspondence with other agencies before the Illinois Attorney General's office. Nor will the focus on one state office allow for a determination of which national or statewide regulator—of which there are many—has the greatest interest and expertise in regulating the alleged business practices at issue in the complaint. The City refused to expand this narrow focus, however, and even refused to include the dates for which City officials communicated with other state and federal agencies. *Id*., Ex. O . Thus, the Court should compel the City to provide documents responsive to RFP No. 36.

## **CONCLUSION**

For all the foregoing reasons, DoorDash requests that the Court compel the City to provide responses to Request for Production Nos. 33, 36, and 51 and Interrogatory 8.

Dated: January 16, 2023                                    Respectfully submitted,

| **GIBSON, DUNN & CRUTCHER LLP** | **FORDE & O'MEARA LLP** |
|---|---|

Joshua S. Lipshutz (*pro hac vice*)
1050 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (*pro hac vice*)
Cynthia Chen McTernan (*pro hac vice*)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
cmcternan@gibsondunn.com

By:  /s/ *Michael K. Forde*
Michael K. Forde
Brian P. O'Meara
191 North Wacker Drive
31st Floor
Chicago, IL 60606
Phone: (312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com

**RILEY SAFER HOLMES
& CANCILA LLP**

Patricia Brown Holmes
Sarah E. Finch
70 W. Madison Street
Suite 2900
Chicago, IL 60602
Phone: (312) 471-8700
pholmes@rshc-law.com
sfinch@rshc law.com

*Attorneys for Defendants DoorDash, Inc. and Caviar, LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 16th day of January, 2023, I electronically filed a copy of the foregoing Motion To Compel Discovery through the Court's CM/ECF System, which will send notifications of the filing to all counsel of record.

                                                                                             */s/ Michael K. Forde*