**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| City of Chicago, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:21-cv-05162 |
| DoorDash, Inc. and Caviar, LLC, | Honorable Robert W. Gettleman |
| *Defendants.* | **Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................4

ARGUMENT ......................................................................................................................7

I.      Illinois's Two-Year Statute Of Limitations Bars Claims For Conduct That Occurred Before August 27, 2019. .........................................................................7

     A.      The Two-Year Limitations Period Applies To The City's Claims. .............7

     B.      Partial Judgment On The Pleadings Is Procedurally Proper. ......................9

     C.      *Nullum Tempus* Does Not Apply Because The City Does Not Seek To Vindicate Public Rights. ......................................................................11

         1.      The City's Action Concerns Private Finances, Not Public Health, Safety, Or Property. .......................................................................12

         2.      The City's Action Is Entirely Discretionary Under The MCC. .....14

         3.      The Transactions At Issue Did Not Necessitate The Expenditure Of Public Funds. ........................................................................16

         4.      The City Has "Partnered With Individuals" To Pursue Its Claims. .................................................................................17

         5.      Due Process Forbids Imposing Liability On DoorDash Based On The City's Untimely Claims. .........................................................19

II.      Laches Independently Bars The City's Untimely Claims. ....................................22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

CASES

*3M Co. (Minn. Min. & Mfg.) v. Browner*,
17 F.3d 1453 (D.C. Cir. 1994) .......................................................................................20

*Acuity v. Lenny Szarek, Inc.*,
128 F. Supp. 3d 1053 (N.D. Ill. 2015) .............................................................................6

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ...........................................................................................6

*Adams v. Woods*,
6 U.S. (2 Cranch) 336 (1804).................................................................................3, 19, 20

*Bd. of Educ. of Chi. v. A, C & S, Inc.*,
546 N.E.2d 580 (Ill. 1989) .................................................................12, 14, 15, 17, 18

*Bill v. Bd. of Educ. of Cicero Sch. Dist. 99*,
812 N.E.2d 604 (Ill. App. Ct. 2004) ..............................................................................23

*Brown v. Trs. of Schs.*,
79 N.E. 579 (Ill. 1906)..............................................................................................18, 19

*Burlinski v. Top Golf USA Inc.*,
2020 WL 5253150 (N.D. Ill. Sept. 3, 2020) ...................................................................8

*Campbell v. Holt*,
115 U.S. 620 (1885)........................................................................................................21

*CFTC v. Schor*,
478 U.S. 833 (1986)........................................................................................................20

*Champaign Cnty. Forest Preserve Dist. v. King*,
683 N.E.2d 980 (Ill. App. Ct. 1997) ..............................................12, 13, 14, 16, 17

*City of Chicago v. Latronica Asphalt & Grading, Inc.*,
805 N.E.2d 281 (Ill. App. Ct. 2004) ..............................................12, 14, 15, 17

*City of Rochelle v. Suski*,
564 N.E.2d 933 (Ill. App. Ct. 1990) ..............................................................................22

*City of Shelbyville v. Shelbyville Restorium, Inc.*,
451 N.E.2d 874 (Ill. 1983) .................................................................11, 12, 15, 18

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Clay v. Kuhl*,
727 N.E.2d 217 (Ill. 2000) ...........................................................................................2, 21

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
532 U.S. 424 (2001) ...........................................................................................................9

*Du Page Cnty. v. Graham, Anderson, Probst & White, Inc.*,
485 N.E.2d 1076 (Ill. 1985) ............................................................................................11

*Express Valet, Inc. v. City of Chicago*,
869 N.E.2d 964 (Ill. App. Ct. 2007) ...............................................................................10

*Faison v. RTFX, Inc.*,
6 N.E.3d 376 (Ill. App. Ct. 2014) ...................................................................................10

*Fed. Nat'l Mortg. Ass'n v. Altamirano*,
169 N.E.3d 102 (Ill. App. Ct. 2020) ...............................................................................22

*Gabelli v. SEC*,
568 U.S. 442 (2013) .........................................................................................................20

*Guar. Tr. Co. of N.Y. v. United States*,
304 U.S. 126 (1938) ...................................................................................................11, 12

*People ex rel. Hartigan v. Agri-Chain*,
586 N.E.2d 535 (Ill. Ct. App. 1991) ....................................................................14, 16, 17

*Hickey v. Ill. Cent. R.R. Co.*,
220 N.E.2d 415 (Ill. 1966) ..............................................................................................23

*People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*,
795 N.E.2d 990 (Ill. App. Ct. 2003) .....................................................................11, 14, 16

*Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*,
2014 WL 4748272 (C.D. Ill. Sept. 24, 2014) ...................................................................8

*Keystone Montessori Sch. v. Vill. of River Forest*,
187 N.E.3d 1167 (Ill. App. Ct. 2021) .............................................................................24

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .........................................................................................................19

*Landis v. Marc Realty, L.L.C.*,
919 N.E.2d 300 (Ill. 2009) .......................................................................................1, 7, 8

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Leavell v. Kieffer*,
189 F.3d 492 (7th Cir. 1999) .................................................................................................1, 6

*People ex rel. Lindsey v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 4*,
120 N.E.2d 887 (Ill. 1954) ..........................................................................................................22

*In re M.I.*,
989 N.E.2d 173 (Ill. 2013) ..........................................................................................................16

*Madison v. City of Chicago*,
82 N.E.3d 702 (Ill. App. Ct. 2017) ..........................................................................................21

*Meyers v. Kissner*,
594 N.E.2d 336 (Ill. 1992) ..........................................................................................................23

*Monson v. Cnty. of Grundy*,
916 N.E.2d 620 (Ill. App. Ct. 2009) ...................................................................................22, 23

*Namur v. Habitat Co.*,
691 N.E.2d 782 (Ill. App. Ct. 1998) ..........................................................................................7

*Nat'l Fid. Life Ins. Co. v. Karaganis*,
811 F.2d 357 (7th Cir. 1987) .......................................................................................................6

*Noland v. Mendoza*,
2022 WL 4372449 (Ill. Sept. 22, 2022) ...............................................................................3, 23

*People ex rel. Northfield Park Dist. v. Glenview Park Dist.*,
582 N.E.2d 1272 (Ill. App. Ct. 1991) ......................................................................................22

*Order of R.R. Telegraphers v. Ry. Express Agency*,
321 U.S. 342 (1944)........................................................................................................................19

*S. Side Tr. & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*,
927 N.E.2d 179 (Ill. App. Ct. 2010) .......................................................................................6, 7

*City of Chicago ex rel. Scachitti v. Prudential Sec., Inc.*,
772 N.E.2d 906 (Ill. App. Ct. 2002) ...................................................................................12, 17

*Scott v. Ass'n for Childbirth at Home, International*,
430 N.E.2d 1012 (Ill. 1981) ..........................................................................................................8

*Shasta View Irrigation Dist. v. Amoco Chems. Corp.*,
986 P.2d 536 (Or. 1999) ..............................................................................................................22

iv

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Smith v. Buck*,
2022 WL 3716529 (S.D. Ind. Aug. 29, 2022) .................................................17

*St. Alexius Med. Ctr. v. Roofers' Unions Welfare Tr.*,
2015 WL 5123602 (N.D. Ill. Aug. 28, 2015) ...................................................8

*Stafford v. Bowling*,
407 N.E.2d 771 (Ill. App. Ct. 1980) ........................................................14, 16

*Timbs v. Indiana*,
139 S. Ct. 682 (2019) ...........................................................................9

*Tolbert v. Godinez*,
142 N.E.3d 415 (Ill. App. Ct. 2020) ...........................................................22

*People ex rel. Town of New Trier v. Hale*,
52 N.E.2d 308 (Ill. App. Ct. 1943) ........................................................18, 19

*Unite Here Local 1 v. Hyatt Corp.*,
862 F.3d 588 (7th Cir. 2017) ....................................................................6

*United States v. City of Loveland*,
621 F.3d 465 (6th Cir. 2010) ....................................................................6

*United States v. Kubrick*,
444 U.S. 111 (1979)............................................................................19

*United States v. Mayo*,
26 F. Cas. 1230 (C.C.D. Mass. 1813) .........................................................20

*United States v. Rezzonico*,
32 F. Supp. 2d 1112 (D. Ariz. 1998) ..........................................................22

*United States v. Wood*,
925 F.2d 1580 (7th Cir. 1991) (per curiam)....................................................18

*Vill. of DePue v. Viacom Int'l, Inc.*,
713 F. Supp. 2d 774 (C.D. Ill. 2010) ..........................................12, 13, 14, 16, 17

*Willett v. Cessna Aircraft Co.*,
851 N.E.2d 626 (Ill. App. Ct. 2006) .............................................................7

*William Danzer & Co. v. Gulf & Ship Island R.R. Co.*,
268 U.S. 633 (1925)....................................................................2, 21, 22

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Wood v. Carpenter*,
101 U.S. 135 (1879) ....................................................................................................................19

**STATUTES**

28 U.S.C. § 1332(a) ....................................................................................................................10

Ill. Comp. Stat. 5/13-202 ....................................................................................................1, 5, 7, 23

Ill. Comp. Stat. 140/1 ..................................................................................................................17

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................5, 6

Federal Rule of Civil Procedure 12(c) ............................................................................1, 4, 6, 17

## INTRODUCTION

Illinois has a two-year statute of limitations for actions seeking statutory penalties. 735 Ill. Comp. Stat. 5/13-202. On August 27, 2021, the City filed this lawsuit seeking statutory penalties and other relief from DoorDash, Inc. and its subsidiary Caviar, LLC (together, "DoorDash") for alleged violations of the Municipal Code of Chicago ("MCC"). Rather than respecting the two-year limitations period, however, the City and its private, contingency-fee counsel seek to impose sweeping liability for supposedly deceptive business practices dating as far back as 2014. This overreach is prohibited by Illinois law and would serve as a troubling precedent for Chicago and other municipalities to abuse nominally "public" litigation by partnering with private attorneys to pursue fundamentally private claims for personal gain.

The Court should reject these tactics by granting DoorDash partial judgment on the pleadings under Rule 12(c) as to all claims for alleged violations that occurred before August 27, 2019. All the facts needed to decide DoorDash's limitations defense—*i.e.*, the dates of the alleged conduct—appear on the pleadings. Moreover, the relevant facts are undisputed for purposes of this motion, the motion comes "[a]fter the pleadings are closed" but "early enough not to delay trial," and granting partial judgment will assist in paring this suit down to timely claims. Fed. R. Civ. P. 12(c). Put simply, "when a complaint shows that the time for litigation has passed, judgment on the pleadings may be entered under [Rule] 12(c)." *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999).

The City cannot evade the two-year limitations period by claiming that its action somehow does not seek statutory penalties. The MCC itself describes the provisions cited in the Complaint as imposing "penalt[ies]," MCC §§ 2-25-090(g), 4-276-480, and Illinois law defines a "penalty" as a fine that must be imposed "without reference to any actual injury," *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 307–08 (Ill. 2009). The City implicitly concedes this point by seeking a

multimillion-dollar recovery while asserting that it "need not" show "actual reliance, deception, or injury." Dkt. 40, at 3. Nor can the City avoid partial judgment on the pleadings by suggesting that it would result in mere "piecemeal" resolution "of *parts* of claims." *Id.* at 14. The MCC states that "[e]ach day" violations continue constitutes a "separate and distinct offense," MCC §§ 2-25-090(g), 4-276-480, so unless the City concedes that it is pursuing only one violation of each MCC provision (yielding a total maximum penalty of $12,000), each day on which MCC violations allegedly occurred before August 27, 2019, is a separate, time-barred claim.

The City has also argued that this is a government-enforcement action exempt from Section 5/13-202 under the *nullum tempus* doctrine. That theory fails for multiple reasons. *Nullum tempus* applies only when the government is *required* to take action to vindicate a *public* right involving the expenditure of *public* funds—not where, as here, a government entity stands in the shoes of private consumers to pursue a discretionary suit based on private transactions having nothing to do with public funds. Again, Chicago has enlisted *private* enforcers—contingency-fee plaintiffs' lawyers at a D.C.-based law firm—to bring this suit, in exchange for up to 28% of the City's net recovery. That profiteering motive animates this attempt to revive such a wide swath of stale claims, and it confirms that the limited doctrine of *nullum tempus* does not apply.

Applying *nullum tempus* here would also violate due process. The U.S. Supreme Court has long recognized that due process forbids the government from pursuing an untimely action when the limitations period creates a vested right by *extinguishing* the underlying claim (rather than merely imposing a procedural bar to a remedy). *See William Danzer & Co. v. Gulf & Ship Island R.R. Co.*, 268 U.S. 633, 637 (1925). And the Illinois Supreme Court has construed Section 5/13-202's limitations period to create just that type of substantive, vested right by extinguishing corresponding claims. *See Clay v. Kuhl*, 727 N.E.2d 217, 221 (Ill. 2000). Moreover, the U.S.

Supreme Court has also recognized for more than 200 years that defendants cannot be held liable in perpetuity for penalties sought by the government. *See Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1804). Despite that clear command, perpetual liability is exactly what the City seeks here. Its claims stretch back to 2014 only because DoorDash entered Chicago that year. But the logical result of the City's position—given its lack of any limiting principle—is that it could seek penalties for alleged conduct taking place *decades* ago. Under the Due Process Clause, DoorDash's interest in repose trumps any supposed interest in reviving causes of action years after their expiration—particularly when penalties are on the line.

Finally, because the City is pursuing merely private rights, the doctrine of laches independently bars the City's untimely claims, separate and apart from Section 5/13-202. The City delayed bringing suit for years and thereby prejudiced DoorDash, which operated in Chicago in the good-faith belief that it was complying with the law—without any objection from the City. As the Illinois Supreme Court recently clarified, the City need not have taken an affirmative act that induced DoorDash's conduct for laches to apply here. *See Noland v. Mendoza*, 2022 WL 4372449, at *5 (Ill. Sept. 22, 2022) (applying ordinary, two-element laches test when public officials "assert[ed] a private right"). The inequity of Chicago's belated about-face prevents it from seeking vast penalties attributable to its own delay.

The City of course *says* that this lawsuit is about protecting the public. But its tactics spotlight the potential for private actors (here, Cohen Milstein) to wield governmental powers for their own financial gain. After having filed no enforcement action against DoorDash for the entirety of its public-facing operations in Chicago (roughly *seven years*), the City—spurred on by private, contingency-fee counsel entitled to up to 28% of any ultimate recovery—now seeks a multimillion-dollar windfall on purported claims that accumulated through the City's own delay.

Without intervention by this Court, the City's prosecution of DoorDash could become a blueprint for similar abuse: develop a theory that innocuous, longstanding conduct violates a statute authorizing severe penalties; evade the limitations period by claiming to protect "public rights"; and strong-arm defendants into settlement while enriching private, contingency-fee counsel.

The Court should begin to bring this abuse to an end by granting judgment on the pleadings for DoorDash under Rule 12(c) as to all claims for alleged violations that occurred before August 27, 2019.

## BACKGROUND

DoorDash is a technology company that facilitates food ordering and food delivery through its online platform. DoorDash's platform connects consumers, a broad array of restaurants and stores, and independent-contractor delivery providers. *See* Compl. ¶¶ 2, 15, 17. DoorDash (and Caviar) first began to serve the Chicago market in 2014. *Id.* ¶ 6. DoorDash generates revenue by "charging fees to consumers for ordering and delivery" and by "charging a commission to restaurants that contract with [DoorDash] to market th[ose restaurants] on [DoorDash's] Platforms" and coordinate delivery by Dashers. *Id.* ¶ 4.

The City filed its Complaint on August 27, 2021, in the Circuit Court of Cook County. Dkt. 1-1. The City alleges that DoorDash's prior practices violated "sections 2-25-090 and 4-276-470 of the Municipal Code of Chicago ['MCC']." Compl. ¶ 1. In particular, the Complaint posits five categories of conduct that allegedly occurred between 2014 and August 26, 2019:

1. *Fees*: The City alleges that, beginning in 2016 for DoorDash (and "at least" 2019 for Caviar), DoorDash unlawfully charged consumers a service fee and small order fee in addition to a delivery fee, even though the City admits that DoorDash disclosed to consumers that such fees would apply and explained how such fees were calculated, *id.* ¶¶ 6(a), 26, 52;[1]

---

[1] The City also alleges that DoorDash charged a "Chicago Fee" for orders from Chicago restaurants at various times, beginning in early December 2020. Compl. ¶ 57. Because that alleged conduct occurred within the two-year limitations period, it is not at issue in this motion.

MEMORANDUM OF LAW IN SUPPORT OF                                    CASE NO. 1:21-CV-05162
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

2. *Menu Prices*: The City alleges that, beginning in 2014 for DoorDash (and "at least" 2019 for Caviar), DoorDash misled consumers by charging them prices that it fully disclosed on its platform because it did not additionally disclose that prices might differ from those on restaurants' own online and in-store menus, *id.* ¶ 6(b);

3. *Minimum Orders*: The City alleges that, beginning in 2014, DoorDash offered "promotional discounts" that applied only when an order exceeded a purportedly undisclosed "minimum order amount," despite the City's own admission that the terms of such promotions are readily available to consumers, *id.* ¶¶ 6(c), 96, 101–103;

4. *Unaffiliated Restaurants*: The City alleges that, beginning in 2014, DoorDash harmed restaurants and confused consumers when it offered free advertising and delivery services to certain restaurants with whom it had no contractual relationship, *id.* ¶ 112, 129; and

5. *Tips*: The City alleges that, from July 2017 until at least September 2019, DoorDash "misled consumers" about a discontinued pay model for drivers, despite admitting DoorDash disclosed to consumers precisely how this pay model worked, *id.* ¶ 163.

The Complaint asserts that this conduct violated MCC §§ 4-276-470 and 2-25-090, both of which prohibit specified unfair and deceptive business practices. As to § 4-276-470, the Complaint seeks "fines for each violation" of that provision of "not less than $50.00 nor more than $2,000.00." Compl. ¶ 198. As to § 2-25-090, the City likewise seeks "fines for each violation" of "not less than $500.00 nor more than $10,000.00." *Id.* ¶ 208.

DoorDash removed the action to this Court in September 2021, Dkt. 1, and moved to dismiss the Complaint under Rule 12(b)(6), arguing (as relevant here) that the City failed to state a claim because a large swath of its suit was untimely under 735 Ill. Comp. Stat. 5/13-202. In response, the City argued that the fines it seeks are not "statutory penalties" subject to Section 5/13-202, that it would be procedurally improper to dismiss the City's claims on timeliness grounds, and that even if dismissal were otherwise proper, the *nullum tempus* doctrine immunizes its untimely claims from that statute. Dkt. 40, at 13–14.

5

The Court declined to resolve the timeliness issue on a Rule 12(b)(6) motion, observing that concerns about untimeliness do not go "to whether plaintiff has stated a claim." Dkt. 43, at 5 n.2. DoorDash answered and asserted affirmative defenses, including statute of limitations and laches defenses, Dkt. 61, at 131–32, 134–35, and the City moved unsuccessfully to strike the laches defense, Dkts. 62, 76. DoorDash now asks the Court to adjudicate its limitations and laches defenses under the distinct Rule 12(c) standard for judgment on the pleadings.

## LEGAL STANDARDS

Judgment on the pleadings under Rule 12(c) "is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017); *see Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). Unlike the Rule 12(b)(6) inquiry, Rule 12(c) assesses the merits of the controversy based on a complete set of pleadings and allows courts to enter judgment on affirmative defenses like limitations and laches. *See Leavell*, 189 F.3d at 494–95 (judgment on the pleadings is appropriate under Rule 12(c) "when a complaint shows" the suit is untimely); *United States v. City of Loveland*, 621 F.3d 465, 474–75 (6th Cir. 2010) (affirming judgment on the pleadings based on laches defense). Partial judgment on the pleadings is permissible where a defense extinguishes some, but not all, of a plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 727–30 (7th Cir. 2014) (affirming partial judgment on the pleadings where certain claims were time-barred); *Acuity v. Lenny Szarek, Inc.*, 128 F. Supp. 3d 1053, 1056 (N.D. Ill. 2015) (granting partial judgment on the pleadings as to insurer's duty to defend).

Under Illinois law, a defendant has the burden of proof in showing that an affirmative defense, such expiration of a statute of limitations, applies. *S. Side Tr. & Sav. Bank of Peoria v.*

*Mitsubishi Heavy Indus., Ltd.*, 927 N.E.2d 179, 193 (Ill. App. Ct. 2010).  Once the defendant makes that showing, the burden switches to the plaintiff to show an exception.  *Id.*; *see also Willett v. Cessna Aircraft Co.*, 851 N.E.2d 626, 634 (Ill. App. Ct. 2006).

## ARGUMENT

**I.      Illinois's Two-Year Statute Of Limitations Bars Claims For Conduct That Occurred Before August 27, 2019.**

Illinois law requires that "[a]ctions for . . . a statutory penalty . . . shall be commenced within 2 years next after the cause of action accrued."  735 Ill. Comp. Stat. 5/13-202.  Here, the Complaint was filed on August 27, 2021.  Dkt. 1-1.  Yet the City and its contingency-fee counsel seek penalties for conduct that occurred *long* before August 27, 2019—*i.e.*, the two-year cut-off date.  The City's "Tips" theory stretches back to July 2017; its "Fees" theory back to 2016 (except with respect to the Chicago Fee); and the three remaining theories all the way back to 2014.  *Supra* at 5 (citing Compl. ¶¶ 6, 26, 112, 163).  This prosecution indisputably was *not* commenced within the two-year limitations period for conduct that occurred before August 27, 2019, and the Complaint is thus untimely insofar as it is premised on alleged violations of the MCC before this date.  The Court should grant partial judgment on the pleadings in DoorDash's favor for all alleged violations that occurred before August 27, 2019.

**A.      The Two-Year Limitations Period Applies To The City's Claims.**

The City has argued that the statutory penalties it seeks under MCC §§ 2-25-090 and 4-276-470 are not "penalt[ies]" within the meaning of Section 5/13-202's two-year limitations period.  That argument is foreclosed by Illinois precedents and the ordinances' text.  Under Illinois law, a fine is a "penalty" when it is imposed automatically, for an amount set by statute, and independently of actual damages suffered by the plaintiff.  *Landis*, 919 N.E.2d at 307; *Namur v. Habitat Co.*, 691 N.E.2d 782, 784 (Ill. App. Ct. 1998).  That is the case here.  MCC §§ 2-25-090

and 4-276-480 both state that fines "shall" be imposed within a mandatory range set by statute—satisfying the "automatic liability" and "predetermined amount" requirements. *Landis*, 919 N.E.2d at 307. And both impose a minimum penalty irrespective of actual damages. *See* MCC §§ 2-25-090(g), 4-276-480. Those fines are thus penalties, as the ordinances themselves make plain. *See id.* § 4-276-480 ("Penalty" for "[d]eceptive practices"); *id.* § 2-25-090(g) (imposing fines "in addition to any other penalty").[2]

The fact that the MCC provisions at issue contemplate a *range* of fines rather than a single, fixed dollar amount does not change the analysis. *Landis* makes clear that a "specific dollar amount" is not necessary; even a formula is acceptable. 919 N.E.2d at 307. If a formula that includes *no* preset fines is sufficient to show a "predetermined amount of damages," so too is a range of penalties prescribed by statute. It cannot be that a statute requiring a fine of $500 is penal, yet a statute requiring a fine of $500 to $10,000 is not. *See, e.g., St. Alexius Med. Ctr. v. Roofers' Unions Welfare Tr.*, 2015 WL 5123602, at *5 (N.D. Ill. Aug. 28, 2015) (applying Section 5/13-202 to a penalty scheme in which the court could "use its discretion" to impose a fine "of up to $100 a day"). The City's cases are distinguishable. The MCC provisions here do not specify that the Court could *either* impose a statutory fine *or* award actual damages, which would raise questions about whether the penalty was automatic. *Cf. Burlinski v. Top Golf USA Inc.*, 2020 WL 5253150, at *7 (N.D. Ill. Sept. 3, 2020); *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, 2014

---

[2]  In *Scott v. Ass'n for Childbirth at Home, International*, 430 N.E.2d 1012 (Ill. 1981), the Illinois Supreme Court found that a remedial statute providing for a civil penalty was not a "penal statute" for purposes of the void for vagueness doctrine. *Id.* at 1017. This case is inapplicable here, however, because (1) the court did not address Section 5/13-202, (2) did not construe the term "statutory penalty," and (3) concluded only that a remedial statute providing for civil penalties was not "penal" under the *void-for-vagueness doctrine*—not for limitations purposes. It is perfectly consistent to hold that a civil penalty found in a remedial statute is subject to certain notice requirements for due-process purposes under *Scott* yet subject to Section 5/13-202's two-year limitations period for statutory penalties under *Landis*.

WL 4748272, at *7–8 (C.D. Ill. Sept. 24, 2014). The fines at issue here are automatic, set by statute, and involve a minimum amount that is untethered to actual injury; accordingly, they are "penalties" within the meaning of Section 5/13-202, and a two-year limitations period applies.[3]

### B. Partial Judgment On The Pleadings Is Procedurally Proper.

The City has suggested that rejecting its untimely claims would be improper because DoorDash—in arguing that conduct before August 27, 2019, is time-barred—seeks "piecemeal dismissal of *parts* of claims." Dkt. 40, at 14. This argument is incorrect, and accepting it would upend limitations periods by preventing resolution of time-barred claims because other claims (here, for conduct on or after August 27, 2019) are not time-barred. The Court should reject it.

The City's apparent confusion stems from the way it pleaded its Complaint. The Complaint purports to assert only two "causes of action." Dkt. 1-1, at 80, 84 ("FIRST CAUSE OF ACTION," *i.e.*, "[v]iolation of MCC § 4-276-470," and "SECOND CAUSE OF ACTION," *i.e.*, "[v]iolation of MCC § 2-25-090"). While it is true that the City invokes only two provisions of the MCC, it does not follow that the City is asserting only two claims. In reality, the Complaint asserts *thousands* of violations, each of which represents a claim the City must prove—and each of which is subject to a two-year limitations period. Three points confirm this straightforward conclusion.

*First*, the MCC penalty provisions invoked here expressly state that "[e]ach day" on which violations continue "shall constitute a *separate and distinct offense*" meriting its *own* penalty. MCC § 2-25-090(g) (emphasis added); *id.* § 4-276-480 ("[e]ach violation . . . shall be regarded as

---

[3]    Though both MCC provisions call for minimum penalties even absent actual injury, a court may still consider actual injury (or the lack thereof) in selecting a fine to impose within that mandatory range. Further, DoorDash reserves the right to argue that *any* penalty imposed here would be invalid absent a showing of injury, including because the City lacks standing to bring these private-capacity claims under Illinois law, *see* Dkt. 64, at 3, and/or because such fines would violate constitutional constraints, *see Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 434 (2001); *Timbs v. Indiana*, 139 S. Ct. 682 (2019).

being committed on each day"); *see, e.g.*, *Express Valet, Inc. v. City of Chicago*, 869 N.E.2d 964, 980–81 (Ill. App. Ct. 2007) ("[E]ach day that petitioners operated without a license constituted a separate offense, and each offense was punishable by a fine between $50 and $500."). The ordinances themselves thus make clear that the City's two "causes of action" actually comprise thousands of "separate and distinct offense[s]" that supposedly began to accrue as early as 2014.

*Second*, under Illinois law, a cause of action accrues "when facts exist that authorize the bringing of the action." *Faison v. RTFX, Inc.*, 6 N.E.3d 376, 386 (Ill. App. Ct. 2014) (quotation marks omitted). Here, the City contends that the facts necessary to show violations of MCC §§ 2-25-090 and 4-276-470 existed before August 27, 2019. *E.g.*, Compl. ¶ 6 (asserting that DoorDash has engaged in misconduct "[s]ince entering the Chicago market in 2014" and that Caviar has done so "since DoorDash acquired it in 2019").

*Third*, the City's theory of recovery contradicts its view that only two claims are at issue. If the City were really asserting just two claims (one under MCC § 2-25-090 and the other under MCC § 4-276-470), then the maximum penalty the City could obtain would be $12,000, given that the penalty for the former is capped at $10,000 and the latter at $2,000. MCC §§ 2-25-090(g), 4-276-480. But a $12,000 penalty is obviously not what the City is trying to achieve here, which explains why the City did not object to removal from state court on amount-in-controversy grounds. *See* 28 U.S.C. § 1332(a) (amount in controversy must exceed $75,000). Indeed, the City's contingency-fee counsel *took* this suit to seek exorbitant per-claim penalties imposed for alleged conduct occurring from 2014 onwards. *See* MCC §§ 2-25-090(g), 4-276-480.

Given those points, the Court should reject any assertion that DoorDash somehow seeks judgment in the present motion merely on "*parts* of claims." Dkt. 40, at 14. DoorDash seeks judgment on thousands of "separate and distinct" (and untimely) claims that allegedly accrued

from 2014 until August 26, 2019—more than two years before the filing of this suit.

**C.** *Nullum Tempus* **Does Not Apply Because The City Does Not Seek To Vindicate Public Rights.**

The City cannot prosecute its time-barred claims by relying on a purported immunity from Section 5/13-202 under the *nullum tempus* doctrine. Dkt. 40, at 13–14. By way of background, some States have preserved the old rule of "nullum tempus occurrit regi"—that the government is exempt from statutes of limitations and the laches defense. *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 132 (1938). At common law, that rule was based on "the prerogative of the Crown," *i.e.*, the notion that the King could do no wrong, but is now grounded in the public-policy consideration that "public rights, revenues, and property" should not suffer from "the negligence of public officers." *Id.*

The Illinois Supreme Court has retained a limited version of the *nullum tempus* doctrine while abrogating the parallel doctrine of sovereign immunity. *See City of Shelbyville v. Shelbyville Restorium, Inc.*, 451 N.E.2d 874, 877 (Ill. 1983). Under Illinois law, this limited *nullum tempus* doctrine "will only be applied where the action involves public rights." *Du Page Cnty. v. Graham, Anderson, Probst & White, Inc.*, 485 N.E.2d 1076, 1080 (Ill. 1985). "The test is whether the right the governmental unit seeks to assert 'is in fact a right belonging to the general public, or whether it belongs only to the government or to some small and distinct subsection of the public at large.'" *People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990, 993 (Ill. App. Ct. 2003) (quoting *Shelbyville*, 451 N.E.2d at 877). "Courts should consider who would benefit by the government's action," *id.*, and must examine three factors: "(1) the effect of the interest on the public, (2) the obligation of the governmental unit to act on behalf of the public, and (3) the extent to which the expenditure of public revenues is necessitated." *Champaign Cnty. Forest Preserve Dist. v. King*, 683 N.E.2d 980, 982 (Ill. App. Ct. 1997).

Precedent interpreting these factors makes clear that each cuts against the application of *nullum tempus*. Simply put, *nullum tempus* does not apply where, as here, a municipality and its private counsel (for their own private benefit) exercise discretion to assert economic claims addressing private commercial transactions.

### 1. The City's Action Concerns Private Finances, Not Public Health, Safety, Or Property.

The first *nullum tempus* factor examines whether recovery would have an "effect on the general public." *Vill. of DePue v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 782 (C.D. Ill. 2010). The relevant question is not the scope or breadth of private economic harms. Rather, Illinois courts closely assess whether applying the doctrine is necessary for public officials to vindicate "public rights, revenues, and property from injury and loss." *Guar. Tr.*, 304 U.S. at 132; *Shelbyville*, 451 N.E.2d at 877. Illinois courts apply *nullum tempus* when an action affects public health and safety and public property—*see Shelbyville*, 451 N.E.2d 874 (safety-compliant road construction); *City of Chicago v. Latronica Asphalt & Grading, Inc.*, 805 N.E.2d 281 (Ill. App. Ct. 2004) (open dumping on city lot); *Bd. of Educ. of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580 (Ill. 1989) (public-school asbestos abatement)—or involves direct injury to public finances, *City of Chicago ex rel. Scachitti v. Prudential Sec., Inc.*, 772 N.E.2d 906 (Ill. App. Ct. 2002) (manipulation of municipal bonds). Actions that "merely affect . . . economic interests," however, are brought in a private capacity and are not immune from statutes of limitations. *Vill. of DePue*, 713 F. Supp. 2d at 782.

This action involves none of the effects on the general public recognized by Illinois law. The City seeks millions in penalties for alleged conduct that occurred in *private* transactions between *private* companies and their customers. Entirely absent from the Complaint is any allegation that DoorDash's supposed misconduct affected public health or safety, injured public property, or interfered with the public treasury. The Complaint focuses entirely on alleged private

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

CASE NO. 1:21-CV-05162

economic loss.  *See*, *e.g.*, Compl. ¶ 25.

Such economic interests do not warrant immunity from statutes of limitations because they do not implicate the "public's interest in health and safety." *Vill. of DePue*, 713 F. Supp. 2d at 782 (citing *Champaign Cnty.*, 683 N.E.2d at 983).  In *Village of DePue*, for example, a local official sought damages against the owner of polluted land for "diminution in the assessed property values within the Village," the "loss of business opportunity and loss of revenue" within the Village associated with "utilizing its once pristine lake as [a] fishing community," and the "costs of remediating" polluted runoff. *Id.* at 778–79.  Despite these broadly shared harms, the court refused to apply *nullum tempus* because it was "clear that lost potential tax and business revenues, in and of themselves, are not damages that are part of a 'public' cause of action, as they do not implicate the public's interest in health and safety, and merely affect the economic interests of the residents of the village." *Id.* at 782.  Likewise, in *Champaign County*, a local district sought damages against its insurer for charging excessive premiums. 683 N.E.2d at 982.  Even though public funds were involved, the action "had no effect on the public at large" because "[i]t did not make the public safer, nor did it reduce the likelihood of injury on plaintiff's property," *id.* at 983, and the "public tax revenue" involved was "not applied toward any public service," *id.* at 984.  The City's case here is even further afield than *Village of DePue* and *Champaign County*, both of which involved *public* resources and still held *nullum tempus* inapplicable.

Moreover, the effects of any penalty recovery in this action would flow not to the public at large, but instead "only to the government or some small, distinct subsection of the public at large." *Vill. of DePue*, 713 F. Supp. 2d at 781 (quoting *Champaign Cnty.*, 683 N.E.2d at 984).  An action need not "affec[t] everyone in the [City] in order for it to qualify as a public right," *A, C & S*, 546 N.E.2d at 601, but effects that are limited to a "small, distinct subsection" reflect private interests

subject to the same limitations as private actions, *Champaign Cnty.*, 683 N.E.2d at 984; *People ex rel. Hartigan v. Agri-Chain*, 586 N.E.2d 535, 538 (Ill. Ct. App. 1991). Here, the primary beneficiary of any judgment would be the City in its private capacity as a municipal corporation—followed closely by its contingency-fee outside counsel. That is not a public effect under Illinois law. *Cf. Champaign Cnty.*, 683 N.E.2d at 984.

### 2. The City's Action Is Entirely Discretionary Under The MCC.

The second *nullum tempus* factor asks "whether the governmental entity was obligated to act on behalf of the public" or was instead merely "authorized" to act. *Vill. of DePue*, 713 F. Supp. 2d at 783 (quoting *Champaign Cnty.*, 683 N.E.2d at 983). When applicable law imposes obligatory and exclusively sovereign duties, such as the abatement of asbestos in public schools (as in *A, C & S*) or the construction of safe roads (as in *Shelbyville*), actions to fulfill those duties generally concern public rights. *See Latronica*, 805 N.E.2d at 289. By contrast, an action that the government is authorized to take as one of several ways to achieve a policy goal is a discretionary act involving private rights. *See Tri State*, 795 N.E.2d at 994; *Stafford v. Bowling*, 407 N.E.2d 771, 773 (Ill. App. Ct. 1980). Thus, *nullum tempus* is unavailable unless the plaintiff establishes that it had a "legal obligation" to bring the action. *Vill. of DePue*, 713 F. Supp. 2d at 783.

The City cannot make that showing here because the provisions of the MCC at issue are entirely discretionary. The MCC gives the Commissioner of the Department of Business Affairs and Consumer Protection the authority "[t]o investigate, including the power . . . to report forthwith to the corporation counsel . . . all persons suspected of having" violated consumer-protection ordinances, MCC § 2-25-050(B)(15)(ii), and the Commissioner "*may*" order violators "to discontinue the prohibited practice" or "pay restitution," *id.* § 2-25-090(f)(1)–(2) (emphasis added); *see also id.* § 4-276-640 (specifying that the Department is the entity that "shall enforce the provisions of this chapter" without imposing specific obligations or withdrawing officials'

discretion).  The Commissioner cannot bring civil actions, but "*may . . . request* the corporation counsel to bring an action for injunctive relief or such other equitable relief that the commissioner *deems to be appropriate*."  *Id.* § 2-25-090(f)(4) (emphases added).  The Corporation Counsel's authorities are likewise explicitly discretionary; the Corporation Counsel "*may* issue . . . a subpoena" in response to suspected violations, *id.* § 2-25-090(e) (emphasis added), and "shall . . . [i]nvestigate, *at his discretion*, acts of consumer fraud," *id.* § 2-60-020(f) (emphasis added).  The City elected to exercise this authority to investigate DoorDash, hire outside counsel, and file this action.  But none of that was *required*, and no law would have been violated had the City taken a different path.

No court has found that such discretionary language satisfies the obligation-to-act factor; to the contrary, the cases applying *nullum tempus* have emphasized the *non-discretionary* nature of the duties at issue.  In *Shelbyville*, for instance, the city seeking damages for failure to construct compliant public roads had a "continuing responsibility" under a state statute "to ensure such construction and maintenance for the use of the public."  451 N.E.2d at 878.  Similarly, in *A, C & S*, the Illinois Asbestos Abatement Act "impose[d] the duty to act on the individual school districts" to take "corrective action" to remove asbestos and to "cooperate fully with the Attorney General in any litigation to recover costs of abatement."  546 N.E.2d at 602.  And in *Latronica*, the MCC required the City to "institute necessary proceedings to prosecute violations" and "to compel the prevention and abatement of . . . pollution . . . and nuisances arising therefrom."  805 N.E.2d at 289 (quoting MCC § 2-30-030(1), (4), now § 2-112-110(b)(2)).  No such comparable language exists here.

If anything, the MCC provisions applicable to this action are even more discretionary than the Wage Act provisions at issue in *Tri State* and *Agri-Chain*—where the courts *still* declined to

apply *nullum tempus*. *See Tri State*, 795 N.E.2d at 995; *Agri-Chain*, 586 N.E.2d at 539. As explained in *Stafford*, although the Wage Act imposed "the duty to inquire diligently into violations of the Act" and authorized officials to issue administrative orders and bring actions for damages and statutory penalties, the Act "grant[ed] the Department discretion to choose which, if any, of the options to use." 407 N.E.2d at 773. Later courts held that state actions for damages and penalties brought under the Act could not invoke *nullum tempus* because the "duty to inquire" did not transform a suit for lost wages into the public exercise of a unique sovereign obligation. *See Tri State*, 795 N.E.2d at 994; *Agri-Chain*, 586 N.E.2d at 538. That is not surprising, given the reluctance of Illinois courts to read statutory authority as mandating an official action absent a clear statement. *Cf. In re M.I.*, 989 N.E.2d 173, 181 (Ill. 2013) (statutory commands generally presumed to be directory or permissive, not mandatory); *see also Stafford*, 407 N.E.2d at 773 (courts will not "review or compel the performance of a discretionary act"). Just like a private litigant, therefore, the City enjoyed discretion to bring this action—it was not obligated to do so as a sovereign.

### 3. The Transactions At Issue Did Not Necessitate The Expenditure Of Public Funds.

The City's suit fails the third *nullum tempus* factor as well—whether responding to the conduct at issue "necessitate[d] an expenditure of public revenues." *Vill. of DePue*, 713 F. Supp. 2d at 784. Expenditures that the plaintiff was not required to undertake are not "necessitate[d]," and "the fact that public funds [were] *used* . . . 'does not necessarily render it a public act.'" *Id.* (quoting *Champaign Cnty.*, 683 N.E.2d at 983–84) (emphasis added).

Under that standard, burdens on public revenues "are clearly not present in the instant case." *Agri-Chain*, 586 N.E.2d at 539. The Complaint involves allegations of *private* economic loss; there is no allegation that the *government* incurred a loss that necessitated the expenditure of

public funds to fix. That sets this action apart from every precedential Illinois decision applying *nullum tempus* since *Shelbyville*. *See*, *e.g.*, *A, C & S*, 546 N.E.2d at 602 (costs of asbestos abatement *in public school* ran "into the millions"); *Scachitti*, 772 N.E.2d at 917 (nearly $1.5 million in overcharges *to public funds*); *Latronica*, 805 N.E.2d at 289 (illegal dumping necessitated $24 million cleanup effort *by the City*). Nor can the City rely on its requests to recoup the costs of preparing for and filing this lawsuit: "Plaintiff [was] not required by law to undertake" this suit, as previously explained. *Vill. of DePue*, 713 F. Supp. 2d at 784 (no obligation to spend village funds on cleaning runoff from polluted site); *see also Champaign Cnty.*, 683 N.E.2d at 983 (suit over insurance plaintiff chose, but was not required, to buy did not warrant applying *nullum tempus* because "[o]therwise, any use of public funds would always be considered a public act").

None of the three factors used to evaluate assertions of *nullum tempus* under Illinois law warrants overriding the statute of limitations in this case. The City thus fails to carry its burden of rebutting DoorDash's entitlement to judgment as a matter of law.

### 4. The City Has "Partnered With Individuals" To Pursue Its Claims.

There is an additional reason why this action does not qualify for *nullum tempus*: as noted, the City has assigned nearly a third of its interest in the monetary recovery to its private outside counsel, Cohen Milstein.[4]

That contingency-fee agreement reflects yet another reason that the City's attempt to insulate this action from the limitations period is a clear abuse of *nullum tempus*. The policy

---

[4]    The contingency-fee agreement between the City and Cohen Milstein, attached to this motion as Exhibit A, provides that Cohen Milstein will receive up to 28% of the City's "net recovery," depending on the stage at which this case is resolved. DoorDash obtained the contingency-fee agreement through a public-records request. *See* 5 Ill. Comp. Stat. 140/1. Thus, the agreement is properly before the Court on a Rule 12(c) motion. *See Smith v. Buck*, 2022 WL 3716529, at *3 (S.D. Ind. Aug. 29, 2022) (courts resolving motions for judgment on the pleadings "'may also take judicial notice of matters of public record'" (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (per curiam))).

rationale that convinced the Illinois Supreme Court to retain *nullum tempus* expressly assumes that the doctrine will apply only to *government* actions brought to further a public right—not to lawsuits superintended by private law firms wielding the City's enforcement tools for private gain. *E.g.*, *Shelbyville*, 451 N.E.2d at 877 (asking who would benefit from "the *government's* action" or suffer from "[l]ong delays by the *government* in instituting suit" (emphases added)); *A, C & S*, 546 N.E.2d at 601 (describing claims a "*governmental* body" could pursue via *nullum tempus* (emphasis added)). *Nullum tempus* requires that the suit be brought to benefit the *public* at large— here, in Chicago—not plaintiffs' lawyers in Washington, D.C., who have a strong profit interest in asserting out-of-time claims. The policy rationale underlying *nullum tempus* simply does not apply in these circumstances.

Given that contingency-fee agreement, the "bare fact" that litigation "is brought in the name of the People . . . is not controlling" for *nullum tempus* purposes. *People ex rel. Town of New Trier v. Hale*, 52 N.E.2d 308, 310–11 (Ill. App. Ct. 1943). Illinois courts look to *how* the government is pursuing the litigation: "[I]f the state *becomes a partner with individuals*, or engages in business, it divests itself of its sovereign character and is subject to the statute [of limitations]." *Id.* (quoting *Brown v. Trs. of Schs.*, 79 N.E. 579, 580 (Ill. 1906)) (emphasis added); *see also Brown*, 79 N.E. at 580 (explaining that when the state "becomes a partner with individuals" vis-à-vis its claims, "it does not exercise sovereignty but acts merely as an individual and cannot claim the exemption"). Here, the City has "becom[e] a partner with individuals"—private attorneys at Cohen Milstein—in pursuing these claims. Not only has the City delegated important litigation responsibilities to Cohen Milstein; it has signed a profit-sharing agreement about how to divvy up any funds it recovers. *See* Ex. A ¶¶ 1, 13. *Nullum tempus* does not apply under these circumstances. *Hale*, 52 N.E.2d at 310–11; *Brown*, 79 N.E. at 580.

5.     **Due Process Forbids Imposing Liability On DoorDash Based On The City's Untimely Claims.**

Irrespective of whether *nullum tempus* might otherwise apply, the City cannot invoke it to avoid Section 5/13-202 in this case for an additional reason:  Due process restricts the ability of state actors to pursue untimely actions for penalties.  The Supreme Court has repeatedly held that statutes of limitations protect defendants' vital interest in "repose"—itself a right protected by the Due Process Clause—by safeguarding against the fundamental unfairness of perpetual liability. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) ("The Due Process Clause also protects [defendants'] interests in . . . repose[.]"); *see also United States v. Kubrick*, 444 U.S. 111, 117 (1979) (limitations periods "protect defendants" from "cases in which the search for truth may be seriously impaired" by the passage of time); *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944) (limitations periods protect against unfair "surprises through the revival of claims that have been allowed to slumber"); *Wood v. Carpenter*, 101 U.S. 135, 139 (1879) (limitations periods are "vital to the welfare of society").

For those reasons, and despite its recognition of *nullum tempus* in other contexts, the U.S. Supreme Court has consistently maintained that statutes of limitations must be construed *against* the government in cases involving penalties.  Chief Justice Marshall forcefully articulated this principle in *Adams v. Woods*, which concerned whether a general limitations period applied to a *qui tam* action for civil penalties brought on behalf of the government.  6 U.S. (2 Cranch) 336, 342 (1804).  The Court held that the limitations period *did* apply, noting that if it did not, an action for penalties could "be brought at any distance of time"—and that such a result "would be utterly repugnant to the genius of our laws," because "[i]n a country where not even treason can be prosecuted after a lapse of three years, it could scarcely be supposed that an individual would remain forever liable to a pecuniary forfeiture."  *Id.*  Justice Story similarly remarked that it would

MEMORANDUM OF LAW IN SUPPORT OF                                  CASE NO. 1:21-CV-05162
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

be "utterly repugnant" to afford civil-penalty actions "a perpetuity of existence." *3M Co. (Minn. Min. & Mfg.) v. Browner*, 17 F.3d 1453, 1457 (D.C. Cir. 1994) (quoting *United States v. Mayo*, 26 F. Cas. 1230, 1231 (C.C.D. Mass. 1813) (Story, J.)). The Supreme Court has applied that principle in the two centuries since by reiterating that penalties actions involve heightened due-process concerns that warrant narrowing constructions to guard against government overreach. *See*, *e.g.*, *Gabelli v. SEC*, 568 U.S. 442, 451–52 (2013) (because penalties "go beyond compensation" and are "intended to *punish*," limitations periods must be construed in favor of civil defendants (emphasis added)); *3M Co.*, 17 F.3d at 1457 (rejecting notion that limitations periods must be construed in government's favor in a penalties case (citing *Adams*, 6 U.S. (2 Cranch) at 341)).

In penalties cases such as this one, therefore, limitations periods should be construed *against* the government to safeguard defendants' underlying due-process interests in fundamental fairness and repose, not in favor of the *government* to create penal liability of infinite duration. Given the grave due-process concerns associated with such potential liability, the Court should apply constitutional-avoidance principles to hold that *nullum tempus* cannot excuse compliance with Section 5/13-202's two-year limitations period under these circumstances. *See*, *e.g.*, *CFTC v. Schor*, 478 U.S. 833, 841 (1986) (courts should avoid "serious doubts" about constitutionality when "the constitutional question can be avoided" with a reasonable alternative interpretation).

In addition to that concern, allowing the City to pursue untimely claims would violate due process for the independent reason that Section 5/13-202 has *extinguished* the City's claims under Illinois law (and not merely barred a remedy as a procedural matter). As the Supreme Court has explained, there is a critical distinction for due-process purposes between statutes of limitations that confer merely a procedural privilege against litigation (and thus bar only a *remedy* for a still-existing cause of action), and those limitations periods that, upon their lapse, extinguish the

underlying cause of action *itself*. *Compare Campbell v. Holt*, 115 U.S. 620, 625, 627–28 (1885), *with William Danzer*, 268 U.S. at 636–37. When a limitations period confers on a defendant merely a "privilege" based in "public policy" against litigation (and thus bars only the *remedy*), the Court has held that the defendant has no vested due-process right in the limitations defense. *Campbell*, 115 U.S. at 625, 627–28. When, by contrast, the limitations period "not only bar[s] the remedy, but also destroy[s] the liability of defendant to plaintiff," it violates due process to impose liability after the expiration of the limitations period. *William Danzer*, 268 U.S. at 636–37.

Although the "genera[l]" rule under Illinois law is that statutes of limitations "affect the remedy only and not a substantive right," such that they "do not extinguish the underlying obligation," *Madison v. City of Chicago*, 82 N.E.3d 702, 704 (Ill. App. Ct. 2017) (citation omitted), Illinois courts have construed some limitations periods more broadly. This latter class of limitations periods not only bars a remedy, but also extinguishes the underlying right, so that the limitations period "creates a vested right in favor of the defendant, and the action cannot later be revived." *Clay v. Kuhl*, 727 N.E.2d 217, 221 (Ill. 2000).

The Illinois Supreme Court has expressly described Section 5/13-202 as among the special class of limitations periods whose lapse not only bars the remedy, but also extinguishes the underlying cause of action. *Clay*, 727 N.E.2d at 220–21. Because that limitations period governs here, *supra*, at 7–9, the City's untimely claims in this suit no longer *exist*. And while *nullum tempus* provides a public-policy-based exception to limitations periods that merely bar a remedy— permitting the State to vindicate an underlying and still-existing public right, notwithstanding procedural obstacles—the doctrine cannot resurrect an *extinguished* claim. *See*, *e.g.*, *Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 986 P.2d 536, 543 (Or. 1999) (explaining that *nullum tempus* could not permit a government suit to proceed when the limitations period extinguished

the underlying cause of action); *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1113 (D. Ariz. 1998) (explaining that because "a valid cause of action no longer exists," the federal government could not use *nullum tempus* to circumvent a limitations period whose lapse extinguished the right itself). Because Plaintiff's untimely claims are extinguished under Section 5/13-202—rather than subject merely to a procedural bar on their remedy—imposing liability for those claims would violate due process. *See William Danzer*, 268 U.S. at 636–37.

## II. Laches Independently Bars The City's Untimely Claims.

Even if the City could avoid Section 5/13-202 as a matter of law, its claims for conduct before August 27, 2019 are independently barred as a matter of equity under the doctrine of laches. Laches may be asserted against the government, *nullum tempus* notwithstanding. The Illinois Supreme Court has held that "laches may be asserted against the State" "[i]n a number of cases." *People ex rel. Lindsey v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 4*, 120 N.E.2d 887, 891 (Ill. 1954); *see also, e.g.*, *City of Rochelle v. Suski*, 564 N.E.2d 933, 936 (Ill. App. Ct. 1990); *People ex rel. Northfield Park Dist. v. Glenview Park Dist.*, 582 N.E.2d 1272, 1281 (Ill. App. Ct. 1991) (enforcing laches defense against municipality after thirteen-year delay). Despite its origins in equity, laches applies in Illinois to actions at law—and even if the relevant limitations period has not run. *See Fed. Nat'l Mortg. Ass'n v. Altamirano*, 169 N.E.3d 102, 111 (Ill. App. Ct. 2020); *Tolbert v. Godinez*, 142 N.E.3d 415, 421 (Ill. App. Ct. 2020); *see also Monson v. Cnty. of Grundy*, 916 N.E.2d 620, 623 (Ill. App. Ct. 2009) ("The *laches* doctrine applies to actions at law[.]"). Indeed, the court may "permissibl[y] interpos[e]" a laches defense without regard to the limitations period. *Bill v. Bd. of Educ. of Cicero Sch. Dist. 99*, 812 N.E.2d 604, 613 (Ill. App. Ct. 2004).

Laches has two elements under Illinois law: that (1) the plaintiff unreasonably delayed in asserting its claims, and (2) the delay prejudiced the defendant. *See, e.g.*, *Monson*, 916 N.E.2d at 623 (citation omitted). A third element—"some positive acts by the officials" that induced the

defendant's detrimental action, as opposed to "mere nonaction"—is required when government officials are vindicating *public* rights. *Hickey v. Ill. Cent. R.R. Co.*, 220 N.E.2d 415, 426 (Ill. 1966). But where, as here, only private rights are at issue, the general two-step test applies. *Noland v. Mendoza*, 2022 WL 4372449, at *5–7 (Ill. Sept. 22, 2022). As illustrated above, this is not a public-rights case: The crux of this suit is a set of purely *private* transactions that featured no government involvement, and the City has "partnered with individuals"—Cohen Milstein—to wring penalties from DoorDash and confer them, in part, on private attorneys at that private law firm. *Supra*, at 17–19. Because this is not a public-rights case, the ordinary test for laches applies.

Turning to the first element—unreasonable delay—the Complaint establishes that the City delayed in bringing this action. Although limitations periods "are not directly controlling" as to laches under Illinois law, they are nonetheless "convenient measures for determining the length of time" that constitutes delay. *Meyers v. Kissner*, 594 N.E.2d 336, 340 (Ill. 1992). Accordingly, at the very least, the City delayed in asserting claims for every alleged violation that occurred prior to August 27, 2019, given that this suit was filed two years after that date and thus outside the limitations period set forth in 735 Ill. Comp. Stat. 5/13-202.

This delay was unreasonable. The Complaint repeatedly asserts that the alleged conduct here was public-facing and widely known in Chicago. *See*, *e.g.*, Compl. ¶ 3 (describing allegedly "pervasive" misrepresentations), ¶ 21 (explaining that DoorDash and Caviar were "publishing websites and mobile apps"), ¶ 28 (explaining that pricing practices were disclosed in public financial statements), ¶ 33 (describing the delivery fee as "prominently display[ed]"), ¶ 165 (explaining that the alleged tipping practices in place from 2017 to 2019 received "extensive press coverage"). The Complaint affirmatively *refutes* the notion that City officials had some reasonable basis for slumbering on their rights: it asserts that DoorDash's practices were "unlawful under *any*

*circumstances*"—barring the notion that some legal uncertainty prevented prompt action—and it concedes that DoorDash's operations were public-facing and widely known. *Id.* ¶ 2 (emphasis added). If that is so—if the conduct at issue was both widely known *and* clearly unlawful, as the City contends—then City officials had no reasonable basis to wait as long as they did to bring suit.

The second element—prejudice—is satisfied as well. Illinois law provides that prejudice can be shown in several ways. Here, the City's dilatory conduct in bringing suit permitted a huge number of purported violations (and associated statutory penalties) "to accumulate." *Keystone Montessori Sch. v. Vill. of River Forest*, 187 N.E.3d 1167, 1195 (Ill. App. Ct. 2021) (laches appropriate because plaintiff "allowed its damages for unjust enrichment to accumulate for all those years to the [defendant's] detriment"). The Complaint makes plain that this is what occurred: Given the lack of any warning that any of DoorDash's purported conduct violated the MCC, DoorDash had no basis to change its behavior. Compl. ¶ 6. And the City's prolonged delay in filing suit during that same period directly—and massively—amplified its claims, given that both relevant provisions of the MCC define each day as a new "offense." MCC §§ 2-25-090(g), 4-276-470. Refusal to apply laches would thus lead to the perverse and inequitable result that City officials who claim that conduct represents an urgent threat to the public actually have a powerful incentive to *delay* for as long as possible when instituting actions under the MCC—after all, why bring an action within two years if the damages can be tripled by waiting six? Equity does not countenance that result. Laches must bar the City's untimely claims.

## CONCLUSION

The Court should grant judgment on the pleadings in favor of DoorDash with respect to claims for any alleged violations that occurred before August 27, 2019.

DATED:  April 20, 2023               Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

By:  _/s/  Joshua S. Lipshutz_
Joshua S. Lipshutz (*pro hac vice*)
1050 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (*pro hac vice*)
Cynthia Chen McTernan (*pro hac vice*)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
cmcternan@gibsondunn.com

| | |
|---|---|
| **RILEY SAFER HOLMES & CANCILA LLP** | **FORDE & O'MEARA LLP** |
| By:  _/s/  Patricia Brown Holmes_ | By:  _/s/  Michael K. Forde_ |
| Patricia Brown Holmes | Michael K. Forde |
| Sarah E. Finch | Brian P. O'Meara |
| 70 W. Madison Street | 191 N. Wacker Drive |
| Suite 2900 | 31st Floor |
| Chicago, IL 60602 | Chicago, IL 60606 |
| Phone: (312) 471-8700 | Phone: (312) 641-1441 |
| pholmes@rshc-law.com | mforde@fordellp.com |
| sfinch@rshc law.com | bomeara@fordellp.com |

*Attorneys for DoorDash, Inc. and Caviar, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 20, 2023, I caused the foregoing document to be electronically

filed using the CM/ECF system, which will send notice of this filing to all counsel of record.


*/s/ Michael K. Forde*