## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1: 21-cv-05162 |
| | ) | |
| DOORDASH, INC. AND | ) | |
| CAVIAR, LLC, | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants DoorDash, Inc. and Caviar, LLC ("Defendants" or "DoorDash") have filed a Motion to Compel Discovery [ECF No. 94] ("Motion") from Plaintiff City of Chicago ("Plaintiff" or "the City"). The Motion is granted in part and denied in part for the reasons discussed below.

A party seeking discovery may file a motion to compel under Federal Rule of Civil Procedure 37 if another party fails to respond to a discovery request or when its response is insufficient. FED.R.CIV.P. 37(a); *see also, Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *2 (N.D. Ill. 2019). "Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules." *United States Gypsum Co. v. Ectek Int'l, Inc.*, 2022 WL 1155155, at *2 (N.D. Ill. 2022) (citing *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)). "Despite the liberal breadth of discovery allowed under Rule 26 of the Federal Rules of Civil Procedure, a

1

proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021). In addition, as the 2015 amendments to Rule 26 emphasize, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." FED.R.CIV.P. 26, Advis. Comm. Notes for 2015 Amendments.

### DoorDash's discovery requests related to Cohen Milstein

DoorDash argues its discovery requests regarding Cohen Milstein are relevant to its Fifteenth Affirmative Defense, which alleges the City's contingency fee arrangement with its outside counsel in this case, Cohen Milstein, violates DoorDash's due process rights and the City's ethics ordinance because it gives Cohen Milstein a financial incentive that is at odds with the City's obligation to act in the public interest. [ECF No. 94] at 3, 7.[1] Although DoorDash asserts some courts have held this financial bias is per se improper, courts in this jurisdiction have allowed such contingency fee arrangements. *See City of Chicago v. Purdue Pharma L.P.*, 2015 WL 920719, at *4-6 (N.D. Ill. Mar. 2, 2015) ("[b]ecause the City retains control over the investigation and litigation of this case, its retention of Cohen does not violate defendants' due process rights").

---

[1] Page references to ECF filings are to the pagination in the filed document, rather than the ECF-system pagination.

At issue are Defendants' Requests for Production ("RFP") numbers 33 and 51, and Interrogatory No. 8. [*Id.*] at 4. RFP No. 33 requests all documents related to the City's retention of Cohen Milstein, including any fee agreements. [*Id.*] RFP No. 51 requests all nonprivileged communications between the City and Cohen Milstein and is not limited to communications related to this litigation. [*Id.*] at 4, 10. Interrogatory No. 8 asks the City to "[d]escribe its relationship" with Cohen Milstein, including "the role Cohen Milstein plays in identifying, investigating, and litigating" the allegations of the Complaint and "the nature of the contractual agreement" between the City and Cohen Milstein. [*Id.*] DoorDash seeks this discovery "to determine if the City is sufficiently overseeing Cohen Milstein and effectively counteracting its financial bias." [*Id.*] at 7-8.

The City does not dispute that some discovery into DoorDash's Fifteenth Affirmative Defense is appropriate but argues "the only relevant factual question presented" by this defense "is whether the City controls this litigation." Plaintiff's Opposition to Defendants' Motion to Compel Discovery [ECF No. 98] ("Opposition") at 6. The City claims no additional discovery is warranted beyond its production of the retention agreement with Cohen Milstein and its outside counsel guidelines, arguing any additional discovery is overbroad and burdensome, irrelevant to the defense, and invades the attorney-client relationship. [ECF No. 98] at 2, 6.[2]

---

[2] The Court disagrees with DoorDash that the City's objections are "boilerplate." Although the objections are somewhat cursory, DoorDash nevertheless understood the basis for them, which was further expanded upon during the parties' meet and confer discussions. [ECF No. 94] at 5, 10-13. The City asserted DoorDash's requests were "overly broad and unduly burdensome" and "not proportional to the needs of the case" for various reasons. *See* Declaration of Elizabeth McCloskey in support of DoorDash's Motion to Compel Discovery

**RFP No. 51:**

As written, RFP No. 51 seeks all non-privileged communications between the City and Cohen Milstein from 2014 to the present. [ECF No. 94-1] at Ex. B. It includes communications unrelated to this litigation, which DoorDash acknowledges but says could reveal "the existence of" relationships between City officials and Cohen Milstein, and "demonstrate that Cohen Milstein may be influencing the City in a way that has diminished the City's ability to provide oversight." [ECF No. 9] at 10. The City asserts DoorDash is not entitled to discovery about whether Cohen Milstein "capitalized on personal relationships" because this theory was not specifically pled in the Fifteenth Affirmative Defense, but it cites no authority in support of this narrow view. [ECF No. 98] at 7. Rather, relevance is the appropriate standard and discovery is not strictly limited to issues as pled. *See* FED.R.CIV.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .").

Nevertheless, DoorDash has not met its burden to show the relevance of all communications between any City official and Cohen Milstein unrelated to this case. *See, e.g., PsyBio Therapeutics, Inc.,* 2021 WL 4459527, at *1. DoorDash's justification

---

from the City of Chicago [ECF No. 94-1] ("McCloskey Decl.") at Exs. D-F (RFP 51: seeks communications unrelated to the case; to the extent the request includes "all present employees," amounting to "tens of thousands of individuals"; and as to the time period of 2014 to present which "significantly pre-dates" the firm's retention); RFP No. 33: seeks "all documents and communications related to the retention" which is "beyond the scope" of the claims and defenses; and to the extent the request it seeks privileged or otherwise protected materials); Interrogatory No. 8: seeks information "beyond the scope" of the claims and defenses, as well as to the extent it seeks privileged or protected information). These objections are general but not incomprehensible or inapplicable to DoorDash's discovery requests.

-- that such communications could evidence personal relationships -- is speculative and built on conjecture, as shown by DoorDash's contingent phrasing of its argument that it is entitled to discovery about whether such relationships exist and, even if they do, whether they would unduly influence this litigation. *See* [ECF No. 94] at 10 ("*If* such a relationship exists between Cohen Milstein and City officials. . .); Defendants' Reply in support of Defendants' Motion to Compel Discovery, [ECF No. 100] ("Reply") at 8 ("*If* Cohen Milstein has a relationship…"; "[s]uch a relationship here *could* undermine the safeguards identified by the City. . ."; "Cohen Milstein *could* side-step the City's oversight measures by back-channeling with influential City officials who *could* then influence the course of the case") (emphasis added). *See First Am. Title Ins. Co. v. Hanson Aggregates Midwest*, No. 21 C 6390, 2023 WL 2390374, at *3 (N.D. Ill. Mar. 7, 2023) (party's asserted basis for discovery was "speculative, as evidenced by its' statements about what the discovery sought 'may enable it to learn,' 'may reflect,' 'may demonstrate,' and 'may show' . . ."). Nor does DoorDash's citation to news articles generally describing relationships between private law firms and state attorneys general, as well as coverage of "Cohen Milstein's relationship with officials in other jurisdictions," demonstrate relevance of the information it is seeking to the claims and defenses in this case. Rather, any connection to the issues posed in this litigation is tenuous at best. *See* [ECF No. 94-1] at Ex. U; [ECF No. 100] at 8.

Although all discovery is, to some extent, a fishing expedition, DoorDash casts its line too far from the figurative pier with these broad discovery requests supported mostly by speculation and conjecture. Judge Cole often quotes former Judge Moran

in these situations, and this Court finds that is merited here: "[a]s Judge Moran has incisively noted, the discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. 'Parties are entitled to a reasonable opportunity to investigate the facts - and no more.'" *Id.* *Bierk v. Tango Mobile, LLC*, No. 19 C 5167, 2021 WL 1837376, at *2 (N.D. Ill. May 7, 2021) (Cole, M.J.) (quoting *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D. Ill. 1994)).

As to the request for all communications between the City and Cohen Milstein that are related to this case, none of the cases cited by DoorDash address, let alone justify, discovery of *all* communications between a government entity and its outside counsel. *See* [ECF No. 98] at 4-5; [ECF No. 100] at 3-5 (acknowledging cases "address the merits of challenges to contingency fee agreements" but claiming "they show discovery is needed"). Even assuming some subset of these communications could be relevant to the City's oversight of Cohen Milstein, RFP No. 51 is not sufficiently calibrated to obtain relevant, non-privileged information proportional to the needs of this case within the meaning of Rule 26(b)(1).

Further, the Court agrees with the City that there are limits to the use of a request for production of documents for the information DoorDash is seeking here. A deposition may be a more appropriate vehicle to obtain the information in a less burdensome way. *See* [ECF No. 98] at 4-5.[3]

---

[3] In the *Merck* litigation, by way of example, the court primarily relied on the deposition of an Assistant Attorney General at the summary judgment stage in deciding whether the government had maintained adequate control over outside counsel. *Merck Sharp & Dohme Corp. v. Conway*, 947 F.Supp.2d 733, 744-51 (E.D. Ky. 2013). There is no reference in *Merck*

For example, the City says there are more than 9,000 emails between Cohen Milstein and just five of the custodians in the Law Department, and notes because "there is no way to run targeted searches for non-privileged communications," the City would be forced to conduct a lengthy manual privilege review. [ECF No. 98] at 11. The Court agrees with the City that responding to RFP No. 51 will be unduly burdensome given the likely volume of responsive documents and the privileged nature of most communications between the City and its outside counsel. *See* [ECF 98] at 7 ("it is difficult to imagine a non-privileged communication with Cohen Milstein that relates to the City's oversight in this case"). Although DoorDash argues there could be ways to alleviate this burden, pointing to the parties' discussions before the Motion was filed [ECF No. 94] at 10-11, those offers do not appear to be firm and are not now before this Court.[4]

In any event, DoorDash seeks to compel responses to RFP No. 51 as written. That request is overbroad, burdensome, and not proportional to the needs of this case for the reasons discussed above. The Court is not inclined to blue pencil DoorDash's overbroad request on its own and modify it to encompass only information that is

---

to any other written discovery or document productions related to this issue. Although depositions are not presently at issue here, *Merck* suggests there may be more efficient and proportional methods to obtain information about the efficacy of the safeguards put in place by the retention agreement in practice.

[4] A consistent undercurrent in the papers filed on DoorDash's Motion is that more work can be done in the meet and confer process to resolve issues that DoorDash has raised in its Motion. Perhaps with the guidance provided in this Memorandum Opinion and Order, the parties can have more productive conversations and avoid more motion practice.

relevant and proportional to the needs of this case. For these reasons, the Court denies DoorDash's Motion with respect to RFP No. 51.

**RFP No. 33:**

RFP No. 33 seeks all documents and communications related to the City's retention of Cohen Milstein. As an initial matter, DoorDash argues the City waived any privilege objection to RFP No. 33 by not producing a privilege log with its response and objection to the request. [ECF No. 94] at 6, 12-13. The City responds it has not yet produced privilege logs because of its relevance objections, stating "[i]t would be highly inefficient . . . to expend resources logging documents that are irrelevant and thus are not 'otherwise discoverable'."[5] [ECF No. 98] at 11 (citing *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) ("[I]f a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections."). DoorDash appears to argue this principle does not apply here because the City did not file a motion for protective order. [ECF No. 100] at 11. But DoorDash does not dispute the City raised objections to the scope of RFP No. 33 and DoorDash ultimately filed this Motion to address the issue.

---

[5] DoorDash acknowledges it also has yet to produce any privilege log, but claims the circumstances are different here because the City has "refused" to do so. [ECF No. 100] at 11 n.4. DoorDash cites no support for the assertion the City refuses to provide a log of relevant, responsive privileged documents (at most, the Motion notes the City objected producing a log would reveal work product as to a different request, RFP No. 36, *see* [ECF No. 94] at 5). It appears neither party has yet to produce a privilege log, further supporting the Court's conclusion, in its discretion, that a waiver finding as to the City is inappropriate now.

8

The City did not waive its right to assert privilege here by not immediately producing a privilege log. "[T]he decision concerning the waiver of a privilege based on a privilege log is discretionary." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *5 (N.D. Ill. Apr. 17, 2019), *objections overruled*, No. 17-CV-01682, 2020 WL 1248343 (N.D. Ill. Mar. 15, 2020) (declining to find party waived privilege due to deficiencies and delays). The rules require a sufficient privilege description where a party is withholding "information otherwise discoverable". FED.R.CIV.P. 26(b)(5). In *Philip Morris*, the court held, citing the 1993 Advisory Committee Notes to Rule 26(b)(5), "if a broad discovery request includes an allegedly privileged document, and if there is an objection to the scope of the request, the court should first decide whether the objection covers the document. If the court finds that the document is within the scope of the objection, and the court overrules the objection, it must then give the party an opportunity to list the document on a privilege log pursuant to Rule 26(b)(5)." *See also MOL (Am.), Inc. v. Carolina Cas. Ins. Co., EICC, Inc.*, No. 05 C 5562, 2006 WL 8461734, at *5–6 (N.D. Ill. Nov. 1, 2006) (where defendant argued "it need not produce a privilege log until the court has ruled on its other discovery objections," the court, relying on *Philip Morris*, 347 F.3d at 954, ordered the defendant "to produce an appropriate privilege log consistent with the discovery rulings" following the court's ruling on the defendant's objections).

Here, the parties dispute whether the broad scope of RFP No. 33 is permissible, and that dispute is now before the Court. The discovery request at issue (communications between the City and Cohen Milstein related to the retention of

outside counsel in this case) clearly sweeps within its ambit documents that are likely to be privileged (and DoorDash does not argue otherwise, *see* [ECF No. 94] at 12-13). Further, as discussed below, the request for production is exceedingly broad, and the City has produced a narrower universe of responsive documents that are not privileged and responded to an interrogatory related to its retention safeguards as implemented in practice. Under these circumstances, the Court finds the City's failure to produce a privilege log with its initial production of responsive documents is not a waiver of any privilege objections it may be entitled to assert. *See also Gabiola v. Mugshots.com, LLC,* 2019 WL 426143, *2 (N.D. Ill. Feb. 4, 2019).[6]

As just noted, RFP No. 33 as written is overbroad. DoorDash does not articulate how all retention-related documents and communications are relevant to "whether the retainer agreement's safeguards are effective in practice."[7] [ECF No. 94] at 11. As the City suggests, at first blush, documents created before the litigation

---

[6] DoorDash's cites non-binding cases that are easily distinguishable. [ECF No. 100] at 11. *See Banks v. Off. of the Senate Sergeant-at-Arms & Doorkeeper*, 226 F.R.D. 113, 117 (D.D.C. 2005), *subsequently dismissed sub nom. Banks v. Off. of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341 (D.C. Cir. 2006) (defendant "never pressed its objections and assured its opponent that it would produce a privilege log"); *Pensacola Firefighters' Relief & Pension Fund Bd. of Directors v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:09CV53/MCR/MD, 2010 WL 11519376, at *5 (N.D. Fla. June 28, 2010) (stating "[p]lainly, a document must be within the scope of information 'otherwise discoverable' before any log is required to be produced under Rule 26(b)(5)" but the defendant was not entitled to produce a log after the ruling on scope where "boilerplate" objection appeared to be "without merit").

[7] DoorDash also argued retention-related documents could "reveal whether the City sought an ethics review" before retaining Cohen Milstein. [ECF No. 94] at 11-12. In its Opposition, the City states that it did not seek an Ethics Board opinion before retaining Cohen Milstein for this case. [ECF No. 98] at 4 n.2. So, the City's representation ends this possible avenue of relevance for DoorDash's RFP No. 33.

regarding the retention of Cohen Milstein would not appear to directly "shed [] light on the City's oversight of counsel" during the litigation. [ECF No. 98] at 6-7. DoorDash's cited cases also do not establish the relevance of pre-retention communications to safeguards in practice. *See* [ECF No. 100] at 9.[8] Thus, in the Court's view, such pre-retention communications likely have limited, if any, relevance, to the City's oversight of its outside counsel during the litigation, and they probably add nothing to the express language in the retention agreement which has been produced.

The Court's ruling is based upon the request for production as written and the parties' up or down arguments on RFP No. 33. The Court notes DoorDash has offered to narrow the scope of RFP No. 33, including by limiting it to only certain City departments, and the City offered "to produce other contracts with Cohen Milstein in other cases." [ECF No. 94] at 12. So, to some extent, DoorDash's Motion is premature if the parties still may be able to work out an agreeable limitation on RFP No. 33. *See* footnote 4, *supra*. The Court also notes the City does not articulate very well the burden involved in producing additional retention-related documents, though the

---

[8] In *Merck*, the court briefly mentioned the statutory process for "vetting" outside counsel in Kentucky, but did not rely on this process in deciding whether the retention agreement's safeguards were adequate or employed in practice, nor did the court address any additional discovery related to the hiring process. 947 F.Supp.2d at 735-36. In *Purdue Pharma*, 2015 WL 920719 at *3-4, the court did not, as DoorDash suggests, consider the Ethics Board decision with regards to "the propriety of the retention agreement and how outside counsel would be paid" or otherwise suggest that the City's process in hiring Cohen Milstein was relevant to its analysis, [ECF 100] at 9; instead, the court agreed with the Board that Cohen Milstein was a contractor and not subject to the Ethics Ordinance. In *American Bankers Management Company, Inc. v. Heryford*, 885 F.3d 629, 635 n.7 (9th Cir. 2018), the timing of outside counsel's retention was considered due to a concern, not apparently present here, about abuse of administrative powers to issue pre-suit subpoenas. [ECF 100] at 9.

Court is assuming here the volume of such documents would be large (and a privilege log would be extensive) even if there may only be a five-month period at issue before the City and Cohen Milstein executed the retention agreement (though that also is not clear).[9] *See* [ECF No. 94] at 11. DoorDash, however, seeks an order compelling the City to comply with RFP No. 33 as written. Again, on this record, the Court again is not in the best position to blue pencil DoorDash's request and it declines to do so.

As noted above, this Order is not intended to foreclose the parties' current or future discussions, or future agreement, about an appropriate scope for DoorDash's requests for production of documents relating to Cohen Milstein's retention. Mindful of its duty to balance the liberal discovery rules with the proportionality analysis mandated by Rule 26, however, the Court concludes DoorDash has failed to demonstrate that its request for all retention-related documents (beyond the retention agreement itself, the City's outside counsel guidelines, and its interrogatory response which the City already produced) seeks information that is relevant and proportional to the needs of the case within the meaning of Rule 26(b)(1). For these reasons, the Court denies DoorDash's motion to compel the City to supplement its response to RFP No. 33.

---

[9] Moreover, although DoorDash suggests this discovery would address a period before execution of the agreement, it argues in its Motion that RFP No. 33 is relevant to "verify the efficacy" of that agreement in practice, after its execution. [ECF No. 94] at 11. It is unclear how pre-retention communications would be relevant to this defense. [ECF No. 98] at 6-7 n.3 (noting City confirmed it made the decisions to initiate the litigation and file suit). The Court cannot resolve this issue based on these brief references, but this ruling is not intended to foreclose further discussions between the parties. *See also*, footnote 4, *supra*.

**Interrogatory 8:**

The Motion also seeks to compel a supplemental response to Interrogatory No. 8, which requests a description of the City's "relationship" with Cohen Milstein including its role in "identifying, investigating, and litigating" the case and "the nature of the contractual agreement." [ECF No. 94] at 4. The City initially responded stating only "Cohen Milstein has been retained by the City and is counsel of record in this matter." [*Id.*] at 5. DoorDash argues this response failed to provide sufficient "detail." [ECF No. 94] at 14. During the parties' discussions preceding the filing of DoorDash's Motion, the City noted it had produced the retention agreement and stated it would provide a supplemental response confirming the safeguards in the agreement are carried out in practice. [ECF No. 94-1] at Ex. J and Ex. N (letters dated December 5, 2022 and January 6, 2023).

DoorDash filed this Motion on January 16, 2023, after the City committed to providing more information but before it had done so. On January 30, 2023, the City produced a supplemental response to Interrogatory No. 8 stating City personnel make "all key decisions" including regarding "initiating the investigation," "deciding to bring an enforcement action," "which legal claims to assert," and "whether and on what terms to settle"; describing the City's "day-to-day" work, including reviewing and approving "all substantive correspondence; discovery requests, responses, objections, and compromises; and filings," providing "guidance to outside counsel" on "interactions with opposing counsel and the Court," and "regularly" conferring with outside counsel "at least weekly, but often more frequently" about strategy; and

13

identifying two City attorneys supervising Cohen Milstein. [ECF No. 98] at 6; [ECF No. 98-1] at Ex. 1.

DoorDash argues the City's supplemental response still does not provide "necessary context," including how Cohen Milstein was retained, its relationships with City officials, and how the City vetted the contingency fee. [ECF No. 100] at 10. Some of this so-called "context," however, goes beyond the scope of Interrogatory No. 8. The Interrogatory, for example, did not ask for a description of how Cohen Milstein was retained, nor did it ask how the City vetted the contingency fee. DoorDash also does not appear to dispute that production of the retention agreement satisfied its request as to the "nature" of the City's agreement. [ECF No. 94] at 14. Similarly, DoorDash does not argue the City's supplemental response failed to describe the roles played by the City and Cohen Milstein in this litigation. Therefore, it appears the only element arguably missing from the City's supplemental response is a description of the City's "relationship with the private law firm, Cohen Milstein," beyond this case. It is not clear to the Court how that information is relevant to the claims and defenses in this case or proportional to the needs of this case. Further, and in any event, that kind of information probably is more efficiently obtained in a deposition rather than with an interrogatory.

DoorDash also requests that the Court issue an order to show cause why the City should not be required to pay its reasonable attorneys' fees incurred in moving to compel a further response to Interrogatory No. 8 because the City delayed in providing the supplemental response it eventually provided. [ECF No. 100] at 10 n.3.

14

Setting aside whether such a request is properly raised in a reply brief, the Court concludes that an award of fees is not warranted here. Federal Rule of Civil Procedure 37(a)(5)(A) provides "if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Rule provides several exceptions, however, including "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action. . . or (iii) other circumstances make an award of expenses unjust." *Id.*

On the record here, it is not clear DoorDash satisfied its obligation to attempt in good faith to obtain the City's supplemental response without court action. DoorDash also appears to overstate the extent of the City's delay (*see* [ECF No. 94] at 13 (stating "[f]or months the City has stated that it would provide a supplemental response. . ."), but the correspondence DoorDash attached suggests just over one month passed from when the City appears to have first stated it would provide a supplemental response (on December 5, 2022) and when DoorDash filed this Motion (on January 16, 2023). [ECF No. 94-1] at Ex. J). Under these circumstances, the Court declines to order an award of fees. FED.R.CIV.P 37(a)(5)(A)(i) and (iii).[10]

---

[10] The circumstances here are thus distinguishable from those in DoorDash's cited cases. [ECF No. 100] at 10 n.3. *See Hangzhou Aoshuang E-Com. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735, at *1 (N.D. Ill. June 23, 2020) (plaintiff was entitled to reasonable fees under Rule 37(a)(5)(A) where defendant provided draft supplemental discovery responses as to all issues raised in motion to compel the day before brief was due and claimed this mooted entire motion); *Cage v. Harper*, No. 17-CV-7621, 2020 WL 1248685, at *22 (N.D. Ill. Mar. 16,

For all these reasons, the Court denies Defendants' motion to compel a further response to Interrogatory No. 8.

### DoorDash's request for the City's communications with Illinois agencies, and any other state or federal agencies, related to DoorDash or the allegations in the Complaint (RFP No. 36)

DoorDash seeks to compel the City's to respond to RFP No. 36, which requests "[a]ll documents relating to communications with the Illinois Attorney General, any other state or federal agency, or any representative of a state attorney general relating to DoorDash or the allegations in the complaint." [ECF No. 94] at 5. DoorDash states this request is relevant to its waiver, laches, and estoppel defenses, including because such communications would show "*when* the City was first aware of DD's alleged business practices" and "whether its delay in filing suit was justified." [ECF No. 94] at 13. DoorDash also argues such communications are relevant to its home rule defense under the Illinois Constitution so it can "determine which agency has the greater interest and expertise to regulate the business practices at issue. . ." [ECF No. 94] at 14.

The City objected to RFP No. 36 on privilege grounds and asserted that the communications DoorDash is seeking are "not properly within the scope of Rule 26 discovery." [ECF No. 94-1] at Ex. D. The City did not produce a privilege log because "a comprehensive list and description of those communications would, in and of itself, reflect strategy and thereby constitute privileged work product." [*Id.*] The City also

---

2020) (denying motion to reconsider decision to award fees under Rule 37(a)(5)(A) where plaintiff "produced documents only after a discovery motion had been filed, proving that his prior claim that all documents had been provided was inaccurate").

objected that "even if work product concerns were not implicated, creating an extensive log of privileged attorney communications would impose an undue burden." [*Id.*]

Although apparently not clear prior to filing this Motion[11], DoorDash now acknowledges the City has agreed to produce responsive "non-privileged communications with the Illinois Attorney General's Office 'as well as Illinois agencies that use the email address @Illinois.gov'" from January 1, 2019 to August 27, 2021. [ECF No. 100] at 12 & n.5. The City states it "is searching for and will produce responsive intra-Illinois communications" between these Illinois agencies and "10 custodians from three City departments." [ECF 98] at 12. DoorDash does not appear to take issue with this offer or these custodian limitations. Accordingly, the dispute, as framed in the briefing, centers on communications with state agencies in states other than Illinois and federal agencies. [ECF No. 98] at 12; [ECF No. 100] at 12.

There is, however, a dispute as to the time period for the "intra-Illinois" communications. DoorDash argues the City should produce such communications "prior to 2019." [ECF No. 100] at 12. The City's says this timeframe is overbroad because the Law Department, which the City contends is "responsible for this case," "had no communications with state or federal law enforcement agencies regarding the conduct in the complaint before its investigation of DoorDash, which took place

---

[11] In the Motion, DoorDash states the City "offered to run searches" as to communications with the Illinois Attorney General's Office, but did not reference any other Illinois agencies. [ECF No. 94] at 15.

in 2020 and 2021."[12] [ECF No. 98] at 15. DoorDash says this fails to address whether "other City departments (such as the BACP or the Mayor's Office)" had pre-2020 communications [ECF No. 100] at 13-14, but the City has already agreed to produce communications going back to 2019 between Illinois agencies and certain custodians from BACP and the Mayor's Office. [ECF No. 100] at 12; *see also* [ECF No. 98] at 12 (citing [ECF No. 94-1], Ex. O).

Although DoorDash does not directly address the appropriate time period covered by this request, its waiver, laches and estoppel defenses allege the City was aware of the alleged conduct possibly dating back to 2014. *See* Defendants' Answer and Amended Affirmative Defenses, [ECF No. 61] at 132-135. That is not enough, however, to convince the Court that production of responsive documents before 2019 is proportional to the needs of this case let alone that those documents will contain any relevant information or that they can be produced without undue burden. In its

---

[12] The City also argues laches, waiver and estoppel defenses, when asserted against a government entity, require "an affirmative act by that government" and therefore any delay-related discovery is irrelevant. [ECF No. 98] at 14-15. The City relies on Judge Gettleman's decision denying the motion to strike, in which he held whether there was any affirmative act by the City is a factual question. [*Id.*] The City reads too much into this language. Judge Gettleman noted Defendants' arguments that "delay is sufficient to establish at least waiver and estoppel" as well as about the City's affirmative act of initiating a dialogue with DoorDash, found "defendants' argument is compelling," and declined to strike the defenses because "it would be inappropriate . . . to make a factual determination whether plaintiff initiated the dialogue, much less whether initiating a dialogue is an affirmative action." [ECF No. 76] at 5-6. Thus, Judge Gettleman did not expressly find delay is an insufficient basis for these defenses. Moreover, the parties now have pending motions before Judge Gettleman addressing these same issues. *See* [ECF No. 117] at 22-24 (DoorDash's motion for partial judgment on the pleadings addressing laches defense and whether the City delayed in bringing this action); [ECF No. 160] at 16-23 (the City's motion for summary judgment motion as to DoorDash's laches defense addressing whether an affirmative act, rather than delay or non-action, is required in a government enforcement action).

recent motion for partial judgment on the pleadings, for example, DoorDash argued the City's delay, for purposes of the laches defense, is sufficiently established by the Complaint. *See* [ECF No. 117] at 23-24. This suggests discovery of agency communications dating back to 2014 may be unnecessary and not proportional to the needs of the case, at least as to this defense. Consistent with the Court's duty to balance the liberal discovery rules with the proportionality considerations of Rule 26, the Court denies DoorDash's request to expand the time period for the City's response to RFP No 36 back to 2014 or, indeed, to a date earlier than January 1, 2019. This ruling is without prejudice to the extent the need for earlier communications may be revealed by ongoing discovery.

That leaves the question of whether the City should be compelled to produce communications about DoorDash that it may have had with state agencies outside of Illinois and federal agencies. The City contends that such communications are irrelevant as a matter of law. [ECF No. 98] at 12-13. DoorDash contends these communications are relevant to its home rule affirmative defense, which is the Sixth Affirmative Defense. [ECF No. 94] at 14. In that affirmative defense, DoorDash asserts this lawsuit is beyond the City's home rule powers or authority because it addresses matters of state or national concern.

Earlier in this case, Judge Gettleman declined to strike this affirmative defense, rejecting the City's argument "that case law does not support defendants' conclusion that the City lacks home-rule authority to challenge conduct that is 'purportedly national in scope'" and concluding "defendants rightly point out that 'a

home-rule defense requires a case-by-case analysis of the underlying facts.'" [ECF No. 76] at 4 (citing *Kalodimos v. Vill. of Morton Grove*, 103 Ill. 2d 483, 503 (1984)). *Kalodimos* provides relevant factors to consider include "[t]he nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Cnty. of Cook v. Vill. of Bridgeview*, 8 N.E.3d 1275, 1279 (Ill. App. Ct. 1st Dist. 2014) (quoting *Kalodimos*, 103 Ill.2d at 501). So, DoorDash's Sixth Affirmative Defense remains in the case. The question is what kind of, and how much, discovery can DoorDash obtain on that affirmative defense.

The City argues "the views of states outside Illinois" do not "bear on whether the City has home rule authority under Illinois law" and contends DoorDash provides no authority stating otherwise. [ECF No. 98] at 13. The City is correct about the dearth of authority on this point from DoorDash. But that does not end the matter. Discovery about whether the alleged problem the City is seeking to redress in this lawsuit is a national, rather than a local, problem is relevant to DoorDash's home rule defense. *See* [ECF No. 98] at 13 (acknowledging case law provides "home rule authority is limited to local governments' 'own problems, not to those of the state or the nation,'" citing *Kalodimos*). Judge Gettleman's decision to deny the City's motion to strike also leads to the conclusion, at least as of now, that there is a basis to challenge the City's home rule authority over national problems. [ECF No. 76] at 4.

Moreover, DoorDash's cited cases contemplate discovery as to whether a regulated problem is local, regional, statewide, or national in scope. [ECF No. 100] at

14-15. *See Vill. of Bridgeview*, 8 N.E.3d at 1279 (at summary judgment, considering expert testimony regarding national scope of feral cat problem to decide whether first *Kalodimos* factor, "the nature and extent of the problem," favored exercise of home rule authority); *City of Chicago v. Marriott Int'l, Inc.*, No. 19-2879, 2019 WL 6829101, at *6 (D. Md. Dec. 13, 2019) (denying motion to dismiss in case involving global data breach of Marriott hotel database, finding "there are insufficient facts known to determine whether the extent of the problem is statewide or national"). *See also First Am. Real Est. Sols., L.P. v. Moore*, No. 05 C 2300, 2005 WL 2230194, at *3–4 (N.D. Ill. Sept. 13, 2005) (St. Eve, J.) (acknowledging "[d]ifficulty arises, however, when a problem has a local as well as statewide or national impact," citing *Village of Bolingbrook v. Citizens Utilities Co.,* 158 Ill.2d 133, 138 (1994) and denying motion to dismiss defense because whether *Kalodimos* factors weigh in favor of the City's home rule authority is a "factual determination" not properly decided until "after conducting discovery"). Accordingly, whether DoorDash's conduct challenged here by the City is a national problem is relevant to DoorDash's Sixth Affirmative Defense within the liberal construct of Rule 26(b)(1).

The City also argues that even if relevant, RFP No. 36 is "overly broad and unduly burdensome" because it seeks all communications with federal agencies, stating "only a subset . . . could possible relate to" the "interest and expertise of the federal government. . ." [ECF No. 98] at 13-14. DoorDash does not appear to dispute that RFP No. 36, as drafted, is overbroad, instead claiming the City's objection "is meritless in light of the several rounds of narrowing compromises proposed by

DoorDash," including a request for "the date ranges of communications and the names of agencies involved" which DoorDash says would allow the parties to "further work on narrowing this discovery . . ." [ECF No. 100] at 15. Given DoorDash's apparent acknowledgement that RFP No. 36 is overbroad, this Court will not compel the City to respond to this request for production as written. Instead, the Court orders the parties to meet and confer as to the scope of RFP No. 36 in light of the Court's rulings today, keeping in mind the proportionality requirements of Rule 26(b)(1).[13]

Accordingly, for all these reasons, Defendants' Motion to Compel [ECF No. 94] is denied as to RFP Nos. 33, 51, and Interrogatory No. 8, and granted in part and denied in part as to RFP No. 36, as explained above.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 25, 2023

---

[13] For the reasons discussed above, this Court also declines, in its discretion, to find any waiver of privilege as to documents responsive to RFP No. 36 because the City has yet to produce a privilege log. It is also unclear whether the City has even started the production of intra-Illinois communications.