**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| City of Chicago, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:21-cv-05162 |
| DoorDash, Inc. and Caviar, LLC, | Honorable Robert W. Gettleman |
| *Defendants.* | **Oral Argument Requested** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS; OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE
PLEADINGS ON THE STATUTE OF LIMITATIONS; AND OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON LACHES**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

    I.    The City's Untimely Claims Are Barred By Illinois' Two-Year
        Limitations Period...............................................................................................3

        A.    The Two-Year Limitations Period Applies To This Action. ......................3

        B.    The Two-Year Limitations Period Bars Entire Claims, Not Just
               Remedies.....................................................................................................7

        C.    The City's Home-Rule Authority Has No Bearing On The
               Limitations Period.....................................................................................10

        D.    The City Failed To Show That *Nullum Tempus* Exempts This
               Discretionary Private-Interest Action From The Two-Year
               Limitations Period.....................................................................................12

               1.    This Action Does Not Impact Public Health, Safety, Or Property.
                      ....................................................................................................12

               2.    This Action is Discretionary, Not Obligatory...............................14

               3.    The City Concedes That The Alleged Violations Did Not
                  Necessitate Public Expenditures. ...................................................17

               4.    The City Further Errs By Ignoring Illinois Law Regarding The
                  Contingency-Fee Agreement With Cohen Milstein. ....................19

               5.    The City Forfeited A Response To DoorDash's First Due-Process
                  Argument And Misunderstands Its Second Due-Process Argument.
                      ....................................................................................................21

    II.    Laches Independently Bars The City's Untimely Claims.....................................23

    III.    The City's Cross-Motion For Partial Summary Judgment On Laches Fails. ........26

CONCLUSION.....................................................................................................................27

## TABLE OF AUTHORITIES

Page(s)

CASES

*Adams v. Woods*,
6 U.S. (2 Cranch) 336 (1804) ...............................................21, 22

*Allstate Ins. Co. v. Menards, Inc.*,
285 F.3d 630 (7th Cir. 2002) ...............................................20

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) ...............................................10

*Bd. of Educ. of City of Chi. v. A, C & S, Inc.*,
546 N.E.2d 580 (Ill. 1989) ...............................................12, 16, 17, 18, 19

*Beckham v. Tate*,
378 N.E.2d 588 (Ill. App. Ct. 1978) ...............................................24, 25

*Blanchard v. Berrios*,
72 N.E.3d 309 (Ill. 2016) ...............................................12

*Brown v. Trustees of Schools*,
79 N.E. 579 (Ill. 1906) ...............................................20

*Burlinski v. Top Golf USA Inc.*,
2020 WL 5253150 (N.D. Ill. Sept. 3, 2020) ...............................................6

*CFPB v. TransUnion*,
2022 WL 17082529 (N.D. Ill. Nov. 18, 2022) ...............................................9

*Champaign Cnty. Forest Pres. Dist. v. King*,
683 N.E.2d 980 (Ill. App. Ct. 1997) ...............................................13, 14, 17, 18

*City of Chicago v. Equte LLC*,
2022 WL 2132630 (N.D. Ill. June 14, 2022) ...............................................16, 19

*City of Chicago v. Latronica Asphalt & Grading, Inc.*,
805 N.E.2d 281 (Ill. App. Ct. 2004) ...............................................11, 15, 16

*City of Shelbyville v. Shelbyville Restorium, Inc.*,
451 N.E.2d 874 (Ill. 1983) ...............................................11, 12, 13, 14, 17, 18

*Clare v. Bell*,
37 N.E.2d 812 (Ill. 1941) ...............................................12

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Clay v. Kuhl*,
727 N.E.2d 217 (Ill. 2000) ..........................................................................................22

*Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*,
502 F. Supp. 3d 1320 (N.D. Ill. 2020) ...........................................................................9

*Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. 7*,
164 N.E.3d 1226 (Ill. 2020) ...........................................................................................7

*Est. of Phillips v. City of Milwaukee*,
123 F.3d 586 (7th Cir. 1997) ........................................................................................22

*French v. Azteca Milling, L.P.*,
2012 WL 5844756 (S.D. Ind. Nov. 19, 2012) ...............................................................9

*Gabelli v. SEC*,
568 U.S. 442 (2013) ..................................................................................2, 21, 22, 23

*People ex rel. Hartigan v. Agri-Chain Products, Inc.*,
586 N.E.2d 535 (Ill. App. Ct. 1991) ...........................................7, 8, 12, 14, 16, 17

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
191 F.3d 813 (7th Cir. 1999) ........................................................................................26

*People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*,
795 N.E.2d 990 (Ill. App. Ct. 2003) ...................................................................6, 14, 16

*Ill. Tamale Co. v. El-Greg, Inc.*,
2018 WL 6590558 (N.D. Ill. Dec. 14, 2018) ...............................................................26

*Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*,
2014 WL 4748272 (C.D. Ill Sept. 24, 2014) .................................................................6

*Keystone Montessori Sch. v. Vill. of River Forest*,
187 N.E.3d 1167 (Ill. App. Ct. 2021) ..........................................................................25

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994) ......................................................................................................22

*Landis v. Marc Realty, L.L.C.*,
919 N.E.2d 300 (Ill. 2009) .........................................................................1, 3, 4, 5, 6, 11

*Leavell v. Kieffer*,
189 F.3d 492 (7th Cir. 1999) ........................................................................................10

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*Lee v. City of Decatur*,
627 N.E.2d 1256 (Ill. App. Ct. 1994) ........................................................................24

*Lintzeris v. City of Chicago*,
2023 WL 329492 (Ill. Jan. 20, 2023) ........................................................................11

*In re Marriage of Stockton*,
937 N.E.2d 657 (Ill. App. Ct. 2010) ...........................................................................4

*Mueller Co. v. Dep't of Labor*,
543 N.E.2d 518 (Ill. App. Ct. 1989) .........................................................................14

*Namur v. Habitat Co.*,
691 N.E.2d 782 (Ill. App. Ct. 1998) ........................................................................4, 6

*Noland v. Mendoza*,
2022 WL 4372449 (Ill. Sept. 22, 2022) ....................................................2, 23, 24, 27

*Palm v. 2800 Lake Shore Drive Condo. Ass'n*,
988 N.E.2d 75 (Ill. 2013) ..........................................................................................11

*Pisciotta v. Old Nat'l Bancorp*,
499 F.3d 629 (7th Cir. 2007) .....................................................................................21

*Scott v. Ass'n for Childbirth at Home, Int'l*,
430 N.E.2d 1012 (Ill. 1981) .........................................................................................5

*Sherman-Reynolds, Inc. v. Mahin*,
265 N.E.2d 640 (Ill. 1970) .........................................................................................13

*St. Alexius Med. Ctr. v. Roofers' Unions Welfare Tr.*,
2015 WL 5123602 (N.D. Ill. Aug. 28, 2015) ...........................................................5, 6

*Stafford v. Bowling*,
407 N.E.2d 771 (Ill. App. Ct. 1980) .....................................................................15, 16

*Governor ex rel. Thomas v. Woodworth*,
63 Ill. 254 (1872) ....................................................................................................19, 20

*Tims v. Black Horse Carriers, Inc.*,
2023 WL 1458046 (Ill. Feb. 2, 2023) ..........................................................................8

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) ...................................................................................................15

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*People ex rel. Town of New Trier v. Hale*,
52 N.E.2d 308 (Ill App. Ct. 1943) .................................................................20

*United States v. City of Loveland*,
621 F.3d 465 (6th Cir. 2010) ........................................................................24

*Vill. of DePue v. Viacom Int'l, Inc.*,
713 F. Supp. 2d 774 (C.D. Ill. 2010) ..............................................13, 14, 15, 17, 18

*Vill. of Roxana v. Shell Oil Co.*,
2013 WL 4510164 (S.D. Ill. Aug. 26, 2013) ..............................................16

*Zichy v. City of Philadelphia*,
590 F.2d 503 (3d Cir. 1979)........................................................................24

STATUTES

Ill. Comp. Stat. 5/10-1-18.2 .......................................................................11

Ill. Comp. Stat. 5/13-202..........................................................................3, 7

RULES

Fed. R. Civ. P. 12(c) ...........................................................................2, 7, 9, 10

Fed. R. Civ. P. 12(b)(6)............................................................................10

Fed. R. Civ. P. 12(f) .................................................................................2

CONSTITUTIONAL PROVISIONS

Ill. Const. art. V, § 8...............................................................................15

## INTRODUCTION

In response to DoorDash's motion for judgment on the pleadings on the City's untimely claims, the City "agree[s]" that DoorDash's statute of limitations defense presents "questions of law" that are "appropriate and necessary" to resolve "on the pleadings." Dkt. 160, at 1, 4. The City is wrong, however, that the statute of limitations poses no obstacle to the pursuit of its claims (which include claims both for supposed conduct that had ceased years before this suit was filed and conduct that the City publicly endorsed). The City's brief presents an unconstrained view of government power—under which the City may bring enforcement actions decades after conduct arises, and that Illinois law and due process place *no limits* on when the City may bring actions for penalties. That is not the law.

Section 5/13-202's two-year statute of limitations applies because the City seeks "statutory penalties" that are "mandatory" (with respective minimums of $50 and $500 per offense). *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 307 (Ill. 2009). The City attempts to evade the limitations period by invoking *nullum tempus* while satisfying none of the three factors that doctrine requires—that public rights are at stake, the government is obliged to sue, and public funds necessarily were expended. The City in fact *concedes* that the public-funds factor is unmet. And on the other two factors, the City reframes the legal test in a way that would exempt virtually every government lawsuit from limitations. For example, the City says it satisfies the first factor because this suit "promotes the public welfare." But the actual test is whether the lawsuit is necessary to secure "public health, safety, or property"—which a suit concerning private commercial transactions is not. On the second factor, the City claims it was "obligated" to sue because it has a general duty to enforce the Municipal Code of Chicago ("MCC"). But that could be said of any lawsuit brought under the MCC. The actual test is whether the City was obligated to enforce the law *by filing suit*. No such obligation exists. The City fails all three *nullum tempus* factors.

1

The City's other arguments fare no better.  It claims that "[i]nvestigations take time," particularly to "uncover evidence of unlawful practices."  Dkt. 160, at 1.  That concern rings hollow here, where the City's complaint alleges longstanding practices—many of which the City concedes ended well before this suit was filed—that were in the public spotlight for years.  *See* Compl. ¶¶ 3, 9, 33, 165.  The City also ignores the powerful reasons for *enforcing* statutes of limitations— including repose, "certainty about . . . a defendant's potential liabilities," and "preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  *Gabelli v. SEC*, 568 U.S. 442, 448 (2013).  Those concerns are implicated here.  Even if *nullum tempus* could apply (and it cannot), due process prevents the City from sitting on conduct for years and then partnering with private counsel to extract millions in penalties for conduct from well before the limitations period.

Likewise, the City's cross-motion for judgment on the pleadings is meritless.  The City's attempt to seek "judgment" on a *defense* is an improper use of Federal Rule of Civil Procedure 12(c).  Unlike DoorDash's Rule 12(c) motion—which seeks entry of judgment on untimely claims—the City's motion would not result in judgment on *any* claims.  Because this abuse of Rule 12(c) gives the City an improper sur-reply to DoorDash's motion—and because the City exhausted its right to argue against DoorDash's defenses under Rule 12(f)—the Court should disregard any further briefing from the City on the limitations issue.

The City's motion for summary judgment on laches also fails.  The City claims that DoorDash "abandoned" its initial position that the City induced detrimental reliance through affirmative acts.  Dkt. 160, at 17.  Not so.  The Illinois Supreme Court's intervening decision in *Noland v. Mendoza*, 2022 WL 4372449 (Ill. Sept. 22, 2022), makes plain that DoorDash need not prove an affirmative act when mere private rights are at stake.  Further, the City's own allegations

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

doom its laches motion—the City's complaint repeatedly says that DoorDash's conduct was widely known, yet it now resists laches by claiming that the same conduct only gained salience during the pandemic. Dkt. 160, at 18. Laches bars these untimely claims. The City cannot wait to accrue massive penalties and then enlist private enforcers to collect the bounty years later.

## ARGUMENT

### I.     The City's Untimely Claims Are Barred By Illinois' Two-Year Limitations Period.

Illinois' two-year statute of limitations bars the City's claims based on conduct that occurred more than two years before the City filed this suit on August 27, 2021. Dkt. 117, at 7–8. Because the City did not—and cannot—carry its burden to show that the *nullum tempus* exception to this two-year limitations period applies, the Court should enter judgment on the pleadings as to any claims for purported violations that occurred before August 27, 2019. *Id.* at 6, 11–22.

The City responds that (a) Section 5/13-202's limitations period does not apply to this action; (b) if it applies, Section 5/13-202 bars only certain remedies and not entire claims; (c) the City's home-rule status immunizes it from Illinois statutes of limitations; and (d) the *nullum tempus* exception saves claims that assert private rights on a discretionary basis, even when the plaintiff concedes that the alleged offenses caused no expenditure of public funds. *See* Dkt. 160, at 3–16. All of these arguments fail.

### A.     The Two-Year Limitations Period Applies To This Action.

The City argues that "no statute of limitations applies" because "no Chicago ordinance or Illinois law specifically applies a limitations period to City actions under MCC §§ 2-25-090 or 4-276-470." Dkt. 160, at 3. But Section 5/13-202 imposes a two-year limitations period on *all* "[a]ctions for . . . a statutory penalty." 735 Ill. Comp. Stat. 5/13-202. Specifically, under *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d at 308, Section 5/13-202 applies to enforcement actions where an ordinance "imposes automatic liability for a violation" in the form of "predetermined" fines.

That is the case here. The City's causes of action impose statutory penalties by providing that violators "shall" be "fine[d]" at least $50 or $500 per violation, an amount that "is not dependent on plaintiff['s] actual damages." *Id.* at 307–08. The City's attempts to circumvent the straightforward application of Section 5/13-202 fail.

The City's basic argument about why Section 5/13-202 ought not to govern is that the MCC is supposedly a "remedial" statute, whereas Section 5/13-202 supposedly applies only to "penal statutes." Dkt. 160, at 14. But the real question here—as explained in *Landis*, and as shown by the plain text of Section 5/13-202—is whether the ordinance imposes a "statutory penalty," not whether the ordinance is "remedial" or "penal" in some broad, general sense. *Landis*, 919 N.E.2d at 307; *Namur v. Habitat Co.*, 691 N.E.2d 782, 785 (Ill. App. Ct. 1998) (designating fines as statutory penalties although "[s]ome portions of the ordinance are remedial because they permit recovery of actual damages"). Properly understood, both MCC §§ 2-25-090(g) and 4-276-480 impose statutory penalties. Each provides that minimum fines—which the provisions literally call "penalties"—"*shall*" be imposed, using the exact language that led *Landis* to deem the fines at issue penalties. 919 N.E.2d at 303, 307 (reviewing ordinance providing that "tenant *shall be* awarded damages" (emphasis added)); *see, e.g.*, *In re Marriage of Stockton*, 937 N.E.2d 657, 666 (Ill. App. Ct. 2010) ("$100-per-day liability" is a statutory penalty "not related to actual damages"). The MCC provisions thus fall squarely with Section 5/13-202, despite the City's purported "remedial"/"penal" dichotomy.

Nor does it matter that the MCC provisions at issue here impose, as the City contends in its brief, "fines ranging from $50 to $10,000 per offense." Dkt. 160, at 15.[1] *Landis* already

---

[1]    The City conflates the ranges of both distinct MCC provisions into one omnibus "range." In fact, however, MCC § 2-25-090(g)'s penalty range is from $500 to $10,000 for each violation, whereas MCC § 4-276-480's penalty range is from $50 to $2,000 for each violation.

rejected the notion that a "statutory penalty" must impose a "specific dollar amount," stating that the "Plaintiffs wrongly assume[d]" (as the City does here) "that a provision that sets forth a formula for calculating damages rather than identifying a specific dollar amount cannot be characterized as a penalty." 919 N.E.2d at 307. Rather, a fine is a "statutory penalty" if it involves "predetermined amount[s]" rather than "actual damages." *Id.*; *see also St. Alexius Med. Ctr. v. Roofers' Unions Welfare Tr.*, 2015 WL 5123602, at *4 (N.D. Ill. Aug. 28, 2015) (applying two-year limitations period where court had discretion to impose fines of *up to* $100 per day). That is the case here, because MCC §§ 2-25-090 and 4-276-480 impose a predetermined range of per-violation penalties even if actual damages are not shown—a distinction the City itself has emphasized in this case. *E.g.*, Dkt. 40, at 3 ("The City need not plead actual . . . injury."). That the court may impose even harsher penalties above the mandatory minimum does not somehow transform the penalties into something else.

The City attempts to obfuscate these points by relying on *Scott v. Association for Childbirth at Home, International*, 430 N.E.2d 1012 (Ill. 1981), a decision involving a vagueness challenge to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Dkt. 160, at 14. Yet *Scott* has nothing to do with limitations periods and was issued decades before *Landis*. There, the Illinois Supreme Court rejected the defendant's argument that the ICFA should be "subject to a stricter standard" under due process as a "penal statute" and instead applied an ordinary civil vagueness standard because of the statute's remedial purposes. *Scott*, 430 N.E.2d at 1016–17. That holding has no bearing on the meaning of "statutory penalty" in Section 5/13-202. Again, the City misreads the test in *Landis* as turning on the abstract nature of a law as "penal" rather than focusing on what matters—whether a penalty provision imposes a mandatory and predeterminate fine irrespective of actual damages. 919 N.E.2d at 307–08; *see Namur*, 691 N.E.2d at 785 (noting

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

that "[s]ome portions" of an ordinance were penal and others remedial, but determining that "[t]he sections of the ordinance that are the basis of plaintiffs' action . . . are penal").[2]

The City's attempt to distinguish *St. Alexius Medical Center*, 2015 WL 5123602, fails for the same reason. The court there applied Section 5/13-202 to an ERISA provision conferring "discretion" to impose penalties within a range of up to $100 per day. *See id.* at *5. As here, that provision induced compliance by imposing a fine that did not "compensate" victims for actual damages. *Compare id.*, *with* Dkt. 160, at 15; Dkt. 40, at 3, 21 (asserting that the City "need not" show actual injury to collect penalties). That is a sure sign of a "statutory penalty." *Landis*, 919 N.E.2d at 307 (a fine is a statutory penalty when the plaintiff need not "prove an actual injury").

Finally, the City argues in the alternative that the five-year catch-all limitations period in Section 5/13-205 applies rather than the two-year period in Section 5/13-202, citing a now-defunct ruling in *People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990 (Ill. App. Ct. 2003). Dkt. 160, at 14. But the *Tri State* court applied the five-year period after concluding, incorrectly, that Section 5/13-202 extends only to cases involving "direct physical or mental injury." 795 N.E.2d at 995–96. That view was never settled law in Illinois and was effectively overruled six years later in *Landis*, 919 N.E.2d at 302, 307–08 (applying two-year limitations period to private action for violations related to apartment security deposit). And as DoorDash noted in its opening brief, an Illinois court applied the two-year limitations period in Section 5/13-

---

[2]     The City's additional authorities—*Burlinski v. Top Golf USA Inc.*, 2020 WL 5253150 (N.D. Ill. Sept. 3, 2020), and *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, 2014 WL 4748272 (C.D. Ill Sept. 24, 2014)—are also distinguishable, as DoorDash noted in its opening brief. *See* Dkt. 117, at 8–9. The statutes at issue there gave the court the discretion to impose a statutory penalty *or* actual damages, meaning that the penalty was not automatic and thus fell outside Section 5/13-202. 2020 WL 5253150, at *7; 2014 WL 4748272, at *7–8. By contrast, the MCC provisions at issue here undisputedly make penalties automatic. There is thus no "discretion" in the relevant sense—the minimum penalties "shall" be imposed.

202 to a government-enforcement action in a non-injury case in *People ex rel. Hartigan v. Agri-Chain Products, Inc.*, 586 N.E.2d 535, 539 (Ill. App. Ct. 1991). *See* Dkt. 117, at 14–16. Section 5/13-202 is thus the relevant limitations period governing this suit.

### B. The Two-Year Limitations Period Bars Entire Claims, Not Just Remedies.

The impact of Section 5/13-202 is straightforward as well—"[a]ctions" covered by the statute "shall be commenced within 2 years next after the cause of action accrued." 735 Ill. Comp. Stat. 5/13-202. That is why DoorDash moved for judgment on the City's *claims* for supposed violations of MCC §§ 2-25-090(g) and 4-276-480—under which each day of violations is a "separate and distinct offense"—based on conduct alleged to have occurred before August 27, 2019. *See* Dkt. 117, at 1–2, 10–11, 24. Nevertheless, the City now contends that DoorDash seeks "judgment" on penalties only because Section 5/13-202 does not govern the "other remedies" sought by the City for its untimely claims. Dkt. 160, at 16. That argument misunderstands the statute, the relief that DoorDash seeks, and Rule 12(c).

*First*, the text of Section 5/13-202 expressly extinguishes entire "[a]ctions"—not simply the penalty itself. 735 Ill. Comp. Stat. 5/13-202. That follows from the other actions listed in Section 5/13-202, including "[a]ctions for damages for an injury to the person, or for false imprisonment, or malicious prosecution" and "for abduction, or for seduction, or for criminal conversation[s]." *Id.* Both by its plain terms and in context, the statute consistently applies the two-year limitations period to entire *actions*—not merely remedies. The City's argument violates bedrock principles of statutory interpretation that require harmonizing a contested phrase with surrounding terms. *See Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. 7*, 164 N.E.3d 1226, 1232–33 (Ill. 2020) ("[W]ords grouped in a list should be given related meaning.").

*Second*, following the plain text, Illinois courts apply Section 5/13-202 to entire claims, not remedies. The best example is *Agri-Chain*, which rejected the government's attempt to invoke

*nullum tempus* and applied the two-year limitations period in Section 5/13-202 to dismiss the entire complaint, which "sought the vacation pay at issue *as well as* statutory penalties." 586 N.E.2d at 536 (emphasis added). That case establishes that out-of-time penalties actions are barred in their entirety by Section 5/13-202, even when a litigant tacks on additional or alternative remedies in its complaint. And DoorDash's opening brief discussed *Agri-Chain* repeatedly, Dkt. 117, at 14–16, so the City is wrong that DoorDash cited "no case" in which a court applied Section 5/13-202 to a government-enforcement action. Dkt. 160, at 14.

*Third*, Illinois' strong policy in favor of uniform limitations periods for each type of claim counsels against applying multiple time-bars to different remedies under the MCC provisions at issue here. Earlier this year, for example, the Illinois Supreme Court reversed a decision applying different statutes of limitations to "different subsections" of the same act. *Tims v. Black Horse Carriers, Inc.*, 2023 WL 1458046, at *1, *3 (Ill. Feb. 2, 2023). As the court explained, "[o]ne of the purposes of a limitations period is to reduce uncertainty and create finality and predictability in the administration of justice." *Id.* at *3. But the "decision to invoke two different statutes of limitations to different subsections of [the same act] does not align with this purpose," given that "[t]wo limitations periods could confuse future litigants about when claims are time-barred." *Id.* The City's proposed approach would work this exact harm, given that different limitations periods would govern the same claim by virtue of the remedies sought. Conversely, because a penalty *must* be sought for each "offense" for which the City, in its discretion, elects to sue, litigants always know that a two-year limitations period applies.[3] That interest confirms what *Agri-Chain* makes

---

[3]  MCC § 2-25-090(g) explains that penalties "shall" be imposed, while MCC § 2-25-090(f) states that other remedies like restitution or injunctions merely "may" be sought. Similarly, MCC § 4-276-480 explains that penalties "shall" be imposed, while, for example, a City license "may" be revoked. Every enforcement action taken pursuant to these provisions therefore will feature penalties, irrespective of whatever other remedies are sought.

clear: pursuit of an out-of-time penalty brings down the entire claim.

This discussion of Illinois law also shows why DoorDash's motion for partial judgment on the pleadings is procedurally proper under Rule 12(c). Granting the motion would award judgment on entire *claims*—all of the alleged "separate and distinct offense[s]" (and associated remedies) that accrued before August 27, 2019. MCC §§ 2-25-090(g), 4-276-480. The City's position conflicts with itself; it argues that Section 5/13-202 applies only to the remedy of civil fines, *see* Dkt. 160, at 16, but also argues that Section 5/13-202 must bar the City from asserting its causes of action entirely, or not at all, *see id.* at 22–23. The most obvious reading of Section 5/13-202 is the correct one: untimely actions involving statutory penalties are barred in their entirety.

The City's contention that DoorDash seeks to split claims is meritless. Dkt. 160, at 22–23. MCC §§ 2-25-090(g) and 4-276-480 label each day of violations "separate and distinct offense[s]." Granting judgment on "separate and distinct offense[s]"—each of which amounts to its own claim—is not the splitting of a single claim; courts do it all the time when multiple claims are asserted under the same cause of action. *See, e.g.*, *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 502 F. Supp. 3d 1320, 1332 (N.D. Ill. 2020) (treating each claim brought under a statutory cause of action as a "fresh violation" and dismissing "all claims prior to 2017 with prejudice"); *French v. Azteca Milling, L.P.*, 2012 WL 5844756, at *4 (S.D. Ind. Nov. 19, 2012) (similar as to claims brought under causes of action for discrimination). The only case the City cites for its argument, *CFPB v. TransUnion*, 2022 WL 17082529, at *4 (N.D. Ill. Nov. 18, 2022), arose on a Rule 12(b)(6) motion and involved a complaint that did "not establish that each violation occurred outside th[e limitations] period." DoorDash's motion, by contrast, arises under Rule 12(c), which the Seventh Circuit has expressly held to be the proper vehicle for seeking judgment on (as opposed to dismissal of) untimely claims. *See Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999)

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

(converting Rule 12(b)(6) statute-of-limitations dismissal into Rule 12(c) judgment and affirming).

Plaintiffs are not required to "plead around affirmative defenses" to survive a motion to dismiss,

but courts may enter partial judgment on some claims but not others "if separate injuries represent

separate claims—for example, monthly payments missed under an installment note." *Id.* at 494,

496. That is the situation here.

The City also asserts that DoorDash seeks "reconsideration" of the Court's prior ruling on

the motion to dismiss, arguing that the Rule 12(b)(6) and Rule 12(c) standards are supposedly "'the

same.'" Dkt. 160, at 23 (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)).

The City misunderstands *BBL*'s holding. On a Rule 12(c) motion, as on a motion to dismiss, courts

take the complaint as true and consider only allegations and judicially noticeable materials. But

*unlike* Rule 12(b)(6)—as the Seventh Circuit has confirmed—Rule 12(c) empowers courts to grant

judgment on untimely claims by looking to the full set of pleadings. *See Leavell*, 189 F.3d at 495;

Dkt. 117, at 6, 9–10 (collecting cases). Indeed, the City concedes as much elsewhere in its brief,

Dkt. 160, at 2 ("Rule 12(c) is an appropriate procedural vehicle to seek resolution of the merits of

an affirmative defense."), and the case it cites to draw the false equivalence noted above explicitly

observes that "the question at [the motion to dismiss] stage is simply whether the complaint

includes factual allegations that state a plausible claim for relief," *BBL*, 809 F.3d at 325. Here,

DoorDash properly seeks *judgment* on the City's claims based on its answer and an affirmative

defense that this Court has yet to adjudicate. *See* Dkt. 43, at 5 n.2 (noting that the limitations

period "goes to recovery, not [go] to whether plaintiff has stated a claim").

## C. The City's Home-Rule Authority Has No Bearing On The Limitations Period.

The City contends that applying Section 5/13-202 (or indeed *any* state statute of

limitations) to a Chicago ordinance would violate the City's home-rule authority. Dkt. 160, at 4–

5. This argument is baseless. The Illinois Supreme Court has already foreclosed it by applying

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

Section 5/13-202 to penalties imposed *by a Chicago ordinance* in *Landis*, 919 N.E.2d at 300, and has never suggested that home-rule authority displaces the three-factor test for analyzing an invocation of *nullum tempus*. *See City of Shelbyville v. Shelbyville Restorium, Inc.*, 451 N.E.2d 874, 878 (Ill. 1983). The City's own case, *City of Chicago v. Latronica Asphalt & Grading, Inc.*, 805 N.E.2d 281, 284 (Ill. App. Ct. 2004), proves this point by analyzing all three *nullum tempus* factors without reference to home-rule authority. It did not simply deem Chicago (and all other home-rule entities) exempt from Illinois' statewide limitations periods.

Neither of the City's cases supports its novel contention that home-rule authority makes state-law limitations periods categorically inapplicable. Both are preemption cases discussing the concurrent regulatory powers of the State and home-rule municipalities generally and the State's ability to withdraw such regulatory power through legislation. Dkt. 160, at 5 (citing *Lintzeris v. City of Chicago*, 2023 WL 329492, at *1 (Ill. Jan. 20, 2023) (discussing State and municipal vehicle regulations); *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 988 N.E.2d 75, 81 (Ill. 2013) (similarly with condo regulations)). And neither suggests that home-rule status exempts municipal ordinances from general State statutes of limitations (nor even *mentions* statutes of limitations).

The statute the City cites is no better; it simply withdraws municipalities' power to enact their *own* limitations periods in police-misconduct cases. Dkt. 160, at 5 (citing 65 Ill. Comp. Stat. 5/10-1-18.2). It is a non sequitur to say that because a municipality *cannot* enact its own limitations periods, it is thus *exempt* from state limitations periods. The City's own cited authority confirms that point, explaining that home-rule units have "the *same* sovereign power as the state government" unless the legislature limits that power. *Blanchard v. Berrios*, 72 N.E.3d 309, 321 (Ill. 2016) (emphasis added). Because Section 5/13-202 applies to the State, *see Agri-Chain*, 586 N.E.2d at 539, holding that the City's home-rule authority exempts actions brought in its name

would vest the City with radically *more* authority than that of the State.

**D.  The City Failed To Show That *Nullum Tempus* Exempts This Discretionary Private-Interest Action From The Two-Year Limitations Period.**

The City next attempts to shift the burden of invoking *nullum tempus* by arguing that the doctrine applies by default "unless the statute or ordinance specifically imposes" a limitations period on governmental entities.  Dkt. 160, at 5.  But *nullum tempus* is a "common law exemption" that saves time-barred claims *only* if the plaintiff demonstrates its action asserts a public right.  *Shelbyville*, 451 N.E.2d at 875; *see also Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 602 (Ill. 1989) (describing *nullum tempus* as a limited form of "common law immunity").  The City failed to prove that exemption here.  Instead, the City (1) argues that any action to "halt," "remediate," or "deter" lawbreaking is transformed into a public-rights case; (2) asserts that its authority to bring penalties actions somehow amounts to an *obligation* to bring such actions; and (3) concedes that the alleged violations caused no expenditure of public funds, but encourages the Court to ignore that factor.  Dkt. 160, at 6–10.  The City also ignores the private interests of its contingency-fee counsel and the due-process concerns associated with this massive penalties action.  Each of these flaws forecloses application of *nullum tempus* to the City's untimely claims.[4]

**1.  This Action Does Not Impact Public Health, Safety, Or Property.**

With respect to the first *nullum tempus* factor—"effect on the general public," *Vill. of*

---

[4]  The City cites *Clare v. Bell*, 37 N.E.2d 812 (Ill. 1941), to argue that government-enforcement actions are immune from *all* limitations periods unless the statute "expressly" provides otherwise.  Dkt. 160, at 5.  That has not been the law in Illinois for at least forty years.  As explained in *Shelbyville*, the State abrogated sovereign immunity by judicial decision and constitutional amendment, 451 N.E.2d at 875, and retained *nullum tempus* as an exception to otherwise-applicable limitations periods only for enforcement actions where "the right which the plaintiff governmental unit seeks to assert is in fact a right belonging to the general public," *id.* at 876–77; *see also id.* at 877 (describing *Clare* as allowing an "action to collect penalties on delinquent property taxes . . . to proceed, apparently because the right to collect them was 'public'").  *Shelbyville* and its progeny control here, not *Clare*.

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

*DePue v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 782 (C.D. Ill. 2010)—the City's enforcement action furthers an interest in enlarging its (and contingency-fee counsel's) coffers, yet furthers no public right (*i.e.*, public health, safety, or property), as the Illinois Supreme Court's *nullum tempus* precedents require.  *See* Dkt. 117, at 12.  The City does not even attempt to argue some connection to these quintessential public rights.

Instead, the City argues in general terms that its action is exempt from limitations periods because the MCC "protect[s] the public" and "regulat[es] for the public welfare."  Dkt. 160, at 7–8.  But the same could be said about *any* lawsuit brought under a statute or ordinance enacted pursuant to the police power, which extends to a far broader range of governmental activities than those falling within *nullum tempus*.  *See generally Sherman-Reynolds, Inc. v. Mahin*, 265 N.E.2d 640, 642 (Ill. 1970) (discussing the broad scope of the police power).  Courts have repeatedly refused to apply *nullum tempus* to cases that merely happen to involve "public welfare" in an abstract sense, even when the public would benefit indirectly from a windfall to the public coffers.  *See Vill. of DePue*, 713 F. Supp. 2d at 782 ("recovery of damages purportedly for cleanup costs" insufficient because they "merely affect the economic interests of the residents of the Village"); *Champaign Cnty. Forest Pres. Dist. v. King*, 683 N.E.2d 980, 982–83 (Ill. App. Ct. 1997) (similar in suit to recover allegedly inflated municipal insurance premiums).  The City purports to distinguish these cases on the ground that they involved *solely* monetary payments to public entities, but this is not what those cases actually said.  In each, the government claimed, as here, that broader economic interests of the citizenry were at stake.  Yet also in each, the courts held this interest insufficient for *nullum tempus*, as "merely . . . the economic interests of the residents" of a locality "do not implicate the public's interest in health and safety" or public property.  *Vill. of DePue*, 713 F. Supp. 2d at 782; *Champaign Cnty.*, 683 N.E.2d at 982 (rejecting *nullum tempus*

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

despite argument that municipal insurance concerned county's "duties to [its] citizens").

Nor does the City's assertion that MCC penalties are intended to "deter" and "remediate" certain legal violations show that public rights are at stake. Dkt. 160, at 7. The Illinois Legislature authorized suits for damages and penalties under the Wage Act for the same reasons. *See Mueller Co. v. Dep't of Labor*, 543 N.E.2d 518, 524 (Ill. App. Ct. 1989) ("The primary objective of the [Wage] Act is to ensure employees receive all earned benefits . . . and the evil it seeks to remedy is the forfeiture of any of those benefits."). Yet the Illinois courts have rejected the idea that invoking a remedy enacted under the police power automatically transforms an action into a public-rights case. *See Tri State*, 795 N.E.2d at 995 (suit invoking penalties for violating wage and vacation pay rules not a public-rights case); *Agri-Chain*, 586 N.E.2d at 539 (same). Taken to its logical conclusion, the City's position largely abrogates Section 3/15-202 because *all* statutory penalties are enacted to halt, remedy, and deter violations. That is exactly why the Illinois Supreme Court requires examining whether a suit truly involves "a right belonging to the general public" before subjecting defendants to out-of-time claims. *Shelbyville*, 451 N.E.2d at 877. Again, the City fails to explain how pursuing out-of-time claims will secure public rights, particularly in light of the fact that the City remains able to "halt," "remediate," and "deter" alleged recent and ongoing violations by seeking other relief that is not time-barred.

## 2. This Action is Discretionary, Not Obligatory.

As to the second *nullum tempus* factor—"whether the governmental entity was obligated to act on behalf of the public," *Vill. of DePue*, 713 F. Supp. 2d at 783 (quoting *Champaign Cnty.*, 683 N.E.2d at 983)—the City argues that this action is obligatory because the Commissioner of the Department of Business Affairs and Consumer Protection "shall be charged with enforcement" of the MCC's advertising and consumer-protection provisions. Dkt. 160, at 8 (quoting MCC § 2-25-090(b)). But this *general* duty to enforce the law falls well short of the *specific* obligation

14

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

required to trigger immunity from limitations periods. *Nullum tempus* is available only when a defendant's misconduct or inaction "obligate[s]" the government to take action because the essential public health and safety functions of government are usually mandatory, not discretionary. *Latronica*, 805 N.E.2d at 289; *Stafford v. Bowling*, 407 N.E.2d 771, 773 (Ill. App. Ct. 1980). That is a far cry from the circumstances here, where the City seeks out-of-time penalties unrelated to performing any essential function whatsoever.

Government officials are almost always statutorily instructed to uphold the law or perform certain official duties, but those instructions rarely require doing so through any *specific* act. *E.g.*, Ill. Const. art. V, § 8 ("The Governor . . . shall be responsible for the faithful execution of the laws"). Indeed, as the City argues in its brief, "[g]overnment officials nearly always have discretion when carrying out their enforcement obligations." Dkt. 160, at 8. Courts have long recognized that officials may fulfill their charge to enforce the law by taking less serious action, or no action at all, unless the law includes an enforceable command. *See Stafford*, 407 N.E.2d at 773 (official may "choose which, if any, of the options to use" when law imposes "duty to inquire diligently" but provides a variety of authorities for carrying out that duty); *Vill. of DePue*, 713 F. Supp. 2d at 783 (comparing cases involving action that was authorized with cases where action was specifically required); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005) (state laws providing that officers "shall order" and "shall use every reasonable means to enforce" the law did not oblige officers to take *specific* actions).

The City still has identified no provision of the MCC that *requires* it to bring a penalties action like this one. The MCC vests the Commissioner and Corporation Counsel with a variety of enforcement tools and provides that the Commissioner "*may . . . request* the corporation counsel to bring an action for injunctive relief or such other equitable relief that the commissioner *deems*

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

*to be appropriate.*" Dkt. 117, at 14–15 (quoting MCC § 2-25-090(f)(4)). Courts have repeatedly held that laws offering such a menu of enforcement options are discretionary in nature. *See Tri State*, 795 N.E.2d at 994 (general duty to inquire does not make an action obligatory); *Agri-Chain*, 586 N.E.2d at 538 (similar); *Stafford*, 407 N.E.2d at 773 (similar in mandamus context).[5]

By contrast, the City identifies no authority finding an obligation to act based on permissive language like that found in the MCC provisions at issue here. Dkt. 160, at 8–10. The Illinois decisions cited in the City's brief each involved a *specific* obligation. *See A, C & S*, 546 N.E.2d at 602 (finding obligation where an Illinois statute "impose[d] [a] duty to act on the individual school districts" with respect to asbestos abatement and cost recovery); *Latronica*, 805 N.E.2d at 288–89 (finding obligation to act where ordinance *required* official to "institute necessary proceedings" and "to bring about the summary abatement of pollution sources"). The district court cases cited by the City barely discuss the obligation-to-act factor and involved clear dangers to health and safety that *only* the municipality could remedy. *See City of Chicago v. Eque LLC*, 2022 WL 2132630, at *5 (N.D. Ill. June 14, 2022) (finding that *nullum tempus* applies where "the public is incapable of acting on its own behalf" regarding sale of tobacco products to minors); *Vill. of Roxana v. Shell Oil Co.*, 2013 WL 4510164, at *6 (S.D. Ill. Aug. 26, 2013) (noting that only the municipality could bring an action sounding in public nuisance).

It is not enough, as the City asserts, Dkt. 160, at 8, for a municipality to enact an ordinance without a private right of action and then claim immunity from limitations periods because only the City can enforce the ordinance. By that logic the City could manufacture immunity by enacting

---

[5]   The City's attempt to distinguish these cases as arising "under a sharply different legal framework" is unavailing. Dkt. 160, at 9. What mattered in *Tri State* and *Agri-Chain* was that the relevant officials' duty to inquire did not translate into an *obligation* to bring suit. Whether individual employees or consumers could also have brought suit does not determine the distinct question of whether *public officials* are legally obliged to institute litigation on their behalf.

an ordinance authorizing intervention into even the most mundane private disputes occurring years in the past. The Illinois Supreme Court did not retain *nullum tempus* (despite abrogating sovereign immunity generally) to promote that type of evasion by municipal officials and their private partners. *See City of Shelbyville*, 451 N.E.2d at 877 (explaining that *nullum tempus* specifically "is designed to preserve *public* rights" (emphasis added)).

Nor does the City's attempted distinction between government actions involving statutory claims and common-law claims stand up to scrutiny. Dkt. 160, at 10. Illinois courts have analyzed *nullum tempus* under various statutes of limitation without focusing on the statutory or common-law nature of the claims. *Shelbyville* was an "action to enforce and recover damages under an ordinance," 451 N.E.2d at 875, while *A, C & S* analyzed "strict liability, negligence, and negligent misrepresentation counts," 546 N.E.2d at 600—yet both applied *nullum tempus*. Conversely, *Champaign County* involved "breach of fiduciary duty and breach of agency" claims, 683 N.E.2d at 982, while *Agri-Chain* addressed "the vacation pay at issue as well as statutory penalties," 586 N.E.2d at 536—both refused to apply *nullum tempus*. And in *Village of DePue*, the municipality brought claims under an ordinance as well as common-law claims for trespass and nuisance based on the same allegations; the court dismissed the ordinance claims on other grounds, but found the common-law claims barred under an analysis that could have applied equally to both. 713 F. Supp. 3d at 776; *Vill. of DePue*, 632 F. Supp. 2d at 860.

### 3. The City Concedes That The Alleged Violations Did Not Necessitate Public Expenditures.

The City concedes that it cannot make the required showing under the third *nullum tempus* factor—whether the issue "necessitate[d] an expenditure of public revenues." *Vill. of DePue*, 713 F. Supp. 2d at 784. But Illinois law is clear that the expenditure of public funds is a required consideration in the *nullum tempus* analysis. *See A, C & S*, 546 N.E.2d at 602 ("*Shelbyville*

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

properly concentrated" on three factors, including "the extent to which public funds must be expended"). Public-rights cases are those in which the government is forced to step in with public funds to mitigate threats to public health, safety, or property. *See id.* (applying doctrine because the "cost" of abatement "will be shouldered" by taxpayers absent "this litigation"); *Shelbyville*, 451 N.E.2d at 878 (same where defendant "necessitated the expenditure of the public revenues for that purpose"). The City has never had to expend public funds to repair or compensate for damage caused by DoorDash's supposed "deception." Not one of the cases cited in the parties' briefs has applied *nullum tempus* in the face of a complete failure to establish the public-funds factor. So far as the parties are aware, therefore, this would be the first case to do so under Illinois law.

The City asserts without authority that the public-funds factor "is irrelevant in most consumer protection actions because such actions typically do not involve the government's proprietary losses." Dkt. 160, at 6 n.1. To the contrary, the expenditure of public funds is relevant because it tends to show that the action actually involves a pressing public interest—and its absence shows the opposite. Even in those cases in which public funds *are* expended, courts have still rejected *nullum tempus*. *See, e.g.*, *Champaign Cnty.*, 683 N.E.2d at 984 (showing of "a loss of public tax revenue" not enough to avoid statute of limitations); *see also A, C & S*, 546 N.E.2d at 602 (agreeing that "there will be some fiscal impact" nearly any time the government is involved). Accordingly, in a case where the government has not even *tried* to establish expenditures of public funds, *nullum tempus* is all the more inappropriate.

The City's sole authority for the proposition that it can abnegate its burden on the third factor is the federal district court's decision in *Equte*, 2022 WL 2132630, at *5. Dkt. 160, at 5. But *Equte* itself did not analyze the expenditure of public funds, and it relied on a state circuit court order that applied *nullum tempus*, although "the City [was] not obligated under law to bring th[e]

suit," because "the other factors weigh[ed] strongly in the City's favor," including the public-funds factor. Order at 4, *City of Chicago v. Mason*, No. 17 L 5477, at 4 (Cir. Ct. Cook Cnty. Feb. 16, 2018). Again, the City identifies no case in which an Illinois court applied *nullum tempus* despite the government making *no showing at all* on the public-funds factor. *See A, C & S*, 546 N.E.2d at 602 (applying *nullum tempus* after emphasizing that "[w]e are not dealing here with small sums of money; rather, the cost of these abatement projects will run into the millions"). Public expense is not sufficient to invoke *nullum tempus*, but it is indisputably relevant and cannot be ignored.

### 4. The City Further Errs By Ignoring Illinois Law Regarding The Contingency-Fee Agreement With Cohen Milstein.

In response to DoorDash's exposure of the contingency-fee agreement between the City and Cohen Milstein, Dkt. 117, at 17–18 & n.4; Dkt. 118, the City argues that a private entity's prosecution of an action in exchange for a potential multi-million dollar bounty is "irrelevant" to whether this Court should apply a doctrine meant to protect *government* actions to enforce public rights—*nullum tempus*—from an otherwise-applicable limitations period, Dkt. 160, at 11–12. That the City is "a partner with individuals" in this case is indisputably relevant under Illinois law to whether its claims are immune under a doctrine derived from sovereign-immunity principles.

The City begins its argument by attributing to DoorDash a case that it did not cite—*Governor ex rel. Thomas v. Woodworth*, 63 Ill. 254 (1872)—to argue that DoorDash relies on "150-year-old" and "inapposite" authority. Dkt. 116, at 11. It then dismisses the cases that DoorDash actually cited—*People ex rel. Town of New Trier v. Hale*, 52 N.E.2d 308 (Ill App. Ct. 1943), and *Brown v. Trustees of Schools*, 79 N.E. 579 (Ill. 1906)—as "dicta" to be ignored. Dkt. 160, at 11. But each of the City's tactics ultimately undermines its own argument.

In *Woodworth*, the Illinois Supreme Court held that when "the Government becomes a partner with individuals," "it does not impart to its associates its privileges and prerogatives"—

like *nullum tempus*—but instead "descends to a level with those with whom it associates itself" (*i.e.*, contingency-fee plaintiffs' attorneys). 63 Ill. at 257. That holding was not cabined by *Woodworth* itself or by any intervening authority to "partial ownership of a business," as the City claims. Dkt. 160, at 11. And the City is wrong to argue that a controlling decision of the Illinois Supreme Court that has never been overruled—and in fact has been repeatedly invoked—should be ignored. The *Erie* doctrine requires federal courts to apply state law as "determined by the highest court of the state." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002).

*Hale* and *Brown* further disprove the City's claim that the "partners with individuals" concept applies only when the State partially owns a business. Both decisions phrase the "partners with individuals" test in the disjunctive, so that the government loses out on *nullum tempus* privileges whenever it "becomes a partner with individuals, *or* engages in business." *Hale*, 52 N.E.2d at 310–11 (emphasis added); *Brown*, 79 N.E. at 580 (same). The City elides this distinction because the Illinois "partners with individuals" test on its face applies more broadly than to mere "partial ownership of a business." Dkt. 160 at 11. That is also why the City seeks to dismiss *Hale* and *Brown* as "dicta." *Id.* Yet even if the relevant discussions in those cases were not necessary to their holdings rejecting *nullum tempus*, they are reasoned explanations of Illinois law and must be considered by federal courts sitting in diversity. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (district court "shall consult . . . considered dicta" to determine state law).[6]

---

[6] The City suggests that DoorDash's characterization of the agreement is not judicially noticeable and is contradicted by the agreement. Dkt. 160, at 11–12. Yet DoorDash seeks judicial notice of the agreement *itself* as a "public record"—not of its characterizations of the agreement in a brief. In any event, the agreement speaks for itself. Dkt. 117, at 17 n.4. It gives Cohen Milstein broad authority to "provid[e] the legal services required" to "prosecute" this case, and simply charges the City with "providing" to Cohen Milstein "information," "documents," and City "personnel" needed for that prosecution. Dkt. 118, Ex. A ¶¶ 13, 15.

Tellingly, the City concludes its argument by conceding that it hopes to use such contingency-fee arrangements to go after "big businesses." Dkt. 160, at 12. This candid admission about how the nature of the defendant ("big businesses") drives the manner in which the City prosecutes it (by enlisting private, contingency-fee counsel) disproves the City's claim that its "retention of outside counsel" does not "alter" "the remedies that it seeks." *Id.*, at 11. Seeking massive penalties that promise private profits is obviously a central reason for Cohen Milstein's involvement, as the contingency-fee agreement makes clear. Yet Illinois law forbids asserting *nullum tempus* to secure private profits through supposedly "public" claims.

### 5. The City Forfeited A Response To DoorDash's First Due-Process Argument And Misunderstands Its Second Due-Process Argument.

In its opening brief, DoorDash argued that Section 5/13-202 should apply here on due-process grounds, given courts' two-hundred-year recognition that it "would be utterly repugnant to the genius of our laws" to permit a penalties action to "be brought at any distance of time." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1804) (Marshall, C.J.); Dkt. 117, at 19. The Supreme Court has reaffirmed Chief Justice Marshall's "forceful language in emphasizing the importance of time limits on penalt[ies] actions." *Gabelli v. SEC*, 568 U.S. 442, 452 (2013). Penalties actions present outsized due-process concerns because "the Government is not only a different kind of plaintiff, it seeks a different kind of relief"—not compensation of injuries, but penalties "which go beyond compensation, are intended to punish, and label defendants wrongdoers." *Id.* at 451–52. Particularly in the penalties context—where the government can prosecute *malum prohibitum* conduct for awards massively disproportionate to any injury actually inflicted—the potential for unfair surprise from "stale claims" is great. *Id.* at 448, 451–52. That is why limitations periods must be construed *against* the government in penalties actions—as has been established from 1805 onwards. *See Adams*, 6 U.S. (2 Cranch) at 342. Such a deeply rooted, longstanding facet of the

21

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

American legal tradition cannot be violated without infringing due process. DoorDash thus argued that the Court should avoid this due-process violation by construing the limitations period to apply, rather than permitting the City to pursue "penal liability of infinite duration." Dkt. 117, at 20.

The City's brief ignores this entire argument. It never cites *Adams* or *Gabelli*, never engages with Chief Justice Marshall's "forceful" holding, and otherwise makes no effort to respond. The City thus forfeited any counterargument on this point. *See Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997). The City cannot prejudice DoorDash by failing to respond to an argument and then belatedly attempting to do so in a procedurally improper sur-reply. Due process represents an independent bar to applying *nullum tempus* in this case.

To the extent the City engages with DoorDash's due-process arguments at all, it responds solely to DoorDash's "independent," "addition[al]" point that imposing liability here would violate DoorDash's vested right of repose created by Section 5/13-202. Dkt. 117, at 20. The City never disputes that in *Clay v. Kuhl*, 727 N.E.2d 217, 220–21 (Ill. 2000), the Illinois Supreme Court read Section 5/13-202 not merely to bar *remedies*, but to extinguish *claims* altogether. *See* Dkt. 160, at 13. It merely asserts that repose can be disturbed only "by retroactive legislation," apparently reasoning that because the Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), considered legislation, the holding in that case applies only to legislation. But that is incorrect; the Supreme Court has recognized that "Government enforcement" actions likewise can invade "repose." *Gabelli*, 568 U.S. at 448. Indeed, an enforcement action reviving "stale claims" imposes precisely the same harm as does a legislative revival, *id.*, and the City never argues to the contrary. Its enforcement action thus presents this distinct due-process threat as well.[7]

---

[7] The City's attempts to cabin and distinguish *United States v. Rezzonico* and *Shasta View Irrigation District v. Amoco Chemicals Corp.* likewise fail. Though ultimately decided on different grounds, *Rezzonico* states that "statutes of repose"—defined as statutes that

## II.     Laches Independently Bars The City's Untimely Claims.

The City's untimely claims are independently barred as a matter of equity under the doctrine of laches.  *See* Dkt. 117, at 22–24.  The City's own complaint establishes that the City unreasonably delayed in bringing this action—a conclusion buttressed by its insistence that the alleged violations were so widespread that government action was required.  *See* Dkt. 160, at 7–8.  DoorDash was prejudiced because it detrimentally relied on the City's no-action position, which allowed the alleged penalty claims to accumulate for years.  *See* Dkt. 117, at 24.  That is enough to defeat the City's untimely claims in light of the Illinois Supreme Court's holding in *Noland v. Mendoza*, 2022 WL 4372449 (Ill. Sept. 22, 2022), that litigants do not need to prove an affirmative act to show detrimental reliance under the circumstances present here.

The City raises two objections to DoorDash's laches defense: that DoorDash must show an "affirmative act" (and "abandoned" DoorDash's prior position to that effect), and that in any event, DoorDash cannot show unreasonable delay and prejudice as a matter of law.  Dkt. 160, at 17–19.  Because neither view is correct, the Court should grant DoorDash's motion for judgment on the pleadings as to laches and deny the City's cross-motion for partial summary judgment.

As an initial matter, DoorDash did not "abandon" its previous position from the motion-to-strike briefing that the existence of an "affirmative act" is a question of fact.  Dkt. 64, at 6.  *After* that briefing concluded, the Illinois Supreme Court held in *Noland* that when plaintiffs nominally asserting "public rights" are actually asserting just "a private right," the ordinary, two-element laches test applies and no affirmative act is required.  2022 WL 4372449, at *1, *5–6.  DoorDash

---

"extinguish the right to proceed with an accrued cause of action"—"are ordinarily binding on the federal government."  32 F. Supp. 2d 1112, 1113 (D. Ariz. 1998).  *Shasta View* similarly acknowledges that once a repose period has run, "all claims" are extinguished, even if asserted by public officials.  986 P.2d 536, 542 (Or. 1999).  The City does not dispute that the court in *Clay* interpreted Section 5/13-202 to extinguish claims, rather than merely bar remedies.

cannot have "abandoned" an argument based on a newly issued authority that now applies in this case. *See, e.g.*, *Zichy v. City of Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979) (explaining that "in diversity case[s], federal district court[s] may veer from" their "prior decisions" "when the applicable state law has changed in the interim"). And that decision forecloses the City's argument that DoorDash must prove an affirmative act, Dkt. 160, at 17, since this action does not assert public rights. *See supra*, at 12–21.

The City next asserts that DoorDash cannot establish unreasonable delay and prejudice as a matter of law. *See* Dkt. 160, at 18–19. As to unreasonable delay, the City contends that whether delay was unreasonable is a "question of fact," and that DoorDash cites "no case law" saying otherwise. *Id.* at 18. To the contrary, DoorDash cited *United States v. City of Loveland*, 621 F.3d 465, 474–75 (6th Cir. 2010), which rejected the argument that the supposedly "fact intensive" nature of laches precludes judgment on the pleadings. *See* Dkt. 117, at 6. Illinois cases confirm this point. In *Lee v. City of Decatur*, 627 N.E.2d 1256, 1258 (Ill. App. Ct. 1994), for example, the court affirmed dismissal of a complaint for backpay on laches grounds because a three-year delay was unreasonable "on the face of the complaint." Similarly, the court in *Beckham v. Tate*, 378 N.E.2d 588, 590–91 (Ill. App. Ct. 1978), affirmed dismissal of a counterclaim because "the issue of laches may properly be determined on a motion to dismiss if its applicability appears from the face of the complaint" and further noted that plaintiffs who delay in asserting their claims "must plead circumstances in justification of such failure or suffer the consequences of not so pleading."

The City attempts to justify its significant delay by claiming that DoorDash's conduct only acquired "visibility" during the COVID-19 pandemic. Dkt. 160, at 18. But that assertion is undercut by the City's own complaint. According to the City, DoorDash was facilitating *hundreds of millions* of orders *before* the pandemic. *See* Compl. ¶ 9. The City further alleged that

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.

CASE NO. 1:21-CV-05162

DoorDash's supposedly "deceptive" practices received "extensive press coverage" *years* before this suit was filed, that those practices were "pervasive," that DoorDash "prominently display[ed]" fees on its public-facing website, and that DoorDash was the subject of "consumer outrage." *Id.* ¶¶ 3, 33, 165. And the City alleged that this supposed conduct was "unlawful under *any* circumstances," belying the notion that DoorDash's conduct became actionable only after the pandemic. *Id.* ¶ 2 (emphasis added). The City's theory contradicts itself: it claims DoorDash was inflicting "pervasive," grievous harm on thousands of restaurants and consumers, *id.* ¶ 3, yet contends it was reasonable to do nothing for seven years. That contradiction reveals that the City has *not* "plead[ed] circumstances in justification" of its delay. *Beckham*, 378 N.E.2d at 591.

As for prejudice, DoorDash cited Illinois courts' recognition that prejudice is established when a plaintiff sits back and permits damages "to accumulate for all those years to the [defendant's] detriment." Dkt. 117, at 24; *see, e.g.*, *Keystone Montessori Sch. v. Vill. of River Forest*, 187 N.E.3d 1167, 1195 (Ill. App. Ct. 2021). The City attempts to distinguish *Keystone* by claiming that it involved "a specific type of prejudice" inapplicable here, *i.e.*, prejudice "to a government where a litigant seeks to recoup funds long-since appropriated and spent." Dkt. 160, at 19. But *Keystone* did not so limit its holding, and the City's attempt to cabin that decision to "long-since appropriated and spent" tax revenues, *id.*, is baseless. Courts have recognized in many contexts that permitting "damages to pile up" by delay triggers laches. *See, e.g.*, *Ill. Tamale Co. v. El-Greg, Inc.*, 2018 WL 6590558, at *2 (N.D. Ill. Dec. 14, 2018) (trademark infringement); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) (false advertising).

As a fallback position, the City asserts that DoorDash cannot establish prejudice because it would not "have come into compliance earlier" had the City alerted DoorDash of alleged violations. Dkt. 160, at 19. That assertion is frivolous. The City's own complaint alleges that

DoorDash changed its policies in response to supposed "criticism" and "outcry."  Compl. ¶¶ 127, 165, 186.  The City cannot rely on these supposed policy changes to plead causes of action about long-defunct conduct yet then contend that DoorDash would *not* have taken similar measures had the City warned it of other purported violations.  The City's delay also undeniably deprived DoorDash of the *opportunity* to take remedial measures before massive penalties accumulated.  Had the City disclosed its current view, DoorDash could have modified those practices or sought a declaratory judgment that its practices were lawful.  Those missed opportunities themselves establish prejudice.  As the Seventh Circuit has explained, prejudice is established for laches purposes when a plaintiff's inaction denies a defendant the opportunity to take simple remedial measures before a lawsuit—for instance, by "invest[ing] its time and money in other areas or simply renam[ing] its products."  *Hot Wax, Inc.*, 191 F.3d at 824.  That is what happened here.

## III.    The City's Cross-Motion For Partial Summary Judgment On Laches Fails.

The City's cross-motion for partial summary judgment on laches argues that DoorDash has proven no affirmative act by the City on which DoorDash relied.  As set forth above, *Noland* makes clear that an affirmative act is not required here. 2022 WL 4372449, at *1, *5.  But even assuming an affirmative act is necessary for laches, DoorDash *did* rely on the City's affirmative acts.

In June 2020, DoorDash received outreach from the City's Department of Business Affairs and Consumer Protection ("BACP"), which exists to assess whether "businesses comply with Chicago's Municipal Code," *see Business Affairs and Consumer Protection*, City of Chicago, bit.ly/3IXBRpZ (last accessed June 7, 2023), and enforces the City's disclosure rules regarding food delivery, *see City of Chicago Rules: Third-Party Food Delivery Services*, City of Chicago (May 11, 2020), bit.ly/3p9GF56.  After BACP "surveyed" DoorDash's practices, it told *Consumer Reports* in September 2020, for purposes of a public article, that DoorDash had "proven to BACP that [it is] substantially compliant" with BACP's disclosure rules.  Holecek Decl., Exs. A, B.

Those disclosure rules cover much of the same conduct now alleged to be actionable in this case—including disclosures about "menu price[s]," "any delivery charge[s] or service fee[s], imposed on or collected from the customer by the third-party food delivery service or by the covered establishment," and "any tip that will be paid to the person delivering the food."  City of Chicago Rules, *supra*. The only issue BACP ever raised to DoorDash before deeming it "substantially compliant" with these rules concerned how DoorDash calculates the commission it earns per order. *Id.*, Exs. A, D.  DoorDash provided the requested explanation, *id.*, Exs. C, E, and BACP then issued its public statement affirming DoorDash's compliance.  *Id.*, Ex. A.

The City has since tried to walk back its public statement, claiming BACP evaluated *only* DoorDash's commission disclosures.  But that is *not* what BACP told *Consumer Reports*, nor is it true.  ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████  The City's private admission confirms that DoorDash reasonably construed BACP's "substantial compliance" comments to apply to *all* DoorDash's Chicago fee practices.  Thus, even if the Court denies DoorDash's motion for judgment on the pleadings, the City's cross-motion for summary judgment should be denied.

## CONCLUSION

The Court should grant judgment on the pleadings in favor of DoorDash with respect to claims for any alleged violations that occurred before August 27, 2019.

DATED:  June 20, 2023

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

By:   _/s/  Joshua S. Lipshutz_
Joshua S. Lipshutz (*pro hac vice*)
1050 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (*pro hac vice*)
Cynthia Chen McTernan (*pro hac vice*)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
cmcternan@gibsondunn.com

**RILEY SAFER HOLMES
& CANCILA LLP**

By:   _/s/  Patricia Brown Holmes_
Patricia Brown Holmes
Sarah E. Finch
70 W. Madison Street
Suite 2900
Chicago, IL 60602
Phone: (312) 471-8700
pholmes@rshc-law.com
sfinch@rshc law.com

**FORDE & O'MEARA LLP**

By:   _/s/  Michael K. Forde_
Michael K. Forde
Brian P. O'Meara
111 W. Washington Street
Suite 1100
Chicago, IL 60602
Phone: (312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com

*Attorneys for DoorDash, Inc. and Caviar, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I caused the foregoing document to be electronically

filed using the CM/ECF system, which will send notice of this filing to all counsel of record.


*/s/ Joshua S. Lipshutz*

REPLY IN SUPPORT OF                                                          CASE NO. 1:21-CV-05162
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, ETC.