**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| City of Chicago, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:21-cv-05162 |
| DoorDash, Inc. and Caviar, LLC, | Honorable Jeremy C. Daniel |
| *Defendants.* | **Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' FED. R. CIV. P. 56(d)
MOTION TO DENY OR DEFER RULING ON PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND .................................................................................................. 2

    A. Cohen Milstein uses its contingency-fee contract with the City to investigate and sue DoorDash. .................................................................................................................... 2

    B. The City resists DoorDash's discovery, despite multiple court orders confirming that DoorDash can develop its due process defense with evidence. ................................................. 3

        1. Judge Gettleman denies the City's motion to strike, finding that "factual development" is necessary. ................................................................................................... 3

        2. DoorDash is forced to file a motion to compel to obtain documents relevant to its due process defense. ............................................................................................................... 4

        3. Judge Gilbert encourages further negotiations and potentially a deposition regarding DoorDash's due process defense. ............................................................................................ 5

        4. Dissatisfied with Judge Gilbert's order, the City files its MSJ to cut short discovery negotiations. ............................................................................................................................. 6

        5. DoorDash has not yet received discovery essential to oppose the City's MSJ. ........... 6

III. LEGAL STANDARD ......................................................................................... 7

IV. ARGUMENT ..................................................................................................... 8

    A. DoorDash is entitled to discovery essential to its opposition to the City's MSJ. ........... 9

        1. DoorDash is entitled to objective verification of the retention agreement. ................... 9

        2. DoorDash is entitled to information about Cohen Milstein's political contributions in Chicago and personal relationships with City officials. ...................................................... 10

        3. DoorDash is entitled to information regarding the relative involvement of City attorneys and Cohen Milstein attorneys in this case. ........................................................... 12

        4. DoorDash is entitled to information regarding whether Cohen Milstein has used information obtained in this case for private purposes. ...................................................... 12

    B. Despite the City's resistance, DoorDash has diligently pursued discovery. .................. 13

    C. The City's arguments against further discovery are meritless. ..................................... 13

        1. DoorDash has properly alleged a due process defense. ............................................... 13

        2. The retainer agreement does not end discovery. .......................................................... 17

        3. The City does not get to pick and choose how it responds in discovery. .................... 19

V. CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alexander v. F.B.I.*,
186 F.R.D. 113 (D.D.C. 1998)............................................................20

*American Bankers Mgmt. Co., Inc. v. Heryford*,
885 F.3d 629 (9th Cir. 2018) ........................................................16, 17

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978).................................................................14, 17

*Cavanaugh v. Wainstein*,
2007 WL 1601723 (D.D.C. June 4, 2007) ................................................20

*City of Chicago v. Purdue Pharma L.P.*,
2015 WL 920719 (N.D. Ill. Mar. 2, 2015)..................................15, 16, 18

*Cnty. of Santa Clara v. Superior Ct.*,
235 P.3d 21 (Cal. 2010) ...................................9, 10, 12, 14, 15, 18, 20

*Convertino v. United States Dep't of Justice*,
684 F.3d 93 (D.C. Cir. 2012)...........................................................13

*In re Evanston NorthWestern Corp. Antitrust Litig.*,
2015 WL 13735389 (N.D. Ill. May 28, 2015)..............................................8

*Farmer v. Brennan*,
81 F.3d 1444 (7th Cir. 1996) ...........................................................7

*Hillshire Brands Co. v. Travelers Cas. & Sur. Co.*,
2016 WL 6892885 (N.D. Ill. Nov. 23, 2016) .......................................7, 13

*King v. Cooke*,
26 F.3d 720 (7th Cir. 1994) ............................................................8

*Marshall v. Jerrico, Inc.*,
446 U.S. 238 (1980)..................................................................14, 17

*Merck Sharp & Dohme Corp. v. Conway*,
947 F. Supp. 2d 733 (E.D. Ky. 2013) .............................................9, 15, 20

*OneBeacon Ins. Co. v. U.S. Foods, Inc.*,
304 F.R.D. 536 (N.D. Ill. 2014)........................................................8

*People v. Pac. Land Research Co.*,
  20 Cal. 3d 10 (1977) .............................................................................16

*Pickenpack v. Third Act Pictures, Inc.*,
  2014 WL 287515 (N.D. Ill. Jan. 27, 2014)..........................................................8

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*,
  599 U.S. 419 (2023)..........................................................................17

*Reed v. Lawrence Chevrolet, Inc.*,
  14 F. App'x 679 (7th Cir. 2001) ......................................................................8, 19

*Resol. Tr. Corp. v. N. Bridge Assocs., Inc.*,
  22 F.3d 1198 (1st Cir. 1994)..........................................................................9

*Signature Transp. Grp., LLC v. Jacobs*,
  2020 WL 1663124 (N.D. Ill. Apr. 3, 2020) ........................................................15, 19

*Smith v. OSF HealthCare Sys.*,
  933 F.3d 859 (7th Cir. 2019) ..........................................1, 7, 8, 13, 15, 17

*State v. Lead Indus., Ass'n, Inc.*,
  951 A.2d 428 (R.I. 2008)..........................................................................17

*Williams v. Bratlien*,
  2015 WL 1043274 (N.D. Ill. Mar. 6, 2015)..........................................................8

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987)..........................................................14, 17, 18, 20

**OTHER AUTHORITIES**

Andrew Oxford, *Firms with state business among AG's key donors*, Santa Fe New Mexican
  (Apr. 15, 2017) ..........................................................................11, 12

Dirk VanderHart, *Pay to Play? Out-of-State Law Firms Reap Rewards of Oregon Campaign
  Contributions*, Oregon Public Broadcasting (Jan. 15, 2020) ..................................11

Eric Lipton, *Lawyers Create Big Paydays by Coaxing Attorney Generals to Sue*, NY TIMES (Dec.
  18, 2014) ..........................................................................10, 11

**RULES**

Fed. R. Civ. P. 26(e) ..........................................................................12

Fed. R. Civ. P. 56(d) ..........................................................1, 3, 7, 8, 13, 15, 17, 19

## I.    INTRODUCTION

The essence of DoorDash's Fifteenth Affirmative Defense is that DoorDash has a due process right not to be prosecuted by a financially motivated and biased prosecutor. The contingency-fee relationship between the City and its private counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), threatens to place private profit motive over public interest. Yet, to date, the City has refused to produce discovery relating to this defense, in spite of multiple court orders that permit this discovery. First, in June 2022, the City moved to strike DoorDash's due process defense. Dkt. 62 at 9-11. Judge Gettleman denied that request, noting that the merits "are better decided after factual development." Dkt. 76 at 7. Despite Judge Gettleman's order, the City then asked Judge Gilbert, in January 2023, to preclude DoorDash from taking further discovery regarding the City's relationship with Cohen Milstein. Dkt. 98. Judge Gilbert, too, declined to do so. Dkt. 163 at 3, 11, 12. Now, through its summary judgment motion ("MSJ"), the City takes another run at cutting off discovery into whether it has exercised sufficient supervision and control over its private counsel. But because the City has stymied DoorDash's efforts to obtain this discovery, the MSJ is premature and on that basis alone, must be denied.

Under Federal Rule of Civil Procedure 56(d), a district court should defer or deny a motion for summary judgment when the opposing party has acted diligently and is still taking discovery relevant to its opposition. *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019) (reversing district court for prematurely granting summary judgment). Here, DoorDash has diligently pursued discovery related to the City's outsourcing of this case to private contingency-fee counsel. But DoorDash's work continues. In fact, despite significant efforts to obtain basic discovery from the City on this issue, the City has provided only *two* responsive documents and barebones interrogatory responses.

1

DoorDash requests a fair chance to conduct discovery that is necessary to oppose the City's MSJ. This includes receiving answers to pending discovery requests and likely taking the deposition suggested by Judge Gilbert. Dkt. 163 at 6, 14. DoorDash thus respectfully asks this Court to deny the City's MSJ, or in the alternative, defer ruling on the MSJ until after the scheduled close of fact discovery on April 1, 2024, at which time DoorDash will have had the opportunity to obtain evidence to support its due process defense.

## II.     BACKGROUND

### A.     Cohen Milstein uses its contingency-fee contract with the City to investigate and sue DoorDash.

DoorDash is a technology company that facilitates food ordering and food delivery through its online platform. In August 2021, the City filed the above-captioned lawsuit alleging that DoorDash violated Chicago's Municipal Code by, among other things, failing to adequately disclose aspects of its business to consumers on its platform, including its fees, promotional discounts, and long-defunct delivery provider pay model. *See* Dkt. 1-1 ¶¶ 188-210. DoorDash denies the allegations; in fact, the complaint itself confirms that DoorDash disclosed material terms to consumers. *See, e.g.*, *id.* ¶¶ 48, 52, 55-57, 60, 63 (screenshots showing DoorDash's disclosures).

The City contracted with Cohen Milstein to investigate DoorDash and prosecute this action. According to the City's engagement agreement, Cohen Milstein will receive between 15-28% of the net recovery, and when attorneys' fees are added, may receive up to "50% of any total net recovery by the City." Dkt. 207-7 at 1-3.

This type of outsourcing of the public's enforcement powers has come under scrutiny, including in a Pulitzer Prize-winning *New York Times* exposé that detailed how plaintiff's firms, and Cohen Milstein specifically, have used political connections and contributions to obtain these contracts. *See* McCloskey Decl. ISO Defs.' 9/28/23 Opp. to MSJ ("McCloskey Decl."), Ex. 3.

Other investigations have revealed how private law firms have abused these contracts, violated defendants' rights, and extracted settlements that do not serve the public interest. DoorDash details this history in its opposition to the City's MSJ. *See* Defs.' 9/28/23 MSJ Opp. at 2-3.

From the start of this case, DoorDash has asserted its right not to be prosecuted by a financially motivated and biased prosecutor. DoorDash pleaded this "due process defense" in its answer, based on both the Due Process Clause and the City's ethical rules. Dkt. 61 at 142-43 (Fifteenth Affirmative Defense). As DoorDash explained, Cohen Milstein's contingency-fee contract creates a biasing influence that, at a minimum, must be checked by the City's supervision and control. *Id*. DoorDash's defense depends in part on its ability to marshal evidence showing that the City had *not* exercised sufficient supervision and control over this prosecution.

**B.    The City resists DoorDash's discovery, despite multiple court orders confirming that DoorDash can develop its due process defense with evidence.**

DoorDash has sought discovery on its due process defense since June 2022, but the City has fought that discovery at every turn, even after Judge Gettleman ordered "factual development" of DoorDash's due process defense (Dkt. 76 at 7), and after Judge Gilbert encouraged targeted discovery on that defense (Dkt. 163). In all, the City has provided brief interrogatory responses to Interrogatory Nos. 8 and 21 and produced just *two* documents relevant to DoorDash's Fifteenth Affirmative Defense: (1) Cohen Milstein's retainer agreement related to this action, and (2) the City's Outside Counsel Guidelines, last revised August 17, 2018. Holecek Rule 56(d) Aff. ("Aff.") ¶ 39.

**1.    Judge Gettleman denies the City's motion to strike, finding that "factual development" is necessary.**

On June 15, 2022, DoorDash first requested documents concerning the City's retention of Cohen Milstein and asked the City to describe its relationship with Cohen Milstein. *Id.* ¶ 6; Exs.

A, B. Nine days later, the City moved to strike several of DoorDash's affirmative defenses, including its due process defense. Dkt. 62 at 9-11. The City asked Judge Gettleman to strike the due process defense in part because DoorDash had served "invasive and burdensome discovery" into the City's Cohen Milstein relationship. *Id.* at 11. Judge Gettleman declined. On October 21, 2022, the Court denied the City's motion to strike, finding that "Plaintiff raises substantial questions of law [about the due process defense] that are better decided ***after factual development***." Dkt. 76 at 7 (emphasis added).

### 2. DoorDash is forced to file a motion to compel to obtain documents relevant to its due process defense.

For months, DoorDash tried to develop those facts. The City continued to resist all discovery on the due process defense, save for a one-sentence interrogatory response that unhelpfully confirmed that "Cohen Milstein has been retained by the City and is counsel of record in this matter." Ex. D at 11; *see also* Aff. ¶¶ 8-14. It was not until December 5, 2022—approximately six months after DoorDash served its initial discovery into the due process defense—that the City finally produced one document responsive to the due process defense: its retainer agreement with Cohen Milstein. Aff. ¶ 15; Ex. J; Dkt. 207-7.

DoorDash explained that the contract was insufficient to resolve its due process concerns and continued to seek relevant discovery. Aff. ¶¶ 13, 16-23; Ex. G. By January 2023, DoorDash had sent five letters to the City and participated in multiple meet and confers. *See* Aff. ¶¶ 9, 13, 17, 18, 20-22. In the process, DoorDash proposed narrowing its requests to persuade the City to provide basic discovery. *Id.* ¶ 20; Ex. O. The City rejected these proposals, agreeing only to produce in discovery its "Outside Counsel Guidelines" (which it did) and prior agreements with Cohen Milstein (which it did not). Aff. ¶ 23; Ex. Q at 2.

By mid-January 2023, the City had not provided any detail about its relationship with

Cohen Milstein, Cohen Milstein's role in this litigation, or the nature of the City's contract with Cohen Milstein beyond stating the obvious: that Cohen Milstein represents the City in this matter. Ex. D at 11; Aff. ¶ 8, 15, 22-23. On January 16, DoorDash was forced to file a motion to compel discovery. *Id.* ¶¶ 22-24; Dkt. 94. The City tried to moot DoorDash's motion by serving an 11-sentence description of the Cohen Milstein retention just hours before filing its opposition brief. *See* Aff. ¶ 26; Dkt. 98-1, Ex. 1. The City argued that its retention agreement and 11-sentence description was sufficient, and the Court should foreclose additional discovery because DoorDash's defense purportedly failed as a matter of law. Dkt. 98.

### 3. Judge Gilbert encourages further negotiations and potentially a deposition regarding DoorDash's due process defense.

On May 25, 2023, Judge Gilbert declined to compel responses to three due process-related discovery requests, but also did not prohibit any specific line of discovery or subject matter inquiry regarding DoorDash's Fifteenth Affirmative Defense. Dkt. 163. Instead, Judge Gilbert found that the motion was premature and encouraged the parties to further negotiate as to these requests. *Id.* Specifically, with respect to RFP No. 51 (communications between the City and Cohen Milstein), Judge Gilbert denied the motion to compel as to the request as drafted, but contemplated the parties "modify[ing] it" (*id.* at 7) and suggested that "[a] deposition may be a more appropriate vehicle to obtain the information." *Id.* at 6. With respect to RFP No. 33 (documents related to Cohen Milstein's retention), the Court denied the motion to compel as to the request as written, but clarified that the order was "not intended to foreclose the parties' current or future discussions, or future agreement, about an appropriate scope of DoorDash's requests for production of documents relating to Cohen Milstein's retention" (*id.* at 12) and noted that "the parties still may be able to work out an agreeable limitation[.]" *Id.* at 11. And whereas Judge Gilbert did not compel further a further response to Interrogatory No. 8 (which asks for a description of the City's relationship with

Cohen Milstein) after the City supplemented its original response, he indicated that this "information probably is more efficiently obtained in a deposition[.]" *Id.* at 14.

**4.    Dissatisfied with Judge Gilbert's order, the City files its MSJ to cut short discovery negotiations.**

In light of Judge Gilbert's guidance, DoorDash served narrower discovery requests on June 7, 2023. These requests sought targeted discovery, including "documents sufficient to identify . . . meetings" between the City and Cohen Milstein regarding this case; documents sufficient to identify *only* the "date, time, form, and recipients" of specific "reports" referenced in the retention agreement; and "documents sufficient to identify the *aggregate time*" spent by Cohen Milstein attorneys and City attorneys on this case. Aff. ¶ 31; Dkt. 207-11; Dkt. 207-13 (emphasis added). The City objected to those document requests and refused to answer any of them, even in part. Aff. ¶ 37; Ex. Y at 1-8; *see also* Dkt. 207-2 at ¶ 28.

DoorDash also served requests for admission, seeking sworn statements from the City regarding any relevant political contributions by Cohen Milstein or its attorneys. Aff. ¶ 28; Dkt. 207-17. The City refused to respond to even narrowed forms of these requests for months. Aff. ¶¶ 29, 33, 36. On September 15, 2023, after the parties had exchanged five letters regarding these requests (*id.* ¶¶ 29, 32, 33, 35, 36), the City finally agreed to respond to a version of the requests *as revised by the City*. *Id.* ¶ 38; Ex. Z.

On August 24, 2023, almost *eight months* before the April 1, 2024 scheduled close of discovery (Dkt. 146), the City filed its summary judgment motion, claiming that no further discovery into DoorDash's due process defense was warranted. Dkt. 207-1.

**5.    DoorDash has not yet received discovery essential to oppose the City's MSJ.**

At present, DoorDash has not yet received responses to discovery requests crucial to its Fifteenth Affirmative Defense. These include, but are not limited to, requests for:

- Documents related to the City's oversight and control of Cohen Milstein as described in the retainer agreement;
- Documents sufficient to show compliance with the City's Outside Counsel Guidelines;
- Documents sufficient to show any modification of the City's Outside Counsel Guidelines related to this case;
- Documents showing the factual basis for claims the City makes in its MSJ; and
- Admissions regarding Cohen Milstein's political contributions to Chicago campaigns and candidates.

*See* Aff. ¶¶ 40-41.

After obtaining responses to its discovery requests regarding its due process defense, DoorDash anticipates taking a deposition (or depositions) to test the City's interrogatory responses, explore relevant documents, and determine whether the City has in fact exercised sufficient supervision and control over Cohen Milstein. *Id*. ¶ 42.

### III.   LEGAL STANDARD

Rule 56(d) authorizes a court to deny or defer ruling on a motion for summary judgment to allow time to take additional discovery if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). The nonmovant must point to specific evidence it will pursue if given the additional time, and where the nonmovant establishes a "strong record of diligence," the court should allow for additional discovery if "at least some of the additional discovery sought" would not be futile. *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019); *Hillshire Brands Co. v. Travelers Cas. & Sur. Co.*, 2016 WL 6892885, at *1 (N.D. Ill. Nov. 23, 2016). The Seventh Circuit has held that discovery is not futile where, for instance, a genuine factual dispute remains or where relevant discovery rests in the possession of the party resisting discovery. *Farmer v. Brennan*, 81 F.3d 1444, 1450 (7th Cir. 1996) (reversing summary judgment where district court did not give party seeking discovery enough time to draft a Rule 56(f) [prior version of Rule 56(d)] motion and ignored evidence that there were disputed issues of fact); *Reed v. Lawrence Chevrolet, Inc.*, 14 F.

App'x 679, 686-87 (7th Cir. 2001) (reversing district court's denial of appellant's Rule 56(f) motion, because appellant could not be expected to prove, *inter alia*, that defendants' reasons for not hiring him were pretextual without the benefit of discovery that "[d]efendants alone possess").

The Seventh Circuit has instructed courts to construe Rule 56(d) liberally to prevent a premature grant of summary judgment. *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994); *Pickenpack v. Third Act Pictures, Inc.*, 2014 WL 287515, at *2 (N.D. Ill. Jan. 27, 2014); *Williams v. Bratlien*, 2015 WL 1043274, at *2-3 (N.D. Ill. Mar. 6, 2015). Moreover, courts in this district routinely allow for additional discovery under Rule 56(d) when, as here, fact discovery has not closed and the party seeking discovery has pursued it diligently. *See, e.g.*, *In re Evanston NorthWestern Corp. Antitrust Litig.*, 2015 WL 13735389, at *2, 4-5 (N.D. Ill. May 28, 2015) (granting plaintiff's Rule 56(d) motion and denying the defendant's early summary judgment motion where two months remained in fact discovery); *OneBeacon Ins. Co. v. U.S. Foods, Inc.*, 304 F.R.D. 536, 542-43 (N.D. Ill. 2014) (granting Rule 56(d) motion filed three months before the close of discovery). And courts also allow for such discovery where the law challenging the relevance of the discovery at issue is at all in question. *Smith*, 933 F.3d at 868 ("If a district court denies a Rule 56(d) motion based on an erroneous view of the applicable substantive law, and thus of the relevance of the additional discovery sought, an abuse of discretion is likely.").

## IV.    ARGUMENT

Here, DoorDash has sought, and can identify, the specific evidence it needs, but has not yet obtained, relevant to its due process defense. *See* Aff. ¶¶ 40-42. And DoorDash has been diligent seeking that discovery. The City can raise no legitimate reason to cut off DoorDash's ability to pursue discovery relating to its due process defense, when over six months remain in the fact discovery period.

**A.      DoorDash is entitled to discovery essential to its opposition to the City's MSJ.**

The City has not yet responded to outstanding discovery requests regarding DoorDash's due process defense. *See* Aff. ¶¶ 40-41 (listing relevant outstanding discovery requests). These requests seek documents that, if produced, would shed necessary light on the degree of control wielded by the City and Cohen Milstein.

Given that "[e]valuating the *potential* significance of *unknown* facts in regard to *unadjudicated* issues is something of a metaphysical exercise . . . the threshold of materiality is necessarily low." *Resol. Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1207 (1st Cir. 1994). Indeed, "[i]f … a lack of materiality is not apparent, then an inquiring court should err, if at all, on the side of liberality." *Id.* at 1208. Here, the outstanding discovery requests seek information essential to DoorDash's response to the City's MSJ, as described below. *See also* Aff. ¶¶ 40-42.

**1.      DoorDash is entitled to objective verification of the retention agreement.**

Because the safeguards in any contingency-fee arrangement must be "subject to objective verification both by defendants and by the court," DoorDash is entitled to explore the facts surrounding the City's relationship with its private contingency-fee counsel, including whether the City is exercising sufficient control over this litigation. *See Cnty. of Santa Clara v. Superior Ct.*, 235 P.3d 21, 39 (Cal. 2010); *Merck Sharp & Dohme Corp. v. Conway*, 947 F. Supp. 2d 733, 744 (E.D. Ky. 2013). The terms of the City's retainer agreement confirm that documents exist which should shed light on the City's purported supervision of Cohen Milstein. For example, the retainer agreement requires Cohen Milstein to "provide regular reports to the City on the status of and any [*sic*] significant developments in the Matter." Dkt. 207-7 ¶ 17. Accordingly, in its narrowed discovery requests, DoorDash asked for non-privileged information about such reports, as well as non-privileged documents that would reveal whether the City and Cohen Milstein are following

the terms of their agreement. *See* Dkt. 207-11 at 5 (RFP Nos. 78, 79). The City has refused to respond to those requests. *See* Dkt. 207-2 at ¶ 28. DoorDash has also sought evidence that Cohen Milstein is following the retainer agreement's requirement that it first seek permission from the City before sharing information with other government officials. Aff. ¶ 41; Ex. AA at 8 (RFP No. 104); *see also* Dkt. 207-7 ¶ 16 ("With the City's permission . . . Cohen Milstein may share such information with other governmental entities[.]").

## 2. DoorDash is entitled to information about Cohen Milstein's political contributions in Chicago and personal relationships with City officials.

If the government attorneys tasked with supervision of outside counsel received money or other benefits from outside counsel, their neutrality would be compromised. As one court has explained, "retention of private counsel on a contingent-fee basis is permissible in such cases *if neutral, conflict-free* government attorneys retain the power to control and supervise the litigation." *Santa Clara*, 235 P.3d at 36 (emphasis added).

Here, Cohen Milstein has a documented history of leveraging political contributions and personal relationships to obtain contingency-fee contracts from government officials. For example, former Cohen Milstein partner Linda Singer was the focus of a Pulitzer Prize-winning *New York Times* article that discussed this practice. *See* McCloskey Decl., Ex. 3 (Eric Lipton, *Lawyers Create Big Paydays by Coaxing Attorney Generals to Sue*, N.Y. TIMES (Dec. 18, 2014)). The report described the Cohen Milstein partner's presence at a private party hosted by the Democratic Attorneys General Association with plaintiffs' firms that had donated more than $3.8 million to the group over the last decade, and reported that lawyers from Cohen Milstein and other firms "capitalized on personal relationships with former colleagues that they have nurtured since leaving office, often at resort destination conferences where they pay to gain access." *Id.* at 2, 5.

News reports also reveal that Cohen Milstein has a history of donating to political

campaigns from which it stands to gain business. *See* McCloskey Decl., Ex. 6 at 9 (Dirk VanderHart, *Pay to Play? Out-of-State Law Firms Reap Rewards of Oregon Campaign Contributions*, Oregon Public Broadcasting (Jan. 15, 2020)) (Cohen Milstein attorneys also donated "at least $45,625 into [Oregon] attorney general or treasurer races since 2012," which "are a pittance compared to what Cohen Milstein has reaped by working for the state."); *id.*, Ex. 4 at 4 (Andrew Oxford, *Firms with state business among AG's key donors*, Santa Fe New Mexican (Apr. 15, 2017)) ("About 18 lawyers from [Cohen Milstein] . . . went on to donate $11,000 to [former New Mexico attorney general] Balderas' campaign in 2014.").

In light of Cohen Milstein's past conduct, DoorDash has been seeking, since October 2022, information about Cohen Milstein's political contributions to Chicago politicians. *See* Dkt. 207-15 (Interrogatory No. 16); Dkt. 207-16 (RFP No. 52). The City provided unsworn representations in a January 6 letter, denying awareness of "evidence of any campaign contributions, from either the firm or any individual Partner of the firm, to any Chicago municipal office-holder or candidate for Chicago municipal office during the period 2018 to present" (Aff. ¶ 23, Ex. Q at 3), but refused for months to confirm these representations in sworn discovery responses. Aff. ¶¶ 29, 33, 36. After filing its MSJ, the City insisted that DoorDash re-issue different requests that the City drafted before it would provide any response. *Id.* ¶ 38. If Cohen Milstein or its attorneys have not made any relevant political contributions to Chicago campaigns, the City should say so in an official discovery response. And if discovery reveals that Cohen Milstein *has* made such political contributions, it would raise a material issue as to whether the City's purported safeguards to protect against Cohen Milstein's financial bias are effective in practice. Moreover, if Cohen Milstein were to make a political contribution to a Chicago official during the pendency of this case, the City would be obligated to update its discovery response. *See* Fed. R. Civ. P. 26(e).

The Court should deny or defer ruling on the City's MSJ until this discovery is complete.

**3.** **DoorDash is entitled to information regarding the relative involvement of City attorneys and Cohen Milstein attorneys in this case.**

Due process requires that private prosecutors serve "in a subordinate role" to government attorneys, who must "retain complete control over the course and conduct of the case," including through a government supervisor, who "must be personally involved in overseeing the litigation." *Santa Clara*, 235 P.3d at 36, 40. As such, DoorDash is entitled to discovery relating to the relative litigation burden shouldered by City lawyers and Cohen Milstein.

To obtain such evidence, DoorDash issued narrowed discovery requests seeking documents sufficient to show the "aggregate time spent" by Cohen Milstein and by the City in investigating DoorDash or litigating this matter. Dkt. 207-11 at 6 (RFP Nos. 80, 81). DoorDash also requested documents "sufficient to identify" relevant meetings and calls between the City and Cohen Milstein, and among City lawyers alone. *Id.* at 5 (RFP Nos. 76, 77).

The documents responsive to these requests are minimally burdensome to produce and would illuminate the two entities' degree of control over this litigation, without revealing the substance of privileged communications between the City and Cohen Milstein. Still, the City has refused to respond to those requests. Aff. ¶ 37; Ex. Y at 1-8; *see also* Dkt. 207-2 at ¶ 28.

**4.** **DoorDash is entitled to information regarding whether Cohen Milstein has used information obtained in this case for private purposes.**

The City's MSJ argues that the Court should grant its motion because contingency-fee arrangements are necessary for civil enforcement actions, and that allowing discovery into such arrangements will prevent other government entities from retaining contingency-fee counsel. MSJ at 1-3. DoorDash has propounded discovery on the City seeking the basis for these claims. *See* Aff. ¶ 41, Ex. AA at 7-8 (RFP Nos. 99-101). The Court should not place any weight on the City's

unsupported claims until after DoorDash has had the opportunity to test them in discovery.

**B.    Despite the City's resistance, DoorDash has diligently pursued discovery.**

Where a party has not had a full opportunity to conduct discovery, a Rule 56(d) "motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Convertino v. United States Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citation and quotations omitted); *see also Smith*, 933 F.3d at 866 (applicable "precedents emphasize the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment against her"); *Hillshire Brands Co.*, 2016 WL 6892885, at *1.

Here, DoorDash's diligence cannot be questioned. In fact, the City contends that DoorDash has pursued this discovery with "aggressiveness." MSJ at 1. Since the start of this case, DoorDash has diligently pursued discovery on its due process defense, negotiated with the City in good faith, and sought intervention from Judge Gilbert where appropriate. Aff. ¶¶ 6-37.

**C.    The City's arguments against further discovery are meritless.**

The City makes three primary arguments as to why DoorDash should not be allowed further discovery: (1) DoorDash has no due process defense, (2) production of the City's retainer agreement forecloses further discovery; and (3) no discovery other than the City's selected evidence is warranted. Each of these arguments fails.

**1.    DoorDash has properly alleged a due process defense.**

**a.    DoorDash has a right to a neutral prosecutor.**

As set forth in DoorDash's concurrently filed Opposition to the MSJ, DoorDash here has a due process right to an unbiased prosecutor. Several courts, including the Supreme Court, have affirmed that "there are undoubtedly constitutional limits upon [the] exercise [of prosecutorial

discretion].” *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980); Defs.’ 9/28/23 MSJ Opp. at 7-11.

          **b.**       **To determine whether a neutral party controls the litigation, courts conduct a fact-specific inquiry that requires discovery.**

To determine whether a financially interested prosecutor poses a due process violation, courts consider the factual record regarding the relationship between the government and its outside counsel. Discovery relevant to this inquiry can be extensive, as lawyers make decisions at every stage of an enforcement action, and many do not make it into the record. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 812-13 (1987) (finding that the appointment of a financially interested prosecutor “calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision. . . . A prosecution contains a myriad of occasions for the exercise of discretion, each of which goes to shape the record in a case, but few of which are part of the record.”).

The prevailing standard, which has been used in this jurisdiction, including in case law cited by the City, requires courts to assess the degree to which the government controls the litigation to ensure “that all critical discretionary decisions ultimately [are] made by the public entities’ government attorneys rather than by private counsel[.]” *Santa Clara*, 235 P.3d at 38. Under that “control test,” courts first look to the fee agreement between the public entity and its private firm, which “must provide: (1) that the public-entity attorneys will retain complete control over the course and conduct of the case; (2) that government attorneys retain a veto power over any decisions made by outside counsel; and (3) that a government attorney with supervisory authority must be personally involved in overseeing the litigation.” *Id.* at 40. But, contrary to the City’s assertion, the inquiry does not end there. The fee agreement must be “subject to objective verification both by defendants and by the court[.]” *Id.* at 39. Moreover, “[t]he unique

circumstances of each prosecution may require a different set of guidelines for effective supervision and control of the case[.]" *Id*. at 40.

This approach has been cited with approval and followed by federal courts in this District and elsewhere as a model for assessing the type of due process challenge at issue here. *See, e.g.*, *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 920719, at *4 (N.D. Ill. Mar. 2, 2015); *Merck*, 947 F. Supp. 2d at 740. Indeed, both Judge Gettleman and Judge Gilbert have recognized the fact-intensive nature of DoorDash's due process defense, and in part on that basis, have rejected the City's attempts to foreclose discovery. *See* Dkt. 76 at 7; Dkt. 163 at 12.

> c.   **The City's misguided theory that a public-private contingency-fee relationship never implicates due process does not foreclose discovery.**

The Seventh Circuit has cautioned against denying Rule 56(d) motions "based on a theory that the law makes the discovery irrelevant, especially where the legal proposition is contested and the area of law evolving quickly." *Smith*, 933 F.3d at 868. This is because "[i]f a district court denies a Rule 56(d) motion based on an erroneous view of the applicable substantive law, and thus of the relevance of the additional discovery sought, an abuse of discretion is likely." *Id.*; *see also Signature Transp. Grp., LLC v. Jacobs*, 2020 WL 1663124, at *3 (N.D. Ill. Apr. 3, 2020) ("Plaintiffs have a legal theory and Defendants have a legal theory; it will take some discovery to see which side's legal theory will prevail once all the relevant facts are adduced."). Here, the City asks the Court to deny DoorDash any discovery regarding its due process defense based on a flawed, non-binding legal theory.

As described above and in DoorDash's Opposition to the City's MSJ, DoorDash has a due process right to a prosecutor free from financial bias, and discovery is appropriate to determine whether the City has maintained sufficient control and supervision over Cohen Milstein during its involvement in the investigation and litigation against DoorDash. Defs.' 9/28/23 MSJ Opp. at 7-

11. As the City acknowledges, "governments in [prior] cases (including the City in *Purdue Pharma*) did not contest" the control test's "applicability to the due-process analysis" (MSJ at 10), and the City admits that both Judge Gettleman and Judge Gilbert recognized DoorDash's right to at least some discovery regarding this defense (MSJ at 3, 5).

Nonetheless, the City asks the Court to adopt the reasoning in *American Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629 (9th Cir. 2018) to deny DoorDash *any* discovery related to its due process defense. In *American Bankers*, the Ninth Circuit declined to apply the "control" test to the specific arrangement at issue, where the finding that a public-private contingency-fee relationship to enforce California's Unfair Competition Law ("UCL") was not a due process violation because of its similarities to a False Claims Act *qui tam* action. *Id.* at 637.

Here, adopting the non-binding reasoning of *American Bankers* to halt discovery would conflict both with this Court's prior finding that DoorDash adequately alleged a due process defense (Dkt. 76 at 7), as well as with Judge Gilbert's reliance on the control test *in this case* (which was also used by Judge Alonso in *Purdue Pharma*). Dkt. 163 at 6 n.3; *Purdue Pharma*, 2015 WL 920719, at *4. Such a reversal is also unsupported by the law. The court in *American Bankers* glosses over key differences between public enforcement actions brought by the government and *qui tam* relator actions. *See People v. Pac. Land Research Co.*, 20 Cal. 3d 10, 17 (1977) (distinguishing private class actions and public enforcement actions under the California UCL); *see also* Defs.' 9/28/23 Opp. to MSJ at 12-13 (detailing differences between *qui tam* relator actions and public enforcement actions).[1] The opinion also does not adequately consider Supreme Court decisions that explicitly recognize that biased public prosecutors can threaten due process

---

[1] Additionally, three Supreme Court justices recently indicated that *qui tam* relator actions may be an improper exercise of government power altogether. *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 442 (2023) (Kavanaugh, J., concur.).

rights. *Jerrico*, 446 U.S. 238; *Young*, 481 U.S. 787; *Bordenkircher*, 434 U.S. at 365 ("There are undoubtedly constitutional limits upon [the] exercise [of prosecutorial discretion].").

*American Bankers* is also factually distinct from this case. Whereas the retainer agreement here requires the City to provide Cohen Milstein "access to any personnel, information, and documents required to assess and prosecute [the City's] claims" (Dkt. 207-7 at ¶ 15), the *American Bankers* court found the arrangement proper in part because "the contingency-fee agreement makes clear that the Law Firms' resources, *not those of the state*, will be brought to bear in the UCL suit." 885 F.3d at 635 (emphasis added).

Considering that the propriety of contingency-fee agreements in the public sector is "a much controverted and still developing area of the law" (*State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 475 n.50 (R.I. 2008)), the most appropriate action now is to allow discovery to proceed. *See Smith*, 933 F.3d at 868 ("If a district court denies a Rule 56(d) motion based on an erroneous view of the applicable substantive law . . . an abuse of discretion is likely.").

### 2. The retainer agreement does not end discovery.

The City contends that because it has produced its retainer agreement with Cohen Milstein, further discovery is unwarranted, as other cases have been resolved "solely on a review of the retainer." MSJ at 12. The City's cited authorities are inapposite.

The City relies on *Purdue Pharma* (cited in MSJ at 11-12), where Judge Alonso considered a motion for a preliminary injunction brought by the defendant pharmaceutical companies seeking to invalidate the City's retention agreement with Cohen Milstein. 2015 WL 920719, at *1. In denying the defendants' motion, the court considered (1) a City Board of Ethics' opinion approving Cohen Milstein's retention in that case, (2) the retainer agreement, and (3) the fact that the City withdrew and reissued investigatory subpoenas that Cohen Milstein had served on the defendants

during the investigation. *Id*. at *3-6. The court *never* suggested that discovery regarding the adequacy of the retainer agreement or the nature of the City's relationship with private counsel would be inappropriate. That case was at an entirely different posture. And to the contrary, *Purdue Pharma* cited with approval *Merck*, where the court allowed the defendant to depose the lead government attorney concerning her actual knowledge of the case, and *Santa Clara*, where the court inquired into the unique circumstances of the case and emphasized that safeguards found in a retainer agreement are not one-size-fits-all solutions, but rather subject to "objective verification." *Id*. at *4-5; *Santa Clara*, 235 P.3d at 39.

Allowing the inquiry to end with the production of a retainer agreement incentivizes contingency-fee counsel to add boilerplate language to retainer agreements to prevent any inquiry into the relationship, such that there is no check on the appropriate supervision and control. The California Supreme Court in *Santa Clara* recognized this precise risk by requiring that such contingency-fee agreements be more than "boilerplate," suitable for the specific circumstances of the representation, and subject to "objective verification both by defendants and by the court[.]" 235 P.3d at 39. After all, the harm from such bias is unlikely to be observable without an opportunity to conduct discovery into the actual role of the contingency-fee counsel in each case. *See Young*, 481 U.S. at 807 (noting that numerous prosecutorial decisions "are all made outside the supervision of the court.").

Further, this is not the first time the City has argued in this case that its retainer agreement is all that is required to prove a lack of bias. In its January 30, 2023 opposition to DoorDash's motion to compel discovery related to DoorDash's due process defense, the City made the same argument, citing the same cases. Dkt. 98 at 4 ("[C]ourts typically resolve due process challenges based solely on a review of the retainer, without further discovery."). Judge Gilbert rejected the

18

City's claim and instead encouraged the parties to negotiate the appropriate scope of discovery, including via a deposition. Dkt. 163 at 6, 14.

### 3. The City does not get to pick and choose how it responds in discovery.

The City contends that the limited discovery it has decided to turn over is sufficient. But this discovery consists only of two documents, the City's 11-sentence response to Interrogatory No. 8, its one-sentence substantive response to Interrogatory No. 21, and a declaration the City provided with its MSJ, which purports to describe the City's role in this litigation. MSJ at 1-2.

The City's interrogatory response and declaration statements, standing alone, suggest that the City has been involved in this litigation. But the point of discovery is to test a party's own assertions. *See Lawrence Chevrolet*, 14 F. App'x at 686-87 (reversing in part lower court's grant of summary judgment to permit discovery of information that "[d]efendants alone possess"). DoorDash is not required to take the City at its word. And, as Judge Gilbert noted in a similar case addressing an early summary judgment motion, "if you paint all the windows black it is easy to argue it is dark outside." *Signature Transp. Grp., LLC*, 2020 WL 1663124, at *3. There, the defendants brought an early motion for summary judgment while the parties were still engaged in document discovery, and where the defendants had selectively responded to plaintiff's discovery requests and no deposition had occurred. *Id.* at 3. The court granted the plaintiff's Rule 56(d) motion, finding that plaintiffs were "entitled to conduct discovery in an attempt to chip away at the black paint defendants have painted on the windows to see if some light comes in." *Id*. DoorDash is similarly entitled to seek more than the scant evidence the City has provided regarding the Cohen Milstein relationship. Indeed, such discovery is necessary, as the City's control of Cohen Milstein occurs out of public view, and thus the relevant documents and testimony are primarily, if not solely, in the City's possession. *See Young*, 481 U.S. at 807.

19

Allowing the City to simply restate the measures it purportedly has in place, without opportunity for any inquiry or cross examination by DoorDash, falls short of the need for "objective verification" of the safeguards in the contingency-fee agreement. *Santa Clara*, 235 P.3d at 39; *Merck*, 947 F. Supp. 2d at 744. For example, as Judge Gilbert observed, an appropriately calibrated deposition is likely the most efficient means of getting at information relevant to this defense. Dkt. 163 at 6 n.3, 14. After all, "[a] declaration is . . . not an adequate substitute for live testimony, such as a deposition." *Cavanaugh v. Wainstein*, 2007 WL 1601723, at *10 (D.D.C. June 4, 2007). "[S]uch an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements," and "counsel propounding the . . . question is denied the opportunity to ask probative follow-up questions." *Alexander v. F.B.I.*, 186 F.R.D. 113, 121 (D.D.C. 1998).

To the extent the City objects to DoorDash's discovery requests on the basis of privilege or overbreadth, DoorDash remains willing to negotiate in good faith about the appropriate scope of discovery. There are over six months left in discovery, and the Court should not cut this short by granting the City's MSJ.

## V. CONCLUSION

For all the above reasons, DoorDash respectfully requests that the Court deny or defer ruling on the City's MSJ until after the April 1, 2024 close of fact discovery.

DATED:  September 28, 2023                      Respectfully submitted,

 

                                          **GIBSON, DUNN & CRUTCHER LLP**

                                          By:   _/s/  Joshua S. Lipshutz_
                                          Joshua S. Lipshutz (*pro hac vice*)
                                          1050 Connecticut Avenue NW
                                          Washington, DC 20036
                                          Phone: (202) 955-8500
                                          jlipshutz@gibsondunn.com

                                          Michael Holecek (*pro hac vice*)
                                          Cynthia Chen McTernan (*pro hac vice*)
                                          333 S. Grand Avenue
                                          Los Angeles, CA 90071
                                          Phone: (213) 229-7000
                                          mholecek@gibsondunn.com
                                          cmcternan@gibsondunn.com

**RILEY SAFER HOLMES**                         **FORDE & O'MEARA LLP**
**& CANCILA LLP**

By:   _/s/  Patricia Brown Holmes_            By:   _/s/  Michael K. Forde_
Patricia Brown Holmes                         Michael K. Forde
Sarah E. Finch                                Brian P. O'Meara
70 W. Madison Street                          191 North Wacker Drive
Suite 2900                                    31st Floor
Chicago, IL 60602                             Chicago, IL 60606
Phone: (312) 471-8700                         Phone: (312) 641-1441
pholmes@rshc-law.com                          mforde@fordellp.com
sfinch@rshc law.com                           bomeara@fordellp.com

*Attorneys for DoorDash, Inc. and Caviar, LLC*