IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| City of Chicago,<br><br>      *Plaintiff*,<br><br>  v.<br><br>DoorDash, Inc. and Caviar, LLC,<br><br>      *Defendants.* | Civil Action No. 1:21-cv-05162<br><br>Honorable Jeremy C. Daniel<br><br>**Oral Argument Requested** |

**REPLY IN SUPPORT OF DEFENDANTS' FED. R. CIV. P. 56(d) MOTION TO DENY OR DEFER RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.         INTRODUCTION

DoorDash has diligently sought discovery regarding its due process defense, and its goal has been modest: gather evidence to determine whether the City has adequate safeguards in place to prevent Cohen Milstein from abusing the City's investigatory and prosecutorial powers.

In response, the City has deployed every tool to avoid inquiry into those safeguards—including moving to strike DoorDash's defense; resisting discovery and producing only *two* responsive documents over a 17-month period; and moving for summary judgment almost eight months before the discovery cutoff. If the City is exercising appropriate control over Cohen Milstein, it should welcome a reasonable inquiry into its purported safeguards.

The City now asks the Court to block DoorDash's discovery completely, and rely entirely on the contingency-fee contract it drafted and its self-serving interrogatory response. But that is not how the adversarial process and discovery work. DoorDash is entitled to test the accuracy and sufficiency of the City's statements and examine whether the City and Cohen Milstein are adhering to their purported safeguards. When trial courts preclude parties from testing self-serving declarations and discovery responses at the summary-judgment stage, the Seventh Circuit reverses. *See Franklin v. Express Text, LLC*, 727 F. App'x 853, 856 (7th Cir. 2018) (reversing summary judgment because trial court was mistaken in requiring a party to "take [its opponent's] word" about the relationship between two entities instead of testing it in discovery).

The City cannot claim that DoorDash's requested discovery is irrelevant. If the contingency-fee agreement and the City's self-serving defense of that agreement are relevant, then so too is discovery designed to test those provisions and statements. The City claims some of the discovery will be "intrusive," with "no limiting principle." Dkt. 236 ("Opp.") at 15. But Judge Gilbert has ably managed discovery to date. And he has already limited certain of DoorDash's

1

discovery by suggesting alternative ways for it to obtain relevant information from the City. The Court should grant DoorDash's Rule 56(d) motion and allow DoorDash to pursue the discovery relevant to its due process defense in the normal course.

## II. ARGUMENT

**A.     DoorDash has satisfied Rule 56(d)'s low bar for deferring summary judgment.**

The City's Opposition avoids addressing the Rule 56(d) standard, which is easily met here. The "'main inquiry'" under Rule 56(d) is whether the moving party was diligent in pursuing discovery. *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019). Courts defer summary judgment motions when the opposing party has diligently sought discovery. *See, e.g., Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866–68 (7th Cir. 2019). DoorDash's diligence is not in dispute.

Courts also consider whether the summary judgment motion was filed while discovery remains open. *See Smith,* 933 F.3d at 865–66 (citing cases); *see also Ringmeier v. Del Monte Fresh Produce N.A., Inc.*, 2020 WL 6781396, at *1 (E.D. Wis. June 1, 2020) (denying MSJ filed three months before the fact discovery deadline as "inappropriate under Rule 56(d)"). Here, the City filed its motion early, almost eight months before the discovery cutoff. *See* Dkt. 228-1 ¶¶ 6–41.

DoorDash has also shown that "at least some of the additional discovery sought" is relevant. *Smith*, 933 F.3d at 866. The City never argues that *all* of DoorDash's discovery is irrelevant; rather, it claims that certain discovery would be "invasive" or "burdensome." Opp. at 7–13. Even if some of the discovery might be invasive or burdensome (which it is not), this is no basis to deny a Rule 56(d) motion. That is what discovery motions are for. DoorDash has identified relevant discovery it is pursuing to oppose the City's MSJ. *See* Dkt. 228 ("Mot.") at 9–13; *see also infra* Section II.E. That alone satisfies DoorDash's burden and compels denying or at least deferring the City's MSJ.

**B.      The parties' legal disputes support deferring summary judgment.**

The Seventh Circuit has warned that it is "risky to deny discovery based on a theory that the law makes the discovery irrelevant." *Smith*, 933 F.3d at 868. When an MSJ or Rule 56(d) motion "presents at least genuine issues of material *law*, it would be more prudent to know more about the potentially relevant facts before deciding they are not relevant." *Id*. at 869.

Here, the City's MSJ hinges on genuine legal disputes—such as whether the due process right to a financially disinterested prosecutor applies only in criminal actions, and whether courts may look beyond a contingency-fee agreement to determine whether private prosecutors are sufficiently controlled and supervised. The City's positions on those issues are wrong. But at a minimum, under *Smith*, these disputes militate in favor of granting DoorDash's Rule 56(d) motion.

**1.      Due process limits prosecutorial bias in civil enforcement actions.**

The City argues there is no due process right to a financially disinterested prosecutor in a civil enforcement action. Dkt. 207-1 at 1; Opp. at 2. This contention ignores the Supreme Court's repeated statements that there are constitutional limits on prosecutors' personal and financial bias. In *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), for example, the Supreme Court stated that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process . . . in some contexts raise[s] serious constitutional questions." *Id*. at 249–50. And in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Supreme Court noted that "there are undoubtedly constitutional limits upon [the] exercise [of prosecutorial discretion]." *Id*. at 365. In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), the Supreme Court held that private lawyers hired to prosecute a contempt action "should be as disinterested as a public prosecutor who undertakes such a prosecution." *Id.* at 804. Otherwise, outside counsel would be incentivized to "bring a tenuously supported prosecution," select profitable targets for investigation, withhold

3

compromises, and gather information for private use in other matters. *Id.* at 805–07.

Given these admonitions, lower courts, including in this district, have recognized due process limits to public-private contingency-fee arrangements in civil consumer protection enforcement actions. *See, e.g.*, *Merck Sharp & Dohme Corp. v. Conway*, 947 F. Supp. 2d 733, 739 (E.D. Ky. 2013); *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 920719, at *6 (N.D. Ill. Mar. 2, 2015). As commentators have observed, "civil coercive actions" like this one require due process protections, because they "trigger most of the same political and constitutional concerns implicated by criminal prosecutions." Martin H. Redish, *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 Sup. Ct. Econ. Rev. 77, 104 (2010).

From the start, the City and Cohen Milstein have prosecuted this case as a penal action. They seek millions of dollars in penalties, using a cause of action unavailable to private litigants and availing themselves of privileges reserved for government prosecutors. *See* Dkt. 226 at 11–12. Indeed, the City has argued that, because it is pursuing a "government-enforcement action" implicating "public rights," it may avoid any statute of limitations under the "no time runs against the king" doctrine. Dkt. 40 at 13–14. The City cannot have it both ways.

The City cites *American Bankers Management Co. v. Heryford*, 885 F.3d 629 (9th Cir. 2018) for the proposition that civil enforcement actions do not implicate due process rights. Opp. at 2. But that case was based on the Ninth Circuit's prior holding that *qui tam* relators do *not* "wield governmental powers," and thus do not "owe the same type of duty to serve the public interest as government prosecutors." *Id*. at 634 (cleaned up). As DoorDash has explained, moreover, the present action is different because Cohen Milstein is exercising a broader array of prosecutorial powers than outside counsel in *American Bankers*. *See* Dkt. 226 at 12–13. There, the attorneys were hired "one day before the lawsuit was filed" (*Am. Bankers*, 885 F.3d at 635 n.7), whereas

4

here the City empowered Cohen Milstein to conduct a months-long investigation of DoorDash using City resources. Dkt. 228-1, Ex. R at 5. Indeed, the retainer agreement requires the City to "comply with all reasonable requests of Cohen Milstein," allowing Cohen Milstein expansive access to the City's investigatory powers. Dkt. 207-7 ¶ 18. There is no basis to expand *American Bankers* to this case. And in any event, *American Bankers* is not controlling over this Court.

   2.   **The retainer agreement alone does not resolve a due process challenge.**

The City recognizes that *American Bankers* is an outlier, and that courts routinely resolve due process challenges to contingency-fee retainers by employing a "control test." Opp. at 2–3, 8; *see also* Dkt. 226 at 10–11 (discussing the City's cited cases). Thus the City argues, in the alternative, that this test can be resolved "based solely" on its retainer agreement. Opp. at 2, 3.

The City is incorrect. The control test requires contingency-fee agreements to have certain minimum protections: "(1) that the public-entity attorneys will retain complete control over the course and conduct of the case; (2) that government attorneys retain a veto power over any decisions made by outside counsel; and (3) that a government attorney with supervisory authority must be personally involved in overseeing the litigation." *Cnty. of Santa Clara v. Superior Ct.*, 50 Cal. 4th 35, 64 (2010). Verification is critical: these safeguards must amount to more than "boilerplate language," and adherence must be "subject to objective verification both by defendants and by the court[.]" *Id*. at 39; *Merck*, 947 F. Supp. 2d at 740 ("If the agreement contains sufficient safeguards, then the Court will review the evidence cited by the parties to determine the . . . actual level of control[.]").

The City argues that producing its contingency-fee contract automatically resolves the control test as a matter of law, without any verification. Again, no court has ever held that. The City unsuccessfully made the same argument to Judge Gilbert. *See* Dkt. 163 at 3, 22. Allowing the

5

City to end any inquiry by producing its retainer agreement would incentivize parties to public-private contingency-fee arrangements to draft "boilerplate" and "illusory" terms, rather than practice control and supervision of contingency-fee counsel. *Santa Clara*, 50 Cal. 4th at 63.

The City relies on the fact that the court in *Purdue Pharma* referenced only the retainer agreement in finding that the government's due process obligations were satisfied. Opp. at 2–3. But *Purdue Pharma* never suggested that a defendant could not seek discovery into the adequacy of the retainer agreement. To the contrary, *Purdue Pharma* cited with approval *Merck*, where the court allowed the defendant to depose the government attorney concerning her supervision of the case, and *Santa Clara*, where the court emphasized that safeguards in a retainer agreement must be subject to "objective verification." *Purdue Pharma*, 2015 WL 920719, at *4–5; *Santa Clara*, 50 Cal. 4th at 63. And, unlike here, the *Purdue Pharma* court was ruling on the defendants' motion to *invalidate* a contingency-fee agreement—DoorDash does not request anything remotely similar here. *Purdue Pharma*, 2015 WL 920719, at *1–2. Instead, it is the City that is asking this Court to bless its retainer agreement with Cohen Milstein with no further discovery.

The City admits that *Merck* found discovery necessary to test the propriety of a public-private contingency-fee arrangement. Opp. at 3–4. The City cannot distinguish *Merck*. *First*, the City speculates that *Merck* could have been resolved on the basis of a hypothetical declaration rather than the deposition upon which the court actually relied. *Id.* at 4. This is unlikely because "[a] declaration is . . . not an adequate substitute for live testimony[.]" *Cavanaugh v. Wainstein*, 2007 WL 1601723, at *10 (D.D.C. June 4, 2007) (cleaned up). A sworn declaration only would "eschew[] the opportunity for opposing counsel to probe the veracity and contours of the statements." *Alexander v. F.B.I.*, 186 F.R.D. 113, 121 (D.D.C. 1998); *see infra* Section II.C.

*Second*, the City argues that *Merck* allowed discovery only because the complaint satisfied

6

the *Iqbal* pleading standard, whereas Judge Gettleman did not apply *Iqbal* when ruling on the City's motion to strike. Opp. at 4. But the pleading standard is irrelevant. What matters is that Judge Gettleman rejected the City's position that DoorDash's defense failed as a matter of law and explicitly found the defense required "factual development." Dkt. 76 at 7. Moreover, the detail in the *Merck* complaint is not much greater than that contained in DoorDash's answer, adding only allegations about outside counsel's appearance at hearings and authoring correspondence and commenting on provisions of the retainer agreement. *Merck* Compl. ¶ 18, 2011 WL 9687805 (Aug. 16, 2011). It is unsurprising that neither the *Merck* complaint nor DoorDash's answer contain more, since "[a] prosecution contains a myriad of occasions for the exercise of discretion, each of which goes to shape the record in a case, but few of which are part of the record." *Young*, 481 U.S. at 813. In other words, critical information about this defense is in the City's possession and control, making additional discovery essential before the Court rules on the City's early MSJ. *See Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1208 (1st Cir. 1994) (vacating summary judgment in part because discovery remained in a party's exclusive control).

*Third*, the City argues that *Merck* is distinguishable because that civil consumer protection case was allegedly more "penal" than the City's action against DoorDash. Opp. at 6–7. But the City does not dispute that it seeks penalties under the ordinances at issue in this lawsuit; that the specific causes of action here are not available to private litigants; and that the City seeks to avail itself of litigation privileges reserved for the government. Dkt. 40 at 13–14; *see supra* Section II.B.1; *see also* Dkt. 226 at 11–12. Instead, the City resorts to referencing the Illinois Consumer Fraud Act, which is not even at issue in this lawsuit. Opp. at 6–7. None of the City's cited authorities even suggests that the Illinois statute, let alone the ordinances at issue here, are not sufficiently penal to be subject to due process limitations.

7

*Finally*, the City claims *Merck* was incorrectly decided because it relied on *Clancy*, which held "there is a class of civil actions" that requires prosecutors to be "absolutely neutral." *Id.* at 7. The City argues *Clancy*'s holding conflicts with the Supreme Court's recognition that prosecutors can be "zealous *in their enforcement of the law*." *Marshall*, 446 U.S. at 248 (emphasis added); Opp. at 7. But the Supreme Court never endorsed the use of financially motivated prosecutors. To the contrary, it found that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may . . . in some contexts raise serious constitutional questions." *Marshall*, at 249–50. Moreover, DoorDash has never argued that the City must be "absolutely neutral"—just that the City must employ adequate safeguards to curb Cohen Milstein's financial bias.

The City makes much of the fact that no defendant has *proved* a due process violation under the control test. Opp. at 3. But that hardly means DoorDash's defense fails as a matter of law. Few courts have addressed this defense and no case has imposed discovery limits on opposing summary judgment. *See* Dkt. 226 at 1–2, 10–11. At a minimum, there are genuine legal disputes over the application of the control test and what evidence a defendant can use to meet it. Under *Smith*, this Court should allow further fact development.

**C.    DoorDash is entitled to test the City's interrogatory response and declaration.**

The City claims it is entitled to summary judgment based solely on its response to Interrogatory No. 8 and an attorney declaration, in tandem with its retainer agreement. Opp. at 3, 7; Dkt. 207-1 at 16. The Seventh Circuit has rejected this approach to summary judgment and held that parties must be allowed to use discovery to test affidavits made by the moving party. *See Goldman v. Checker Taxi Co.*, 325 F.2d 853, 854 (7th Cir. 1963).

In *Franklin v. Express Text, LLC*, 727 F. App'x 853 (7th Cir. 2018), the Seventh Circuit held that the district court had abused its discretion by denying the plaintiff's Rule 56(d) motion

8

and granting summary judgment based on Express Text's attorney declaration, because Franklin did not have the "opportunity to gather evidence . . . by deposing [the declarant] or obtaining written discovery." *Id*. at 856. The Seventh Circuit explained that crediting Express Text's untested assertion that "no discovery would have produced [relevant] information" improperly "require[d] the plaintiff to take the company's word as fact without testing the premise." *Id*. (cleaned up).

Numerous courts in this district are in accord. For example, in *Hummel v. Riordon*, 56 F. Supp. 983 (N.D. Ill. 1944), the court held "that it would be inequitable and unjust for the court to grant a motion for summary judgment on the affidavit" of the moving party when the opposing party did not have the opportunity to test the assertions made therein. *Id*. at 987. And in *Surgery Center at 900 North Michigan Avenue, LLC v. American Physicians Assurance Corp.*, 317 F.R.D. 620 (N.D. Ill. 2016), the court compelled production of documents testing deposition statements because "the opposing party need not take the deponents' word for it[.]" *Id*. at 625–26.

It is fundamental to the judicial process that "parties may simultaneously utilize any or all of the discovery mechanisms authorized by the rules." *U.S. ex rel. Fry v. Health All. of Greater Cincinnati*, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009) (cleaned up). This is especially important where "the opposing party's [interrogatory] responses to date have raised as many questions as they have answered." *Doe v. Trump*, 329 F.R.D. 262, 274 (W.D. Wash. 2018). Here, the City's interrogatory response raises questions about the City's relationship with Cohen Milstein, including in connection with Cohen Milstein's investigation conduct. *See* Dkt. 226 at 19–21 (addressing questions raised by City's interrogatory response and declaration). The Court should allow DoorDash to determine the accuracy of the City's and Cohen Milstein's assertions.

**D.     The Court should reject the City's invented "colorable basis" standard for discovery.**

The City argues, without citing any authority, for a "colorable basis" standard to obtain

9

discovery for a due process defense. Opp. at 5–6. For Equal Protection selective-prosecution claims, courts require defendants to cite some evidence of discriminatory intent and effect before allowing discovery. *U.S. v. Armstrong*, 517 U.S. 456, 468 (1996). But the colorable basis standard has *never* been applied to a due process challenge to a contingency-fee agreement. Even if this Court found, for the first time, that the colorable basis standard applies to a due process defense, there *is* a colorable basis to allow DoorDash to seek discovery before the Court rules on the City's MSJ. Judge Gettleman already found DoorDash's due process defense well-pled and that it required "factual development." Dkt. 76 at 6. And the existing record shows that Cohen Milstein has a financial interest in the outcome of this litigation (*see* Dkt. 207-7 at 1–2), it has publicly taken the lead in representing the City in this case (*see* Dkt. 226-1 ¶¶ 3–4), and numerous journalists and commentators have observed that Cohen Milstein has a practice of "coaxing" government officials to bring suit through personal relationships and donations. *See id.*, Exs. 3–6. There is no basis for this Court to create new hurdles to protect this due process right.

**E.     DoorDash has identified discovery essential to oppose the City's MSJ.**

DoorDash has identified categories of non-privileged discovery critical to its due process defense. To prevail on its argument that the Court should deny DoorDash's Rule 56(d) motion on futility grounds, the City must show that *none* of the discovery DoorDash seeks is relevant to its due process defense. This is because it is considered an abuse of discretion to deny a Rule 56(d) motion on futility grounds if "at least some of the additional discovery sought would not have been futile." *Smith*, 933 F.3d 859, 866 (7th Cir. 2019); *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1476 (9th Cir. 1986) (finding lower court abused discretion by denying Rule 56(d) [then Rule 56(f)] motion where a subset of requested discovery was relevant). Further, courts set a low bar for determining whether the discovery sought in a Rule 56(d) motion is material,

because "[e]valuating the *potential* significance of *unknown* facts in regard to *unadjudicated* issues is something of a metaphysical exercise." *Resolution Tr.*, 22 F.3d at 1207 (emphases added).

Here, the City is wrong that DoorDash's pending requests are too speculative to warrant relief under Rule 56(d). Opp. at 2, 8. Each request is tied to terms in the retainer agreement, the City's statements in this litigation, and/or publications about Cohen Milstein's past practices.

**a) Objective verification of the retainer agreement.** The City has yet to provide any contemporaneous documents showing the City and Cohen Milstein's compliance with the terms of the retainer agreement. DoorDash's discovery targets non-privileged documents tied to specific provisions of the retainer agreement: for example, information about the status reports that Cohen Milstein is required to provide the City (Dkt. 207-7 ¶ 17), and Cohen Milstein's duty to seek the City's permission before sharing information with other governmental entities (*id.* ¶ 16). *See* Dkt. 207-11 at 5 (RFP No. 79); Dkt. 228-1, Ex. AA at 8 (RFP No. 104). DoorDash has also requested non-privileged communications that would show whether the City and Cohen Milstein are following the terms of the agreement. Dkt. 207-11 at 5 (RFP No. 78).

The City argues that this discovery is irrelevant because it relates to "contractual obligation[s], not . . . due-process requirement[s]." Opp. at 8, 9. But the City repeatedly points to the retainer agreement in response to DoorDash's due process challenge. *See, e.g.*, *id.* at 3; Dkt. 235 at 8–10. What good is a retainer agreement if the parties ignore its terms? The law allows DoorDash to subject the agreement "to objective verification." *Santa Clara*, 50 Cal. 4th at 63. Requesting non-privileged information about these contractual requirements is a minimally invasive way to test whether the City is actually controlling and supervising Cohen Milstein.

The City argues "[i]t would make no difference to the City's control of this litigation if Cohen Milstein used discovery here for another case," and that the time at which Cohen Milstein

11

provides status reports is immaterial. Opp. at 9. These arguments miss the point. If discovery reveals that the City and Cohen Milstein have been ignoring the terms of their retainer agreement—*e.g.*, if Cohen Milstein were sharing information with other government entities without permission, or not sending status reports to the City—it would suggest that the City's purported control over Cohen Milstein is illusory. Further, if Cohen Milstein is using discovery here for another case, it may show that Cohen Milstein's financial bias is not limited to its remuneration in this lawsuit. *See Young*, 481 U.S. at 809 (barring appointment of prosecutors in a contempt prosecution that would benefit their clients in a separate action).

The City also claims that these requests are overbroad because they go beyond "critical discretionary decisions." Opp. at 8. But the control test is not so limited. *See supra* Section II.B.2. The control test does not focus on only "critical" decisions—and what is "critical" is a subjective question. The discovery sought here is relevant to each of the control test's requirements.

Finally, the City claims that its interrogatory response renders these requests irrelevant. Opp. at 8–9. For the reasons detailed in Section II.C above, DoorDash is entitled to test the City's self-serving statements about its compliance with the retainer agreement.

**b) Relative involvement of City and Cohen Milstein lawyers.** DoorDash has issued narrow discovery requests to obtain non-privileged documents sufficient to show the "aggregate time spent" by Cohen Milstein and the City's lawyers in litigating this case and investigating DoorDash, and to identify meetings and calls that would shed light on the City and Cohen Milstein's relative involvement in this case. Dkt. 207-11 at 6 (RFP Nos. 80–81). Such information sheds light on whether a supervising City attorney has been "personally involved in overseeing the litigation," and to measure the City's degree of control. *Santa Clara*, 50 Cal. 4th at 64; *see also Merck*, 947 F. Supp. 2d at 746–47. The City fails to address this requirement of the control test.

12

Instead, the City argues that these requests are irrelevant because "[c]ontrol is not measured by the number of meetings or the amount of time that government and firm lawyers spend on a case." Opp. at 11. But if, for example, Cohen Milstein had few or no meetings with City attorneys during important stages of the litigation, or if City attorneys' aggregate time was too low to reasonably reflect effective supervision, such factors would support a lack of control.[1]

**c) Political contributions.** The City is wrong that an inquiry into Cohen Milstein's political donations is improper. Even if "lawyers are presumed to comport themselves with ethical integrity" (Opp. at 10 (cleaned up)), the discovery rules allow DoorDash to test this presumption, especially because there is ample foundation for suspicion of Cohen Milstein's motives. *See* Dkt. 226-1, Exs. 3–6. Blocking discovery into any contingency-fee arrangement in a civil enforcement action on the basis that attorneys are assumed to be ethical would create a moral hazard. Courts routinely grant additional discovery into attorney bias, in recognition that lawyers and parties are not always candid. In *Surgery Center.*, 317 F.R.D. 620, for example, the court compelled additional written discovery beyond a deposition because "[t]he law recognizes the sad truth that parties . . . can and do lie in judicial proceedings." *Id*. at 625–26; *see also* Section II.C above.

Contrary to the City's assertions, DoorDash has never accused Cohen Milstein of "brib[ing]" City officials. Opp. at 10. DoorDash seeks discovery to understand whether Cohen has used its political influence to stave off the City's control—which is exactly what investigative journalists found Cohen has done in the past. *See, e.g.*, Dkt. 226-1, Ex. 3. Since October 2022, DoorDash has sought information about Cohen Milstein lawyers' contributions to Chicago political campaigns. Not until October *2023*, after numerous letters and negotiations, did the City

---

[1] The City also contends, for the first time, that "City lawyers working on this case do not record their time." Opp. at 11. This does not mean there are no documents reflecting the "aggregate time" City lawyers spent on this case, or that a reasonable estimate of this time information cannot be provided via declaration and/or deposition testimony. The City should negotiate these issues with DoorDash directly, not through an MSJ.

respond to two narrowed requests for admission about Cohen Milstein's political contributions. Dkt. 235-4 at 1–2. This shows that, at least in some instances, the parties can reach compromises on DoorDash's due process discovery—but only if the process is not stifled by a premature MSJ.

DoorDash does not now seek additional written discovery about political contributions from the City, but reserves the right to address this topic in a deposition. Indeed, Judge Gilbert indicated a deposition "may be a more appropriate vehicle to obtain the information in a less burdensome way." Dkt. 163 at 6. This important discovery should be allowed to proceed.

**d) Discovery into City's unsupported claims in its MSJ.** The City's MSJ advanced unsupported policy arguments, including its prediction of dire consequences if further discovery about Cohen Milstein is allowed. Dkt. 207-1 at 2–3. Based on those arguments, which the City had not previously articulated, DoorDash served discovery to identify the City's factual basis for its claims. Dkt. 228-1, Ex. AA at 7–8. The City has not provided any substantive response. Given their centrality to the City's MSJ, DoorDash should be allowed to test the veracity of these claims.

**e) Deposition of City lawyers.** After obtaining responses to its due process-related discovery requests, DoorDash anticipates taking a deposition (or depositions) to determine the veracity of the City's statements about its purported control over Cohen Milstein. To be clear, neither party has noticed any deposition in this case because months remain in discovery, and several disputes about written discovery are pending. While the City argues that deposing opposing counsel is a "drastic measure," Opp. at 12, the cases the City cites confirm that deposing an opponent's counsel is permissible in "limited circumstances." *Id.* Testing the alleged bias created by a public-private contingency-fee arrangement in a civil enforcement action with millions of dollars at stake should constitute such a circumstance. *See Merck,* 947 F. Supp. 2d at 744–45.

The City further contends that its interrogatory response renders any deposition

14

superfluous. Opp. at 12. It cites *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005), noting that the court denied depositions where the witnesses had already submitted affidavits. But *Davis* is easily distinguishable. There, at issue was a yes-or-no question of whether certain documents existed. *Id.* By contrast, here, the City's level of control over this case is one of degree, encompassing many events and interactions over the course of Cohen Milstein's involvement in this case, and the bulk of relevant evidence is in the City's possession. The City's interrogatory response alone is thus inadequate. *See also* Section II.C above.

**F.      The City's burden claims do not warrant summary judgment.**

The City contends that further discovery would be overburdensome. Opp. at 11–12, 14–15. But again, that is not a proper basis for summary judgment. If the City contests any discovery request, it can seek redress from Judge Gilbert, who has ably managed discovery in this matter. When Judge Gilbert addressed this defense in his May 25, 2023 order, he indicated that the parties should continue to negotiate the appropriate scope of discovery. Dkt. 163 at 6–7, 11, 12. DoorDash followed this directive, but the City responded by filing a premature MSJ. Dkt. 228-1 ¶ 31.

The City suggests that Judge Gilbert felt obligated to allow some discovery on DoorDash's due process defense because it was not stricken. Opp. at 14. In support, the City misleadingly quotes an August 23, 2023 order where Judge Gilbert addressed the appropriate scope of discovery for a *different* affirmative defense. *Id.* (quoting Dkt. 206). Ironically, that August 23 order proves DoorDash's point—Judge Gilbert has exercised his power to limit discovery when appropriate. The Court should reject the City's attempt to sidestep Judge Gilbert here.

### III.     CONCLUSION

DoorDash respectfully requests that the Court deny, or defer ruling on, the City's MSJ.

DATED: November 30, 2023          Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

By:  */s/ Joshua S. Lipshutz*
Joshua S. Lipshutz (*pro hac vice*)
1050 Connecticut Avenue NW
Washington, D.C. 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (*pro hac vice*)
Cynthia Chen McTernan (*pro hac vice*)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
cmcternan@gibsondunn.com

**RILEY SAFER HOLMES & CANCILA LLP**

By:  */s/ Patricia Brown Holmes*
Patricia Brown Holmes
Sarah E. Finch
70 W. Madison Street
Suite 2900
Chicago, IL 60602
Phone: (312) 471-8700
pholmes@rshc-law.com
sfinch@rshc law.com

**FORDE & O'MEARA LLP**

By:  */s/ Michael K. Forde*
Michael K. Forde
Brian P. O'Meara
191 North Wacker Drive
31st Floor
Chicago, IL 60606
Phone: (312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com

*Attorneys for DoorDash, Inc. and Caviar, LLC*