**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| City of Chicago,<br><br>       *Plaintiff*,<br><br>    v.<br><br>DoorDash, Inc. and Caviar, LLC,<br><br>       *Defendants*. | Civil Action No. 1:21-cv-05162<br><br>Hon. Jeremy C. Daniel<br>Magistrate Judge Jeffrey T. Gilbert |

<u>**JOINT STATUS REPORT**</u>

The parties file this second Joint Status Report pursuant to the Court's August 23, 2023 memorandum opinion and order (Dkt. 206 at 53) ("Order"). The Order directed the parties to file a joint status report "that provides an update on any continuing meet and confer efforts by the parties concerning those matters the Court has flagged that might benefit from such conferral, including but not limited to the matter of the City's privilege log(s) for withheld documents, the parties' progress in that regard, and any disputes that still need to be ruled upon." Dkt. 206 at 53. The parties filed an initial joint status report on September 27, 2023. Dkt. 225. The parties hereby file an updated report, reflecting further negotiations regarding the discovery requests identified in the Order. DoorDash and the City request a status conference to address these matters and other issues regarding discovery.

**DoorDash:** On August 23, 2023, the Court directed the parties to try to negotiate certain discovery requests,[1] and provide a joint status report about these efforts. DoorDash complied. It

---

[1] DoorDash's RFP Nos. 6, 8, 11, 41, 42, 43, 50, 54, 65, and Interrogatory No. 2.

negotiated with the City in good faith and offered numerous compromises to address the City's concerns. By contrast, the City refused to respond to any of DoorDash's narrowed discovery requests or reach any compromise with DoorDash. The City has even refused to respond to narrowed requests that adopt language proposed by the City during the parties' negotiations. It is now clear that the City has no intention of compromising and that the parties are at an impasse about discovery crucial to DoorDash's defense. We therefore return to the Court for guidance.

DoorDash has made good-faith efforts to narrow its discovery requests and to reach agreement with the City, but the City has steadfastly refused to provide discovery, including as to topics directly relevant to the claims and defenses at issue. Contrary to the City's assertion below, all of these requests are ripe for the Court's consideration, as they are simply narrowed versions of the requests addressed in the Court's August 23, 2023 Order (Dkt. 206).

**(1)**      <u>**Narrowed Investigation-Related RFPs (Issued to Replace RFP No. 11)**</u>

On June 15, 2022, DoorDash issued RFP No. 11, which requested "All DOCUMENTS RELATED TO investigations, audits, or inquiries RELATING TO DOORDASH . . . ." The Court ordered the parties to narrow this request, but recognized that documents related to the City's investigation of DoorDash are undisputedly relevant. Dkt. 206 at 45 ("The City does not dispute (nor could it) that documents and communications collected during its investigation of DoorDash are relevant[.]").

    **(i)**      **RFP No. 95: Request for Documents Relating to the City's Investigation of DoorDash Alone, to the Extent Relevant to the Complaint**

At the Court's direction, DoorDash propounded RFP No. 95, a narrowed version of RFP No. 11, and informed the City that RFP No. 95 replaced RFP No. 11. The City has admitted, most recently in its January 5 letter, that it possesses "thousands of investigation-related emails," and the parties agree that documents related to the City's investigation of DoorDash are relevant.

Accordingly, RFP No. 95, which seeks, "For the time period January 1, 2019 through June 28, 2021, DOCUMENTS RELATING TO YOUR investigation of DOORDASH, only to the extent the DOCUMENTS PERTAIN TO one or more of the allegations in YOUR COMPLAINT," targets documents related to the investigation into DoorDash (and no other third-party delivery platform), only to the extent they pertain to the Complaint.

Despite DoorDash's efforts to narrow the focus of its Request for investigation-related documents, the City has refused to search for or produce responsive documents, arguing without authority, in its January 5 letter, that the Request "is an inappropriate use of the discovery process to seek the City's entire investigative file," and that the majority of responsive documents would be privileged. As DoorDash has explained to the City, however, RFP No. 95 does not seek all of the City's investigation file, or even all of the City's investigation-related emails. Rather, the RFP requests non-privileged communications that relate to the allegations in the Complaint, and only those documents related to DoorDash. Further, it is clear that non-privileged documents exist, as the City has confirmed in interrogatory responses that many of its employees who participated in the DoorDash investigation were not lawyers.

Because the City refuses to respond to RFP No. 95, despite DoorDash's narrowed formulation and the undisputed relevance of investigation-related documents, the parties are at an impasse as to this Request.

**(ii)** **RFP No. 96: Request for Non-Privileged Documents Relating to or Reflecting City Communications with Restaurants**

DoorDash issued RFP 96 to replace and narrow RFP No. 11. RFP No. 96 seeks, "For the time period January 1, 2019 through June 28, 2021, DOCUMENTS (including COMMUNICATIONS between CITY OF CHICAGO employees) RELATING TO or reflecting COMMUNICATIONS between YOU and restaurants in the course of YOUR investigation of

3

DOORDASH, only to the extent they PERTAIN TO the allegations in YOUR COMPLAINT." The Request targets non-privileged documents regarding restaurant interviews, which this Court has indicated are relevant to this case. Dkt. 206 at 47 ("[A]s to restaurant interviews, the City does not appear to dispute these are relevant and responsive[.]").

The City's primary objection is that this Request targets privileged documents. But, as DoorDash has explained, RFP No. 96 is not limited to attorney notes of restaurant interviews, and instead asks for internal documents relating to or reflecting those interviews, to the extent relevant to the Complaint. The City argues that "any remaining communications between City personnel about such interviews are overwhelmingly likely to be among or with legal personnel and therefore privileged" (City's 1/5/24 Ltr. at 4), without any indication that it has actually determined there are no non-privileged documents. Further, because the City's interrogatory responses indicate that non-lawyers working for the City were involved in the City's investigation of DoorDash, there are likely responsive non-privileged documents.

Because the City has refused to perform additional searches or produce any additional documents in response to this Request, the parties are at an impasse.

**(2)** **RFPs About Specific City Meetings and Documents Related to the City's Allegations (Issued to Replace RFP No. 65)**

On December 8, 2022, DoorDash propounded RFP 65, which requested "All documents relating to the Chicago Department of Business Affairs and Consumer Protection ("BACP")'s correspondence with DoorDash in 2020 regarding compliance with the City's regulations regarding consumer-facing disclosures required of third-party platforms." As explained in detail in DoorDash's response to the City's motion for a protective order (*see* Dkt. 122 at 2-3, 9-10), as well as DoorDash's correspondence with the City following the Court's Order, documents related

to the City's enforcement of the Third-Party Rules are critical to DoorDash's defense against the City's case-in-chief.

As this Court observed, the Third-Party Rules address the commissions that DoorDash and other third party delivery companies could charge restaurants. Dkt. 206 at 16. The Third-Party Rules also regulate the form and timing of disclosures of fees—exactly what is at issue in this case. *See id*. at 9. Just one year before bringing this lawsuit, the City reviewed DoorDash's compliance with its Third-Party Rules. Since the City refuses to provide any internal correspondence about its investigation of DoorDash's compliance with the Third-Party Rules, DoorDash does not know whether the City's investigation focused narrowly on the commissions DoorDash was charging to restaurants, or if the City's investigation was broader. If the latter, a finding by the City that DoorDash was complying with the Third-Party Rules would show that DoorDash's fee disclosures were not misleading to customers, contrary to the City's allegations here.

The Court denied the City's MPO as to RFP No. 65 on the basis that the City had "agreed to a 'reasonable search for documents related to BACP's investigation into Defendants' compliance with the Food Delivery Service Rules.'" Dkt. 206 at 49-50 (quoting Dkt. 158 at 7). In an effort to minimize the City's purported discovery burden and clarify the specific discovery sought in connection with the Third-Party Rules, on September 27, 2023, DoorDash served additional RFPs to narrow and replace RFP No. 65. These RFPs ask for documents related to specific meetings concerning the Third-Party Rules. Unfortunately, the City has refused to provide substantive internal documents regarding the Third-Party Rules, responsive to these narrowed requests. Arbitrarily excluding these documents does not constitute a "reasonable search" as contemplated by the Court.

### (i)     RFP Nos. 84-87 and 92-93: Requests About Specific City Meetings Related to the Drafting and/or Enforcement of the Third-Party Rules

Specifically, DoorDash propounded RFP Nos. 84-87 and 92-93 to provide the City with a minimally burdensome way to fulfill its promise regarding RFP 65. These requests are meant to replace RFP No. 65, and focus on documents related to specific meetings between DoorDash and the City that relate to the Third-Party Rules, based on specific calendar invites that the City produced to DoorDash. Each request is limited to a two-month time period. At the City's request, DoorDash *further* narrowed the scope of these requests on December 18, 2023 to focus on documents "prepared for, discussed in, and/or generated as a result of" each specific meeting. As narrowed, these requests state as follows:

- **RFP No. 84:** "DOCUMENTS from April 1, 2020 through May 30, 2020 prepared for, discussed in, and/or generated as a result of the April 28-29, 2020 meeting titled 'Receipt Transparency Discussion with Mayor's Office & BACP.' *See* CityofChicago_DD_ProdVol6_0008774."

- **RFP No. 85:** "DOCUMENTS from April 1, 2020 through May 30, 2020 prepared for, discussed in, and/or generated as a result of the April 30, 2020 meeting titled 'DoorDash: Food Delivery Consumer Transparency Rules Discussion.' *See* CityofChicago_DD_ProdVol6_0008773."

- **RFP No. 86:** "DOCUMENTS from April 4, 2020 through June 4, 2020 prepared for, discussed in, and/or generated as a result of the May 4, 2020 meeting titled 'Food Delivery Rules and Discussion.' *See* CityofChicago_DD_ProdVol6_0008844."

- **RFP No. 87:** "DOCUMENTS from April 4, 2020 through June 4, 2020 prepared for, discussed in, and/or generated as a result of the May 4, 2020 meeting titled 'Food Delivery Rules – Final Draft Discussion.' *See* CityofChicago_DD_ProdVol6_0008779."

- **RFP No. 92:** "DOCUMENTS from April 13, 2021 through June 13, 2021 prepared for, discussed in, and/or generated as a result of the May 13, 2021 meeting titled 'App-Based Industry Discussion.' *See* CityofChicago_DD_ProdVol6_0008786."

- **RFP No. 93:** "DOCUMENTS from June 14, 2021 through August 14, 2021 prepared for, discussed in, and/or generated as a result of the July 14, 2021 meeting titled 'Third Party Food Delivery Meeting.' *See* CityofChicago_DD_ProdVol6_0008168."

Despite DoorDash's efforts to limit these requests using language proposed by the City, and despite the City's prior promise to produce documents responsive to RFP No. 65, the City now refuses to produce *any* responsive documents. Specifically, the City argues that it "has no reliable and practical way to distinguish responsive documents from those simply relating to the subject matter during the same time period." (City's 1/5/24 Ltr. at 2.)

The City also argues that these Requests are somehow improper because the City produced documents responsive to RFP No. 42 (requesting documents related to the City's rules related to fees and commissions charged by third party delivery companies). The fact that the parties negotiated a search methodology as to RFP No. 42 does not preclude DoorDash from obtaining discovery into specific meetings on topics that the City does not deny are relevant to the allegations in this case. Indeed, the City itself produced the calendar invitations that prompted these targeted Requests, but now refuses to conduct searches to identify communications about them.

Without a valid reason, the City has refused to produce relevant discovery responsive to DoorDash's specific narrowed requests. Accordingly, the parties are at an impasse as to RFP Nos. 84-87 and 92-93.

> **(ii)    RFP No. 88: Request for Documents Relating to July 7, 2020 meeting titled "DoorDash – Third Party Rules Compliance Discussion"**

RFP No. 88, also issued to replace RFP No. 65, seeks documents that are essential to DoorDash's defense to the City's claims, while focusing on a specific meeting and a limited time period. It requests "DOCUMENTS from June 7, 2020 through August 7, 2020 RELATING TO the July 7, 2020 meeting titled 'DoorDash – Third Party Rules Compliance Discussion.' *See* CityofChicago_DD_ProdVol6_0008777."

The City's primary objection to RFP No. 88 is that it is duplicative of RFP No. 42, which requested "All DOCUMENTS RELATED TO YOUR proposed and actual regulations, rules, or

policies RELATED TO the fees, charges, and commissions third party food delivery companies can charge to restaurants." RFP No. 88 is not duplicative of No. 42, because RFP No. 88 targets information about a specific meeting relating to DoorDash's compliance with the Third-Party Rules, and indeed, the City has not produced substantive, internal documents to date relating to the July 7, 2020 meeting titled "DoorDash – Third Party Rules Compliance Discussion." The City seeks to rely on its response to RFP No. 42, without performing a good-faith search for documents separately responsive to RFP No. 88.

Because the City refuses to run searches specific to this Request, the parties are at an impasse as to RFP No. 88.

### (iii) RFP No. 89: Request for Documents Relating to October 30, 2020 meeting titled "Economic Relief Discussion for Chicago Restaurants"

DoorDash propounded RFP No. 89 to provide the City with a minimally burdensome way to fulfill its promise regarding RFP No. 65, while focusing on a specific meeting between DoorDash and the City regarding the Third-Party Rules and limiting the Request to a two-month time period. RFP No. 89 requests "DOCUMENTS from September 30, 2020 through November 30, 2020 RELATING TO the October 30, 2020 meeting titled 'Economic Relief Discussion for Chicago Restaurants.' *See* CityofChicago_DD_ProdVol6_0008778."

The October 30, 2020 meeting is relevant to the City's enforcement of relevant Third-Party Rules, based on the meeting's attendees, which includes BACP officials, DoorDash representatives, and representatives of other third-party delivery services. CityofChicago_DD_ProdVol6_0008778. The City has asserted, without support, that the October 30, 2020 meeting is irrelevant. DoorDash has asked the City to make a good-faith effort to search for documents responsive to this Request, to the extent those documents are directly relevant to this action. Although the City says it will make undefined efforts to "check" whether the meeting

may have involved Defendants' compliance with the Third-Party Rules, it "does not agree to run additional searches" in connection with this Request (City's 1/5/24 Ltr. at 2). If such searches would identify relevant documents relating to this meeting, those documents should be produced. The parties are therefore at an impasse as to RFP No. 89.

### (iv) RFP No. 97: Request for Documents Relating to BACP's April 28, 2020 Third Party Delivery Regulation Brief

DoorDash also propounded RFP No. 97 as part of its effort to replace RFP No. 65 with requests related to specific meetings and documents. The Request, which seeks "DOCUMENTS from February 1, 2020 through April 30, 2020 RELATING TO the research, drafting, or interpretation of BACP's April 28, 2020 Third Party Delivery Regulation Brief. *See* CityofChicago_DD_ProdVol6_0008223," focuses on a specific BACP document highly relevant to the present litigation, and is limited to a three-month time period**.**

The Third Party Delivery Regulation Brief is a document issued by the BACP and produced in this litigation. CityofChicago_DD_ProdVol6_0008222. It "summarize[s] immediate action the City of Chicago can take to provide purchase transaction transparency to Chicago consumers when engaging with third-party food delivery companies," in advance of the BACP's promulgation of its Third-Party Rules regarding transparency. *Id*. The brief also describes the BACP's criteria for "transaction transparency," including specific disclosures the BACP rules would require, such as the amount of service fees and taxes, and whether "the covered establishment is required to pay a separate payment processing fee." *Id*. at -8223.

Because the City's Complaint alleges lack of transparency regarding certain fees (*see, e.g.*, Compl. ¶¶ 32, 43, 57, 197, 204-05), City documents related to the development of regulations regarding the *same issue* in the *same industry* just one year before the City filed suit are highly relevant. Such documents likely contain discussions about fee transparency for third-party food

9

delivery companies including DoorDash, and what disclosures, if any, DoorDash must provide to Chicago consumers. RFP No. 97 is also relevant to the extent that any discussion about the Third Party Delivery Regulation Brief related to the BACP's investigation of DoorDash in connection with this litigation.

The City maintains that the Third Party Delivery Regulation Brief is not relevant to this case, despite acknowledging that the Brief concerned, among other things, the "transparency of [third party platforms'] commissions to consumers." (City's 1/5/24 Ltr. at 4.) The City contends that it has "determined that any research conducted following the brief related to commission caps," and that it "is unaware of any final best practices or long-terms [*sic*] policy goals generated by that research." *Id.* The City also notes that it has produced certain documents related to the Third-Party Rules, but continues to refuse to search for or produce documents relating to the research, drafting, or interpretation of the Third Party Delivery Regulation Brief itself.

Though DoorDash requested that the City engage in a good-faith search for documents responsive to RFP No. 97, to confirm whether its unsupported assertions were accurate, the City has refused. Given this refusal, the parties are at an impasse as to this Request.

**(3)** **RFP Regarding the Chicago Fee (Issued to Replace RFP Nos. 6 and 8)**

    **(i)** **RFP No. 91: Request for Documents Relating to a December 1, 2020 Meeting Regarding the Chicago Fee.**

RFP No. 91 represents an effort to narrow RFP Nos. 6[2] and 8,[3] as to which the Court partially denied the City's MPO and encouraged the parties to continue to negotiate. *See* Dkt. 206 at 53. RFP No. 91, which seeks "DOCUMENTS from November 1, 2020 through January 1, 2021

---

[2] RFP No. 6: "All DOCUMENTS RELATED TO YOUR decision to file this ACTION against DOORDASH."

[3] RFP No. 8: "All COMMUNICATIONS with any PERSON RELATING TO DOORDASH."

RELATING TO the December 1, 2020 meeting with Commissioner Rosa Escareño RELATING TO the Chicago Fee.  *See* CityofChicago_DD_ProdVol6_0005911," targets documents related to a December 1, 2020 BACP meeting and is confined to a two-month time period.

RFP No. 91 references a calendar invite produced by the City, which reflects a December 1, 2020 meeting titled "Grubhub complaint | SR20-05525963 and Doordash 'Chicago Fee'" that includes BACP attendees.  The Chicago Fee is a subject of both of the City's claims in this litigation.  Compl. ¶¶ 197(b), 204(d).  DoorDash has received no substantive information about this meeting from the City, even though documents relating to a BACP meeting held shortly before the City brought suit, which specifically identifies one of the fees at issue in this lawsuit, is highly likely to reveal relevant information about the City's claims about the Chicago Fee.  For example, these documents will help to identify relevant communications from Chicago consumers about DoorDash's fees and may explain what, *if anything*, consumers purportedly found to be unfair or deceptive about the Chicago Fee disclosures.

While the City has agreed to produce some documents responsive to RFP No. 43 ("All COMMUNICATIONS and public statements by [the City] regarding the CHICAGO FEE"), it continues to argue that such documents are not responsive.  In particular, the City objects to producing City documents about the Chicago Fee on the grounds that such documents purportedly "have no bearing on whether the name of the fee was misleading to Chicago consumers"[4] (City's 1/5/24 Ltr. at 3), and states that it only produced documents responsive to RFP No. 43 as a

---

[4] The City also argues in its January 5 letter that RFP No. 91 is duplicative of RFP No. 43 ("All COMMUNICATIONS and public statements by [the City] regarding the CHICAGO FEE"), specifically contending that "any documents that the City would agree to produce in response to RFP No. 91 have already been produced in response to RFP No. 43."  However, again, DoorDash has not received substantive discovery about the meeting referenced in RFP No. 91.  The City appears to be relying on its untenable position that none of its documents relating to the Chicago Fee is relevant.

compromise to DoorDash. But it simply cannot be that the City can make broad allegations that the Chicago Fee purportedly violated multiple City ordinances (Compl. ¶¶ 197(b), 204(d)), while holding the position that discovery into the City's documents about the Chicago Fee is categorically improper.

Because the parties fundamentally disagree as to the relevance of discovery into the Chicago Fee, and the City refuses to search for documents responsive to this Request, the parties are at an impasse as to RFP No. 91.

**(4)**     <u>**RFP Related to the City's Public-Facing Guidance (Issued to Replace RFP No. 50)**</u>

       **(i)**      **RFP No. 98: Request for Documents Relating to City Guidance to DoorDash About Compliance with Pertinent Rules**

DoorDash issued RFP No. 98 to replace RFP No. 50, as to which the Court partially denied the City's motion for a protective order and directed the parties to further negotiate. RFP No. 50, issued on October 13, 2022, requested "All COMMUNICATIONS and public statements made by YOU RELATING TO third party platforms that facilitate ordering and delivery," and was intended to target statements by the City that would shed light on its view of the propriety of the conduct it alleges to be misleading. In light of the Court's Order, DoorDash significantly narrowed this Request. RFP No. 98 requests, "For the time period January 1, 2020 through June 28, 2021, COMMUNICATIONS RELATING TO guidance issued by [the City] to DOORDASH RELATING TO (a) MCC § 4-276-470, (b) MCC § 2-25-090, and/or (c) the THIRD-PARTY FOOD DELIVERY SERVICE RULES." The RFP is tailored to a narrow time period, is limited to guidance issued to DoorDash alone, and addresses only specific rules.

The City has refused to respond on the basis that it is unaware of any specific guidance issued to DoorDash about its ordinances—despite the fact that DoorDash provided the City with *multiple examples* of that guidance in its December 18 letter. To name just two examples,

DoorDash cited: (1) non-privileged communications prepared for, discussed, and/or generated as a result of the "Purpose of the Rules," which is the first section in the BACP Rules issued on May 12, 2020; and (2) non-privileged communications prepared for, discussed, and/or generated as a result of other known correspondence or meetings between the City and DoorDash relating to DoorDash's compliance with the Third-Party Rules and/or MCC §§ 4-276-470 and 2-25-090.[5] Moreover, the City has stated, without authority or investigation, that internal documents related to DoorDash's compliance with the City's Third Party Rules in 2020 "are overwhelmingly likely to be privileged." And again, the City maintains that "its internal communications are not relevant or proportional to the needs of the case[.]" *See* City's submission, *infra.*

DoorDash has asked the City to conduct a good-faith search into documents responsive to this Request, based on DoorDash's detailed explanation and provision of multiple examples of the kind of guidance that are responsive to this RFP. Because the City refuses to conduct such a search, and refuses to produce responsive internal documents, the parties are at an impasse.

**(5)**      **Additional Negotiations Concerning RFPs Affected by the MPO Order**

     **(i)**      **RFP No. 41: Request for Documents Related to the BACP's Determination that DoorDash Violated Chicago Municipal Ordinance 2-25-090**

As narrowed in September 2023, RFP No. 41 seeks "Documents and communications from June 1, 2020-June 1, 2021 related to [BACP] Commissioner Rosa Escareño's or Commissioner Kenneth Meyer's determination that DoorDash engaged in a practice prohibited by MCC § 2-25-090."[6] Documents responsive to RFP No. 41 are relevant to DoorDash's defense against the City's

---

[5] This includes, but is not limited to, the July 7, 2020 meeting referenced in RFP No. 88, and the June 11, 2020 and June 19, 2020 letters from Commissioner Escareño regarding DoorDash's compliance with the Third-Party Rules.

[6] The original version of RFP No. 41, propounded on October 13, 2022, requested "All DOCUMENTS RELATED TO [BACP] Commissioner Rosa Escareño's or Commissioner Kenneth Meyer's determination that DOORDASH has engaged in, is engaging in, or is about to engage in a practice prohibited by MCC

claims, as they seek the information that led to the BACP Commissioner's recommendation to the City's Law Department to file this lawsuit against DoorDash. Such documents would reveal (among other things) how the City came to be aware of the alleged violations in this case and how this litigation was initiated, a question relevant to both the City's view of its case-in-chief allegations and to DoorDash's Due Process Affirmative Defense. This Court partially denied the City's MPO as to this request, directing the parties to further confer. Dkt. 206 at 43-48, 53. Accordingly, DoorDash narrowed this Request, imposing a narrower date range and limiting it to documents related to the determination that DoorDash purportedly "engaged" in a violation.

The City initially represented that it had met its obligations as to this request because it produced the one-page request by BACP Commissioner Escareño to the City's Corporation Counsel to file this action and purportedly produced all non-privileged documents on which the Complaint was based. DoorDash disagrees. For example, the City's representations do not indicate it has produced all documents related to the BACP's investigation required by MCC § 2-25-090(f) before the City files suit. In addition, the City has not represented that it has produced any documents related to Commissioner Meyer's determination of liability. DoorDash therefore maintains that the City has a duty to conduct a more comprehensive search for responsive documents.

(ii)     **RFP No. 43: Request for City Communications About the Chicago Fee**

RFP No. 43 seeks "All COMMUNICATIONS and public statements by [the City] regarding the CHICAGO FEE." The Court partially denied the City's MPO as to RFP No. 43, acknowledging that the parties were still in the midst of negotiating a search methodology and

_____

§ 2-25-090. This includes, but is not limited to, any request the commissioner made to corporation counsel to bring action for injunctive relief or such other equitable relief that the commissioner deemed appropriate pursuant to MCC § 2-25-090(f)(1)."

14

noting that "the parties may need to meet and confer further on this request." Dkt. 206 at 48. As DoorDash has explained to the City, this request is necessary to defend against the City's allegation that the Chicago Fee misled consumers, and responsive discovery would, for example, shed light on what it is about the fee the City or consumers purportedly found misleading. *See* Compl. ¶¶ 8, 24-31, 197(b), 204(d).

The City has so far agreed to the following search methodology for RFP 43:

- **Custodians:** Rosa Escareño, (former BACP Commissioner); Kenneth Meyer (BACP Commissioner); Tamara Starks (former BACP Deputy Commissioner); Matthew Allee (former BACP Deputy Commissioner); Miguel Campos (BACP); Jaime Martinez (BACP); Ivan Capifali (BACP); Samir Mayekar (former Deputy Mayor); Manuel Perez (former Deputy Mayor)

- **Search terms:** ("DoorDash" OR "Door Dash" OR "Caviar") AND ("Chicago Fee" OR "regulatory response fee")

- **Time frame:** November 23, 2020 to August 27, 2021

Following the MPO Order, DoorDash requested two additions to this methodology, which the City has rejected:

*First*, DoorDash requests that the City add to the above search string three terms that have also been used to reference the Chicago Fee: specifically, "new fee" or "regulatory fee" or "City Fee." The City has refused to add these terms, stating that it "does not believe the three additional search terms DoorDash proposed would identify a significant number of responsive documents." The City has not said whether it ran these terms, or identified any basis for its belief that the terms would not result in the production of responsive, relevant material.

*Second*, DoorDash requests that the City add as custodians City alderpersons Scott Waguespack, Andre Vasquez, and Tom Tunney. These alderpersons were involved in policymaking concerning third-party delivery services and have been quoted in the press regarding

15

relevant Third-Party Rules and the Chicago Fee.[7]  Moreover, Alderperson Waguespack was quoted in the City's complaint, opining on the allegedly subversive purpose of the Chicago Fee. Compl. ¶ 59.  Accordingly, it is likely that these individuals possess documents relevant to the City's Chicago Fee-related allegations, including, for example, communications from Chicago constituents about DoorDash's business practices and any documents that reveal the basis for the alderpersons' purported belief that the Chicago Fee was misleading.  While the opinion of any one alderperson is not necessarily relevant to this litigation, the facts upon which these influential policymakers may have based their opinions is likely directly relevant.  In particular, responsive documents are likely to address the City's allegations about the Chicago Fee in its case-in-chief. The City declined to add these custodians, with a one-sentence explanation that referred DoorDash to prior letters in which the City argued that discovery into the Chicago Fee is irrelevant.

Because the City has refused DoorDash's reasonable requests to modify the search methodology for RFP No. 43, the parties are at an impasse as to the search methodology for this Request.

---

[7] *See, e.g.*, Mayor's Press Office, *Mayor Lightfoot and BACP Announce New Rules to Increase Transparency of Third-Party Food Delivery Companies for Consumers*, CITY OF CHICAGO (May 12, 2020), *available at* https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2020/may/FoodDeliveryTransparency.html; Ashok Selvam, *DoorDash Creates 'Chicago Fee' in Response to City's Third-Party Cap*, EATER CHICAGO (December 9, 2020), *available at* https://chicago.eater.com/2020/12/9/22165233/doordash-chicago-fee-third-party-cap-customers.

**City of Chicago:** As an initial matter, the issues referenced herein are a subset of discovery disputes on which the parties have met and conferred or are in the process of meeting and conferring, including concerns the City has with Defendants' document production. The City believes a status conference with the Court would be helpful to guide the resolution of these disputes and evaluate the remaining discovery schedule.

The City has met and conferred in good faith with Defendants on the discovery requests the Court identified. In response to certain requests, the City produced additional documents; in response to others, the City confirmed to Defendants that its production was complete. Most of Defendants' revised requests, however, are objectionable for the same reasons set forth in the City's motion for a protective order.

The City moved for that order because (a) Defendants lacked a colorable basis for their selective prosecution and First Amendment retaliation defenses, and (b) the discovery requests at issue were otherwise irrelevant, unduly burdensome, and not proportional to the needs of the case (Dkt. 110). The Court granted the motion in part, but it identified certain requests that might benefit from further meet-and-confer efforts (Order at 52-53). These requests were Interrogatory No. 2 (identification of third parties with whom City communicated in investigation) and the following RFPs: No. 6 (all documents related to City's decision to sue); No. 8 (communications related to DoorDash); No. 11 (all documents related to City's investigations of DoorDash); No. 41 (all documents related to BACP Commissioner's determination that DoorDash violated MCC § 2-25-090 ); No. 42 (all documents related to proposed and actual City rules on fees delivery companies charge restaurants); No. 43 (all City communications regarding Chicago Fee ); No. 50 (all City communications related to third-party delivery companies); No. 54 (all City communications

related to DoorDash's initial public offering); and No. 65 (all documents related to BACP's 2020 correspondence with DoorDash on its compliance with fee transparency rules).

Defendants proposed revised discovery on September 18, 2023. After Defendants narrowed the timeframe of **RFP No. 41**, the City searched for and produced responsive documents from BACP Commissioner Escareño (the Commissioner who made the determination, not her successor, Kenneth Meyer, who is also identified in the document request). In response to **RFP No. 42**, the City offered a narrower search—for documents, including internal communications, related to BACP's 2020 investigation of Defendants' compliance with the Third-Party Food Delivery Services Rules ("Food Delivery Rules")—and produced responsive documents in August and September 2023. Defendants agreed on September 18, 2023, that this search satisfied RFP No. 42. This production also satisfied RFP No. 65 (seeking documents regarding DoorDash's compliance with the Food Delivery Rules) and reflects the agreement the Court referenced at pp. 41-42 and 49-50 of its Order. Defendants' claim that the City has refused to provide internal communications and other documents responsive to RFP No. 65 is flatly incorrect.

Defendants did not narrow **RFP No. 43**, which the City maintains is irrelevant to anything but the selective prosecution and First Amendment retaliation defenses (Order at 48-49); internal communications about the Chicago Fee do not prove or disprove that the fee was misleading. Nevertheless, the City searched for and produced responsive documents of four custodians. The City also has been willing to accede to an earlier request to search five additional custodians if that would conclude the City's production. Defendants, however, have insisted that the City also search the files of three members of the City Council, including Alderman Waguespack, whose comments on the Chicago Fee the Court previously addressed (Order at 12-15, 24-25). This demand is irrelevant to any issue on which discovery may be had.

18

As to the remaining requests the Court identified (Interrogatory No. 2 and RFP Nos. 6, 8, 11, 50, 54, and 65), Defendants did not simply propose narrowed parameters. Rather, they replaced the requests with 16 new RFPs (Nos. 83-98). Defendants described these as "narrowed" requests that would reduce the City's burden. Their practical effect, however, has been to sow confusion about what discovery the parties had previously agreed to and what discovery the City had completed—including Defendants' evident confusion over RFP Nos. 42 and 65 (as discussed below). Still, the City timely responded to RFP Nos. 83-98 and met and conferred in good faith with Defendants regarding its objections.[8]

Three of these requests (**RFP Nos. 88, 91,** and **96**) seek documents covered by other requests, and the City has informed Defendants that it has produced what it is willing to produce. RFP No. 88 seeks documents related to a meeting titled "DoorDash – Third Party Rules Compliance Discussion." The City has confirmed to Defendants that documents responsive to this request were produced in response to RFP No. 42; Defendants' claim that the City has refused to respond is incorrect. RFP No. 91 seeks a subset of Chicago Fee-related internal communications that is covered by RFP No. 43. To the extent RFP No. 91 seeks communications with consumers about the Chicago Fee, the City has—contrary to Defendants' assertion—already produced any such discovery in response to other requests. Finally, RFP No. 96, which seeks documents that "relate to" the City's communications with restaurants in its investigation, overlaps with several other requests. In response to those requests, the City has identified the restaurants with which it communicated, produced the communications, and produced documents exchanged with those

---

[8] RFP Nos. 83-98 have not been the subject of any motion to compel and were not a subject of the City's motion for protective order. To the extent DoorDash seeks enforcement of these RFPs, such matters should be raised in a motion to compel and fully briefed.

restaurants. The City has conveyed to Defendants that any remaining communications "relating to" contacts with restaurants in the investigation are overwhelmingly likely to be among or with legal personnel and are categorically privileged.

Two more requests (**RFP Nos. 83** and **90**) are, as the City has conveyed to Defendants, irrelevant because they relate to caps on the fees meal-delivery companies could charge restaurants—which are not at issue in this case. Another request (**RFP No. 97**) similarly seeks documents "relating to" a BACP document, "Third Party Delivery Regulation Brief," that principally concerned fee cap policy. Insofar as the brief addressed fee transparency rules, the City has produced documents on DoorDash's compliance with the Food Delivery Rules; it objects to broader discovery for reasons discussed below. Defendants also inquired about the brief's statement that "BACP will research best practices and recommend long-term policy goals," in response to which the City determined that any research related solely to fee caps, which are not at issue in this case.

Several requests seek documents "relating to" particular meetings Defendants identified in the City's production. One (**RFP No. 94**) concerns the "Rollout of the Single Use Foodware Ordinance"—which, as the City has conveyed to Defendants, is publicly available, concerns when restaurants may provide plastic utensils to consumers, and has nothing to do with this case. Others (**RFP Nos. 84-87**) concern meetings in April and early May 2020 about the then-proposed Food Delivery Rules, which went into effect May 12. The City has produced documents concerning DoorDash's compliance with the final Rules, but the City disagrees with Defendants that documents "relating to" proposed and draft rules that are not the basis for the City's claims are a

proper subject of discovery.[9] This is a burdensome and unnecessary reprise of the parties' discussions over RFP No. 42, which sought all documents relating to the City's proposed and actual rules regarding meal delivery fees and commissions and which the Court described as "extraordinarily broad" (Order at 41). Defendants ultimately agreed that the City satisfied RFP No. 42 by producing documents related to BACP's inquiry into DoorDash's compliance with those Rules as enacted. Defendants cannot now seek broader discovery under RFP Nos. 84-87 than they agreed would suffice under RFP No. 42.

The remaining meeting-related requests all concern meetings about general restaurant, meal delivery, and e-commerce topics (**RFP Nos. 92-94**). The City maintains that internal communications on these topics are not relevant. Notwithstanding that objection, the City considered whether it could easily isolate narrower sets of documents prepared for, discussed in, or generated as a result of those meetings. However, as the City conveyed to Defendants, the City has no practical way to distinguish responsive documents from those simply relating to the same subjects, which were topics of many discussions and meetings within BACP in the identified time periods. The City does not believe an expansive search is proportional to the needs of the case. The City has, however, agreed to check whether a meeting identified in **RFP No. 89**, "Economic Relief Discussion for Chicago Restaurants," may have involved Defendants' compliance with the Food Delivery Rules—and, if so, whether any related documents remain to be produced. Defendants incorrectly assert that the parties are at impasse on RFP No. 89.

---

[9] As the Court noted, "The focus of the City's enforcement of the Third-Party Delivery Rules was the commission that third-party meal delivery companies could charge to Chicago customers [*i.e.*, restaurants].... [T]he much broader variety of alleged deceptive acts and conduct alleged in the Complaint go far beyond the narrow issue of [restaurant] commission disclosures that DoorDash addressed with the City in June and July 2020 and as to which it was reportedly complaint." Order at 16-17.

**RFP No. 95**, a demand for the City's entire investigative file in this case, is sweepingly overbroad. The City has produced all non-privileged documents upon which the Complaint is based, including news reports, information from Defendants' platforms, surveys, academic studies, market data, test DoorDash orders, third-party communications, and complaints about DoorDash. The City stands on its objection to producing other broad swaths of documents, such as documents the City may have reviewed but did not use or rely upon in the Complaint. These requests are of marginal relevance, constitute an inappropriate inquiry into counsel's thought processes, and would require a burdensome search of largely privileged materials.

Finally, **RFP No. 98** seeks communications "relating to" any "guidance" issued by the City to DoorDash on its consumer protection ordinances or the Food Delivery Rules. As we have conveyed to Defendants, the City is unaware of any guidance it has issued regarding the ordinances, and the Food Delivery Rules have been the subject of many other requests. We therefore asked Defendants—as recipients of any such guidance—to specifically identify it. Defendants identified the Food Delivery Rules themselves; meetings with DoorDash about its compliance with the Rules; "business practices occurring in Chicago that prompted … guidance to DoorDash"; and the City's June 2021 cease-and-desist letter identifying the conduct about which the City later filed suit. To the extent the City issued "guidance" as part of BACP's inquiry into DoorDash's compliance with the Food Delivery Rules, related communications have been produced; the City objects to broader discovery on the Food Delivery Rules for the reasons stated above. The City disputes that a cease-and-desist letter is "guidance," but the City is unaware of non-privileged communications relating to that letter, which was prepared at the culmination of a law enforcement investigation. And the City objects to an open-ended search for documents related to guidance about vaguely described "business practices." As to all these topics, the City has

further conveyed to Defendants that its internal communications are not relevant or proportional to the needs of the case and that searching for them for discussions of such "guidance" would be unduly burdensome.

DATED: January 23, 2024        Respectfully submitted,

**CITY OF CHICAGO DEP'T OF LAW,**    **COHEN MILSTEIN SELLERS & TOLL PLLC**
**AFFIRMATIVE LITIGATION**
**DIVISION**

By:  /s/ *Stephen J. Kane*        By:  /s/ *Brian E. Bowcut*
Stephen J. Kane        Brian E. Bowcut (pro hac vice)
Peter H. Cavanaugh        Betsy A. Miller (pro hac vice)
121 N. LaSalle St.        Peter S. Ketcham-Colwill (pro hac vice)
Room 600        Lisa M. Ebersole (pro hac vice)
Chicago, IL 60602        1100 New York Avenue, NW
Phone: (312) 744-6934        Suite 500
stephen.kane@cityofchicago.org        Washington, DC 20005
peter.cavanaugh@cityofchicago.org        Phone: (202) 408-4600
bbowcut@cohenmilstein.com
bmiller@cohenmilstein.com
pketcham-colwill@cohenmilstein.com
lebersole@cohenmilstein.com

Attorneys for Plaintiff City of Chicago

**GIBSON, DUNN & CRUTCHER LLP**

By:  /s/ *Joshua S. Lipshutz*
Joshua S. Lipshutz (pro hac vice)
1050 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (pro hac vice)
Cynthia Chen McTernan (pro hac vice)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
cmcternan@gibsondunn.com

**FORDE & O'MEARA LLP**

By:  /s/ *Michael K. Forde*
Michael K. Forde
Brian P. O'Meara
191 North Wacker Drive
31st Floor
Chicago, IL 60606
Phone:  (312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com

**RILEY SAFER HOLMES
& CANCILA LLP**

By:  /s/ *Patricia Brown Holmes*
Patricia Brown Holmes
Sarah E. Finch
70 W. Madison Street
Suite 2900
Chicago, IL 60602
Phone: (312) 471-8700
pholmes@rshc-law.com
sfinch@rshc law.com

Attorneys for Defendants DoorDash, Inc. and Caviar, LLC