UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| City of Chicago,<br><br>　　　　*Plaintiff,*<br><br>　v.<br><br>DoorDash, Inc. and Caviar, LLC,<br><br>　　　　*Defendants.* | Civil Action No. 1:21-cv-05162<br><br>Honorable Jeremy C. Daniel<br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT
DISCOVERY FROM FOUR ADDITIONAL CUSTODIANS**

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2, the City of Chicago moves to compel discovery of documents from four additional custodians of Defendants. This discovery is relevant to the City's claims, proportional to the needs of the case, and warranted in light of Defendants' modest production to date.

From the outset, Defendants maintained that they could satisfy their discovery obligations—encompassing five distinct forms of misconduct, dating to 2016 and earlier—with a small group of custodians. Defendants initially proposed to search the files of just four company personnel, two of whom were not even employed by Defendants during years-long portions of the relevant period. Although Defendants ultimately agreed to a handful of additional custodians the City suggested, they rejected several others—insisting that discovery from these employees would be duplicative. The City was skeptical of Defendants' approach, but after months of unproductive back-and-forth, the City agreed to a slate of 11 custodians to get custodial discovery underway.

Despite taking more than eight months to "substantially complete" production from the designated custodians, Defendants have produced just 4,030 custodial documents totaling 22,577 pages. Along the way, Defendants assured the City that their production would be robust but refused to provide information on their remaining search and production efforts. Only in January 2024, when Defendants reported that their custodial production was nearing completion, could the City assess the sufficiency of the full production.

On its face, this volume of production is inadequate given (a) the centrality of the subjects covered by the City's requests; (b) the span of years covered by the City's requests; and (c) Defendants' own, repeated assertions that these agreed custodians could provide document discovery sufficient for the entire company. The City's review is ongoing, but certain deficiencies are manifest: For example, Defendants found only 17 responsive documents in the files of Peter

Esmond, the sole custodian whom Defendants initially put forward to satisfy their discovery obligations as to two of the five forms of misconduct. They have produced just 330 documents from 2016, a critical period for several of the City's claims. They have produced only scattershot, often low-quality images of the app and website transaction flow—what the user sees—despite assuring the City that custodial searches would sufficiently capture this crucial evidence. And they have not produced a single document about their misleading "Chicago Fee."

These are substantial deficiencies requiring multiple solutions,[1] but one critical solution is to add custodians. Defendants' own production shows that three employees—Jonathan Berk, Jessica Lachs, and Charlton Soesanto—would be appropriate additions. Although these employees are not agreed custodians, Defendants produced some of their emails in response to a request for documents produced in other litigation or enforcement investigations concerning the same conduct. Those emails illustrate not just that these employees were deeply involved in developing Defendants' deceptive consumer fee and driver pay models, but also that they engaged on these topics in ways that did not involve any of the agreed custodians. Searches of their full custodial files thus are likely to yield substantial non-duplicative discovery.

Defendants' production also shows that a fourth individual—DoorDash CEO Tony Xu—is a critical custodian for several categories. Defendants have insisted that Mr. Xu was not involved in development of or decision-making on the practices at issue. Emails from the files of agreed custodians, on which Mr. Xu was a sender or recipient, belie that notion. Mr. Xu was actively engaged on the consumer fee and driver pay models, menu price inflation, and non-partner listings.

---

[1] For example, the City has asked Defendants to investigate non-custodial sources of transaction flow visuals; broaden their search for documents on the Chicago Fee; and produce the contents of internal mailboxes that appear to be repositories for Chicago-specific activities and platform testing activities. The City will bring these matters to the Court's attention as needed.

The discovery the City seeks is relevant and proportional, and Defendants have never substantiated the claim that such discovery would be duplicative or unduly burdensome. Defendants' document production to date is not commensurate with the issues at stake in this law enforcement action and the critical need for this discovery. The burden of searching for and reviewing more documents is the direct and entirely anticipated result of Defendants' initial, parsimonious approach to document discovery. The Court should grant the City's motion.

## BACKGROUND

The City's claims concern Defendants' deceptive and/or unfair conduct regarding (1) consumer fees, (2) menu price inflation, (3) non-partner restaurant listings, (4) driver pay, and (5) promotional discounts. First, Defendants deceptively advertise the price of delivery upfront, deferring and obscuring the presentation of other delivery charges, including a service fee, small order fee, and misleadingly named "Chicago Fee." Compl. ¶¶ 23-68. Second, the DoorDash platform deceptively features menu prices higher than those available directly from restaurants, without disclosing this price inflation to consumers. *Id.* ¶¶ 69-95. Third, Defendants listed restaurants without permission ("non-partners") on the DoorDash platform, misleading consumers and unfairly harming the restaurants. *Id.* ¶¶ 112-62. Fourth, Defendants deceptively informed consumers that drivers would receive their full tips, when in fact DoorDash used those tips to subsidize its own payment obligations, unfairly depriving drivers of tip income. *Id.* ¶¶ 163-87. And fifth, Defendants advertised price promotions while failing to disclose that minimum order amounts applied. *Id.* ¶¶ 96-111. The City's motion relates to custodians of information for the first four of these categories.

The City served its First and Second Sets of Discovery in June and July 2022. Bowcut Decl. ¶ 3. Defendants took six months, until December 2022, to propose a custodial search methodology, in which they offered four custodians to cover the five categories of misconduct. *Id.*

3

¶¶ 4-5. Defendants proposed to cover consumer fees and menu pricing with a single employee each, even though those employees (Sasha Makovik and Peter Esmond) did not start at the company until years after the conduct began. *Id.* ¶ 5 & Exs. A, B. The parties then engaged in four months of negotiations to reach a partial agreement on a slate of 11 custodians, with a disagreement remaining over the inclusion of an additional custodian, Stanley Tang. *Id.* ¶¶ 6-7. The City subsequently filed a motion to compel the inclusion of Mr. Tang as a custodian, which the Court granted on November 6, 2023. Dkt. 241.[2]

In the parties' negotiations from January through May 2023, the City had limited information with which to assess the sufficiency of Defendants' custodial search proposals. The City had issued discovery in the summer of 2022 seeking organizational charts and identification of the employees and divisions responsible for the alleged conduct. Bowcut Decl. ¶ 8 & Exs. C, D. However, Defendants did not produce this information until the same day they proposed their search methodology. *Id.* ¶ 9. Even then, the organizational charts they produced were incomplete and inaccurate, and Defendants identified only their four proposed custodians as persons with knowledge of the alleged conduct. *Id.* ¶ 10. Defendants insisted that it was not feasible to do more because while ▮▮▮▮▮▮▮▮▮▮ contributed to the platform design and consumer experience, ▮▮▮▮▮▮▮▮▮▮ *Id.* & Ex. E.

In the negotiations, Defendants accepted some custodians the City proposed but rejected others, including Stanley Tang (for consumer fees), Jonathan Berk (for consumer fees), Charlton

---

[2] The parties also disagreed on the inclusion of Jonathan Berk, already designated as a custodian for documents related to driver pay, as a custodian for documents related to consumer fees. The City believed there to be an agreement on including Mr. Berk for that category. *Id.* ¶ 7. However, Defendants withdrew their offer of Mr. Berk for consumer fees when the City moved to compel on Mr. Tang's documents. *Id.* The City deferred further action on Mr. Berk's inclusion, pending Defendants' full production of documents from other custodians. *Id.* Defendants' production illustrates that Mr. Berk should be a custodian for the consumer fees category.

4

Soesanto (for consumer fees), Rajat Shroff (for consumer fees), Nirav Patel (for menu pricing and non-partner restaurant listings), Ajay Mittal (for menu pricing, driver pay, and non-partner restaurant listings), and Toby Espinosa (for promotional discounts). *Id.* ¶ 11. Defendants contended that these custodians were unnecessary because their documents would duplicate those from the files of Defendants' proposed custodians. *Id*. Defendants also argued that several of these employees were "apex witnesses" whose seniority and supposed remove from day-to-day operations made them unsuitable custodians. *Id*. Defendants repeatedly assured the City that their approach would be more than sufficient to satisfy Defendants' discovery obligations. *Id.* ¶ 12. This included assuring the City that custodial searches would provide sufficient information about the historical appearance of the app and website to consumers. *Id.*; *see also* Dkt. 93 at 8 ("[E]ach of [Defendants'] custodians will have documents showing the appearance of the app as it relates to their responsibilities.").

Ultimately, the City agreed to a limited slate of custodians to get document discovery underway. On March 3, 2023, the City communicated to Defendants that it was willing to agree to a slate of 12 custodians (including Mr. Tang) as a compromise. Bowcut Decl. ¶ 13. The City emphasized that the slate was small for the discovery requested, the City's agreement was based on limited information, and the City continued to have reservations about the adequacy of the search methodology. *Id*. As the Court had observed in a status conference on February 8, 2023, Defendants' reliance on a "constrictive" slate of custodians increased the chances of other custodians being added later:

> But I think what we would end up with is we want more custodians. And, you know, if they get custodians they're asking for now, does that mean they can't come back and say, (inaudible) no. That doesn't mean it. But I think we increase the chances of other people, including the people they want now, someone getting back into this mix, after they get a chance to look at your documents.

5

*Id.*, Ex. F at 12:15, 13:8-14. On May 1, Defendants agreed to begin searches of the files of 11 of the 12 custodians (not Mr. Tang). *Id.* ¶ 14.

Although Defendants agreed to search 11 custodians on May 1, 2023, Defendants did not produce any further custodial documents until July 21, 2023. Bowcut Decl. ¶ 15.[3] Nevertheless, Defendants represented to the City on June 29, 2023 that they expected to complete their custodial discovery within the next four months, *i.e.*, by the end of October 2023. *Id.* ¶ 16. As of October 1, however—one month before Defendants had said they expected to complete custodial discovery—Defendants had produced 2,107 custodial documents, comprising 10,854 pages. *Id.* ¶ 17.

Concerned about the pace and volume of production, the City wrote Defendants on October 6 and 19, 2023, to obtain information about the discovery that remained outstanding. *Id.* ¶ 18. The City asked DoorDash to specify the number of documents and pages it had reviewed to date, the numbers of documents and pages it had left to review, and the search term hit counts for each agreed custodian. *Id*. Defendants refused to provide the requested information. *Id*.

On January 19, 2024, Defendants informed the Court that they had "substantially completed" production of custodial documents, including the materials from Mr. Tang's custodial files that the Court had ordered produced. Dkt. 250 at 3. Defendants' custodial production consists of 4,030 documents totaling 22,577 pages. Bowcut Decl. ¶ 19. The production includes just 330 documents from 2016 and no documents mentioning the Chicago Fee. *Id*. ¶¶ 22-23. The production contains little usable information on the historical appearance of the app and website; most images are low-quality and undated, and it is unclear whether they reflect final versions. *Id*. ¶ 24. There is substantial variation in production volume by custodian. For example, Defendants

---

[3] Defendants made one production of custodial documents on April 7, 2023, which consisted of 337 documents from the agreed custodians for the promotional discounts conduct, Erin Butler and Neha Zope (the only two agreed custodians as of that date). *Id.*

6

produced 1,433 documents from the files of Sasha Makovik but just 17 from the files of Peter Esmond. *Id.* ¶ 21. The full breakdown of Defendants' production by custodian is as follows (*id.*):

| Custodian | Conduct Category | Documents | Pages |
|---|---|---|---|
| Sasha Makovik | Consumer Fees | 1,433 | 2,672 |
| Jimmy Liu | Consumer Fees<br>Menu Pricing<br>Non-Partner Listings | 585 | 3,857 |
| Kathryn Gonzalez | Consumer Fees<br>Menu Pricing | 252 | 2,222 |
| David Kastelman | Consumer Fees | 439 | 4,187 |
| Jonathan Berk | Driver Pay | 812 | 5,463 |
| Peter Esmond | Menu Pricing<br>Non-Partner Listings | 17 | 30 |
| Ryan Parietti | Menu Pricing<br>Non-Partner Listings | 389 | 1,737 |
| Dylan Richter | Menu Pricing<br>Non-Partner Listings | 310 | 882 |
| Cody Aughney | Driver Pay | 865 | 2,411 |
| Erin Butler | Promotional Discounts | 381 | 2,586 |
| Neha Zope | Promotional Discounts | 157 | 416 |
| Stanley Tang | Consumer Fees | 241 | 1,059 |

Overall, Defendants have produced 5,875 documents totaling 36,032 pages in response to the City's discovery requests. *Id.* ¶ 25. The City understands that the documents not produced from the files of the agreed custodians and Mr. Tang were produced from non-custodial databases or collections. *Id.* ¶ 26. Among these are documents that the City understands are responsive to RFP No. 26, which sought documents produced in other litigation or enforcement investigations related to the same business practices. *Id.* Defendants produced these documents with metadata—the "Custodian" field—that indicate DoorDash gathered the documents from employees' custodial files. *Id.* Among those identified as custodians in the metadata were Mr. Berk, Ms. Lachs, and Mr. Soesanto. *Id.* ¶ 27. However, these are partial collections; Defendants have not searched these employees' full custodial files using the agreed search terms. *Id.* ¶ 28. In addition, Mr. Xu is a

7

sender or recipient on emails produced to the City, but Defendants have not searched or produced from his custodial files. *Id.*

## COMPLIANCE WITH LOCAL RULE 37.2

The City attempted in good faith to resolve these issues with Defendants. As detailed in the accompanying declaration, counsel for the City exchanged letters and email with Defendants' counsel, the parties held a telephone conference on January 17, 2024. *Id.* ¶ 29. Defendants offered to add Ms. Lachs and Mr. Soesanto as custodians for driver pay only (not consumer fees), but they would do so only if the City dropped its other custodian requests. *Id*. The parties have therefore been unable to reach agreement on the issues described herein. *Id*.

## ARGUMENT

### I. THE CITY'S REQUESTED DISCOVERY IS APPROPRIATE.

Federal Rule of Civil Procedure 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." As we explain below, the relevance and proportionality requirements are satisfied here.

#### A. The Four Requested Custodians Possess Relevant Information.

"[The] burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). The City nevertheless shows below that each requested custodian is likely to have highly relevant, non-duplicative information relevant to one or more of these claims, as illustrated with exemplar documents. These exemplars are drawn only from the limited documents produced to the City; they suggest that the full custodial files are likely to contain much more.

***Jonathan Berk (consumer fees):*** Mr. Berk was the company's Director of Business Strategy & Analytics in 2017-18, and "consumer pricing strategy" was one of his areas of focus. *Id.*, Ex. G. Indeed, one of Mr. Berk's documents produced to the City indicates that he was

8

responsible for ███████████████████████████████████████████

███████████████ *Id.*, Ex. J. Defendants have acknowledged that Mr. Berk is an appropriate custodian for the consumer fees category. *Id.* ¶ 7. To a significant degree, Defendants' existing production does not fully captured Mr. Berk's information. Of the 812 documents that Defendants have produced from Mr. Berk's files, 47% (376) were not sent or received by one of the production custodians. *Id.* ¶ 30. In one document of Mr. Berk, not in the files of a custodian, Mr. Berk reported on ███████████████████████████████████████████████████████████████

███ *Id.*, Ex. K. In an exchange with ████████████████, also not in a custodian's files, Mr. Berk ███████████████████████████████████████████████████████████████

████████████████████████████ *Id.*, Ex. L. And Mr. Berk discussed ████████████████

███████████████████████████████████████ *Id.*, Ex. M.

***Jessica Lachs (consumer fees, driver pay):*** Ms. Lachs was the company's Vice President of Analytics & Data Science from 2018 to 2023. *Id.*, Ex. H. Documents produced to the City show that she was a critical player in developing the company's consumer fee and driver pay models. *Id.*, Exs. N – Q, U, W. Defendants' production does not fully capture Ms. Lachs' relevant information. Of the 185 documents that Defendants have produced from Ms. Lachs' files, 79% (147) were not sent or received by a production custodian. *Id.* ¶ 30. For example, in ████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

*Id.*, Ex. N. In 2017, in response to ███████████████████████████████████████

████████████ Ms. Lachs responded to three colleagues (none of them custodians), ████████

████████████████████████████ *Id.*, Ex. O. Ms. Lachs also exchanged messages with a colleague (not a custodian) on ███████████████████████████████████████████████████

9

███████████. *Id.*, Ex. P. And in 2019, Ms. Lachs fielded questions and observations from a colleague (not a custodian) about ████████████████████████████████████████ ████████████████████████████████████████████████████ *Id.*, Ex. Q. Because there has been no search of Ms. Lachs' custodial file, the City does not have Ms. Lachs' response to that critical email. *Id.* ¶ 34(h).

**Charlton Soesanto (consumer fees and driver pay):** Mr. Soesanto was a Product Manager and Director of Project Management between 2015 and 2021. *Id.*, Ex. I. Documents produced to the City show that he, too, was heavily involved in developing Defendants' consumer fee and driver pay models. *Id.*, Exs. R-T. Like the City's other requested custodians, Mr. Soesanto's relevant information is not fully reflected in Defendants' production. Of the 570 documents that Defendants have produced from Mr. Soesanto's files, 84% (477) were not sent or received by a production custodian. *Id.* ¶ 30. In 2017, for instance, Mr. Soesanto discussed with a colleague (not a custodian) ████████████████████████████████████████████████ ████████████████████████████████████ *Id.*, Ex. R. Mr. Soesanto wrote, ███████████ ████████████████████████████ *Id*. In 2019, Mr. Soesanto exchanged emails with a handful of colleagues (none of them custodians) on ███████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████. *Id.*, Ex. S. At the bottom of the chain is an email from Mr. Soesanto that Defendants have redacted for privilege, but which in context █████████████████████ ██████████████ *Id*. And in April 2019, Mr. Soesanto and three colleagues (none of them custodians) ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.*, Ex. T.

10

***Tony Xu (consumer fees, driver pay, menu price inflation, non-partner listings):*** The City does not have documents from the custodial file of Mr. Xu, the CEO. However, Defendants have produced, from other custodians' files, 501 emails on which Mr. Xu was a sender or recipient. *Id.* ¶ 28. Although Defendants have refused to add Mr. Xu as a custodian, asserting that he was not involved in the development of or decision-making regarding the practices at issue, ▮ ▮. In 2016, for instance, Mr. Xu wrote several employees (none of them production custodians) an email with the subject heading ▮ *Id.*, Ex. U. Mr. Xu expressed ▮ *Id.* In 2017, Mr. Xu corresponded with several employees about ▮ *Id.*, Ex. V.

Mr. Xu ▮. For example, ▮ *Id.*, Ex. W. The City has this exchange because ▮ *Id.*. However, the City is not privy to ▮ that may exist in Mr. Xu's files, or to what he did (or did not do) ▮

Mr. Xu also ▮. In 2020, ▮ *Id.*, Ex. X. The thread included ▮

11

██████████████████████████████████████████████████████████████████ *Id.*[4]

Mr. Xu was included in another 2020 email thread among several DoorDash employees on ██████████████████████████████████████████████████████████████████ *Id.*, Ex. Y.

An underlying premise █████████████████████████████████████████████████

██████████████████████████████████████████████████████ *Id.* Mr. Xu ████████

███████████████████████████████████████████████████████████████████

████████████████ *Id.*

## B. Adding the Four Custodians Is Proportional to the Needs of the Case.

In determining whether a request is proportional to the needs of the case, courts consider "the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Kodish*, 235 F.R.D. at 450; *see also* Fed. R. Civ. P. 26(b)(2)(iii). Producing relevant documents from the full files of these four custodians is proportional to the needs of the case.

This is a law enforcement action in which the City alleges that Defendants engaged in diverse forms of misconduct that misled consumers and unfairly harmed restaurants and drivers, in violation of the City's consumer protection ordinances. *See* Compl. ¶¶ 188-210. Because potentially millions of delivery transactions are at issue, and the City may recover fines and restitution associated with each one, the amount in controversy is significant. *See* MCC § 2-25-090. Defendants' resources are not in question—DoorDash's reported revenue in 2022 was $6.6 billion. Bowcut Decl., Ex. Z. And the discovery is crucial to resolving the issues in this case: These documents are necessary to show, among other things, the representations and disclosures

---

[4] In e-commerce, ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

(or lack of disclosures) that Defendants made to consumers over time; the practices' tendency to mislead consumers or harm restaurants and drivers, as reported to and/or discussed within the company; and Defendants' reasons for engaging in the practices, which may establish the materiality of Defendants' representations to consumers and Defendants' intent that consumers rely on those representations. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002) (reciting elements of deception and unfairness claims).

The burden of the City's requested discovery does not outweigh its likely benefit. Defendants' production of just more than 22,000 pages of documents from the files of only 12 custodians is hardly an overwhelming burden for a case and defendants of this size. As the Court noted, "[I]n the context of this case, it appears to me to be ridiculous to be arguing about whether it's going to be six or seven or 13 DoorDash custodians. It's a pretty big case. The City isn't asking for 45 custodians or 52." *Id.*, Ex. F at 7:25 – 8:4. The analysis should be the same when adding three new custodians, for a total of 15, and expanding the searches of Mr. Berk's files. Particularly in a law enforcement action against an industry-leading company alleging five different forms of misconduct that occurred over the course of several years, these numbers of custodians and documents are eminently reasonable. *See, e.g., Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2021 WL 678872, at *1 (N.D. Ill. Feb. 22, 2021) (Gilbert, M.J.) (finding plaintiff's list of 27 ESI custodians to be reasonable); *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2018 WL 4613151, at *6 (N.D. Cal. Sept. 26, 2018) (rejecting argument that producing "well over 100,000 documents" would be unduly burdensome and deeming 50 custodians reasonable in patent infringement action).

Defendants' perfunctory claims that adding four custodians is burdensome and cumulative—raised in the meet-and-confer process—do not suffice. This is not a case where

13

Defendants already undertook an exhaustive search. Defendants took eight months to complete a modest custodial production while resisting the City's efforts to understand what remained to be reviewed for which custodians. Bowcut Decl. ¶¶ 15-18. The burden that Defendants see in being asked to start up their discovery machinery for new custodians is one the City warned about, one the Court anticipated, and one they could have avoided by agreeing to a broader approach at the outset. All that is happening is the City seeking reasonably full discovery, now that it is at less of an informational disadvantage about who did what within the company.

Defendants' mantra that additional custodians would have only cumulative information is unsupported and untrue, for the reasons discussed above. In response to the City's assessment that the files of Mr. Berk, Ms. Lachs, and Mr. Soesanto had non-duplicative information, Defendants could have provided metrics and/or a detailed explanation rebutting the City's conclusion—but they did not. Indeed, discovery has not borne out Defendants' past predictions about duplication. For example, in custodian negotiations in January 2023, Defendants asserted that Mr. Berk's emails on driver pay were expected to be significantly duplicative of Cody Aughney's. *Id.* ¶ 31. Yet, the City has identified key emails about driver pay from Mr. Berk's files on which Mr. Aughney was not a sender or recipient. *Id.* ¶ 36(a), (b) & Exs. AA, BB. Defendants also represented that Peter Esmond's documents would be sufficient to show the relevant facts about menu pricing and non-partner listings. *Id.* ¶ 31. However, the files of the other custodians ultimately designated on these topics yielded significant documentation that the City did not get from Mr. Esmond (from whose files Defendants produced only 17 documents). *Id.* ¶ 36(c), (d) & Exs. CC, DD.

Further, Defendants' document production ███████████████████████████
████████████████████████████████████████████████████████████████

14

████████████████████ consumer fees, driver pay, menu price inflation, and non-partner listings. *See Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (ordering Twitter to include CEO's files in custodial searches based on CEO's role at the company and in the alleged conduct). It beggars belief that Mr. Xu, whose purview by definition is the entire company, did not discuss these issues of core business and pricing strategy with colleagues other than the existing custodians—including other members of the executive team.

Yet, even assuming some overlap with the documents already produced, Defendants cannot simply ignore these sources of demonstrably relevant information. "The idea that responsive documents will necessarily be found in other custodians' records" does not defeat a discovery request, since "[i]t always possible that one custodian will have a document or documents that other custodians have not retained, or even that one custodian may have created a document … that no other custodian possesses." *Id*. Nor, as the Court has recognized, are the files of corporate executives exempt from discovery on the non-existent theory that they are "apex custodians." Dkt. 241 at 2-3. There is no burden to DoorDash executives in searching and reviewing their emails for responsive documents.

## **CONCLUSION**

The City respectfully requests that the Court grant this motion and order Defendants to include (1) Jonathan Berk as a custodian for their searches related to consumer fee conduct; (2) Jessica Lachs and Charlton Soesanto as custodians for their searches related to consumer fee and driver pay conduct; and (3) Tony Xu as a custodian for their searches related to consumer fees, driver pay, menu price inflation, and non-partner listing conduct.

15

DATED:  February 2, 2024

**CITY OF CHICAGO DEP'T OF LAW,
AFFIRMATIVE LITIGATION DIVISION**

By: */s/ Stephen J. Kane*
Stephen J. Kane
Peter H. Cavanaugh
121 N. LaSalle Street
Room 600
Chicago, IL 60602
Phone: (312) 744-6934
stephen.kane@cityofchicago.org
peter.cavanaugh@cityofchicago.org

Respectfully submitted,

**COHEN MILSTEIN SELLERS &
TOLL PLLC**

By: */s/ Brian E. Bowcut*
Brian E. Bowcut (*pro hac vice*)
Peter Ketcham-Colwill (*pro hac vice*)
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Phone: (202) 408-4600
bbowcut@cohenmilstein.com
pketcham-colwill@cohenmilstein.com

Lisa M. Ebersole (*pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
Phone: (202) 408-4600
lebersole@cohenmilstein.com

*Attorneys for Plaintiff City of Chicago*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, I electronically filed the City's *Motion to Compel Document Discovery from Four Additional Custodians* using the CM/ECF system, which will send notice of this filing to all counsel of record.

Dated: February 2, 2024          /s/ *Lisa M. Ebersole*