**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

City of Chicago,

                *Plaintiff*,

      v.

DoorDash, Inc. and Caviar, LLC,

                *Defendants*.

Civil Action No. 1:21-cv-05162

Hon. Jeremy C. Daniel
Magistrate Judge Jeffrey T. Gilbert

## SUPPLEMENT TO MARCH 15, 2024 JOINT STATUS REPORT

The parties file this Supplement to their March 15, 2024 Joint Status Report. Plaintiff, the City of Chicago, has asked to file this Supplement to correct information it previously provided to the Court relating to DoorDash's RFP Nos. 95 and 96.

The City explains below that its document "hit counts" for RFP Nos. 95 and 96 were inadvertently underinclusive; the City has therefore provided updated hit counts and burden estimates. DoorDash responds below to the City's new information.

A.    **RFP No. 95:** For the time period January 1, 2019 through June 28, 2021, DOCUMENTS RELATING TO YOUR investigation of DOORDASH, only to the extent the DOCUMENTS PERTAIN TO one or more of the allegations in YOUR COMPLAINT.

**City of Chicago:** For purposes of assessing the burden of the full scope of RFP No. 95, the City previously searched emails of 20 participants in the City's investigation, for the full period DoorDash requested (September 1, 2020 through August 27, 2021), using "DoorDash," "Caviar,"

"meal delivery," "third-party delivery," and variants.[1] The search applied these terms to intra-Law Department communications, communications between the Law Department and Cohen Milstein, and City lawyer communications with City personnel. That search identified 2,211 documents. However, the City has determined that count was underinclusive. A file containing Law Department emails inadvertently was not uploaded to the City's document review platform, meaning that the search was conducted only on a partial set of City emails and attachments. The City has re-run the search and reports a revised count of 4,313 documents, including family members. The City estimates that reviewing these documents for responsiveness and logging them for privilege would take 173-216 hours.

Regarding DoorDash's further argument below, the problem remains that DoorDash is demanding that the City search thousands of emails exchanged among Cohen Milstein, City attorneys, and other City personnel carrying out the investigation into DoorDash at the direction of counsel. The vast majority of these emails will be protected by the attorney-client privilege, *see In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014), and the work-product doctrine, with any exceptions likely non-substantive in nature. The City has already provided the factual basis for this lawsuit not just through a detailed, 210-paragraph Complaint, but also by producing non-privileged documents upon which the City relied for the allegations, among other materials; a further search of thousands of overwhelmingly privileged documents for yet more facts from the investigation is not proportional to the needs of the case. Although DoorDash insists

---

[1] The search included as custodians Law Department attorneys Stephen Kane, Elie Zenner, and Rachel Granetz; Law Department law clerk Deirdre McCall; Cohen Milstein attorneys Betsy Miller, Chloe Bootstaylor, Johanna Hickman, Brian Bowcut, Peter Ketcham-Colwill, Caitlin McGowan, and Maya Sequeira; Cohen Milstein paralegals Amelie Clemot, Camila Zubieta Ferreira, and James Melvin; BACP attorney Tamara Starks; and BACP personnel Rosa Escareno, Miguel Campos, Jaime Martinez, Ivan Capifali, and Sherry Cianciarulo.

that it also is entitled to "factual findings," including any findings that may not be reflected in the Complaint, factual findings made during an investigation conducted at the direction of counsel are privileged. *See, e.g.*, *United States ex rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *3-*4 (E.D. Cal. Jan. 26, 2023); *see also United States v. Klein*, 2017 WL 782326, at *2 n.1 (E.D.N.Y. Feb. 28, 2017). The EEOC cases that DoorDash cites are inapposite because they do not address the problem here: that the requested discovery is unduly burdensome because it requires a search of thousands of documents that by their very nature are overwhelmingly likely to be privileged.

**DoorDash:** First, DoorDash notes that it is concerning that the City did not discover, until this late date, that it had omitted from its search a critical population of directly relevant documents. As previously discussed with this Court, the City has continued to delay providing to DoorDash critical discovery that DoorDash needs to defend itself in this case, even though the City is the one that chose to bring this case.

Second, documents relating to the City's investigation of DoorDash, to the extent those documents relate to the City's allegations against DoorDash, are highly relevant and discoverable. The City itself has acknowledged that "[t]o be sure, some evidence that the City collected during its investigation is relevant to the City's case-in-chief." Dkt. 110 at 9. And this Court has agreed, stating that "[t]he City does not dispute (nor could it) that documents and communications collected during its investigation of DoorDash are relevant[.]" Dkt. 206 at 45. Other courts have categorically found that "[i]nformation from investigations into the incident which forms the basis for [a] lawsuit . . . is by definition highly relevant to [the] lawsuit." *Spell v. McDaniel*, 591 F. Supp. 1090, 1115 (E.D.N.C. 1984).

That the City's search for investigation-related documents results in over 4,000 hits provides more, not less, reason that the City should produce those documents. The volume of

documents confirms that the City's investigation was fact-intensive, and that the City has been dragging its feet in reviewing and producing these highly relevant documents. DoorDash is entitled to relevant factual findings from the investigation—not just the investigation-related documents the City handpicked to cite in its Complaint.

Beyond just the documents collected in the investigation, moreover, documents reflecting investigators' "knowledge of . . . facts the [agency] uncovered during [its] investigation" are "relevant to [a defendant's] efforts to formulate a defense[.]" *EEOC v. Riverview Animal Clinic, P.C.*, 2010 WL 11562045, at *3 (N.D. Ala. Apr. 1, 2010); *see also EEOC v. Albertson's LLC*, 2007 WL 1299194, at *1 (D. Colo. May 1, 2007) (allowing deposition about investigation, though EEOC already produced its investigation file in discovery, because information about the investigation process is "obviously relevant"). Thus, documents responsive to RFP No. 95 would include not only the documents the City collected during its investigation, but also City communications that would shed light on the investigation process and reflect factual findings from the investigation, beyond just those the City chose to include in its Complaint.

Contrary to the City's representations, nonprivileged communications likely exist, given that the City itself has identified in interrogatory responses several nonlawyer City employees who were involved in the investigation, and further described the role of those nonlawyers in its March 29, 2024 interrogatory response. And as this Court has advised, just because a communication involves a lawyer does not make it privileged. 2/13/24 Hr. Tr. at 17:17-25; *see* Dkt. 299 at 9-10.

The City's brand-new argument that "factual findings made during an investigation conducted at the direction of counsel are privileged" is simply wrong, and the out-of-district cases it cites actually clarify that only "the *legal conclusions and opinions of counsel* stemming from a factual investigation" are privileged. *Klein*, 2017 WL 782326, at *2 n.1 (emphasis added). In

general, courts construe privilege narrowly, and the burden is on the party claiming privilege to present facts demonstrating the existence of the privilege. *F.T.C. v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). Further, "privilege protects only *communications* made in confidence by a client and a client's employees to an attorney acting as an attorney, for the purpose of obtaining legal advice." *United States ex rel. Gill v. CVS Health Corp.*, 2024 WL 406510, at *9 (N.D. Ill. Feb. 2, 2024) (emphasis in original); *see also RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) ("documents that are not primarily legal in nature are not privileged[.]"). Thus, "factual findings" of an investigation, even if collected "at the direction of counsel," are not automatically privileged. *See Gill*, 2024 WL 406510, at *8 (finding privilege log suspect, including an entry for a "spreadsheet prepared at the direction of counsel," where the document was never actually sent to a lawyer, and nothing about the entry implied that its subject matter involved legal advice).

That the City is a government entity conducting an investigation does not change this basic rule of privilege. *See Riverview*, WL 11562045, at *1 (in case involving agency investigation, reasoning that "when the government seeks affirmative relief as the plaintiff, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over") (cites and quotes omitted). This is especially true here because the City has made its investigation findings central to its case. *See* Compl. ¶¶ 73, 129, 134, 138, 144. The City even seeks damages for "its costs of investigation," including attorneys' fees. *Id.* ¶ 199. As this Court noted at the last status conference, the City cannot continue to hide behind sweeping claims of privilege to block highly relevant discovery. 2/13/24 Hr. Tr. at 17:17-25.

Finally, as explained in the Joint Status Report ("JSR"), RFP No. 95 is narrowly drafted, as it just asks for the subset of non-privileged documents that relate to the City's investigation of DoorDash alone, and only to the extent they relate to the City's Complaint. Dkt. 299 at 8.

The City should review the results of its search and produce responsive documents.

**B.** **RFP No. 96:** For the time period January 1, 2019 through June 28, 2021, DOCUMENTS (including COMMUNICATIONS between CITY OF CHICAGO employees) RELATING TO or reflecting COMMUNICATIONS between YOU and restaurants in the course of YOUR investigation of DOORDASH, only to the extent they PERTAIN TO the allegations in YOUR COMPLAINT.

**City of Chicago:** To assess the burden of the full scope of RFP No. 96, the City previously searched emails among 20 participants in the City's investigation for (1) "DoorDash" and variants, in association with (2) the names of restaurants and restaurant owners and managers the City communicated with. The search applied these terms to City communications and communications between the City and Cohen Milstein. That search identified 559 documents. However, this count was underinclusive for the reasons described above. The City has re-run the search and reports a revised count of 1,060 documents, including family members. The City estimates that reviewing these documents for responsiveness and individually logging them for privilege would take 44-53 hours. The City has already produced its communications with restaurants and documents provided by or to those restaurants. The City continues to disagree with DoorDash that this further project is warranted, once again because it asks the City to review a large volume of clearly privileged correspondence.

**DoorDash:** For the reasons above and in DoorDash's sections of the JSR (Dkt. 299 at 7, 14-15), the City should review and produce the reasonable number of documents from the search it describes above.

The parties do not dispute that restaurant interviews the City conducted in the course of its investigation are relevant. *See* Dkt. 206 at 47 ("[A]s to restaurant interviews, the City does not

appear to dispute these are relevant and responsive[.]").  Because the City has asserted privilege over all notes of its interviews with restaurants, however, DoorDash only has access to a few non-substantive communications between the City and the restaurants with which it communicated before bringing this case.  *See* Dkt. 299 at 15.  DoorDash propounded RFP No. 96 in an effort to obtain non-privileged internal communications about the City's interactions with restaurants, which would shed at least some light on those interactions and thus are vital to DoorDash's case.

RFP No. 96 is narrowly drafted to include only non-privileged documents that relate to the City's investigation of DoorDash alone, and only to the extent they relate to the allegations in the Complaint.  Further, the City's proposed burden of roughly 1,000 documents is reasonable and proportionate, given the highly relevant nature of the documents.  The City should stop delaying and review that population to produce responsive documents.

DATED: May 3, 2024

**CITY OF CHICAGO DEP'T OF LAW, AFFIRMATIVE LITIGATION DIVISION**

By:  /s/ Stephen J. Kane
Stephen J. Kane
Peter H. Cavanaugh
121 N. LaSalle St.
Room 600
Chicago, IL 60602
Phone: (312) 744-6934
stephen.kane@cityofchicago.org
peter.cavanaugh@cityofchicago.org

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:  /s/  Brian E. Bowcut
Brian E. Bowcut (*pro hac vice*)
Peter S. Ketcham-Colwill (*pro hac vice*)
1100 New York Avenue, NW
Suite 500
Washington, DC 20005
Phone: (202) 408-4600
bbowcut@cohenmilstein.com
pketcham-colwill@cohenmilstein.com

Lisa M. Ebersole (*pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
Phone: (202) 408-4600
lebersole@cohenmilstein.com

*Attorneys for Plaintiff City of Chicago*

7

| | |
|---|---|
| **GIBSON, DUNN & CRUTCHER LLP** | **FORDE & O'MEARA LLP** |

By: /s/ Michael Holecek
Joshua S. Lipshutz (*pro hac vice*)
1050 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 955-8500
jlipshutz@gibsondunn.com

Michael Holecek (*pro hac vice*)
Cynthia Chen McTernan (*pro hac vice*)
333 S. Grand Avenue
Los Angeles, CA 90071
Phone: (213) 229-7000
mholecek@gibsondunn.com
cmcternan@gibsondunn.com

By: /s/ Michael K. Forde
Michael K. Forde
Brian P. O'Meara
191 North Wacker Drive
31st Floor
Chicago, IL 60606
Phone: (312) 641-1441
mforde@fordellp.com
bomeara@fordellp.com

**RILEY SAFER HOLMES
& CANCILA LLP**

By: /s/ Patricia Brown Holmes
Patricia Brown Holmes
Sarah E. Finch
70 W. Madison Street
Suite 2900
Chicago, IL 60602
Phone: (312) 471-8700
pholmes@rshc-law.com
sfinch@rshc law.com

*Attorneys for Defendants DoorDash, Inc. and Caviar,
LLC*