UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

City of Chicago,

          *Plaintiff*,

  v.

DoorDash, Inc. and Caviar, LLC,

          *Defendants*.

Civil Action No. 1:21-cv-05162

Honorable Jeremy C. Daniel
Magistrate Judge Jeffrey T. Gilbert

# DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY

The City asks DoorDash to be content with the documents it has produced about its pre-suit investigation of DoorDash, which purportedly "reflect the *results* of the City's investigation and the factual basis for its claims." Dkt. 324 ("Opp.") at 2 (emphasis added). But DoorDash already knows the City's view of the results of its investigation and the purported basis for its claims. To defend against those claims, DoorDash is entitled to its own discovery into investigation materials, as limited to the individuals and entities the City itself identified as relevant. The City should not be allowed to produce only the documents that support its claims.

DoorDash is also entitled to the limited discovery it seeks regarding the financial bias of its counsel, Cohen Milstein, and the adequacy of the City's purported checks on it. These requests go to the heart of DoorDash's Fifteenth Affirmative Defense (due process). To date, the City has produced just *five documents* related to that defense. That is on its face insufficient.

DoorDash asks the Court to compel adequate responses to its narrow requests.

## ARGUMENT

### I. The City Must Provide Documents Related to Its Pre-Suit Investigation

#### A. The Investigation Materials the City Has Produced to Date Are Inadequate.

DoorDash seeks communications that would provide factual context for the few investigation materials the City has produced, reflect facts to undermine the City's findings, and illustrate the scope and rigor of the investigation. The City now argues that "the adequacy of the investigation is irrelevant," Opp. at 2, but the sole case it cites does not support that conclusion. That case, *EEOC v. AutoZone, Inc.*, 141 F. Supp. 3d 912, 915 (N.D. Ill. 2015), addressed the EEOC's unique pre-suit investigation obligations and found that "the Court may not inquire into the sufficiency of the EEOC's pre-suit investigation in order to 'limit' the scope of the litigation." DoorDash has never purported to seek investigation-related evidence to limit the scope of the litigation. Rather, it seeks investigation-related evidence to challenge and independently assess the

City's findings and factual allegations. *See Cooper v. Salazar*, 2001 WL 1351121, at *6 (N.D. Ill. Nov. 1, 2001) (compelling production of investigative file, because "[g]iving complainants access to nothing but their Reports limits the information they obtain to what the investigator chooses to share"). The City will surely use its investigation findings at trial against DoorDash; DoorDash is entitled to examine the factual support for those findings, and communications reflecting pertinent facts, to defend itself.

The investigation-related documents the City has produced are insufficient, because most omit relevant context, lack substance, or—like the documents the City relied on to draft its Complaint—support only the City's side of the case. For example, the "emails to and from restaurants" the City produced (Opp. at 2) largely consist of non-substantive emails thanking restaurants for speaking to the City. Further, the "documents related to test DoorDash Platform orders" and the "screenshots of the DoorDash and Caviar Platforms taken during the investigation" (*id.*) amount to a mass of screenshots, stripped of communications that would provide context for their collection. And the "emails related to BACP Commissioner Escareno's determination" of liability (*id.*) total 41 documents, most of them e-calendar invites and scheduling emails.

## B. The City's Privilege Claims Are Factually and Legally Meritless.

The City claims that DoorDash's requests seek "overwhelmingly privileged" materials (Opp. at 1, 3, 4, 6, 10, 11), while admitting it has not actually reviewed those materials (*id.* at 9). It contends that, because some investigators were lawyers and the investigation was conducted "for the purpose of advising the City on its claims against DoorDash and preparing for litigation," nearly all communications about the investigation are privileged. *Id.* at 3. This misstates the law, as described below. At the very minimum, the City should produce a random sample of responsive documents and a corresponding privilege log, to test the City's unsupported assertions that the

documents and communications sought are largely privileged and that the burden of any privilege review outweighs the benefit of such facts.

Here, DoorDash seeks access to facts. The law is clear: Facts gathered in investigations are not privileged. *See Rodriguez v. City of Chicago*, 329 F.R.D. 182, 187 (N.D. Ill. 2019) (finding that deliberative process privilege did not apply to emails in investigation file that "convey merely factual information," and reasoning that the "privilege does not apply to purely factual information unless it is inextricably intertwined with deliberations") (citation and quotations omitted); *Gardner v. Johnson*, 2008 WL 3823713, at *1, 2 (N.D. Ill. Aug. 13, 2008) (compelling production of factual parts of investigation report and underlying documents, including on the basis that "[t]he part of the report containing factual, objective information [is] not considered privileged").

The City nonetheless argues "DoorDash [is not] entitled to 'factual findings' not in the Complaint" because "[f]actual findings in an investigation conducted for the purpose of rendering legal advice are privileged." Opp. at 10. This is wrong, and the City's out-of-district cases do not support its position. *See U.S. ex rel. Schmuckley v. Rite Aid Corp*, 2023 WL 425841, at *3 (E.D. Cal. Jan. 26, 2023) (finding a single email and attachment, sent to a lawyer for the purpose of facilitating legal advice, were privileged); *United States v. Klein*, 2017 WL 782326, at *2 (E.D.N.Y. Feb. 28, 2017) (section cited by the City concerns a hearsay rule "entirely unrelated to the attorney-client privilege"). The City also relies on *S.E.C. v. Buntrock*, 2004 WL 1470278 (N.D. Ill. June 29, 2004), but that case concerned the propriety of a 30(b)(6) deposition, where the SEC had already produced its voluminous investigation files. *Id.* at *2.

The City is also wrong that privilege necessarily "extend[s] to communications among non-attorneys" who "acted under the supervision of counsel in furtherance of the investigation," Opp. at 3, and it cannot assert an umbrella privilege over its investigation documents on this basis.

3

"[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The burden is on the party claiming privilege to prove the existence of the privilege. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). To do so, the City must show that *each* communication "(1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal matters; and (4) is at the client's instance permanently protected." *F.T.C. v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980); *see also Scott v. City of Peoria*, 280 F.R.D. 419, 427 (C.D. Ill. 2011) (in case finding that City's investigative report was not protected by privilege, noting that "assertion of privilege is on a document-by-document basis"); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) ("documents that are not primarily legal in nature are not privileged[.]"). The City offers no justification for its position that it should be categorically excused from doing so.

   **C. The City's Burden Claims Are Inflated and Do Not Justify Refusal to Produce.**

For the first time in the parties' negotiations over these requests, the City has run searches to estimate its burden of production. Opp. at 4-7, 9. It now claims it must review over 18,000 documents, but that number appears to be vastly inflated. The City recently provided estimated hit counts for RFP No. 95 ("documents relating to your investigation of DoorDash" that pertain to the City's allegations) totaling 4,313 hits—a far cry from 18,000. Dkt. 310 at 2.

The City's date range alone—January 1, 2018 to June 1, 2024—is vastly overbroad. In the course of the parties' negotiations, DoorDash narrowed the scope of RFP Nos. 24, 25, 27, 34, and 35 to the City's *pre-suit* investigation of DoorDash, spanning, at most, mid-2020 through August 27, 2021. Dkt. 311-2, Ex. W at 5. Thus, the City's date range is overbroad by several years. The

City also provides zero explanation for how it arrived at its very specific estimated review times—*e.g.*, "between 751 and 939 hours." Dkt. 324-1 at ¶ 6.

### D. DoorDash's Specific Requests Are Targeted to Seek Critical Information.

#### 1. Documents Exchanged Among City Investigators (RFP Nos. 24, 35)

The City contends that DoorDash's RFP Nos. 24 and 35 (seeking investigation-related documents exchanged between the City and people identified by the City as having knowledge of its allegations) impose an undue burden because *some* of the individuals in the City's discovery response are lawyers. Opp. at 4. But RFP Nos. 24 and 35 were narrowly drafted to target relevant information. They are limited to individuals "whom Plaintiff believes" have knowledge relating to this case (Dkt. 311-2, Ex. B at 6)—including lawyers, but also many nonlawyers. *Id.*, Ex. F. And as discussed above, factual material itself—whether from lawyers or nonlawyers—is not privileged.

The City also argues that investigators were "not firsthand witnesses to the underlying facts." Opp. at 4. But this contradicts the City's own interrogatory response, which represents that the investigators it identified had knowledge of the City's allegations. Dkt. 311-2, Ex. F. It also ignores that discovery into an investigation is proper, even if investigators lack firsthand knowledge. *See EEOC v. Riverview Animal Clinic, P.C.*, 2010 WL 11562045, at *3 (N.D. Ala. Apr. 1, 2010) (rejecting claim that EEOC "lacks first-hand knowledge of events," as EEOC was "privy to information from the investigation that [defendant] can only learn about from [them]").

These documents will allow DoorDash to independently assess the allegations in the complaint that are based on the City's investigation. For instance, the City alleges that its "investigation revealed that consumers pay DoorDash fees that can add up to more than *six times* the initial Delivery Fee" (Compl. ¶ 8) and that, "based on the City's investigation," menu price "markups dramatically and deceptively increase the cost of Defendants' Service." *Id.* ¶ 73. But if

the City's documentation of its test orders—for example, screenshots of restaurant menus, DoorDash platform menus, and checkout screens—show lower fees and menu price differentials, this would rebut the City's anecdotal statements. As another example, the City claims DoorDash did not honor refunds on menu price overcharges. *Id.* ¶ 134. DoorDash is entitled to any internal documents related to that allegation—for example, screenshots of menus and receipts that City investigators collected and shared with each other—to objectively test these allegations.

2. *Internal Communications About the Investigation (RFP Nos. 25, 34, 109)*

DoorDash also seeks the *communications* of individuals who worked on the investigation, as identified by the City in its response to Interrogatory No. 1, only to the extent they relate to the City's allegations (RFP Nos. 25, 34), as well as communications about the appearance of the platform (RFP No. 109). The City says without support that these documents "squarely seek privileged and work product-protected emails." Opp. at 5. Again, the City cannot assert a blanket privilege without showing that specific documents actually seek or reflect legal advice. For this reason, DoorDash rejected the City's proposal to exclude from its review all documents even copying lawyers.

Further, DoorDash is not seeking the City's "opinions" about the investigation. *See id.* Instead, it seeks documents to assess and rebut the City's cherry-picked evidence, including parts of the investigation that cannot be captured in screenshots—such as investigators' communications reflecting the number of steps needed to access fee and promo disclosures, the ease of accessing tooltips, the timing and flow of the checkout process, or the promptness and accuracy of delivery orders.

Without documents showing how the City generated the anecdotes in the Complaint, DoorDash cannot defend against those anecdotes, even though the City is sure to use them at trial. For instance, the City alleges that orders placed to restaurants unaffiliated with DoorDash "result[]

in poor consumer experiences, including cancellation of orders" (Compl. ¶ 150). But the City has not produced *any* of its internal communications, which may show how many orders were actually cancelled, and under what circumstances. As another example, the City alleges that, during the investigation, it "placed 24 test orders through the DoorDash Platform to Unaffiliated Restaurants," and of the purported menu price overcharges, DoorDash only refunded about half. *Id.* ¶ 138. That quantification must have come from factual material generated in the investigation, such as order receipts, tallies, and comparisons of charged prices against menu prices. But the City has not produced its communications about this experiment, which could show how the City chose the restaurants it tested (which DoorDash could use to show that its methodology produced a flawed outcome); how the City ascertained it was entitled to a refund (which, if produced, DoorDash could rebut); and how the City calculated the deficiencies of partial refunds, including alleged "small shortfalls of $0.01 to $0.03" (*id*. ¶ 138(f)). Similarly, the City alleges that, during its investigation, it "reviewed a sample of 35 Unaffiliated Restaurants across Chicago and compared" the DoorDash menu with restaurant menus to assess the accuracy of DoorDash's platform. *Id.* ¶ 144. DoorDash is entitled to internal communications that would show, at a minimum, how the City selected those restaurants and its menu comparison criteria.

3. *Internal Communications Related to Restaurants (RFP Nos. 24, 35, 108)*

The City also refuses to produce its internal communications about the restaurants that were purportedly harmed or involved in the City's investigation, arguing without support that the communications are "overwhelmingly privileged" and "of marginal relevance." Opp. at 6-7. The City offers no specific evidence that these communications would be privileged.

This Court recognized the relevance of restaurant interviews (Dkt. 206 at 47), but because the City has claimed all such interviews are privileged (Dkt. 158 at 10), DoorDash has next to no information about the City's interactions with restaurants. Thus, the communications sought here

are key, and DoorDash should not have to rely on the City's accounts of restaurant complaints. For instance, the City alleges that "[a]s part of its investigation, the City collected information from many local restaurants. Many described their dire economic straits and the direct role that DoorDash's predatory tactics have played[.]" Compl. ¶ 11. DoorDash is entitled to communications about such complaints, which may more directly reflect what restaurants said in their own words.

### 4. Internal Communications Related to Consumers (RFP No. 108)

The City baldly claims that producing its internal communications about consumers identified by the City as being harmed by DoorDash's practices (RFP No. 108) would be "objectionable for the same reasons as the request for internal communications about restaurants," and that such a search would be "wide-ranging" because it would require the City to consider "those who [the City identified as] suffer[ing] harm as a result of each category of misconduct in the Complaint." Opp. at 7.

Such a search is warranted. The City cannot claim that DoorDash harmed broad categories of consumers (Dkt. 311-2, Ex. G at 1-2) in a case dominated by allegations about consumer harm, then refuse to respond to requests about those consumers. Given that the City "has not contacted consumers harmed by DoorDash" (Opp. at 7 n.4), DoorDash has little insight into the factual basis for the City's claims of consumer harm beyond the communications sought here.

### 5. Internal Communications Related to Journalists (RFP Nos. 24, 35)

Nearly a year after the City identified journalists in its response to Interrogatory No. 1 (the interrogatory that seeks individuals with knowledge of the allegations in the Complaint and is referenced in RFP Nos. 24 and 35), the City has finally agreed to search for relevant communications with journalists. DoorDash appreciates this agreement, though belated.

6. *Internal Communications Related to Contacts with DoorDash (RFP No. 27)*

The City's proposal as to RFP No. 27 is unduly narrow because (1) it does not include the City's mid-2020 communications regarding its interactions with DoorDash about the Third-Party Rules, which govern the same consumer-facing disclosures at issue in the Complaint, and (2) it offers only to search the documents of one individual, related to one meeting. DoorDash rejected this narrow offer at the meet and confer stage, but provided a counteroffer, asking that "any search for responsive documents . . . include additional custodians, perhaps including counsel" (Dkt. 311-2, Ex. DD at 8). As its search is limited to, at most, a handful of meetings, the City should run searches over all of the meeting attendees from the City.

Responsive documents are relevant to DoorDash's waiver, laches, and estoppel defenses, as they would shed light on the City's prejudicial delay in suing DoorDash. Here, the City knew of DoorDash's practices for many years. In mid-2020, the City investigated DoorDash and stated it was "substantially compliant" with the City's consumer-disclosure rules; then it sued DoorDash in August 2021 for conduct that was governed by those same rules. Waiver "occurs when a party *intentionally* relinquishes a *known* right," see *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019) (emphasis added). The City's communications are necessary to understand the City's knowledge of a right to sue DoorDash and its intent not to do so. City communications about pre-Complaint meetings with DoorDash are also important to understand the City's motivations, as relevant to DoorDash's Thirteenth and Fourteenth Affirmative Defenses (First Amendment and Equal Protection), which allege that the City singled out DoorDash for prosecution because it criticized City regulations. Limited as they are to a few meetings, these requests are far narrower than those as to which the City sought a protective order. *See* Dkt. 206.

II. **DoorDash Is Entitled to Probe Cohen Milstein's Financial Bias Via Its Narrow RFPs**

The City rehashes its summary judgment argument that its retainer agreement and self-serving interrogatory responses are sufficient to demonstrate its control over its outside counsel. Opp. at 13. To the contrary, courts have permitted more detailed discovery to test a government's "actual control" over outside counsel. *See Merck Sharp & Dohme Corp. v. Conway*, 947 F. Supp. 2d 733 (E.D. Ky. 2013) (allowing depositions into counsel's knowledge of the case and involvement in the litigation). Nevertheless, to date, DoorDash has received in discovery only *five documents* and bare interrogatory responses relating to its due process defense. *See* Dkt. 228. DoorDash must be allowed to pursue at least some narrow discovery into this defense.

According to the City, this Court disagrees that any discovery into this defense is "appropriate." Opp. at 13. Not so. While the Court found DoorDash's earlier requests overbroad as drafted, it did not bar all discovery into the due process defense, and in fact clarified that "[t]he City does not dispute that some discovery into DoorDash's Fifteenth Affirmative Defense is appropriate[.]" Dkt. 163 at 3. The Court also suggested the parties should continue to meet and confer as to the appropriate scope of discovery into the due process defense. *Id.* at 12.

Further, the City claims that these requests are "premised on baseless allegations that the City inadequately controls this litigation" (Opp. at 12). But there is ample evidence supporting these requests. The City's own productions show that the City, often via Cohen Milstein lawyers, did in fact correspond with several other government entities regarding this case. And, again, Cohen Milstein has a history of coaxing government entities to pursue litigation. *See* Dkt. 226-1, Exs. 3-6. These requests are far from baseless.

The City further argues that the requests at issue are irrelevant, even under the control test. As to RFP No. 102 ("Communications between Cohen Milstein and third parties related to this action . . . ."), the City argues that such communications would "show Cohen Milstein has a

financial interest—which is undisputed—not that the documents would show a lack of City control." Opp. at 14. Under the City's faulty reasoning, the *extent* of a prosecutor's financial bias is irrelevant to a due process analysis. This is not the case. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (1980) (in due process case, weighing whether "there is a realistic possibility" of bias based on the amount of money the prosecutor stood to gain). If Cohen Milstein has an outsized financial incentive to investigate DoorDash because it can use its investigation to leverage even more fees, that is relevant to DoorDash's right to an unbiased prosecutor.

As to RFP No. 104 ("Documents sufficient to show any requests by Cohen Milstein to [the City] for permission to share information related to DoorDash with any third parties . . . ."), the City argues that, while the retainer requires Cohen Milstein to seek permission before approaching third parties, there is no case law imposing such a requirement. Opp. at 14. This is a strained reading of the law. The control test permits discovery to test the government's "actual control" of its outside counsel by ensuring that the safeguards in a retainer agreement are "subject to objective verification," and "[t]he unique circumstances of each prosecution may require a different set of guidelines for effective supervision and control[.]" *Santa Clara v. Atl. Richfield Co.*, 235 P.3d 21, 39-40 (Cal. 2010). DoorDash is doing just that, by testing whether the City's checks on Cohen Milstein, as contemplated in the actual retainer at issue, were followed.

The City also contends that RFP No. 104 "by its terms seeks privileged information." Opp. at 15. Yet the City does not engage seriously with DoorDash's suggestion that the City produce information responsive to RFP No. 104 in the form of a summary or log. Dkt. 311 at 15. DoorDash recognizes that responsive communications themselves may be privileged, but at a minimum, seeks to understand whether Cohen Milstein sought the relevant permission. A log would suffice.

Finally, the City argues that "there are no practical means to narrowly cabin a search of Cohen Milstein's correspondence with the Law Department." Opp. at 15. But surely a lawyer on this case would be able to determine whether another Cohen Milstein lawyer has discussed this very case with third parties, simply by searching his or her own emails or corresponding with others at Cohen Milstein. There is no need for a burdensome custodial search.

## CONCLUSION

The Court should compel the City to adequately respond to DoorDash's narrow requests.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY        CASE NO. 1:21-CV-05162

Dated:  June 28, 2024                                     Respectfully submitted,

| **GIBSON, DUNN & CRUTCHER LLP** | **FORDE & O'MEARA LLP** |
|---|---|

Joshua S. Lipshutz (*pro hac vice*)  
1050 Connecticut Avenue NW  
Washington, D.C. 20036  
Phone: (202) 955-8500  
jlipshutz@gibsondunn.com  

Michael Holecek (*pro hac vice*)  
Cynthia Chen McTernan (*pro hac vice*)  
333 S. Grand Avenue  
Los Angeles, CA 90071  
Phone: (213) 229-7000  
mholecek@gibsondunn.com  
cmcternan@gibsondunn.com  

By:   */s/  Michael K. Forde*  
Michael K. Forde  
Brian P. O'Meara  
111 W. Washington Street, Suite 1100  
Chicago, IL 60602  
Phone:  (312) 641-1441  
mforde@fordellp.com  
bomeara@fordellp.com  

**RILEY SAFER HOLMES & CANCILA LLP**

Patricia Brown Holmes  
Sarah E. Finch  
70 W. Madison Street, Suite 2900  
Chicago, IL 60602  
Phone:  (312) 471-8700  
pholmes@rshc-law.com  
sfinch@rshc-law.com  

*Attorneys for Defendants DoorDash, Inc. and Caviar, LLC*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY     CASE NO. 1:21-CV-05162

## CERTIFICATE OF SERVICE

      I hereby certify that on June 28, 2024, I electronically filed Defendant's Reply in Support of Its Motion to Compel using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                                       */s/ Mickey Balestri*

                                                         Mickey Balestri