IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1: 21-cv-05162 |
| | ) | |
| DOORDASH, INC. AND | ) | |
| CAVIAR, LLC, | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | | |

**ORDER**

This matter is before the Court on Plaintiff's Motion to Compel Document Discovery from Four Additional Custodians [ECF No. 254]; *see also* Sealed Plaintiff's Motion to Compel Document Discovery from Four Additional Custodians [ECF No. 253] ("Motion"). For the reasons discussed below, the Motion is granted in part and denied in part.

Plaintiff the City of Chicago ("Plaintiff" or "the City") seeks to compel Defendants DoorDash, Inc. and Caviar, LLC (collectively, "DoorDash" or "Defendants") to include four additional DoorDash employees and executives as document custodians as to certain issues relevant to the claims and defenses in this case.

Rule 26(b)(1) provides in pertinent part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED.R.CIV.P. 26(b)(1).

The Court first addresses the City's request for three additional custodians other than Tony Xu, Dash's chief executive officer ("CEO"). Those three people are

1

Jonathan Berk, Jessica Lachs and Charlton Soesanto. Mr. Berk was DoorDash's Director of Business Strategy and Analytics in 2017-2018 and focused on "consumer pricing strategy." Motion [ECF No. 253] at 8. Mr. Berk is already an agreed custodian on one issue in this case, with respect to driver pay (which DoorDash refers to as the Pay Guarantee Model), and the City seeks to add Mr. Berk as a custodian on a second issue, consumer fees. The City seeks to add Ms. Lachs and Mr. Soesanto as custodians on both the Pay Guarantee Model and consumer fees issues. Ms. Lachs was DoorDash's Vice President of Analytics and Data Science from 2018 to 2023, and Mr. Soesanto was a Product Manager and Director of Project Management between 2015 and 2021. Motion [ECF No. 253] at 9-10.

DoorDash does not dispute that these three individuals are relevant document custodians on the issues of consumer fees and the Pay Guarantee Model. At various points in discovery, DoorDash proposed each of these individuals as document custodians, including proposing Mr. Berk as a custodian on the consumer fees issue and offering Ms. Lachs and Mr. Soesanto as custodians on the Pay Guarantee Model. To that end, DoorDash notes in its Response that "a compromise" allowing consumer fees searches of Mr. Berk's custodial files and Pay Guarantee Model searches of Ms. Lachs and Mr. Soesanto's files "would at least be grounded in the parties' negotiations." *See* Defendants' Opposition to Plaintiff's Motion to Compel [ECF No. 286] ("Response") at 12. While the Court acknowledges that DoorDash made its prior offers contingent on various other discovery proposals in play at the time, DoorDash's prior offers of these custodians nevertheless shows they are at least within the universe of people who potentially are likely to have relevant information on these issues.

The Court recognizes DoorDash did not previously offer Ms. Lachs and Mr. Soesanto as custodians on the consumer fees issue, but it does not appear that DoorDash disputes Ms. Lachs and Mr. Soesanto may have relevant information on consumer fees. In addition, the City identified emails suggesting these custodians are likely to have relevant information on the consumer fee issue. *See* Motion [ECF No. 53] at 9-10.

Rather than directly addressing whether these three custodians are likely to have relevant documents on the issues of consumer fees or the Pay Guarantee Model, DoorDash instead argues the City has not shown they are likely to have documents about two areas where the City says DoorDash's production has been inadequate and which the City says justifies expanding the universe of custodians – specifically, the Chicago Fee and the appearance of the DoorDash Marketplace. Response [ECF No. 286] at 1-2 ("[t]he City's Motion focuses on two purported gaps in DoorDash's document productions . . . related to the Chicago Fee . . . [and] the appearance of and changes to the DoorDash Marketplace from 2016 to 2021" but "[a]s to Jessica Lachs, Charlton Soesanto, and Jonathan Berk, the City . . . cites no evidence that these custodians have documents the City asserts it lacks. . . As to the Chicago Fee, these

2

custodians were not responsible for implementing that fee. And as to appearance-related documents, the City has itself said that custodian searches are not the best way to locate these documents."). DoorDash further notes it will be producing additional documents related to these areas, Response [ECF No. 286] at 6, and perhaps DoorDash has since done so.

In the Court's view, the basis for the City's request to add these three custodians is broader than as characterized by DoorDash. The City points to other claimed deficiencies in DoorDash's custodial productions beyond the absence of documents related to the Chicago Fee or the appearance of the DoorDash app. The City challenges the adequacy of DoorDash's custodial productions overall including because the City says the total quantity of documents produced from the 12 current DoorDash custodians has been relatively small compared to what it would expect (as of the briefing of this Motion, DoorDash had produced a total of 4,030 docs from custodial searches). Motion [ECF No. 253] at 1. DoorDash argues it is not enough for the City to merely say it expected a larger document production, which is true. Response [ECF No. 286] at 7. But the City also points to other claimed deficiencies in DoorDash's custodial discovery, including the substantial variation in production numbers across custodians such that some custodians turned out to have had relatively few or almost no responsive docs, as well as a very small overall production from 2016. Motion [ECF No. 253] at 6-7. Although these results can occur even when the parameters for custodial searches are appropriate, they also can be concerning if they indicate the parameters are too narrow which may be the case here.

The City provides examples of documents produced from the three proposed custodians in other cases that it says suggests they are likely to have additional relevant documents here because, among other reasons, those communications were not encompassed by DoorDash's other custodial searches but rather were incidentally produced as part of DoorDash's other productions. DoorDash also does not directly refute the City's examples. Response [ECF No. 286] at 10 ("The City points to a limited number of documents it argues shows these custodians have relevant documents. But a party's obligation is not to locate and produce every relevant document. . ."). The City says the identification of relevant documents from these custodians from DoorDash's productions in other matters demonstrates that broader discovery from these three custodians would not necessarily be duplicative, which the Court finds persuasive under the circumstances. Plaintiff's Reply in Support of its Motion to Compel Document Discovery from Four Additional Custodians [ECF No. 300] ("Reply") at 12.

For these reasons, the Court does not agree with DoorDash that its previous searches of and production of documents from the initial 12 custodians should preclude further discovery from additional custodians notwithstanding evidence suggesting those individuals may have relevant documents. [*Id.*] at 7. Nor is the Court convinced that DoorDash's efforts to address purported deficiencies in its

3

production of documents related to two issues in the case (the Chicago Fee and the appearance of the DoorDash platform) means additional custodial discovery as to other issues like consumer fees and the Pay Guarantee Model is disproportionate to the needs of the case.[1]

Given the potential and even likely relevance of additional discovery from these three custodians, the Court turns to whether allowing this additional discovery would be disproportionate to the needs of the case or unduly burdensome when compared to the potential benefit of allowing the discovery. Much of the tone of DoorDash's response, particularly as to proportionality, is focused on the timing of the City's Motion – that these requests come late in discovery.[2] But the discovery schedule has since been extended with fact discovery now not set to close until March 15, 2025. [ECF No. 323]. To that end, the Court notes that DoorDash is also pursuing additional, follow-up discovery from the City on various issues. [ECF Nos. 299, 311, 342, 347]. The parties are both now fine-tuning follow-up discovery and it strikes the Court as reasonable and foreseeable that process can sometimes require the addition of new custodians based on what was learned from prior document productions.

As the City points out, the Court noted during a prior hearing addressing DoorDash's initial request for 13 custodians that an ask for that number of custodians did not appear on its face to be excessive in light of the scope of this case and it was possible the City might request additional custodians at a later stage of discovery.[3]

---

[1] With respect to the 2016 time period, the City argues all three proposed custodians held senior positions at DoorDash at that time, which the City says was a critical period for several of its claims, and the City notes only 330 documents from 2016 were produced in DoorDash's prior productions. *See* Motion [ECF No. 253] at 2; Reply [ECF No. 300] at 6. While DoorDash says "it is possible that fewer emails were sent in 2016 as a general matter given how considerably DoorDash has grown as a company since that time," Response [ECF No. 286] at 12, it does not provide an estimate of (and probably does not know at this juncture) the number of potentially responsive documents in these three custodians' files from 2016. For these reasons, the Court is not persuaded these three custodians are not likely to have relevant documents from 2016.

[2] *See* Response [ECF No. 286] at 1 ("particularly at this stage of the litigation, additional discovery must be proportional to the needs of the case"); 7 ("any requests for discovery must be proportional and narrowly tailored to the actual needs of the case, particularly at this late stage of discovery"); 12 ("The parties have already had to extend the discovery schedule twice, and the City waited months to raise this dispute. . . This late-stage request is not tailored to the discovery needs at this stage of the litigation and in light of these thin justifications."); 15 ("Any discovery granted at this stage of the litigation should be tailored to address the actual needs of the case.").

[3] Following the City's request for 13 custodians, the parties eventually reached an agreement to initially proceed with 11 custodians and one additional custodian subsequently was added in response to a motion to compel brought by the City, bringing the total number of DoorDash custodians to 12. *See* Motion [ECF No. 253] at 1, 5; McCloskey Decl. [ECF No. 288] at 2-4; Response [ECF No. 286] at 3.

4

Reply [ECF No. 300] at 13 (citing ECF No. 277-6 (Ex. F)). At the time this Motion was briefed in February and March 2024, DoorDash had produced just over 4,000 custodian documents and under 6,000 total documents. Motion [ECF No. 253] at 1, 7. Moreover, although DoorDash reports it has now produced a total of approximately 7,700 documents as of September 2024, the Court does not know whether that includes any additional custodial documents. Joint Status Report [ECF No. 353]. The Court also takes note of the comparative size of the parties' overall document productions, as reported to the Court in September 2024, with the City having produced just under 8,700 documents. [*Id.*] The number of documents produced by both sides in this case could indicate that the parties have successfully focused their discovery requests and custodial searches in a laser-like fashion to locate only highly relevant documents. But the consistent drum beat of motion practice initiated by both sides in support of more fulsome responses to existing discovery requests and for additional discovery requests more likely indicates that early efforts to focus and limit discovery requests and document searches did not allow either side to discover the case as thoroughly as they needed.

The Court also is not persuaded by DoorDash's position that it is likely "that whatever is produced may either be identical or substantially similar to what is already in the record." Response [ECF No. 286] at 12. DoorDash says it previously made "substantial" productions of documents from other matters "involving similar allegations" from these three custodians, but also says these three "served as custodians in related matters on issues including the Pay Guarantee Model." McCloskey Declaration [ECF No. 288] at ¶ 14. So, it does not appear that DoorDash has produced documents resulting from consumer fees searches in other matters from these three custodians. This suggests documents related to the consumer fees issue would not be duplicative of previously document productions in other cases. DoorDash also does not provide details on the scope of its productions from these proposed custodians in other matters, such as whether the same search terms were used or if the timeframes are consistent. Without such information, the Court cannot conclude DoorDash has met its burden to show the proposed additional searches of these custodians would be duplicative.

In addition, DoorDash does not adequately demonstrate the burden of reviewing the three additional custodians' documents. The Court notes the City's argument that it is not clear whether DoorDash engaged in any de-duplication process before compiling its estimates of the scope of this anticipated document review or if additional de-duplication efforts could further reduce the review time and expense. It strikes the Court that DoorDash's estimate of the document review burden may be somewhat inflated because it aggregates the estimated number of documents, time and expense across all four requested custodians on all issues rather than breaking down those estimates on an issue by issue, or custodian by custodian, basis and after any de-duplication effort. DoorDash also has previously proposed these custodians itself, as noted above, suggesting DoorDash has not consistently

viewed discovery from these custodians, at least as to some relevant matters, as disproportionately burdensome.

Finally, the Court is not persuaded that even based on DoorDash's burden estimates, reviewing over 31,000 documents for 1,500 hours of estimated review time at a cost of $300,000 is so unduly burdensome given the scope of this case and the potential dollars at issue as to be unreasonable. DoorDash's numbers are based on its estimate of the number of documents that potentially would need to be reviewed for all three custodians across all requested topics (and possibly before any de-duplication) once documents in the possession of Mr. Xu, the fourth proposed custodian, are removed from the mix. The City notes the amount in controversy in this case potentially exceeds over $100 million, and the City's allegations encompass five areas of alleged misconduct occurring over more than five years and involving potentially millions of transactions. Motion [ECF No. 253] at 12-13; Reply [ECF No. 300] at 11. The City also points to what it says are DoorDash's sufficient resources to litigate this case, Motion [ECF No. 253] at 12, none of which DoorDash disputes in its Response.

For all these reasons, the Court grants the City's motion to compel Ms. Lachs and Mr. Soesanto as additional custodians for the consumer fees and Pay Guarantee Model issues, and Mr. Berk for the consumer fees issue.

As noted above, the City also seeks to add Tony Xu, DoorDash's CEO, as a custodian on four issues (consumer fees, driver pay, menu pricing, and non-partner listings). Motion [ECF No. 253] at 11-12. The City says Mr. Xu is likely to have relevant documents on these four issues based on the content of some emails to or from Mr. Xu that DoorDash has produced. [*Id.*] The City also argues DoorDash is improperly seeking to insulate Mr. Xu's communications from discovery with what the City says effectively is an "apex custodian" argument that the Court has previously rejected. [*Id.*] at 15. DoorDash disputes that Mr. Xu has relevant documents and also argues the burden of reviewing over 9,000 potentially responsive documents from his custodian files would be a burden that outweighs any likely benefit. Response [ECF No. 286] at 13-15.

As an initial matter, the Court previously granted Plaintiff's motion to compel documents from another high-level DoorDash executive (Mr. Tang) where the Court found there was no clear law establishing the existence of an apex custodian doctrine for document discovery. [ECF No. 281]. For those same reasons, the Court will not apply any apex custodian doctrine in the context of the instant dispute and instead considers whether to compel the addition of Mr. Xu as a custodian by weighing factors the same as it would for any other proposed custodian. That does not mean, however, that the Court should not consider the nature of Mr. Xu's role as CEO of DoorDash as a factor in its decision; the City still has the initial burden of demonstrating Mr. Xu is likely to have relevant documents.

6

DoorDash argues the emails referenced by the City show that Mr. Xu had only high-level involvement on the four issues as to which the City seeks this discovery and for that reason Mr. Xu's documents would be "largely irrelevant." Response [ECF No. 286] at 13. The Court agrees with DoorDash that the City has not shown Mr. Xu provided substantive feedback in most of the approximately 500 emails that he sent or received that already have been produced in this case. DoorDash says out of approximately 500 emails involving Mr. Xu, hundreds merely include him on large distribution lists or copy him. [*Id.*] Only 90 of those emails involve Mr. Xu as a sender, and of those, DoorDash says about half are emails forwarded by Mr. Xu without commentary or brief non-substantive messages of team encouragement. [*Id.*] Another 32 are brief messages of only one sentence in length. [*Id.*] Although the City contends that Mr. Xu's "high-level involvement" and even brief emails can be relevant, particular as evidence of corporate knowledge and intent, the City does not address DoorDash's larger point that the vast majority of the 500+ emails involving Mr. Xu that have been produced in discovery to date do not actually demonstrate his significant or substantive involvement with the issues in this case. Reply [ECF No. 300] at 8.

As to Mr. Xu's emails that the City describes in its Motion, the Court agrees with DoorDash that, for example, Mr. Xu's receipt of an email complaint directly from a DoorDash delivery driver does not justify a fishing expedition for more instances of such complaints, particularly where DoorDash says it has already produced contacts from customers or drivers from its databases. Although the Court acknowledges the City identified a few communications where Mr. Xu appears to engage substantively on issues related to this dispute, the Court is not persuaded that the possibility of finding a handful of similar such emails justifies the burden and cost of reviewing over 9,000 additional communications, which the City estimates will take over 500 hours of review time at a cost of around $100,000, given the likelihood that the vast majority of Mr. Xu's documents will not be substantively relevant.

Moreover, the City does not demonstrate that Mr. Xu will have unique, relevant documents that would not be produced from the custodial files of the three additional custodians the Court allowed above, or that were not also produced by Mr. Tang, another senior DoorDash executive. The City argues it does not matter that other DoorDash custodians might have responsive documents, pointing to *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018), a case in which a court ordered that Twitter's CEO (Mr. Dorsey) be included as a custodian, saying "[t]he idea that responsive documents will necessarily be found in other custodians' records is not sufficient to defeat a search of his files." Reply [ECF No. 300] at 15. Nevertheless, the Court agrees with DoorDash that the circumstances of *Shenwick* are distinguishable and are not comparable to discovery of Mr. Xu's emails in this case. *Shenwick* involved claims that were directly related to the CEO's communications to the public about the state of the company's business, while the City here does not claim it needs discovery specifically about Mr. Xu's conduct *per se*.

Rather, the City wants access to Mr. Xu's emails to see whether he had knowledge of or weighed in on subjects that also were being discussed by other DoorDash executives. The Court does not agree that fishing expedition is proportional to the needs of this case.

In the final analysis, based on the Court's review of Mr. Xu's emails identified in the City's Motion, while this handful of communications may show Mr. Xu is knowledgeable about his company's business and involved at a high level, the emails do not show that Mr. Xu is likely to have unique, relevant knowledge or possession of communications in that regard as compared to the discovery DoorDash has already provided or will provide from the three additional custodians discussed above. Accordingly, the Court finds that given the cost and time burden of reviewing Mr. Xu's emails, and the likelihood that Mr. Xu's primarily high level involvement in the issues at stake in this case would result in the production of few substantive documents not in the possession of others at DoorDash, the City's request to make Mr. Xu a custodian for four substantive areas is a reach that is not proportional to the needs of the case and it declines to add Mr. Xu as an additional custodian.

For all these reasons, Plaintiff's Motion to Compel Document Discovery from Four Additional Custodians [ECF Nos. 253, 254] is granted in part, as to custodians Jonathan Berk (as to the consumer fees issue), and Jessica Lachs and Charlton Soesanto (as to consumer fees and driver pay/Pay Guarantee Model issues), and denied in part, as to custodian Tony Xu.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 9, 2024