## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CITY OF CHICAGO,
      Plaintiff

    v.

DOORDASH, INC. and CAVIAR, LLC,
    Defendants

No. 21 CV 5162

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

Plaintiff City of Chicago filed this action against Defendants DoorDash Inc. and Caviar, LLC (together, "DoorDash"), asserting claims for violations of the Municipal Code of Chicago ("MCC"). DoorDash now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), claiming that MCC violations that accrued more than two years prior to the filing date are time-barred. (R. 116.) The City cross moves for judgment on the pleadings on DoorDash's statute of limitations defense, and seeks summary judgment on DoorDash's defenses of laches and due process. (R. 159; R. 207.) Finally, DoorDash asks the Court to deny the City's motion for summary judgment or to defer ruling on it until the close of discovery under Federal Rule of Civil Procedure 56(d). (R. 227.) For the reasons stated in this Memorandum Opinion, the Court grants DoorDash's motions for judgment on the pleadings and to deny or defer ruling on partial summary judgment, and denies the City's motions in their entirety.

## BACKGROUND

DoorDash is the nation's largest online meal ordering and delivery company. (R. 1-1 ("Compl") ¶ 2.) It facilitates food ordering and food delivery through an online platform that connects consumers to restaurants, stores, and delivery providers. (*Id.* ¶¶ 2, 15, 17.) DoorDash generates revenue by charging fees to consumers for ordering and delivery, and by charging commissions to participating restaurants. (*Id.* ¶ 4.)

The City alleges that, at various points between 2014—when DoorDash entered the Chicago, Illinois market—and 2021—when this action was filed—DoorDash misled and deceived Chicago consumers by: (1) charging "service fees," "small order fees," and a $1.50 "Chicago Fee" in addition to delivery fees and grouping these charges with taxes (suggesting that they are government-imposed), (*id.* ¶ 57); (2) failing to disclose that prices on its online platform might differ from those on restaurants' own online and in-store menus, (*id.* ¶ 6(b)); (3) offering "promotional discounts" that apply only when an order exceeds an undisclosed "minimum order amount," (*id.* ¶¶ 6(c), 96, 101–103); (4) offering free advertising and delivery services to restaurants with whom it had no contractual relationship, (*id.* ¶¶ 112, 129); and (5) using tips from customers to subsidize their own payments to DoorDash drivers, (*id.* ¶ 163).

The City filed this action in the Circuit Court of Cook County, alleging that DoorDash's conduct violated MCC §§ 4-276-470 and 2-25-090, which prohibit unfair and deceptive business practices. (*See generally id.*) The Complaint seeks "fines for each violation" of § 4-276-470 "not less than $50.00 nor more than $2,000.00," (*id.*

¶ 198), as well as fines "for each violation of" § 2-25-090, of "not less than $500.00 nor more than $10,000.00." (*Id.* ¶ 208.)

DoorDash removed this action to federal court and moved to dismiss the Complaint under Rule 12(b)(6), arguing that many of the City's claims were untimely under 735 ILCS 5/13-202. (*See* R. 26.)[1] The Court declined to resolve the timeliness issue on a Rule 12(b)(6) motion, observing that concerns about untimeliness "[go] to recovery, not to whether [the] plaintiff has stated a claim." *City of Chi. v. DoorDash, Inc.*, No. 21 C 5162, 2022 WL 704837, at *3 n.2 (N.D. Ill. Mar. 9, 2022). DoorDash answered the complaint and asserted affirmative defenses, including statute of limitations, laches, and due process. (R. 61 at 131–32, 134–35.) The City moved unsuccessfully to strike DoorDash's laches and due process defenses. (R. 62); *City of Chi. v. DoorDash, Inc.*, 636 F. Supp. 3d 916, 921–23 (N.D. Ill. 2022).

DoorDash now asks the Court to adjudicate its statute of limitations and laches defenses on the pleadings under Federal Rule of Civil Procedure 12(c). (R. 116.) The City cross-moves for judgment on the pleadings on DoorDash's limitations defense, and seeks summary judgment on DoorDash's defenses of laches and due process. (R. 159; R. 207.) Lastly, DoorDash asks the Court to deny or defer ruling on the City's summary judgment motion until discovery has closed. (R. 227.) The Court now addresses the merits of the pending motions.

---

[1] This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and (c)(1) because the City is a citizen of Illinois, both DoorDash entities are citizens of Delaware (their state of incorporation) and California (their principal place of business), and the amount in controversy exceeds $75,000, exclusive of interest and costs. (R.1 ¶ 6.)

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The Court must "determine 'whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief.'" *Hanover Ins. Co. v. R.W. Dunteman Co.*, 51 F.4th 779, 785 (7th Cir. 2022) (quoting *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018)).

In ruling on a Rule 12(c) motion, the Court is "confined to the matters presented in the pleadings." *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) (citing *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987)). If the Court needs to refer to facts outside the pleadings to decide the motion, then the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Court may grant summary judgment under Rule 56 if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party. *Thompson Corrugated Sys., Inc. v. Engico, S.R.L.*, 111 F.4th 747, 751 (7th Cir. 2024) (citation omitted).

4

## ANALYSIS

### I.   RULE 12(C)

The Court first considers the parties' cross-motions for judgment on the pleadings on DoorDash's statute of limitations defense. (R. 116; R. 159.) DoorDash seeks partial judgment on MCC claims that arose more than two years prior to the filing of this action. The City argues in response that (1) DoorDash's motion is an improper attempt to seek dismissal of parts of claims, (2) the City is not subject to state law limitations periods, and (3) if a limitation period applies, it is five years rather than two years. The Court considers each argument in turn.

### A.   Claims or Parts of Claims?

The Court begins with the City's argument that DoorDash's Rule 12(c) motion improperly attempts to seek piecemeal dismissal of parts of claims. (R. 160 at 28–30.) The complaint raises only two counts—one under MCC § 4-276-470 (Count I) and the other under MCC § 2-25-090 (Count II). Regardless of the applicable limitations period, the City argues that, because some of its claims are timely, it would be improper to rule on the time-bar issue at the pleading stage.

Federal Rule of Civil Procedure 12(c) does not permit the entry of judgment on some but not all elements of a single claim. *See, e.g., Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 893 (N.D. Ill. 2018) (Feinerman, J.) (collecting cases); *accord BBL*, 809 F.3d 317, 324–25. A "claim," however, is simply "'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (quoting *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011)). It is not a legal "theory," or a

"principle under which a litigant proceeds, or on which a litigant bases its claims or defenses in a case." *See, e.g.*, *Legal Theory*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Shah v. Inter-Cont'l Hotel Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002); *see also Brannigan v. United States*, 249 F.3d 584, 587 (7th Cir. 2001) (citing *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223 (7th Cir. 1993)) (explaining that a single set of facts producing an injury is one "claim" no matter how many legal theories can be invoked in support). Nor is a claim the same as a "count," which is an organizational tool in a complaint that a court "may require" but omission of which is not necessarily fatal at the pleading stage. *Cf. Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); Fed. R. Civ. P. 10(b).

Based on the foregoing principles, determining whether DoorDash is seeking piecemeal dismissal of claims requires looking at substance over form. The City's labelling of allegations in the complaint is not dispositive; "[i]f separate injuries represent separate claims . . . then a new period of limitations begins with each distinct claim." *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999). The question is whether each of the MCC violations pled in the complaint can "reasonably be construed as an entirely separate claim." *Kenall Mfg., LLC*, 354 F. Supp. 3d at 896.

Answering this question depends upon when the MCC violations at issue accrued—a question of state law. *See, e.g.*, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1162 (7th Cir. 2021). Under Illinois law, a claim accrues and "a limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003); *see also Khan*

6

*v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028 (Ill. 2012) ("A cause of action 'accrues' when facts exist that authorize the bringing of a cause of action."). The MCC provisions each provide that "[e]ach day" violations continue constitutes a "separate and distinct offense." MCC §§ 2-25-090(g), 4-276-480. In other words, each day that a violation occurs is a different "aggregate of operative facts." *Sojka*, 686 F.3d at 399. Because the complaint can be reasonably construed as alleging numerous violations with distinct factual bases, as opposed to only two violations, it follows that DoorDash is seeking dismissal of discrete claims, as opposed to parts of claims.

The City cites *Consumer Financial Protection Bureau v. TransUnion*, in which the district court declined to "narrow the temporal scope" of Consumer Financial Protection Act litigation based on statutory language indicating that each violation would constitute a new and separate cause of action for which the limitations period would run separately. 641 F. Supp. 3d 474, 481 (N.D. Ill. 2022). Unlike this case, however, the defendant's motion in *TransUnion* was brought pursuant to Federal Rule of Procedure 12(b)(6), not 12(c). Because complaints need not plead around affirmative defenses, a statute of limitations defense poses "no problem under Rule 12(b)(6)." *Leavell*, 189 F.3d at 495. By contrast, "when a complaint shows that the time for litigation has passed, judgment on the pleadings may be entered under [Rule] 12(c)." *Id.* (affirming dismissal on limitations grounds). DoorDash's motion is a permissible application of Rule 12(c).

## B.    What Statute of Limitations Applies?

Having determined that the defendants are not seeking piecemeal dismissal of parts of claims, the next question is what statute of limitations applies. DoorDash

seeks application of 735 ILCS 5/13-202, which provides a two-year limitations period for "statutory penalties," whereas the City argues for application of the five-year catch-all period found in 735 ILCS 5/13-205.[2]

Resolving this question depends on whether the MCC violations at issue are "statutory penalties" as that term is used in 735 ILCS 5/13-202. *See, e.g.*, *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 302 (Ill. 2009). In *Landis*, the Illinois Supreme Court considered whether 735 ILCS 5/13-202 applied to MCC provisions that created liability for landlords who failed to return their tenants' security deposits. *Id.* at 307. The Court concluded that the two-year limitations period applied because the provisions were "in the nature of punishment for the nonperformance of an act or for the performance of an unlawful act." *Id.* (quoting *Hoffmann v. Clark,* 372 N.E.2d 74 (Ill. 1977)). It applied a three-part test: a municipal ordinance is a "penalty" under 735 ILCS 5/13-202 if it (1) imposes automatic liability for a violation of its terms; (2) sets forth a predetermined amount of damages; and (3) imposes damages without regard to the actual damages suffered by the plaintiff. *Id.* (citing *McDonald's Corp. v. Levine,* 439 N.E.2d 475 (Ill. App. Ct. 1982)).

As in *Landis*, the Court examines the language of the MCC provisions at issue to determine whether they constitute a penalty. *See, e.g.*, *Mayle v. Urb. Realty Works, LLC*, 202 N.E.3d 1011, 1024 (Ill. App. Ct. 2022). MCC § 2-25-090(h) provides:

> Except as otherwise provided in this chapter, and in addition to any other penalty provided by law, any person who violates any of the requirements of this section **shall be subject to a fine** of not less than $500.00 nor more

---

[2] The Court addresses the City's arguments that it is not subject to any statute of limitations because of its home-rule authority and the *nullum tempus* doctrine below.

> than $10,000.00 for each offense . . . . In determining the
> amount of a fine, consideration shall be given to the
> violator's degree of culpability, any history of similar
> conduct, the violator's ability to pay, and other matters as
> justice may require.

(emphasis added). MCC § 4-276-480 likewise provides:

> Any person violating any of the provisions of Section 4-276-
> 470 **shall be fined** not less than $50.00 nor more than
> $2,000.00 for each offense. Any violation of any of the
> provisions of Section 4-276-470, in addition to any fine
> provided for herein, may be grounds for revocation of any
> license issued by the City of Chicago to any such violator;
> provided, however, that nothing herein contained shall be
> construed so as to preclude the revocation of any license for
> violation of any other provision of the Municipal Code of
> Chicago.

(emphasis added). The inclusion of the mandatory "shall" in both provisions satisfies

the "automatic liability" requirement. *Landis*, 919 N.E.2d at 307; *Namur v. Habitat

Co.*, 691 N.E.2d 782, 785 (Ill. App. Ct. 1998). The use of the term "shall" as opposed

to "may" "generally indicates the [ ] intent to impose a mandatory obligation." *People

v. Robinson*, 838 N.E.2d 930, 934 (Ill. 2005).

Additionally, both MCC provisions set a fixed, predetermined range of

damages for violations—a ceiling and a floor outside of which a court cannot deviate.

The City argues that damages are not predetermined because each provision

prescribes a range of damages as opposed to an amount certain. (R. 160 at 21.) But it

identifies no authority requiring a statute to set a specific number for damages to be

considered a penalty. In *Landis*, the Illinois Supreme Court rejected a similarly

formalistic application of the "predetermined" requirement, disavowing the notion

that "a provision that sets forth a formula for calculating damages rather than

9

identifying a specific dollar cannot be characterized as a penalty." 919 N.E.2d at 307. In the context of claims arising under federal law, courts in this District have found that statutory provisions are "penalties" under 735 ILCS 5/13-202, notwithstanding a court's discretion to impose damages within a predetermined range. *See, e.g.*, *St. Alexius Med. Ctr. v. Roofers' Unions Welfare Tr.*, No. 14 C 8890, 2015 WL 5123602, at *4 (N.D. Ill. Aug. 28, 2015) (applying two-year limitations period in ERISA action where court had discretion to impose fines of *up to* $100 per day).

Finally, neither MCC provision allows the City to recover actual damages for violations. In fact, just as in *Landis*, it is "irrelevant whether plaintiffs have suffered actual damages." 919 N.E.2d at 308. Section 2-25-090(h) provides that the violator's "culpability" informs the imposition of fines within the statutory range. Section 4-276-480 is likewise silent as to actual damages and mentions only an additional consequence to be imposed on the violator: the revocation of a license issued by the City. MCC § 4-276-480. Both provisions also describe the amounts to be paid as "fines" or "penalties" rather than "damages." *See*, *e.g.*, *Fine*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining a "fine" as "[a] pecuniary criminal punishment or *civil penalty* payable to the public treasury") (emphasis added); *see also People v. Jones*, 861 N.E.2d 967, 986 (Ill. 2006) (holding that the "central characteristic" of a fine is that it is a "charge [that] does not seek to compensate the [plaintiff] for any costs incurred").

The MCC provisions' emphasis on the violator's conduct rather than compensation indicates that their purpose is not to remediate, but to punish

10

wrongdoing. *Compare Namur*, 691 N.E.2d at 784, *with Sternic v. Hunter Props., Inc.*, 801 N.E.2d 974, 976 (Ill. App. Ct. 2003). The absence of any reference to actual damages in the MCC provisions distinguishes this case from those cited by the City. For example, *Burlinski v. Top Golf USA Inc.* dealt with provisions of the Illinois Biometric Privacy Act that allowed litigants to recover actual damages in excess of statutory penalties. No. 19 C 06700, 2020 WL 5253150 (N.D. Ill. Sept. 3, 2020). Similarly, *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.* considered provisions of the Illinois Cable Piracy Act that allowed claimants to elect statutory or actual damages and provided that statutory damages were to be calculated "in lieu of actual damages." No. 14 C 1223, 2014 WL 4748272, at *7–8 (C.D. Ill. Sept. 24, 2014); 720 ILCS 5/16-18(h)(3).

Unlike the damages regimes imposed by the statutes at issue in *Burlinski* and *Joe Hand*, the fines imposed by the MCC provisions in this case are not "an alternative to actual damages," or "based solely on the estimated value of the services stolen," but explicitly reference "other harms," such as a history of similar conduct and express "policies favoring deterrence." *Joe Hand Promotions, Inc.*, 2014 WL 4748272, at *8 (quoting *Charter Commc'ns Ent. I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006)).

The City also relies on *Scott v. Association for Childbirth at Home, International*, which held, in the context of a due process challenge to an enforcement action under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), that the ICFA should not be strictly construed as a "penal statute." 430

11

N.E.2d 1012 (Ill. 1981). *Scott* was decided prior to *Landis*, however, and the City identifies no authority applying its conclusion—that the ICFA is not unconstitutionally vague—to whether MCC provisions like the ones at issue here are "statutory penalties" under 735 ILCS 5/13-202.

The underlying suggestion that the ICFA is a close analogue of the MCC for purposes of the *Landis* analysis is not persuasive. (R. 198 at 18.) Although MCC § 2-25-090(a) cross references the ICFA and provides that "[a]ny conduct constituting an unlawful act or practice under the [ICFA] . . . shall be a violation of this section," a private action under the ICFA, unlike MCC § 2-25-090, requires a litigant to plead actual damages. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citing 815 ILCS 505/10a). And while the ICFA authorizes government entities to impose additional civil penalties for violations, liability for those penalties is entirely discretionary, in contrast to MCC § 2-25-090's automatic liability regime. *Compare* 815 ILCS 505/7, *with* MCC § 2-25-090. In sum, MCC §§ 2-25-090(h) and 4-276-480 are "penalties" under *Landis* and are therefore subject to 735 ILCS 5/13-202's two-year limitations period.

## C. The City's Home-Rule Authority

The City next argues that its home-rule authority (*i.e.* its ability to self-govern) precludes the application of *any* state law limitations period absent express preemption. (R. 160 at 10–11.) Home-rule "invest[s]" the City "with the same sovereign power as the state government, except where explicitly limited by the legislature." *Blanchard v. Berrios*, 72 N.E.3d 309, 321 (Ill. 2016). The City argues that home-rule creates a presumption of immunity from state law limitations periods,

and that the Illinois legislature must expressly preempt home-rule for state limitations periods to apply.

Although home-rule must be construed liberally, *see* Illinois Constitution article VII, § 6(m), this argument pushes the doctrine too far. For starters, the Illinois Supreme Court has applied 735 ILCS 5/13-202's two-year limitations period to MCC provisions like the ones at issue here—even though 735 ILCS 5/13-202 contains no express preemption of home-rule. *Landis*, 919 N.E.2d at 308. The City points out that the plaintiff in *Landis* was a private individual, rather than the home-rule unit itself. But even if the identity of the plaintiff matters, there is a deeper problem with the City's theory: home-rule gives a municipality like the City the *same* authority as the State—no more, no less. *Blanchard*, 72 N.E.3d at 321. And absent a common law exception, 735 ILCS 5/13-202's two-year limitations period applies to state government entities. *See, e.g.*, *People ex rel. Hartigan v. Agri-Chain Prods., Inc.*, 586 N.E.2d 535, 539 (Ill. App. Ct. 1991). The City cannot rely on home-rule to obtain immunity to statutes of limitations broader than that enjoyed by the State of Illinois.

The City identifies no Illinois statutes adopting the preemption framework that it claims is necessary to displace home-rule. It cites 65 ILCS 5/10-1-18.2, which provides:

> No municipality, including a municipality that is a home rule unit, may regulate the period of time or establish or enforce a statute of limitations relating to charges brought against a police officer before a Police Board, Civil Service Commission, or other board or officer empowered by law or ordinance to investigate police misconduct if the charge is based upon an allegation of the use of unreasonable force by a police officer.

13

65 ILCS 5/10-1-18.2. This citation does not indicate that express preemption is required in order for state limitations periods to apply to home-rule units. To the contrary, the fact that the City cannot enact its own limitations periods in a particular case does not demonstrate that it is *exempt* from generally applicable limitations periods. The Court therefore rejects the City's argument that its home-rule authority immunizes it from state limitations periods and declines to consider the City's arguments regarding preemption.

### D. *Nullum Tempus Occurrit Regi*

Finally, the City argues that it is exempt from any statute of limitations under the common law doctrine of *nullum tempus occurrit regi*, or "no time runs against the king." (R. 160 at 11–20.) This ancient common law rule exempts governmental authorities from statutes of limitations unless the statutes, by their terms, specifically include the government. *People v. Asbestospray Corp.*, 616 N.E.2d 652, 654 (Ill. App. Ct. 1993) (citing *Clare v. Bell*, 37 N.E.2d 812, 814 (Ill. 1941)). Historically, *nullum tempus* was justified based on "the prerogative of the Crown," *i.e.*, the notion that the King could do no wrong. *See Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 132 (1938). Though Illinois has abolished the related doctrine of sovereign immunity, *see Molitor v. Kaneland Community Unit District No. 302*, 163 N.E.2d 89 (Ill. 1959), it has preserved *nullum tempus* based on the policy consideration that public rights, revenues, and property should not suffer from "the

negligence of public officers." *Guar. Tr. Co.*, 304 U.S. at 132; *City of Shelbyville v. Shelbyville Restorium, Inc.*, 451 N.E.2d 874, 877 (Ill. 1983).

*Nullum tempus* "will only be applied where [an] action involves public rights." *DuPage Cnty. v. Graham, Anderson, Probst & White, Inc.*, 485 N.E.2d 1076, 1080 (Ill. 1985). Whether a cause of action implicates public or private rights turns on "who would be benefited by the government's action and who would lose by its inaction." *Shelbyville*, 451 N.E.2d at 877. Once again, the Court looks to substance over form; the "bare fact" that litigation "is brought in the name of the People . . . is not controlling." *People ex rel. Town of New Trier v. Hale*, 52 N.E.2d 308, 310–11 (Ill. App. Ct. 1943). Three factors must be addressed: (1) the effect of the interest on the public, (2) the obligation of the governmental unit to act on behalf of the public, and (3) the extent to which the expenditure of public revenues is necessitated. *Vill. of DePue, Ill. v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 781 (C.D. Ill. 2010) (quoting *Champaign Cnty. Forest Pres. Dist. v. King,* 683 N.E.2d 980, 982 (Ill. App. Ct. 1997)).

### 1.     The effect of the interest on the public

As to the first factor, the harm that the City seeks to remedy in this case is essentially private. A public right must belong to the "general public" rather than to "some small distinct subsection of the public at large." *Champaign Cnty.*, 683 N.E.2d at 984 (citing *Shelbyville*, 451 N.E.2d at 876–77). DoorDash's allegedly deceptive and unlawful practices arose in the context of private transactions between individual consumers and a for-profit company supplying a service via contract. *See, e.g.*, *Agri-Chain.*, 586 N.E.2d at 538 (holding that an action to recover benefits under a private employment contract was not an action affecting the public interest). Online ordering

and food delivery services like DoorDash are not used by all Chicago residents, and an even smaller percentage of residents choose to use DoorDash rather than one of its several competitors.[3]

Illinois cases that have applied *nullum tempus* typically have done so in actions involving threats to public health, safety, and property that have the potential to affect the *entire* municipality. In *Shelbyville*, for example, the Illinois Supreme Court applied *nullum tempus* to an action to compel the construction of streets in a subdivision because "the safety of all persons who have occasion to use the streets . . . will depend on the workmanlike construction and maintenance of the[] streets." 451 N.E.2d at 878. Following *Shelbyville*, Illinois courts have uniformly invoked threats to public health or public finances as grounds for applying *nullum tempus*. *See, e.g.*, *Bd. of Educ. of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 600–03 (Ill. 1989) (applying *nullum tempus* to municipal action to compel public school asbestos abatement); *City of Chi. v. Latronica Asphalt & Grading, Inc.*, 805 N.E.2d 281, 287 (Ill. App. Ct. 2004) (applying *nullum tempus* to remedy "illegal dumping of waste" on a public lot, which could "create a danger to the public health"); *City of Chi. ex rel. Scachitti v. Prudential*

---

[3] The complaint emphasizes DoorDash's expansive market share and the fact that, as of 2021, the company accounted for more than one-third of online meal delivery transactions in Chicago. (Compl. ¶¶ 3–4.) But both the complaint and publicly available information indicate that most of this expansion occurred within the two-year limitations period as a result of DoorDash's 2019 acquisition of Caviar. (*Id.* at ¶ 10 (detailing DoorDash's monthly sales from 2018–2021); *see also, e.g.*, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (considering public records in connection with Rule 12(c) motion for judgment on the pleadings). Documents filed with the Securities and Exchange Commission in connection with DoorDash, Inc.'s 2020 initial public offering indicate that in January 2018, DoorDash had only 17% market share nationwide—less than competitors like Uber Eats and Grubhub. *See* DoorDash Inc., Form S-1 Registration Statement (November 13, 2020), https://www.sec.gov/Archives/edgar/data/1792789/000119312520292381/d752207ds1.htm.

*Sec., Inc.*, 772 N.E.2d 906 (Ill. App. Ct. 2002) (applying *nullum tempus* to action involving overcharges to government entities in transactions for advance-refunding of municipal bonds).

No comparable threat to public health, safety, or finances is alleged here. Perhaps the best that can be said for the City's theory of public harm is that, by extracting value from Chicago residents, DoorDash is eroding the City's tax base and causing economic injury to its residents. But "lost potential tax and business revenues, in and of themselves, are not damages that are part of a 'public' cause of action. . . ." *Vill. of DePue*, 713 F. Supp. 2d at 782; *accord Champaign Cnty.*, 863 N.E.3d at 982–83. Likewise, harms that "merely affect the economic interests of the residents" of a municipality "do not implicate the public's interest in health and safety" or public property. *Vill. of DePue*, 713 F. Supp. 2d at 782.

The City argues that this action is in the public interest because it is brought pursuant to its police power. (R. 160 at 13–14.) But this argument lacks a limiting principle. The police power applies to a much wider range of laws than *nullum tempus*, including laws enacted to "protect the public from financial loss" and to "promote [ ] economic welfare." *Compare Sherman-Reynolds, Inc. v. Mahin*, 265 N.E.2d 640, 642 (Ill. 1970) (citations omitted), *with Champaign Cnty.*, 863 N.E.3d at 982–83. Illinois courts have rejected the idea that invoking a remedy enacted under the police power automatically transforms an action into a public-rights case. *See, e.g.*, *People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990, 995 (Ill. App. Ct. 2003) (holding that a suit invoking penalties for violating wage and vacation

17

pay rules was not a public-rights case); *Agri-Chain*, 586 N.E.2d at 539 (same). Similarly, federal courts in other jurisdictions have rejected the notion that claims brought pursuant to state consumer protection statutes that prohibit "unfair or deceptive practices" are automatically subject to *nullum tempus*. *See, e.g.*, *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 129 F. Supp. 3d 589, 590–96 (M.D. Tenn. 2015). Accepting the City's argument would entail an expansive theory of government power whereby municipal governments could immunize themselves from state limitations periods by enacting ordinances with only a marginal connection to public welfare.

The City also argues that this action benefits all Chicago residents because it seeks injunctive and equitable relief to prevent future harms. (R. 160 at 11–12.) But injunctive relief requires evidence of ongoing harm that *cannot* be remedied by monetary damages. *See, e.g.*, *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 847 (N.D. Ill. 2023). A request for injunctive relief cannot serve as a justification for reviving otherwise time-barred damages claims. Even if many of the City's MCC claims are time-barred, DoorDash does not dispute that the City may pursue injunctive or equitable relief related to claims that fall within the limitations period.

Finally, there is the overarching question of "who would benefit" from this lawsuit. *Shelbyville*, 451 N.E.2d at 877. The complaint does not specify the remediation efforts the City seeks or how it will provide restitution to DoorDash's alleged victims. (*See* Compl. ¶ 12.) DoorDash argues that the City is seeking a windfall for public coffers, evidenced by a contingency fee arrangement between the

City and its hired counsel, Cohen, Milstein, Sellers & Toll PLLC ("Cohen Milstein") providing that the private firm will receive up to 28% of the City's "net recovery," depending on the stage at which this case is resolved. (R. 118 at 4–5.)[4]

"[I]f the state becomes a partner with individuals, or engages in business, it divests itself of its sovereign character . . . ." *Town of New Trier v. Hale*, 52 N.E.2d at 310–11 (quoting *Brown v. Trs. of Schs.*, 79 N.E. 579, 580 (Ill. 1906)). Although contingency fee arrangements are "a legitimate and sometimes prudent method of delegating risk in the context of civil litigation," *see*, *e.g.*, *County of Santa Clara v. Atlantic Richfield Company*, 235 P.3d 21, 62 n.14 (Cal. 2010), in circumstances where a private law firm—as opposed to a public entity—stands to recover a significant portion of penalties sought, the public character of the proceeding is lessened. In sum, this action does not clearly implicate the public interest.

### 2. The obligation of the City to act on behalf of the public

The second factor asks "whether the governmental entity was obligated to act on behalf of the public" or was instead "authorized" to act. *Vill. of DePue*, 713 F. Supp. 2d at 783 (quoting *Champaign Cnty.*, 683 N.E.2d at 983). As explained below, this

---

[4] The Court may consider the fee arrangement because it was obtained pursuant to a public records request and attached as an exhibit to the defendants' Rule 12(c) motion. *See Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 724 (N.D. Ill. 2016) (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

suit involves the exercise of a discretionary enforcement power as opposed to an obligation to act on behalf of the public.

Though, as discussed above, liability under each MCC provision is automatic, enforcement via civil litigation is discretionary. The MCC provides that the Commissioner of the Department of Business Affairs and Consumer Protection "*may* bring a civil action for all available relief, including fines as set forth in subsection (h), restitution, disgorgement, equitable, injunctive, declaratory relief, and attorney's fees and costs" and "*may . . . request* the corporation counsel to bring an action for injunctive relief or such other equitable relief that the commissioner *deems to be appropriate.*" MCC § 2-25-090(f)(4) (emphases added). The corporation counsel's authority is likewise cabined; he "*may issue* . . . a subpoena" in response to suspected violations, *id.* § 2-25-090(e) (emphasis added), and "shall . . . [i]nvestigate, *at his discretion*, acts of consumer fraud," *id.* § 2-60-020(f) (emphasis added).

"Legislative use of the word 'may' is generally regarded as indicating a permissive or directory reading, whereas use of the word 'shall' is generally considered to express a mandatory reading." *Commonwealth Edison Co. v. Illinois Com. Comm'n*, 16 N.E.3d 801, 814 n.2 (Ill. App. Ct. 2014) (citing *People v. One*, 1998 GMC, 960 N.E.2d 1071 (Ill. 2011)). The MCC's repeated use of "may" in reference to the commissioner and corporation counsel's power to enforce the MCC through civil litigation show that this method of enforcement is optional, rather than obligatory. *See, e.g.*, *Champaign County,* 683 N.E.2d at 983 (finding that statute was

20

discretionary for purposes of *nullum tempus* because although statute "authorized" the municipality to purchase insurance, "it was not required to do so").

The City argues that it was obligated to act because the MCC provides that the Commissioner "shall be charged with enforcement" of the MCC's advertising and consumer-protection provisions. MCC § 2-25-090(b). But a general duty to enforce the law does not amount to a specific obligation to file a civil lawsuit; where a statutory framework "does not require intervention or any particular manner in any particular case," it does not impose an obligation to act. *Tri State*, 795 N.E.2d at 994 (quoting *Stafford v. Bowling*, 407 N.E.2d 771, 775 (Ill. App. Ct. 1980)); *Agri-Chain*, 586 N.E.2d at 538. Here, while the MCC provisions mandate enforcement as a general matter, they give decisionmakers a range of options from which to choose. There is no requirement to institute civil proceedings.

Each Illinois case applying *nullum tempus* has involved a more specific duty to act than that imposed by the MCC provisions at issue here. *See, e.g.*, *Shelbyville*, 451 N.E.2d at 878 (municipality had a "continuing responsibility" under a state statute "to ensure [ ] construction and maintenance for the use of the public."); *A, C & S*, 546 N.E.2d at 602 (the Illinois Asbestos Abatement Act "impose[d] the duty to act on the individual school districts" to take "corrective action" to remove asbestos and to "cooperate fully with the Attorney General in any litigation to recover costs of abatement."); *Latronica*, 805 N.E.2d at 289 (finding that the MCC required the City to "institute necessary proceedings to prosecute violations" and "to compel the prevention and abatement of . . . pollution . . . and nuisances arising therefrom.").

21

True, even the statutes and ordinances at issue in these cases involved *some* level of discretion by government decisionmakers. As the City puts it, "[g]overnment officials nearly always have discretion when carrying out their enforcement obligations." (R. 160 at 14.) But this fact cuts both ways. If the mere fact that a government enforcement obligation is at issue was sufficient to invoke *nullum tempus*, then virtually *any* suit brought pursuant to a public ordinance would be immune from state limitations periods, regardless of its connection to the public interest. That is not the law. *See Shelbyville*, 451 N.E.2d at 877 (providing that the central question is whether the municipality is asserting a "public right").

For the same reason, the mere fact that the MCC provisions at issue lack a private right of action is not dispositive. The City cites two unreported, nonbinding cases, *City of Chicago v. Equte LLC* and *Village of Roxana v. Shell Oil Company*, for the proposition that *nullum tempus* is appropriate whenever a municipal ordinance lacks a private right of action because, in such circumstances, "the public is incapable of acting on its own behalf." No. 21 C 518, 2022 WL 2132630, at *5 (N.D. Ill. June 14, 2022); No. 12 C 577, 2013 WL 4510164, at *6 (S.D. Ill. Aug. 26, 2013). However, both cases, unlike the present one, involved dangers to public health and safety that the municipality was uniquely positioned to remedy. *See, e.g.*, *Equte*, 2022 WL 2132630, at *5 (sale and advertisement of tobacco products to minors); *Roxana*, 2013 WL 4510164, at *1 (pollution caused by an oil refinery that "threaten[ed] surrounding soil and groundwater").

22

As discussed above, there is no analogous threat to public health or safety in this case. Nor is the Court convinced that the City is the only party who can remedy DoorDash's alleged misconduct; consumers who were affected by DoorDash's conduct may bring a private cause of action under the ICFA—which MCC § 2-25-090(a) cross-references.[5] The Court concludes that the second factor weighs against application of *nullum tempus* as well.

### 3. The extent to which the expenditure of public revenues is necessitated

The third factor is whether the challenged transactions necessitate the expenditure of public funds. Consistent with its cost-saving policy rationale, *nullum tempus* typically serves to offset future costs that will be borne by taxpayers if otherwise time-barred conduct goes unchallenged. *Shelbyville*, 451 N.E.2d at 878; *accord Greenwood v. Town of LaSalle*, 26 N.E. 1089 (Ill. 1891). Here, however, there is no indication that Chicago has had to or will have to expend public funds to address the damage caused by DoorDash's allegedly unlawful conduct.

The absence of public expenditures distinguishes this case from others in which *nullum tempus* has been applied. *See, e.g., A, C & S*, 546 N.E.2d at 602 (costs of asbestos abatement to be borne by the government ran "into the millions"); *Scachitti*, 772 N.E.2d at 917 (nearly $1.5 million in overcharges to public funds);

---

[5] The City alleges that mandatory arbitration clauses in DoorDash's Terms of Use and restaurant contracts frustrate consumers' and restaurants' ability to seek redress through individual and class action litigation. (Compl. ¶ 12 n.1.) Even accepting this characterization, the City does not contend that private plaintiffs lack standing to bring ICFA claims or challenge the enforceability of the arbitration clauses, nor that they would be denied a remedy for DoorDash's alleged misconduct in arbitration.

*Latronica*, 805 N.E.2d at 289 (illegal dumping necessitated $24 million cleanup effort by the City). Nor are the costs of prosecuting this lawsuit evidence of public expenditures since the City was not "required by law to undertake" this suit. *Vill. of DePue*, 713 F. Supp. 2d at 784. Indeed, the City concedes that it cannot satisfy the public expenditure factor. (R. 160 at 12 n.1.)

In sum, none of the three factors clearly support application of *nullum tempus*. Because the Court finds that *nullum tempus* does not exempt the City from 735 ILCS 5/13-202's two-year limitations period, it does not address DoorDash's arguments that application of *nullum tempus* would violate due process, or that the City's claims are barred by the doctrine of laches. DoorDash's motion for judgment on the pleadings is granted and the City's cross-motion is denied. Claims that accrued more than two years prior to the filing date of this action are barred.

## II.    RULE 56

The City also cross-moves for summary judgment under Federal Rule of Civil Procedure 56 on DoorDash's affirmative defenses of laches and due process. For the reasons set forth below, both motions are denied.

### A.    Laches

In its answer, DoorDash includes the affirmative defense of laches, alleging that the City "is guilty of undue delay in filing and prosecuting this suit, and accordingly, this action is barred, in whole or in part . . . ." (R. 51 at 74 ¶ 6.)

Under Illinois law, the two fundamental aspects of laches are (1) "lack of due diligence by the party asserting the claim" and (2) "prejudice to the opposing party." *Tillman v. Pritzker*, 183 N.E.3d 94, 103 (Ill. 2021) (citing *Van Milligan v. Bd. of Fire*

& *Police Comm'rs of the Vill. of Glenview*, 630 N.E.2d 830, 833 (Ill. 1994)). In circumstances where the plaintiff is a government unit enforcing a public right, the party asserting the defense must also demonstrate "an affirmative act" taken by the government on which it relied. *People v. Ferrell*, 220 N.E.3d 1237, 1243 (Ill. App. Ct. 2023); *see also Hickey v. Ill. Cent. R.R. Co.*, 220 N.E.2d 415, 426 (Ill. 1966).

Whether laches is applicable is fact-dependent and varies based on the circumstances of each case. *See Pritzker*, 183 N.E.3d at 103 (citing *LaSalle Nat'l Bank v. Dubin Residential Cmtys. Corp.*, 785 N.E.2d 997 (Ill. App. Ct. 2003)); *see also, e.g.*, *Grede v. MBF Clearing Corp.*, No. 09 C 5214, 2018 WL 306668, at *6 (N.D. Ill. Jan. 5, 2018) (quoting 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1277 (3d ed. 2017)) ("[L]aches involves more than the mere lapse of time and depends largely upon questions of fact.").

The City argues that summary judgment is appropriate because there is no evidence of an affirmative act. (R. 160 at 19–22.) As a threshold matter, the parties dispute whether the affirmative act requirement is applicable. (R. 176 at 26); *see, e.g.*, *Noland v. Mendoza*, 215 N.E.3d 130, 137 (Ill. 2022) (noting that the affirmative act requirement does not apply to cases that involve private rights). The Court need not resolve this issue at the present time, however, because even if the affirmative act requirement applies, it is subject to a genuine dispute of fact. *Cf. Wabash Cnty. v. Illinois Mun. Ret. Fund*, 946 N.E.2d 907, 919 (Ill. App. Ct. 2011) (whether the affirmative act requirement has been satisfied is a question of fact); *see also, e.g.*,

*S.E.C. v. Randy*, 1995 WL 616788, at *5 (N.D. Ill. Oct. 17, 1995) ("[T]he applicability of laches against the government is determined on a case-by-case basis.").

The Court previously denied the City's motion to strike DoorDash's laches defense because allegations that the City initiated "an ongoing dialogue with DoorDash about its business practices" were "compelling" and would require "mak[ing] a factual determination." *DoorDash, Inc.*, 636 F. Supp. 3d at 922 (citing *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002)). Now, in response to the City's motion, DoorDash presents evidence that the City's Department of Business Affairs— the entity tasked with monitoring compliance with the MCC's consumer protection provisions and promulgating rules related to food delivery services—reviewed DoorDash's compliance with the MCC's disclosure requirements in 2020. (*See* R. 179.) After submitting multiple letter inquiries and receiving multiple responses from DoorDash, the Department communicated in an email to a third-party publication, *Consumer Reports*, that DoorDash was "substantially compliant" with the City's disclosure rules.[6] (R. 186 at 2.) The Department's statement was then quoted in a public article that was published by *Consumer Reports* on September 29, 2020. (*See* R. 178 at 7–8.)

---

[6] The City asks the Court not to consider this evidence because it was not properly presented in a Local Rule 56.1 statement. The Court notes, however, that the City moved for summary judgment of DoorDash's laches defense in the context of a combined response to DoorDash's Rule 12(c) motion, and that DoorDash presented its response evidence in the context of a combined response/reply. Given the posture of the briefing and the fact that discovery has not concluded, the Court excuses DoorDash's failure to comply with Local Rule 56.1 with an admonishment that it is not repeated.

Viewing this evidence in the light most favorable to DoorDash, a jury could conclude that the BACP's representation to *Consumer Reports* and the accompanying publication were an affirmative act on which DoorDash relied to its detriment. *Anderson*, 477 U.S. at 248. Accordingly, the City's motion for summary judgment on this affirmative defense is denied. The City may seek leave to renew their motion following the close of fact discovery.

### B. Due Process

Lastly, the Court considers the City's motion for partial summary judgment on DoorDash's due process defense. (R. 207.) This defense alleges that DoorDash has a right to a financially disinterested prosecutor, and that the City's retained counsel, Cohen Milstein, "is improperly acting as a City official or employee exercising the City's prosecutorial powers." (R. 240 at 143.)

A prosecutor's financial interest in a case may violate a criminal defendant's right to an impartial tribunal. *See, e.g.*, *City of E. St. Louis v. Monsanto Co.*, __ F.Supp.3d __, 2024 WL 1072037, at *3 (S.D. Ill. Mar. 12, 2024) (citations omitted). In the civil context, litigants have challenged retention agreements where a private law firm brings actions on behalf of a municipality on a contingency basis. *See id.* (citing *City of Chi. v. Purdue Pharma L.P.,* No. 14 C 4361, 2015 WL 920719 (N.D. Ill. March 2, 2015)). To avoid a due process violation based on a retained firm's "pecuniary interest in the outcome of the suit," the Court must ensure that "certain safeguards" are in place, such as (1) the retention of complete control over the course and conduct of the case by the public-entity attorneys; (2) the retention of a veto power by the public-entity attorneys over any decisions made by outside counsel; and (3) the

personal involvement of a public-entity attorney in overseeing the litigation. *Purdue Pharma*, 2015 WL 920719, at *1–2.

Prior to moving for summary judgment, the City moved to strike this defense and the Court denied the motion on the grounds that the defense "require[d] an examination into the merits of [ ] constitutional issues" and "raise[d] substantial questions of law that are better decided after factual development." *DoorDash, Inc.*, 636 F. Supp. 3d at 923.

Though the Court respects the City's tenacity in renewing its argument, its motion is yet another attempt to jump the gun. In response to the City's motion, DoorDash filed a motion pursuant to Federal Rule of Civil Procedure 56(d), asking the Court to either deny the motion or defer ruling on it until the close of fact discovery. (R. 227.) DoorDash's motion includes an affidavit indicating that it is trying to obtain additional evidence from the City that may be relevant to its due process defense, including documents related to the City's oversight and control of Cohen Milstein, documents related to compliance with the City's Outside Counsel Guidelines, and admissions regarding Cohen Milstein's contributions to Chicago political campaigns and candidates. (*See* 228-1.) A motion to compel this evidence remains pending. (R. 311); *see Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019) (noting that summary judgment is often premature before the close of discovery, "especially if there are pending discovery disputes"). The parties have engaged in multiple meet-and-confers (R. 228-1 ¶¶ 9, 13, 17, 18, 20–22), and the

Magistrate Judge overseeing discovery has encouraged the parties to reach a consensual resolution. (R. 163.)

Under Federal Rule of Civil Procedure 56(d) "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," to a motion for summary judgment, the Court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The nonmovant must point to specific evidence it will pursue through additional discovery and demonstrate "at least some of the additional discovery sought" would not be futile. *Smith*, 933 F.3d at 866. A party's attempts to meet and confer regarding a discovery issue should not be held against them in deciding a Rule 56(d) motion. *See id.* at 870–71. The Seventh Circuit has instructed courts to construe Rule 56(d) liberally to prevent a premature grant of summary judgment. *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994) (addressing precursor to Rule 56(d)).

Here, DoorDash has met its burden of identifying additional evidence that it seeks from the City. Even if much of the material that DoorDash seeks is privileged, some may be discoverable. *Cf. City of Chi. v. DoorDash, Inc.*, No. 21 C 5162, 2023 WL 3654259, at *6 (N.D. Ill. May 25, 2023). Absent a ruling on DoorDash's motion to compel, or an agreement as to the scope of discovery, the Court cannot conclude that the additional material that DoorDash seeks would be futile to its due process defense. The question of whether retained counsel is financially interested in the outcome of the litigation may involve a wider range of materials than the retention

agreement alone.[7] For example, even if the agreement contains adequate safeguards, the arrangement may still violate DoorDash's due process rights if DoorDash presents evidence the City failed to exercise "absolute and total control over all critical decision-making." *Merck Sharp & Dohme Corp. v. Conway*, 947 F. Supp. 2d 733, 744 (E.D. Ky. 2013) (quoting *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 475 (R.I. 2008)). Accordingly, the Court grants DoorDash's motion and denies the City's motion pursuant to Federal Rule of Civil Procedure 56(d). The City may renew its motion following the close of fact discovery.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, Defendants DoorDash Inc. and Caviar, LLC's motion for judgment on the pleadings [116] is granted. Claims under the Municipal Code of Chicago that accrued more than two years prior to the filing of this action are barred by the statute of limitations. *See* 735 ILCS 5/13-202. The Court denies Plaintiff City of Chicago's cross-motion for judgment on the pleadings and its motion for summary judgment on the affirmative defense of laches [159] based on disputed issues of material fact. Finally, the plaintiff's motion for partial summary judgment [207] is denied pursuant to Federal Rule of Civil Procedure 56(d) and the defendants' motion to deny or defer ruling on that motion

---

[7] The City relies on *Purdue Pharma* for the proposition that the Court may rule on DoorDash's due process defense solely based on the language of the retention agreement. But while the *Purdue* court denied a motion for a preliminary injunction to invalidate the City's retention agreement, it never suggested that merits discovery regarding the adequacy of the retainer agreement or the nature of the City's relationship with private counsel would be categorically inappropriate.

[227] is granted. The City may renew its motion for summary judgment on DoorDash's due process defense following the close of fact discovery.

Date: September 20, 2024

_____

JEREMY C. DANIEL
United States District Judge